# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH<br><br>                Plaintiff,<br><br>     v.<br><br>CITY OF PITTSBURGH;<br>COREY LAYMAN, AICP, in his official capacity as Zoning Administrator of the City of Pittsburgh;<br>KAREN ABRAMS, in her official capacity as Director of City Planning of the City of Pittsburgh; and<br>SARAH KINTER in her official capacity as Director of Permits, Licenses, and Inspections of the City of Pittsburgh,<br><br>                Defendants. | Case No.    2:22-cv-706<br><br>Electronically Filed |

## COMPLAINT

Plaintiff, BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH ("BAMP"), by and through its undersigned counsel, hereby files this Complaint against the CITY OF PITTSBURGH ("City"), COREY LAYMAN, AICP, in his official capacity as Zoning Administrator of the City of Pittsburgh; KAREN ABRAMS, in her official capacity as Director of City Planning of the City of Pittsburgh; and SARAH KINTER, in her official capacity as Director of Permits, Licenses, and Inspections of the City of Pittsburgh (collectively, "Defendants") and in support thereof, says as follows:

**INTRODUCTION**

1.      BAMP seeks declaratory and injunctive relief from an unconstitutional, illegal, and confiscatory ordinance enacted by the City, in various stages, between June 2019 and April 2022 (the "Ordinance"). By way of the Ordinance, the City improperly seeks to shift the burden to fund low- and moderate-income housing from the general public to a select population, namely residential real estate developers.  The imposition of this burden on BAMP members constitutes an improper taking of private property without just compensation, in violation of the Takings Clause of the Fifth Amendment, made applicable here by the Fourteenth Amendment, and in violation of the Due Process Clause of the Fourteenth Amendment.  As such, the ordinance cannot be permitted to stand.

2.      The Ordinance is also violative of Pennsylvania law, as it violates (i) the Pennsylvania Constitution, Article IX, Section 2; (ii) the Home Rule Charter and Optional Plans Law (the "Home Rule Law"), 53 Pa.C.S. § 2901 *et seq*.; and (iii) the Pennsylvania Constitution, Article VIII, Section 1, requiring uniformity of taxation.  The Home Rule Law specifically strips from the City the authority to adopt ordinances that either (i) regulate business, occupations and employers by imposing duties, responsibilities or requirements thereon; or (ii) contradict, limit, or enlarge powers granted by statutes applicable to municipalities.  By placing onerous, costly conditions on developers' abilities to construct, market, sell, and/or rent their properties, the City is engaging in conduct expressly prohibited by the Home Rule Law (53 Pa.C.S. § 2962(f)).  For these state law reasons as well, the Ordinance constitutes an *ultra vires* act and is null and void.

3.      The City's stated "Purpose and Intent" in enacting the Ordinance is "to promote the public health and welfare by increasing the supply of affordable housing for a range of family sizes and promoting economic integration within the District boundaries."  Ordinance, § 904.04A.3.

103481040.2

While this goal may be unobjectionable, and even laudable, it is improper for the City to task BAMP's members with curing this deficit by placing unconstitutional conditions on their use of their private property.  And, while the Ordinance is unlawful whether or not it actually promotes its stated objective, the practical effect of the Ordinance is to disincentivize developers from investing in the City's neighborhoods and residents due to the exponentially-increased development costs, thereby limiting the supply of newly constructed units, increasing general housing prices, and ultimately limiting housing opportunities of moderate-income families.

4.     In short, the Ordinance does not pass constitutional muster and does not comport with Pennsylvania law.  It cannot be permitted to stand.

## THE PARTIES

5.     Plaintiff, Builders Association of Metropolitan Pittsburgh ("BAMP"), is a Pennsylvania non-profit trade association with a principal place of business in Pittsburgh, Pennsylvania.  BAMP serves as a trade association, with a membership comprised, in part, of businesses that specialize in residential construction and development, including at times on land owned by such businesses, in and around the City of Pittsburgh and Western Pennsylvania.

6.     BAMP has standing to sue under the doctrine of associational standing as recognized, for example, in *Free Speech Coal., Inc. v. AG of the United States*, 974 F.3d 408, 421 (3d Cir. 2020) and *Pa. Psychiatric Soc'y v. Green Spring Health Servs*., 280 F.3d 278, 283 (2002).

7.     Specifically, BAMP has standing because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Pa. Psychiatric Soc'y* at 283 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343).

3

8.      BAMP has approximately 400 members in Pittsburgh and Western Pennsylvania, including builders and developers who own property within the areas of Pittsburgh affected by the Ordinance, as well as developers who plan to acquire such property.  BAMP members also own and/or manage properties consisting of rental/dwelling units within the areas of Pittsburgh affected by the Ordinance.  Many BAMP members are among the persons subject to the prohibitions and requirements of the Ordinance and, as such, would have standing to sue in their own right.

9.      The purposes of BAMP include representing the interests of its members on matters of public policy and legislation related to their respective industries, including regulations like those imposed by the Ordinance challenged by this lawsuit.  The interests that BAMP seeks to protect by this lawsuit are germane to those purposes.

10.     BAMP's standing is further shown by the Declaration of James M. Eichenlaub, which is attached hereto as Exhibit "A."  BAMP incorporates said Declaration and the statements set forth therein.

11.     By this lawsuit, BAMP seeks declaratory and injunctive relief as well as attorneys' fees and costs incurred by BAMP.  Neither the claims asserted nor the relief requested requires the participation of individual BAMP members in the lawsuit.

12.     BAMP and BAMP members have a substantial, direct and immediate interest in this action because BAMP members are engaged as owners and developers of "Development Project[s]" as defined in Section 907.04.A.4 of the Pittsburgh Code of Ordinances, Title 9, Article III.

13.     Defendant City of Pittsburgh ("City") is a home rule municipality, organized and existing under the Home Rule Charter and Optional Plans Law (the "Home Rule Law"), 53 Pa.C.S. § 2901 *et seq.*, having its principal place of business in Pittsburgh, Pennsylvania.   As a

4

103481040.2

municipality, the City does not possess sovereign immunity with respect to the matters at issue in this lawsuit.  *See, e.g., Alden v. Maine*, 527 U.S. 706, 756 (1999) ("[Sovereign] immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State.").

14.     Defendant Corey Layman, AICP, is the Zoning Administrator of the City of Pittsburgh and, as such, has responsibility for enforcing the Ordinance.  He is sued only in his official capacity.

15.     Defendant Karen Abrams is the Director of City Planning of the City of Pittsburgh and, as such, has responsibility for enforcing the Ordinance.  She is sued only in her official capacity.

16.     Defendant Sarah Kinter is the Director of Permits, Licenses, and Inspections of the City of Pittsburgh and, as such, has responsibility for enforcing the Ordinance.  She is sued only in her official capacity.

17.     Defendants fully intend to enforce the Ordinance against all to whom its terms apply, including but not limited to BAMP members.

18.     Unless Defendants are enjoined from enforcing the Ordinance, BAMP members will be harmed in that they will be caused to suffer financial loss and be deprived of their constitutionally protected property rights.  The City's Ordinance unreasonably interferes with BAMP members' property rights.

19.     All actions and prospective actions by Defendants, as alleged by this Complaint, have been, are and, if not, enjoined, will be under color of state law, thereby subjecting Defendants to liability under 42 U.S.C. § 1983 and § 1988.

103481040.2

## JURISDICTION AND VENUE

20.     This action presents a live, ripe, and actual case or controversy arising under the Constitution and the laws of the United States.

21.     More specifically, this is an action under 42 U.S.C. § 1983 for declaratory and injunctive relief for violations of rights secured by (i) the Takings Clause of the Fifth Amendment, made applicable to Defendants by the Fourteenth Amendment, and (ii) the Due Process Clause of the Fourteenth Amendment.

22.     The Declaratory Judgment Act, 28 U.S.C. § 2201, "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained."  *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978).  Those conditions apply here.

23.     This is also an action under Pennsylvania law for violations of the Pennsylvania Constitution and the "Business Exclusion" provisions of the Home Rule Law.

24.     This Court has jurisdiction over BAMP's federal claims pursuant to 28 U.S.C. § 1331 because this case arises under the laws and Constitution of the United States.

25.     This Court has supplemental jurisdiction over BAMP's state law claims pursuant to 28 U.S.C. § 1367(a).

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the claims asserted by Plaintiffs arose in the Western District of Pennsylvania.

27.     There are no conditions precedent to BAMP's capacity and standing to bring these claims that have not occurred or that have not been performed.

103481040.2

**FACTUAL ALLEGATIONS**

28.     As the result of various actions taken by the Pittsburgh City Council and its Mayor between July 24, 2019, and May 2, 2022, the City enacted the legislation that is the subject of this lawsuit (the "Ordinance").   A copy of the Ordinance is attached as Exhibit "B" and fully incorporated by reference.

29.     The Ordinance can also be found in the Pittsburgh Code of Ordinances at Title Nine, Zoning; Article III, Overlay Zoning District, Chapter 907:  Development Overlay Districts by creating 907.04.A, IZ-O, Inclusionary Housing Overlay Districts.

30.     The Ordinance creates so-called "Inclusionary Zoning Districts" in certain areas of the City, namely:  (i) Lower, Central, and Upper Lawrenceville, (ii) Bloomfield, and (iii) Polish Hill.  Ordinance § 907.04.A.1.

31.     The Ordinance imposes substantial confiscatory requirements on persons engaged in the development of housing within the Inclusionary Zoning Districts.

32.     Within the Inclusionary Zoning Districts, the Ordinance is broadly written and applies to both multi-family home projects and single-family home projects.  More specifically, the Ordinance applies to all "[n]ew construction or Substantial Improvement of one or more buildings that collectively contain…"

    a.     "… 20 or more ***dwelling units***" or "20 or more ***sleeping rooms…*** within a Multi-Suite Residential use" or "any ***combination***" of such dwelling units and sleeping rooms (Ordinance § 907.04.A.5(a), (b) and (c) (emphasis added)); or

    b.     "…(i) one (1) or more ***zoning lots*** marketed as a ***single or unified project***, (ii)  sharing common elements or common financing, or (iii) comprising a

part of a planned development." (Ordinance § 907.04.A.5(a); *see id.* at (b) and (c) (emphasis added)).

(all of the foregoing being "Subject Properties").

33.     Under the Ordinance, ***ten percent*** of all units in Subject Properties must be set aside as so-called "Inclusionary Units," to be rented or sold at below-market prices, ostensibly for low- and moderate-income households.  Ordinance, § 907.04.A.6(e) (the "Set-Aside Requirement").

34.     The Set-Aside Requirement is also triggered in the event of certain other circumstances, including when a residential complex with more than 20 units for any reason suffers "substantial damage," within the meaning of the Ordinance, even if the owner does not want to rebuild a residential complex (*i.e.* "***regardless of the actual repair work performed***").  Ordinance, § 907.04.A.4 (definition of "Substantial Improvement") (emphasis added).

35.     While Inclusionary Units must be rented or sold at ***below-market prices***, the Ordinance requires that "Inclusionary Units shall be ***equivalent to market rate units*** within the building ***in all ways***, including appliances, finishes and square footage."   Ordinance, § 907.04.A.6(h) (emphasis added) (the "Equivalent Interiors Requirement").

36.     The Ordinance also prohibits certain measures to mitigate the losses caused by its below-market rental and sales requirement.  For example, the Ordinance states: "Core building and Development Project ***amenities,*** such as gym, pool or parking space, ***must be shared with no additional charges or restrictions*** to residents in Inclusionary Units unless those charges are subtracted from rent or HOA dues for all residents regardless of unit or rental price."  Ordinance, § 907.04.A.6(i) (emphasis added) ("Equivalent Amenities Requirement").

103481040.2

37.     Inclusionary Units cannot be rented or sold at market rates.  Instead, Inclusionary

Units must be rented or sold at below-market rates meeting the Allowable Pricing criteria set forth

in the Ordinance.  For units to be rented, the Ordinance provides:

> **Allowable Pricing** means ***with respect to Inclusionary Rental Units***, the
> ***monthly rent*** paid by the Eligible Household, plus all mandatory or
> essential fees and charges and an approved Utility Allowance, ***shall not
> exceed*** thirty (30) percent of the monthly income of a household earning
> fifty (50) percent of AMI [Average Median Income] with a household size
> one-and-a-half (1.5) times the bedroom count of the Dwelling Unit.

Ordinance, § 907.04.A.4 (emphasis added).[1]

38.     For units to be sold, the Ordinance provides:

> ***With respect to Inclusionary Owner-Occupied Units***, the initial ***sale price
> shall be set*** [at] a level that ensures that a household earning seventy (70)
> percent of AMI for a household size one-and-a-half (1.5) times the bedroom
> count of the Dwelling Unit will spend no more than twenty-eight (28)
> percent of gross monthly income on their mortgage payment (principal and
> interest); taxes and insurance; and all mandatory or essential fees and
> charges (including condo/HOA dues), assuming a five-percent down
> payment and a thirty (30)-year fixed rate mortgage at the then current
> mortgage rate (determined as the National Average Contract Mortgage rate
> by the Federal Housing Finance Agency).

Ordinance, § 907.04.A.4 (emphasis added).

39.     As the result of the foregoing Set-Aside Requirement and Allowable Pricing,

developers, owners and landlords of Subject Properties – including BAMP members – will suffer

substantial economic losses.

40.     The Ordinance is enforced by City officials by denying certificates of occupancy

where there has not been compliance.  For units to be rented, the Ordinance provides:

---

[1]     The Ordinance then goes on to say:  "Only tenant-paid costs are subject to the
Allowable Pricing.  If a rental subsidy is provided, the total of all monthly rent, fees,
charges and approved Utility Allowance may exceed the Allowable Pricing so long as the
portion paid by the household does not."  Ordinance, § 907.04.A.4.

103481040.2

> Prior to the issuance of a Certificate of Occupancy for an Inclusionary Rental Unit, the Applicant shall either: *(1) "[r]ecord a deed restriction* allowing the City and Eligible Households to enforce these on-site inclusionary standards and related City regulations, such restriction to be prepared by the Director of City Planning or their designee;" *or (2) "[e]nter into a master lease of the unit with an Affordable Housing Provider* for the entire Affordability Term….

Ordinance, § 907.04.A.6(b) (emphasis added); *see id.* § 907.04.A.4 (defining "Affordability Term" as "a minimum of thirty-five (35) years from the date of initial occupancy of an Inclusionary Unit").

41. For units to be sold, the Ordinance provides:

> Prior to the issuance of a Certificate of Occupancy for an Inclusionary Owner Occupied Unit, the Applicant shall either: *(1) "[r]ecord a deed restriction* allowing the City and Eligible Households to enforce these on-site inclusionary standards and related City regulations, such to be prepared by Director of City Planning or their designee, obliging owner-occupancy of the unit and restricting additional debt that can be secured against the property;" *or (2) "[s]ell the unit to a Community Land Trust."*

*Id.* § 907.04.A.6(c) (emphasis added).

42. Under the Ordinance, the requirements imposed on the so-called Inclusionary Units will last for "a minimum of thirty-five years" (the so-called "Affordability Term"). Even so, "[i]f the Inclusionary Unit or any property containing an Inclusionary Unit is sold during the Affordability Term, the Affordability Term shall automatically *renew for an additional thirty-five (35) years*." *Id.* § 907.04.A.6(f) (emphasis added).

43. In addition to all of the foregoing provisions, the Ordinance contains other provisions that work to deprive developers, owners and landlords of Subject Properties – including BAMP members – of their property or otherwise imposes unlawful requirements. These include, but are not limited to:

a.  compelling, as to rental units, evictions/non-renewals of private citizen tenants in certain circumstances, *see, e.g., id.,* § 907.04.A.6;

b.  regulating the handling of, use rules regarding, and allocations of costs among tenants or among condominium/planned community residents for parking, pools, gyms, and other amenities, *see, e.g., id.,* § 907.04.A.6(i);

c.  requiring the submission to and recording of onerous deed restrictions / master leases against the title (which leases, by exceeding 30 years, require developer to pay a realty transfer tax, part of which goes to the City), *see id,* § 907.04.A.6;

d.  regulating or affecting details of, and having material obligations determined based upon, matters of property title, *see, e.g., id.,* § 907.04.A.5(b) (regarding requirements for recorded covenants and/or recorded master leases) and *id.,* § 907.04.A.5(a) (having obligations potentially triggered based on whether a "planned development" or condominium with common elements is used as part of the business structure/form of ownership relating to the property); and matters of financing/mortgages *see, e.g. id.,* § 907.04.A.5(a) (aggregating separate developments based on "common financing") and *id.,* § 907.04.A.4 (setting maximum below-market sale price based on happenstance of future national circumstances applicable to one type of fixed rate mortgage), relating to the property;

e.  requiring owners in certain circumstances to sell at below-market price to certain private "non-profit" entities that may in the future be approved, without standards, by unelected City officials, *see, e.g., id.,* § 907.04.A.4 (definition of "Community Land Trust") and *id.,* § 907.04.A.6(c)(2);

f.  forcing private landlords to act as an adjunct to the governmental housing authority and engage in burdensome annual interactions with such authorities or other non-governmental or governmental parties to whom such powers may be delegated, without any set standards, by the unelected City officials, even though there has been no choice to engage in HUD Section 8 or similar programs, *see, e.g.,* § 907.04.A.6(b)(2);

g.  prohibiting the use by owners of "lease purchase agreements" in certain contexts, *see, e.g., id.* § 907.04.A.4 (definition of "Inclusionary Owner-Occupied Unit.");

h.  requiring current and future owners of impacted Inclusionary Owner-Occupied Units to either record with the recorder of deeds an onerous deed restriction against the title of the property burdening it with material restrictions--including for example by expressly "restricting additional debt

103481040.2

that can be secured against the property"--negatively impacting the value and limiting the practical ability to sell, as well as the use, of such real estate for an initial term of *at least 35 years*, and if sold during that period, *extending for an additional 35 years*, or be forced to sell it to a "Community Land Trust," *see, e.g., id.* § 907.06(c) and (f); and

i.     requiring current and future owners/landlords of impacted Inclusionary Rental Units to either record with the recorder of deeds an onerous deed restriction against the title of the property, or enter into a master lease with an "Affordable Housing Provider," negatively impacting the value and limiting the practical ability to sell and arrange for certain types of financing, as well as the use, of such real estate for an initial term of *at least 35 years*, and if sold during that period, *extending for an additional 35 years*, *see, e.g., id.* § 907.06(b) and (f).

44.     Although the Ordinance provides for a potential alternative method of compliance, other than by setting aside ten percent of a project for "Inclusionary Units," the potential alternative does not cure the constitutional violations because (i) there is no guarantee that BAMP members – or any other person subject to the Ordinance – would be able to use the alternative method, and (ii) the alternative method also entails violations of the Takings Clause and the doctrine of unconstitutional conditions.

45.     The alternative method – found in a portion of the Ordinance entitled "Off-Site Inclusionary Standards" – is only applicable "[w]here provision of Inclusionary Units on-site is determined [by the City] not to be feasible," in which case "inclusionary units constructed off-site [Off-site Units] many be permitted."  Ordinance, § 907.04.A.7.

46.     The same standards applicable to on-site Inclusionary Units are applicable to Off-site Units, except that, in lieu of the ten percent Set-Aside Requirement, "[a] minimum of *twelve (12) percent* of the subject applicant's number of units shall be Inclusionary Units."  Ordinance, § 907.04.A.7(a) and (b) (emphasis added).

12

47.     In addition, "[t]he off-site units shall be located no more than one-quarter (1/4) mile of the subject site…." Ordinance, §  907.04.A.7(c) (the "Proximity Requirement") and must have "comparable public transit service as the subject site…." Ordinance, §  907.04.A.7(c) (the "Public Transit Requirement").

48.     Where Off-site Units are required, the Ordinance is enforced by City officials by denying certificates of occupancy for the Subject Property until there has been compliance. Ordinance, § 907.04.A.7(d).

### COUNT I
### VIOLATION OF THE TAKINGS CLAUSE
### OF THE UNITED STATES CONSTITUTION

49.     Paragraphs 1-48 are realleged and hereby incorporated by reference.

50.     The Ordinance – including but not limited to the provisions detailed herein – is unconstitutional because it violates the Takings Clause and the doctrine of unconstitutional conditions.

51.     The Takings Clause is found in the Fifth Amendment to the U.S. Constitution and states that "private property [shall not] be taken for public use without just compensation."  The Fourteenth Amendment makes the Takings Clause applicable to these Defendants.

52.     Governmental taking of private property for use in addressing a city's need for low- and moderate-income housing can be a permissible use of eminent domain.  *See Berman v. Parker*, 348 U.S. 26 (1954) (upholding the District of Columbia Redevelopment Act of 1945, which provided use of eminent domain power to redevelop slum areas and possible sale or lease of the condemned lands to private interests).  Unlike the statute upheld in *Berman*, however, the

Ordinance represents an attempt by the City to evade its constitutional obligation to provide just compensation for taking Plaintiffs' private property to attain public objectives.

53.     Moreover, unlike the Ordinance, the statute upheld in *Berman* did not require any private person to furnish time, talents, labor, and financial resources to construct housing for the benefit of the City and/or for the benefit of third parties favored by the City.

54.     Under the doctrine of unconstitutional conditions, government cannot condition a benefit generally available to others on the surrender of a constitutional right.  *See*, *e.g.*, *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593 (1926) ("It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold"); *Sullivan v. A. W. Chesterton, Inc*. 384 F. Supp. 3d 532, 542 (E.D. Pa. 2019) (holding that Pennsylvania statute "violates the unconstitutional conditions doctrine because it conditions the benefit of doing business in the state with the surrender of constitutional due process protections.")

55.     "[T]the logical foundation of the unconstitutional conditions doctrine applies with equal force in any case in which the enjoyment of a government-sponsored benefit is conditioned upon a person's nonassertion of any constitutional right."  *Wojtczak v. Cuyler*, 480 F. Supp. 1288, 1306 (E.D. Pa. 1979) (citations omitted).

56.     Unconstitutional conditions cases often arise in the context of the land development or zoning approval process and involve a request that a developer dedicate or turn over property to the municipality, or something similar, in order to obtain a permit.  *Koontz v. St. Johns River*

103481040.2

*Water Mgmt. Dist.,* 570 U.S. 595 (2013) (holding that government could not condition the grant of land use permits upon the applicant's funding of offsite mitigation projects on public land).

57.     As explained by the U.S. Supreme Court:

> Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation.   As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury.

*Koontz*, 570 U.S. at 607 (citations omitted).

58.     Moreover, and of critical importance here, "a unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a '***nexus***' and '***rough proportionality***' between the government's demand and the effects of the proposed land use." *Koontz*, 570 U.S. at 599 (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard* 512 U.S. 374 (1994)) (emphasis added).

59.     A governmentally compelled transfer of property from one person to another is the very essence of a "taking."  *See*, *e.g.*, *Wilkinson v. Leland*, 27 U.S. 627, 658 (1829).

60.     The Ordinance conditions permit approval upon the BAMP member's transfer of property interests to the City or to third parties favored by the City by, *inter alia*, (a) requiring BAMP members to dedicate a financial interest in the so-called Inclusionary Units, said interest being secured by a deed of or other recorded conveyance and having a value measured by the difference between the market price and the so-called Affordable Price; (b) restricting BAMP members' right to freely alienate property; and (c) eliminating BAMP members' right to sell or lease property at a fair market price.  Each of those requirements compels the transfer of an interest in property.

103481040.2

61.     The Ordinance violates the Takings Clause and doctrine of unconstitutional conditions because

    a.    The Ordinance conditions the issuance of a government permit (a certificate of occupancy) on the owner's relinquishing a portion of his property as required by the Ordinance (Ordinance, § 907.04A.6(b) and (c) (On-Site Units); § 907.04.A.7(d) (Off-Site Units)); and

    b.    There is neither the required nexus nor rough proportionality between the demands imposed by the Ordinance and the effects of those developments that are subject to the Ordinance.

62.     The lack of the constitutionally required nexus and rough proportionality are shown, *inter alia*, by the following:

    a.    The Ordinance does not state that its purpose is to mitigate any loss of low- and moderate-income housing due to developments that are subject to the Ordinance.

    b.    The Ordinance does not limit its requirements to circumstances where it can be plausibly shown that the development will cause a loss of low- and moderate-income housing.

    c.    The acquisition and development of land for purposes other than low- and moderate-income housing does not cause a loss of low- and moderate-income housing.

    d.    BAMP members neither caused nor contributed to any affordable housing shortage in the City of Pittsburgh.  To the contrary, BAMP members are actively building new housing alternatives for middle-

class and first-time homebuyers in the City, with the aim of improving housing affordability, availability, and choice.

e.    Assuming *arguendo* that the acquisition and development of a given parcel of land somehow causes a loss of low- and moderate-income housing, the loss occurs regardless of how that parcel is developed. Yet, the Ordinance only applies when the parcel is used for certain residential purposes.

f.    Any such loss of low- and moderate-income housing as may be "caused" by the acquisition and development of land subject to the Ordinance is not the sort of impact cognizable for purposes of the nexus and rough proportionality requirements.

g.    The requirements of the Ordinance are not tailored to any perceived impact of a specific project.  That is to say that the Ordinance does not provide for any individualized determinations that the requirement it imposes are related both in nature and extent to the impact of specific projects.

h.    The requirements of the Ordinance, including but not limited to the Equivalency Interiors Requirement, the Equivalent Amenities Requirement, the Affordability Term, the Proximity Requirement and the Public Transit Requirement, require more than would be necessary to address any perceived loss of low- or moderate-income housing.

17

63.     The Ordinance has arbitrarily and unreasonably imposed harsh development exactions and has forced BAMP members "to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Nollan*, 483 U.S. at 835 n.4.  Indeed, the Ordinance is "not a valid regulation of land use but an '***out-and-out plan of extortion***.'"  *Id.* at 837 (citations omitted; emphasis added).

64.     The Ordinance also improperly effects a taking of private property in violation of BAMP members' constitutional rights because the required exactions are so high, harsh and extreme that they effectively deny landowners like BAMP members the right to the economically viable use of their land and leave them no reasonable return on their investment.

65.     The City's imposition of development exactions under the Ordinance constitutes a taking under the Fifth Amendment of the U.S. Constitution and, because the Ordinance does not contemplate any compensation for the property interests taken, the Ordinance violates the Takings Clause.

66.     The Ordinance does not substantially advance any legitimate government interest and/or denies to property owners – including BAMP members – economically viable use of their property.

67.     The Ordinance interferes so drastically with property owners – including BAMP members – in their use of their property as to constitute a taking.

68.     The Ordinance causes property owners – including BAMP members  – to suffer the permanent physical occupation of their property by others.

69.     A declaration is warranted that the Ordinance is unconstitutional and that Defendants, acting under color of state law, have deprived – and/or threaten to deprive – BAMP members of rights, privileges and immunities secured by the U. S. Constitution, in violation of 42

U.S.C. § 1983.  Such a declaration would eliminate confusion and uncertainty as to the enforceability of the Ordinance and as to whether Plaintiffs are required to comply with the Ordinance.

70.     An injunction is warranted to prohibit Defendants from enforcing the Ordinance.

71.     BAMP is entitled to an award of attorneys' fees and costs pursuant to 42  U.S.C. § 1988.

**COUNT II**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FOURTEENTH AMENDMENT**

72.     Paragraphs 1-71 are realleged and hereby incorporated by reference.

73.     By compelling BAMP members to furnish their time, talents, labor, and financial resources to construct housing for the benefit of the City and/or for the benefit of third parties favored by the City, the Ordinance deprives BAMP members of their liberty and property without due process of law in violation of the Fourteenth Amendment.

74.     The deprivation of liberty and property is especially egregious in that no compensation is provided by the City for such deprivation.

75.     Under the doctrine of unconstitutional conditions, the deprivation of liberty and property cannot be saved by the fact that the City conditions the deprivation on the BAMP member's application for permits and/or licenses to develop, construct, occupy, lease and/or sell single-family or multi-family housing in the areas covered by the Ordinance.

76.     A declaration is warranted that the Ordinance is unconstitutional and that Defendants, acting under color of state law, have deprived – and/or threaten to deprive – BAMP members of their liberty and property without due process of law in violation of the Fourteenth

103481040.2

Amendment and 42 U.S.C. § 1983.  Such a declaration would eliminate confusion and uncertainty as to the enforceability of the Ordinance and as to whether BAMP members are required to comply with the Ordinance.

77.     An injunction is warranted to prohibit Defendants from enforcing the Ordinance.

78.     BAMP is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III**
**VIOLATION OF THE HOME RULE LAW**
**AND THE PENNSYLVANIA CONSTITUTION, ARTICLE IX, SECTION 2**

79.     Paragraphs 1-78 are realleged and hereby incorporated by reference.

80.     The City is a home rule municipality pursuant to the Home Rule Law and is bound by the limitations enumerated therein.

81.     Section 2962(f) of the Home Rule Law (the "Business Exclusion") expressly limits the City's home rule powers, stating as follows:

> **(f)     *Regulation of Business and Employment*.** - A municipality which adopts a home rule charter ***shall not determine duties, responsibilities or requirements placed upon businesses***, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, ***except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities***. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa.C.S. § 2962(f) (emphasis added).

82.     Likewise, Section 2962(c) of the Home Rule Law expressly limits the City's exercise of home rule powers, stating in pertinent part:

> (c)     Prohibited Powers. - A municipality shall not:

103481040.2

> (2) Exercise powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth.

53 Pa.C.S. § 2962(c)(2).

83.     Article IX, Section 2 of the Pennsylvania Constitution, which permits municipalities to enact home rule charters, specifically limits the authorities conferred upon such municipalities to those "not denied by this Constitution, by [the municipality's] home rule charter or by the General Assembly."

84.     Echoing Article IX, Section 2 of the Pennsylvania Constitution, the Home Rule Law extends home-rule authority only to "function[s] not denied by the Constitution of Pennsylvania, by statute or by [the municipality's] home rule charter."  53 Pa.C.S. § 2961.  Thus, no home rule charter may confer upon a home-rule municipality "power or authority" that is "contrary to or limitation or enlargement of powers granted by statutes which are applicable to a class or classes of municipalities."  *Id*. § 2962(a).

85.     The Ordinance is invalid because it indisputably places "duties, responsibilities, or requirements upon businesses, occupations and employers" in violation of both the Home Rule Law and the Pennsylvania Constitution.  53 Pa.C.S. § 2962(f); Pa. Const. Art. IX, § 2.

86.     The duties, responsibilities, and requirements unlawfully and unconstitutionally imposed by the Ordinance include those described above with respect to the Equivalent Interiors Requirement (*supra* at ¶ 35), the Equivalent Amenities Requirement (*supra* at ¶ 36), and Allowable Pricing (*supra* at ¶¶ 37-38), as well as those requirements with respect to recorded deed restrictions (*supra* at ¶¶ 40-41), master leases with an Affordable Housing Provider (supra at ¶ 40), and sales to a Community Land Trust. (supra at ¶ 41).  *See* also restrictions, *supra* at ¶ 43(a)–(i).

103481040.2

87. Section 2962(f) of the Home Rule Law specifically divests the City of the authority to adopt ordinances which regulate business, occupations and employers by imposing duties, responsibilities or requirements.

88. The provisions of the Ordinance constitute "duties, responsibilities or requirements placed upon businesses, occupations and employers," conduct that is expressly prohibited by 53 Pa.C.S. § 2962(f). Therefore, the City's attempt to adopt the Ordinance is an *ultra vires* act, and the Ordinance is null and void.

89. By virtue of the foregoing, the Ordinance violates both the plain language of the Home Rule Law and the Pennsylvania Constitution.

90. A declaration is warranted that, under the Home Rule Law and the Pennsylvania Constitution, the City lacked the authority to enact the Ordinance, and that the Ordinance is null, void, and unenforceable. Such a declaration would eliminate confusion and uncertainty as to the enforceability of the Ordinance and as to whether BAMP members are required to comply with the Ordinance.

91. An injunction is warranted to prohibit Defendants from enforcing the Ordinance.

## COUNT IV
## VIOLATION OF THE PENNSYLVANIA CONSTITUTION,
## ARTICLE VIII, SECTION 1

92. Paragraphs 1-91 are realleged and hereby incorporated by reference.

93. By compelling major expenditures by a limited class of residential developers in order to provide housing infrastructure on behalf of or in lieu of the Housing Authority -- to address a problem that should be addressed by general taxes -- the Ordinance is akin to a *de facto* tax ordinance.

103481040.2

94.    Further, insofar as the Ordinance compels developers to enter into 35-year long "master lease" with an "Affordable Housing Provider," the Ordinance triggers Pennsylvania and local realty transfer taxes applicable to leases for a term of 30 years or greater, for which Pittsburgh itself would be a direct beneficiary.

95.    In these additional ways, the Ordinance is again violative of Pennsylvania law, specifically Article VIII, Section 1 of the Pennsylvania Constitution, which requires strict uniformity of taxes with respect to Pennsylvania state and local taxes among taxpayers of the same general classification.

96.    A declaration is warranted that, under the Pennsylvania Constitution, the City lacked the authority to enact the Ordinance, and that the Ordinance is null, void, and unenforceable. Such a declaration would eliminate confusion and uncertainty as to the enforceability of the Ordinance and as to whether BAMP members are required to comply with the Ordinance.

97.    An injunction is warranted to prohibit Defendants from enforcing the Ordinance.

**REQUEST FOR RELIEF**

WHEREFORE, BAMP respectfully requests that this Court:

A.    For the reasons set forth in Count I, enter judgment declaring the Ordinance on its face, and/or as implemented and enforced by Defendants and as applied to BAMP members, violates the Takings Clause (U.S. Constitution, Amends. V and XIV) and doctrine of unconstitutional conditions and is therefore null, void, and unenforceable;

B.    For the reasons set forth in Count I, enter judgment declaring that Defendants, acting under color of state law, have deprived – and/or threaten to deprive – BAMP members of

103481040.2

rights, privileges and immunities secured by the U. S. Constitution, in violation of 42 U.S.C. § 1983;

C.      For the reasons set forth in Count II, enter judgment declaring the Ordinance on its face, and/or as implemented and enforced by Defendants and as applied to BAMP members, violates the Due Process Clause of the Fourteenth Amendment and doctrine of unconstitutional conditions and is therefore null, void, and unenforceable;

D.      For the reasons set forth in Count III, enter judgment declaring that the Ordinance on its face, and/or as implemented and enforced by Defendants and as applied to BAMP members, violates the Pennsylvania Constitution, Article IX, Section 2, and the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2901 *et seq.*, and is therefore null, void, and unenforceable;

E.      For the reasons set forth in Count IV, enter judgment declaring that the Ordinance on its face, and/or as implemented and enforced by Defendants and as applied to Plaintiffs, violates Article VIII, Section 1 of the Pennsylvania Constitution, and is therefore null, void, and unenforceable;

F.      For the reasons set forth in Counts I, II, III and IV, enter an injunction restraining and prohibiting Defendants from enforcing the Ordinance against any BAMP member;

G.      For the reasons set forth in Counts I and II, award BAMP its attorneys' fees and costs herein incurred, pursuant to 42 U.S.C. § 1988; and

H.      For the reasons set forth in Counts I, II, III and IV, grant Plaintiffs such other and further relief as this Court may deem just and proper.

103481040.2

Date: May 12, 2022

Respectfully submitted,

Eckert Seamans Cherin & Mellott, LLC

/s/ James A. Diamond

James A. Diamond, Esquire (Pa. I.D. 43902)
Casey A. Coyle, Esquire (Pa. I.D. 307712)
(*Pro hac vice* motion pending)
213 Market Street, 8th Floor
Harrisburg, PA  17101
Tel:  717.237.6000
Fax:  717.237.6019
jdiamond@eckertseamans.com
ccoyle@eckertseamans.com

William H. Hurd, Esquire
919 E Main Street, Suite 1300
Richmond, VA  23219
Tel: 804.788.9638
whurd@eckertseamans.com
(*Pro hac vice* motion pending)

Audrey K. Kwak, Esquire (Pa. I.D. 200527)
Carolyn Boucek, Esquire (Pa. I.D. 324410)
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Tel: 412-566-6049
akwak@eckertseamans.com
cboucek@eckertseamans.com

*Counsel for Plaintiffs*

103481040.2