IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUILDERS ASSOCIATION OF )
METROPOLITAN PITTSBURGH, )
)
      Plaintiff, )
) Civil Action No. 2:22-CV-00706-RJC
      v. )
)
CITY OF PITTSBURGH; COREY )
LAYMAN, AICP, in his official capacity as )
Zoning Administrator of the City of Pittsburgh; )
KAREN ABRAMS, in her official capacity as )
Director of City Planning of the City of )
Pittsburgh; and SARAH KINTER, in her )
official capacity as Director of Permits, )
Licenses, and Inspections of the City of )
Pittsburgh, )
)
      Defendants. )

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants City of Pittsburgh, Corey Layman, Karen Abrams, and Sarah Kinter

(collectively "the City"), by and through undersigned counsel, submit this Brief in Support of their

Motion to Dismiss ("Motion" or "MTD"):

## I. INTRODUCTION

The Complaint filed by Plaintiff Builders Association of Metropolitan Pittsburgh

("BAMP") challenges the "IZ-O, Inclusionary Housing Overlay District" section (the "IZ-O") of

the City's Zoning Code (the "Zoning Code").[1]  BAMP contends that the IZ-O violates (1) the

Takings Clause of the Fifth Amendment; (2) the Due Process Clause of the Fourteenth

Amendment; (3) Article IX, Section 2 of the Pennsylvania Constitution and the Home Rule Charter

---

[1] The entirety of the Zoning Code, including the IZ-O, can be found online as Title Nine of the City's Code of Ordinances:  https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO.  The IZ-O is found at Zoning Code §907.04.

and Optional Plans Law (the "Home Rule Law"), 53 Pa. C.S. § 2901 *et seq.*; and (4) Article VIII, Section 1 of the Pennsylvania Constitution.  These challenges lack merit because the IZ-O is a permissible exercise of the City's authority and police power to promote the public health and welfare by increasing the supply of affordable housing.

As a threshold issue, the Complaint must be dismissed on jurisdictional and prudential grounds because BAMP's claims are not ripe and BAMP lacks standing.  The Complaint does not allege that any of BAMP's members have taken even the most preliminary steps to develop property which they allegedly own within the geographic area covered by the IZ-O where multi-family housing would be permitted[2] or that any adverse action was taken against them by the City. The Complaint does not allege that any BAMP member has applied for, let alone been denied approval of: (a) a Site Plan or Project Development Plan, as required by Zoning Code §§ 922.01.D, 922.04, and 922.10; (b) a certificate of occupancy, *id.* § 922.02.A.2; (c) a special exception, *id.* § 922.07; (d) a variance, *id.* § 922.09; or (e) any permit, certificate, or requirement of the Zoning Code or other law regarding use of land covered by the IZ-O.

BAMP improperly asks this Court to preemptively adjudicate purely speculative alleged harm before any decision by the City on how, if at all, the IZ-O might apply to a particular BAMP member's property.  The IZ-O operates within the full context of the City's Zoning Code, which notably features procedures and processes for a particularized analysis and application of all of its provisions, including the IZ-O, based on the circumstances and conditions of a specific property.[3] The Complaint's baseless assumption that the City will enforce the IZ-O in an unconstitutional

---

[2] While the IZ-O covers certain portions of specified neighborhoods within the City (i.e., Lawrenceville, Bloomfield, and Polish Hill), multi-family housing is not permitted everywhere in those neighborhoods but rather only where the zoning classification of the property in question would permit that use, and only on parcels capable of being developed into multi-family housing.

[3] Those procedures and processes are laid out on the City of Pittsburgh, Department of City Planning's website - Planning Reviews, Public Notices, and Public Hearings | pittsburghpa.gov.

manner and cause them cognizable harm is a mere conjecture that impermissibly asks this Court to preemptively and improperly intervene in hypothetical disputes that are "uniquely matters of local concern more aptly suited for local resolution" without the "development of a full record" or "knowledge as to how a regulation will be applied to a particular property." *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214, 217 (3d Cir. 2009).

Counts III and IV, brought under Pennsylvania law, bring unsupported attacks on the IZ-O, claiming that it violates the Pennsylvania Constitution and the Business Exclusion provision of the Home Rule Law. BAMP relies on a superficial interpretation of state law and ignores the jurisprudence that has applied these concepts. Lastly, Third Circuit precedent is clear that the three individual Defendants included as parties by BAMP must be dismissed because they are redundant with the identification of the City as a party. Accordingly, the City seeks dismissal of BAMP's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

## II. FACTUAL BACKGROUND

### A.    The IZ-O

The IZ-O establishes the Inclusionary Housing Planning Overlay District ("IZ-O District") in the areas identified on the City's Zoning District Map,[4] which consists of certain portions of the Lawrenceville, Bloomfield, and Polish Hill neighborhoods in Pittsburgh. Zoning Code § 907.04.A.1.[5] The IZ-O expressly states its purpose and intent:

> The intent of the Inclusionary Housing Planning Overlay District is to promote the public health and welfare by increasing the supply of affordable housing for a range of family sizes and promoting economic integration within the District boundaries. Due to the unique circumstances involved with development within this area, the existing zoning mechanisms do not serve to carry out the purpose and intent of

---

[4] An interactive version of the City's Zoning District Map can be found online at: https://gis.pittsburghpa.gov/pghzoning/.
[5] Overlay Districts, including the IZ-O District, apply over underlying zoning districts to "impose[] additional requirements or provisions above that required by the underlying zoning district" without removing the requirements of the underlying zoning district. Zoning Code, § 926(162).

Chapter 901 (General Provisions) and all provisions of this Zoning Ordinance. Specifically, the intent of the Inclusionary Housing IZ-O is to encourage quality, economically-balanced development by:

(a)     Leveraging development pressure by connecting the production of affordable housing with the current market production of housing units;

(b)     Encouraging diverse and balanced housing available for households of all income levels and ensuring that when developing the limited supply of developable land, housing opportunities for persons of variety of income levels are provided; and

(c)     Utilizing sites in IZ-O as opportunities to build mixed income developments. Because remaining land appropriate for residential development within in the IZ-O is limited, it is essential that a reasonable proportion of such land be developed into housing units affordable to low and moderate-income people.

Zoning Code § 907.04.A.3; *see also id.* § 907.04.A.2 ("The Inclusionary Housing Planning Overlay District is necessary to increase the production of affordable housing to meet existing and anticipated housing and employment needs and to provide a diverse range of housing choices within the District boundaries. The updated zoning will provide adequate balances by ensuring that the neighborhoods can continue to offer new housing units at a variety of price points."); *see also* Zoning Code § 901.03 (providing the overall purpose and intent of the Zoning Code).

To effectuate this purpose, the IZ-O requires that for projects involving the "[n]ew construction or Substantial Improvement" of buildings with "twenty (20) or more dwelling units" or "twenty (20) or more sleeping rooms" a "minimum of ten (10) percent of units shall be Inclusionary Units." Zoning Code §§ 907.04.A.5, 907.04.A.6(e).  An Inclusionary Unit's rental rate or selling price cannot exceed a specified percentage of the "Area Median Income" calculations published by the U.S. Department of Housing and Urban Development.  *Id.* §§ 907.04.A.4, 907.04.A.6(a).

If constructing Inclusionary Units on-site is not feasible, the IZ-O's requirements may be satisfied by providing inclusionary units off-site through a Special Exception process administered

by the City's Zoning Board of Adjustment.  The off-site units must equal at least twelve (12) percent of the on-site units, be within one-quarter mile of the site, and have comparable public transit service.  *Id.* § 907.04.A.7.

**B.      The Zoning Code**

While BAMP's Complaint myopically focuses only on its distorted interpretation of the IZ-O in a vacuum, the IZ-O must be understood as it operates within the full context of the Zoning Code.  The Zoning Code establishes a multi-step process for a property-specific analysis of a proposed land use within the City involving, *inter alia*, the submission of applications including Site Plans or Project Development Plans, review of the application and plans by Department of City Planning staff, and, ultimately, review and action by the City's Planning Commission. Depending upon the particulars of any project, the process might also include administrator exceptions, special exceptions, and/or variances from the City's Zoning Board of Adjustment. Variances permit a particular use of land to proceed where strict compliance with other provisions of the Zoning Code, including the IZ-O, may not be possible.  *See* Zoning Code, § 922.09; *id.* § 922.09E (listing the five general conditions for approval of variances).

**C.      BAMP's Allegations of Speculative Harm**

According to BAMP's Complaint, non-specific members of BAMP "own and/or manage properties consisting of rental/dwelling units within the areas of Pittsburgh affected by the IZ-O" and "are engaged as owners and developers" of projects subject to the IZ-O.  Compl. ¶¶ 8, 12.  In addition to a failure to identify *any* properties owned by BAMP members that are allegedly subject to the IZ-O, the Complaint is notably lacking any allegation that any BAMP member has suffered any non-speculative harm.

The Complaint does not allege that any BAMP member has applied for a certificate of occupancy, requested any permit from the City, submitted any plan, or requested or been denied a variance or special exception. The Complaint does not allege that any BAMP member is a property owner within the IZ-O District who has actually been harmed by the IZ-O or taken even the most preliminary steps required to develop a Subject Property in the City. The Complaint does not and cannot allege that the City has ruled upon the applicability of the IZ-O to any BAMP member's specific property or project.

### III.  LEGAL STANDARD

#### A.      Rule 12(b)(1)

"A court must grant a motion to dismiss under Rule 12(b)(1) if it determines that it lacks subject matter jurisdiction over a claim." *Marsh v. Union R.R., LLC*, No. 2:20-cv-01145-RJC, 2021 U.S. Dist. LEXIS 186455, at *13 (W.D. Pa. Sep. 29, 2021) (Colville, J.) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

#### B.      Rule 12(b)(6)

"A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *Id.* (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). "In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the

plaintiff." *Id.* at \*13-14 (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Id.* at \*14 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## IV. ARGUMENT

### A.     BAMP Has Not Asserted Any Ripe Claims (Rule 12(b)(1) and 12(b)(6))

"At its core, '[t]he ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Siemens United States Holdings Inc. v. Geisenberger*, 17 F.4th 393, 412 (3d Cir. 2021) (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)). "The purpose of the ripeness doctrine 'is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Federal courts' jurisdiction extends only to claims that are ripe for resolution.  *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509, 522 (3d Cir.

2018) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)); *see Battou v. Sec'y United States Dep't of State*, 811 F. App'x 729, 732 (3d Cir. 2020) (citing *Armstrong World Indus., Inc. ex rel. Wolfson v. Adams*, 961 F.2d 405, 410-11 (3d Cir. 1992)) ("Federal courts lack jurisdiction to hear unripe claims."). A claim is not ripe unless deciding it "would amount to more than an advisory opinion based upon a hypothetical set of facts." *Battou*, 811 F. App'x at 732 (quoting *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994)). "When a plaintiff's alleged injury depends on a contingency, the parties' interests are typically not adverse enough to amount to an Article III case or controversy." *Id.* (quoting *Armstrong World Indus.*, 961 F.2d at 411-12); *see also Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538-39 (3d Cir. 2017) (discussing the underpinning of the ripeness doctrine at length).

In addition to the constitutional and prudential[6] imperative of ripeness, this doctrine has numerous, significant practical benefits—all of which are relevant to the instant matter. "The finality requirement of the ripeness inquiry: (1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows 'the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.'" *Congregation Anshei Roosevelt*, 338 F. App'x at 217 (quoting *Murphy*, 402 F.3d at 348).

"Ripeness in this context is governed by *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1985), which stands for the proposition that in cases involving use of land and a challenge to a zoning decision,

---

[6] "[T]here is some disagreement among courts and commentators as to whether the ripeness doctrine is grounded in the case or controversy requirement or is better characterized as a prudential limitation on federal jurisdiction." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1289 (3d Cir. 1993). Regardless of the conceptualization of the ripeness doctrine, the same analysis applies, and BAMP's claim should be dismissed as unripe.

a claim will not be ripe until the plaintiff has given the local municipality the opportunity to issue a final decision on the application of its zoning ordinance to the property in question." *Holland Transp., Inc. v. Upper Chichester Twp.*, 75 F. App'x 876, 877 (3d Cir. 2003).[7] "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cty. of S.F.*, 141 S. Ct. 2226, 2228 (2021) (citing *Suitum* v. *Tahoe Regional Planning Agency*, 520 U.S. 725, 737 (1997)). "After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Id.* (citing *Suitum*, 502 U.S. at 734; *Horne* v. *Department of Agriculture*, 569 U. S. 513, 525 (2013)). Plaintiffs must show that "there is no question about how the regulations at issue apply to the particular land in question." *Id.* at 2230 (citing *Suitum*, 502 U.S. at 739).

In the land-use context,[8] the Supreme Court has held, on multiple occasions, that "where the regulatory regimen offers the possibility of a variance from its facial requirements, a landowner must go beyond submitting a plan for development and actually seek such a variance to ripen his claim." *Suitum*, 502 U.S. at 736-37; *see also Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 297 (1981); *Williamson*, 473 U.S. at 193. In *Williamson*, the Supreme Court held that a developer must at least "resort to the procedure for obtaining variances . . . [and obtain] a conclusive determination by the Commission whether it would allow" the proposed development in order to ripen its taking claim." *Williamson*, 473 U.S. at 193; *id.* at 188

---

[7] As expressly held in *Pakdel*, while the state and administrative remedy exhaustion prong of *Williamson County* was eliminated by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), the finality requirement of the ripeness doctrine remains. *See Pakdel*, 141 S. Ct. at 2228; *Haney v. Mashpee*, No. 21-10718-JGD, 2022 U.S. Dist. LEXIS 50676, at *16-17 (D. Mass. Mar. 22, 2022); *Knick*, 139 S. Ct. at 2169 ("not question[ing] the validity of this finality requirement.").

[8] This finality rule applies to constitutional land use challenges under the Takings Clause, the Substantive and Procedural Due Process Clause, and the Equal Protection Clause. *See Brubaker v. E. Hempfield Twp.*, 234 F. App'x 32, 37 (3d Cir. 2007) (citing *Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006)); *Broomall's Lake Country Club v. Borough of Media*, No. 18-1950, 2018 U.S. Dist. LEXIS 207409, at *7 (E.D. Pa. Dec. 4, 2018) (citing *Taylor*, 983 F.2d at 1292). Thus, this jurisprudence applies equally to Count I and Count II of the Complaint.

(concluding that the plaintiff had not received a final decision because the plaintiff "did not . . . seek variances that would have allowed it to develop the property according to its proposed plat.").

Federal courts of appeals and district courts have repeatedly "interpreted *Williamson County* as 'condition[ing] federal review on a property owner submitting at least one meaningful application for a variance.'" *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014).[9] Thus, for a party to obtain a "final decision" for the purposes of the ripeness doctrine, that party must submit "a plan for development of [her] property as the ordinances permit." *Acorn Land, LLC v. Balt. Cty.*, 402 F. App'x 809, 813-14 (4th Cir. 2010) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980)). Then, "where the regulatory regime offers the possibility of a variance from its facial requirements, [the party] must go beyond submitting a plan for development and actually seek such a variance to ripen his claim." *Suitum*, 520 U.S. at 736-37. Consequently, "the final decision requirement is not satisfied when a developer submits, and a land-use authority denies, a grandiose development proposal, leaving open the possibility that lesser uses of the property might be permitted." *Palazzolo v. Rhode Island*, 533 U.S. 606, 619

---

[9] *See, e.g., Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 342 (2d Cir. 2005) (holding that the plaintiffs had not obtained a final decision because they did not pursue a variance); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 89 (2d Cir. 2002) (same); *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (holding that a final decision requires that a development plan be "submitted, considered and rejected by the governmental entity with the power to implement zoning regulations."); *Haney*, 2022 U.S. Dist. LEXIS 50676, at *16-17 (granting motion to dismiss because the Complaint did not allege that a variance had been sought); *Cedar Dev. E., LLC v. Town Bd. of Hurley*, No. 1:21-cv-289, 2022 U.S. Dist. LEXIS 120388, at *12-19 (N.D.N.Y. July 8, 2022) (same); *Laredo Vapor Land, LLC v. City of Laredo*, No. 5:19-CV-00138, 2022 U.S. Dist. LEXIS 47369, at *12-13 (S.D. Tex. Feb. 18, 2022) (same); *Hoffman Bros. Harvesting v. Cty. of San Joaquin*, No. 2:20-cv-00660, 2021 U.S. Dist. LEXIS 184420 (E.D. Cal. Sep. 23, 2021) (same); *Ralston v. Cty. of San Mateo*, No. 21-cv-01880-EMC, 2021 U.S. Dist. LEXIS 161988 (N.D. Cal. Aug. 26, 2021) (same); *Silex W., LLC v. Bd. of Cty. Comm'rs*, Civil Action No. 21-cv-00061-PAB-SKC, 2021 U.S. Dist. LEXIS 187924 (D. Colo. Sep. 30, 2021) (same); *Patel v. City of S. El Monte*, No. 21-55546, 2022 U.S. App. LEXIS 6343 (9th Cir. Mar. 11, 2022) (same); *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216 (10th Cir. 2021) (same); *Willan v. Dane Cty.*, No. 21-1617, 2021 U.S. App. LEXIS 28403, at *7-8 (7th Cir. Sept. 20, 2021) ("The district court rightly concluded that the Willans' claims were not ripe for review because the County had not reached a final decision on how the zoning regulation would be applied to the Willans' barn. The Willans' allegations (consistent with the emails attached to their pleadings) do not suggest that they took any of the directed steps to obtain a zoning variance or a conditional-use permit, or that anyone at the County ever reached a final decision on whether a variance or permit would be approved if properly sought."); *Andrews v. City of Mentor*, 11 F.4th 462, 469 (6th Cir. 2021) ("Indeed, a plaintiff's failure to seek discretionary allowance for an otherwise proscribed use of their property—say, through a permit or application for a variance—will often doom their takings claim as unripe.").

(2001).  "[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." *Id.* at 620.[10]

In the instant case, the Zoning Code contains procedures for a particularized analysis and application of its provisions, including the IZ-O, based on the circumstances and conditions of a specific property.  In addition to the IZ-O's special exception process for off-site Inclusionary Units, the Zoning Code contains variance procedures that consider the unique characteristics and conditions of particular properties and whether strictly applying the Zoning Code to the property in question works an "unnecessary hardship."  Zoning Code § 922.09.E.  The Zoning Code establishes procedures by which property owners may apply for variances from the Zoning Board of Adjustment, thus allowing property-specific relief from the provisions of the Zoning Code on a case-by-case basis.  *See supra* Part III.B; Zoning Code, § 922.09.

---

[10] In a particularly thorough, recent analysis, the U.S. District Court for the Southern District of Texas summarized federal jurisprudence on the concept of "finality" in a recent decision:

> Finality requires that a developer at least "resort to the procedure for obtaining variances" to obtain a conclusive determination from a government body. *Suitum*, 520 U.S. at 737; *see also Pakdel*, 141 S. Ct. at 2231 ("[A] plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision.") (internal citations omitted). Plaintiffs are not expected to repeatedly submit requests or proposals if doing so is clearly futile, but to invoke futility, plaintiffs should first have made at least one variance request or alternative proposal that was rejected by the state entity. *See North Mill Street, LLC, v. City of Aspen*, 6 F.4th 1216, 1233 (10th Cir. 2021).
>
> The finality requirement is important because the Court cannot examine the "factors of particular significance in a takings inquiry" without a "final, definitive" position from the government agency about how the regulations at issue apply to the land in question.  *Suitum*, 520 U.S. at 737; *see also DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218-19 (5th Cir. 2021) ("Only after the final regulatory decision will a court have before it the facts necessary to evaluate a regulatory takings claim[.]") Without a definitive decision by the government as to what level of drainage system was required of Plaintiff to obtain a building permit, the Court cannot assess whether the "economic impact" of the regulation interfered with "reasonable investment-backed expectations." *Penn Central Trans. Co. v. New York City*, 438 U.S. 104, 124 (1978) (the standard for a regulatory takings claim). Similarly, the Court cannot evaluate whether the City's demands have "an essential nexus or rough proportionality to the impacts of the proposed construction" without understanding exactly what the City was demanding. *Koontz v. St. Johns River Water Management*, 570 U.S. 595, 605-06, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013) (the standard for an unlawful exaction claim).

*Laredo*, 2022 U.S. Dist. LEXIS 47369, at *12-13.

The Complaint does not allege that the City has enforced the IZ-O against BAMP's members or that BAMP's members have requested or been denied a certificate of occupancy or any other preliminary permitting or plan requirements, let alone that they requested or have been denied a variance by the City.  BAMP's alleged harm is purely hypothetical, and its claims are unripe under the numerous authorities cited above.  Nothing has been "taken" from BAMP's members because the Complaint does not allege that any member of BAMP has applied for approval of a project where the IZ-O might be applicable, requested or been denied a variance from the IZ-O requirements, or been subject to any enforcement of the IZ-O.

While the Complaint's lack of ripeness as to Counts I and II are perhaps the most glaring, Counts III and IV are, likewise, unripe for the same reasons, *i.e.*, even assuming the veracity of the Complaint's allegations, BAMP's members have suffered no actual or imminent harm because, *inter alia*, they have not applied for, let alone been denied approval of, any request pertaining to the use of land covered by the IZ-O.  The IZ-O functions within the full context of the Zoning Code, which lays out not only specific procedures to determine how it applies to individual properties, but also includes the right of an applicant to seek variances from its requirements, all of which must be pursued before any claims related thereto can be pursued in federal court.  This Court should reject BAMP's invitation to opine on significant constitutional questions and matters of state and local law when the Complaint has not alleged that any member of BAMP has taken even the most preliminary steps to pursue land development subject to the IZ-O.[11]

---

[11] BAMP also seeks declaratory relief, which the Third Circuit has sometimes reviewed under a three-factor test. *See Axis Ins. Co. v. PNC Fin. Servs. Grp.*, 135 F. Supp. 3d 321 (W.D. Pa. 2015) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-50 (3d Cir. 1990)) ("To determine whether a declaratory judgment action is ripe, the court must analyze (1) the 'adversity of the interest of the parties,' (2) 'the conclusiveness of the judicial judgment,' and (3) the 'practical help, or utility, of that judgment.'  A defect in one or two of the categories may be sufficient to find that a declaratory judgment claim is not ripe for judicial action.").  An analysis under these factors reaches the same result as the broader ripeness analysis discussed above because actual adversity and conclusiveness cannot exist without a final decision being rendered by the City after a variance is requested and decided.

**B.      BAMP Lacks Standing (Rule 12(b)(1) and 12(b)(6))**

"In addition to having a ripe claim, a plaintiff must also have standing to invoke the jurisdiction of the federal courts under Article III of the United States Constitution." *Wayne*, 894 F.3d 509, 524-25 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Federal standing has three elements, which the party invoking federal jurisdiction must establish. *See id.* (citing *Lujan*, 504 U.S. at 560). The first of these elements, which is the focus of the instant analysis, is that the plaintiff must have suffered an injury in fact. *Id.* (citing *Lujan*, 504 U.S. at 560). That requires "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical." *Id.* (citing *Lujan*, 504 U.S. at 560).

For the same reasons identified *supra* Part IV.A, BAMP and its members have not suffered an injury in fact that is concrete, actual, or imminent. Instead, the Complaint simply speculates that BAMP's members will hypothetically suffer harm at a non-specific time in the future under the assumption that the City will enforce its Zoning Code against them in an unconstitutional manner. Even accepting as true the allegation that BAMP members own or "plan to acquire" property in the areas to which the IZ-O allegedly applies, *see* Compl. ¶¶ 8, 12, the Complaint does not (and cannot) allege that the City has enforced the IZ-O against BAMP's members in an unconstitutional manner. As noted above, the Complaint does not allege that any member of BAMP has applied for, let alone been denied approval of, any request pertaining to the use of land covered by the IZ-O.

The Complaint alleges only conjectural, potential harm and does not satisfy the first element of federal standing. The IZ-O is but one piece of the City's Zoning Code whose processes and procedures are outlined above. *See supra* Part III.B. The vague harm alleged by BAMP's members has not occurred, may never occur, and would require a particularized analysis based on

a record that does not exist because no BAMP member has applied for approval of any project where the IZ-O might be applicable.  Thus, the Complaint must be dismissed because this Court lack subject matter jurisdiction.[12]

### C.    The City Possesses the Authority to Enact the IZ-O (Rule 12(b)(6))

In Count III, BAMP contends that the City lacked authority to enact the IZ-O and violated the Home Rule Law and Article IX, Section 2 of the Pennsylvania Constitution because the IZ-O allegedly places impermissible "duties, responsibilities, or requirements upon businesses, occupations and employers."  Compl. ¶ 85 (citing 53 Pa. C.S. § 2962(f); Pa. Const. Art. IX, § 2).  To the contrary, the enactment of the IZ-O falls well within the City's zoning authority, and neither the Pennsylvania Constitution, nor the Home Rule Law contains any provision that restricts the City's authority to enact the IZ-O.

The home rule provision of Article IX of the Pennsylvania Constitution states: "A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter, or by the General Assembly at any time." Pa. Const. Art. IX, § 2. The general rule is that home rule municipalities, such as the City, have broader powers of self-governance than non-home rule municipalities. *Hartman v. City of Allentown*, 880 A.2d 737, 750 (Pa. Commw. Ct. 2005) (a municipality has the power to adopt ordinances as a reasonable exercise of its police powers).  The City Charter authorizes the City to exercise "all possible powers."  Home Rule Charter § 101.[13]

---

[12] As detailed *supra* Part II.C, BAMP has offered no specific facts establishing that it owns or intends to develop any parcel that is subject to the IZ-O.  The IZ-O only applies to the development of a limited number of parcels that meet specific parameters and BAMP has not alleged it owns any such parcels, let alone that it attempted to develop such a property and was required to comply with the IZ-O.

[13] The Home Rule Charter of the City of Pittsburgh, Pennsylvania ("Home Rule Charter") is found at: https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=HORUCHPIPE.

Pennsylvania jurisprudence emphasizes the broad powers held by home rule municipalities. When analyzing a municipality's exercise of power, including a home rule municipality, "ambiguities are to be resolved in favor of the municipality," *Norristown Fraternal Order of Police, Lodge 31 by Roden v. DeAngelis*, 611 A.2d 322, 325 (Pa. Commw. Ct. 1992), and to the extent there is any doubt, the Court must assume the City was within its authority when it enacted this Ordinance. *Fisher v. Viola*, 789 A.2d 782, 785 (Pa. Commw. Ct. 2001) ("Moreover, if the validity of an ordinance is debatable, the legislative judgment of the governing body must control."). Pennsylvania courts have recognized that for home rule municipalities, a presumption exists "that the exercise [of power] is valid if no restriction is found in the Constitution, the charter itself, of the acts of the General Assembly." *Fraternal Order of Police, Fort Pitt Lodge No. 1 v. City of Pittsburgh*, 644 A.2d 246, 249 (Pa. Commw. Ct. 1994).

In addition to its home rule powers, the City possesses broad, statutory zoning authority derived from the Second-Class Cities Code ("SCCC"), 53 P.S. §§ 22101-28707, specifically §§ 25052-25058. The SCCC provides:

> For the purpose of promoting health, safety, morals or the general welfare of the community, *cities of the second class are hereby empowered to regulate, restrict or determine,* the height, number of stories and size of buildings and other structures, the percentage of lot that may be built upon, the size of yards, courts and other open spaces, *the density of population, and the location, use and occupancy of buildings,* structures and land for trade, industry, *residence* or other purposes.

53 P.S. § 25051 (emphasis added). The SCCC specifically and explicitly empowers the City to enact land use regulations, such as the IZ-O, relating to the use and occupancy of residential buildings, *see id.*, to "secure safety from fire panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements." *Id.* § 25053 ("Such regulations shall be

made with reasonable consideration, among other things, to the topography and character of the district, with *its peculiar suitability for particular uses*, and with a view to conserving the value of buildings and *encouraging the most appropriate use of land* through such city.") (emphasis added).

BAMP seeks to avoid the City's broad home rule and zoning authority by arguing that the so-called "Business Exclusion" of the Home Rule Law precludes the City from "determin[ing] the duties, responsibilities or requirements placed upon businesses." Compl. ¶ 81 (quoting 53 Pa. C.S. § 2962(f)).   However, BAMP's position misconstrues the Home Rule Law in two key, related respects.  First, the IZ-O is not a business regulation within the scope of this exclusion; it is land use regulation.  Second, the Business Exclusion expressly states that home rule municipalities are permitted to "determine the duties, responsibilities or requirements placed upon businesses" when "expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities." 53 Pa. C.S. § 2962(f); *see also Pennsylvania Rest. & Lodging Ass'n v. City of Pittsburgh*, 211 A.3d 810, 824 (Pa. 2019) ("By its terms, the Business Exclusion allows municipal regulation of business when expressly provided 'by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities.'").  Here, as discussed in the preceding paragraph, the SCCC provided the City with the express authority to enact the Zoning Code and the IZ-O "to encourag[e] the most appropriate use of land,"  *see* 53 P.S. §§ 25051, 25053, therein rendering the Business Exclusion inapplicable.

Therefore, even assuming the veracity of the allegations of Count III, BAMP has failed to set forth a cognizable claim that the City lacked the authority to enact the IZ-O because the City was properly exercising its grant of authority under the SCCC and its Home Rule Charter to promote the public health and welfare by increasing the supply of affordable housing.

**D.      The IZ-O Does Not Impose a Tax, and, Even if it Did, the Tax Would Be Permissible (Rule 12(b)(6))**

In Count IV, the Complaint asserts: "By compelling major expenditures by a limited class of residential developers in order to provide housing infrastructure on behalf of or in lieu of the Housing Authority — to address a problem that should be addressed by general taxes — the Ordinance is akin to a *de facto* tax ordinance." Comp. ¶ 93.  However, the IZ-O does not impose a tax and, even if it did, such a tax would not run afoul of Article VIII, Section 1 of the Pennsylvania Constitution ("the Uniformity Clause").

As an initial matter, the IZ-O does not mandate any "expenditure" at all;  it merely regulates a use of a property once constructed.  A developer seeking to construct a multi-family property would expend the same amount whether the IZ-O had been enacted or not.  The IZ-O simply regulates the permissible use of the property, as do many other land-use regulations that consistently have been adjudged to constitute neither an improper tax nor an impermissible business regulation.

Like many zoning ordinances, the Zoning Code sometimes requires residents or developers to incur expenses, such as the provision for accessible parking spaces at § 914.06, slope stabilization requirements and other environmental standards under § 915.02, residential compatibility standards under Chapter 916, and landscaping and screening standards under Chapter 918.  None of these requirements are taxes; they are reasonable land use regulations.  *See Meanor v. Goldsmith*, 65 A. 1084, 1085 (Pa. 1907) (citing *Wilkinsburg Borough v. Home*, 18 A. 937 (Pa. 1890)) ("We have held that the duty of laying a pavement on a sidewalk is imposed directly on the property owner; that an ordinance requiring the owner to lay such pavement is a police regulation; and that the amount expended in enforcing the ordinance is not a tax or a municipal assessment in the nature of a tax."); *S. Union Twp. v. Dep't of Entvl. Prot.*, 839 A.2d

1179, 1191 n.20 (Pa. Commw. Ct. 2003) (citing *National Biscuit Co. v. City of Phila.*, 98 A.2d 182, 187 (Pa. 1953)) (stating that, where a "fee is imposed on a business subject to regulation by the state exercising its police power, as a condition of that regulated entity doing business it will be considered a license fee, not a tax.").

Even if the IZ-O did impose a tax, it would not violate the Pennsylvania Constitution. The Pennsylvania Supreme Court analyzes "the limitations imposed by the state Uniformity Clause and the federal Equal Protection Clause as being 'largely coterminous.'" *Hosp. & Health Sys. Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 606 (Pa. 2013) (quoting *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 121 n.21 (Pa. 2009)); *Devlin v. City of Philadelphia*, 862 A.2d 1234, 1249 (Pa. 2004). "These clauses do not obligate the government to treat all persons identically." *Id.* at 607 (citing *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998); *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985)). "Thus, when the Legislature makes a classification in levying a tax, it will survive scrutiny so long as there is some reasonable justification for treating the relevant group of taxpayers differently than others." *Id.* "Indeed, the Legislature has wide discretion in matters of taxation, and a taxpayer pursuing a Uniformity Clause challenge has the burden of demonstrating that the classification is unreasonable." *Id.* (internal citations omitted); *see also Wilson Partners, L.P. v. Bd. of Fin. & Revenue*, 737 A.2d 1215, 1220 (Pa. 1999) ("When challenging a taxing statute, it is the taxpayer's burden to demonstrate, not only that the enactment results in some form of classification, but also that such classification is unreasonable, in that it is not rationally related to any legitimate state purpose."). "[A] tax enactment will not be invalidated unless it clearly, palpably, and plainly violates the Constitution." *Wilson Partners*, 737 A.2d at 1220 (citations and internal quotation marks omitted).

Even if the IZ-O were a tax, the City easily surpasses the minimal rational basis hurdle because it is reasonable to burden property owners developing large-scale residential housing projects with a share of the responsibility to address the affordable housing crisis, which is clearly a legitimate state purpose. *See supra* Part II.A (quoting the purpose and intent of the IZ-O). The IZ-O seeks to promote economic integration of developments within the boundary, encourage the development of the limited supply of land into diverse housing for various levels of income, and to foster mixed income developments. *Id.* The supposed "tax" imposed by the IZ-O is a reasonable approach to accomplishing these legitimate interests. The IZ-O clearly satisfies the low bar of rational basis review, and the Complaint has not alleged any facts to suggest otherwise. *See Synagro-Wwt, Inc. v. Rush Twp.*, 204 F. Supp. 2d 827, 845 (M.D. Pa. 2002) (granting motion to dismiss when an alleged tax/fee was charged only on sewage sludge companies, as opposed to all companies dealing with organic material, because the plaintiff "has not met its burden to demonstrate that any alleged classification is unreasonable and not rationally related to any legitimate state purpose. Its unsupported legal conclusions relating to the lack of uniformity of the Ordinance are insufficient to survive a 12(b)(6) motion, and a court may not in these circumstances second-guess Rush Township's purported reasons for enacting the law.").

The IZ-O is not a tax and, regardless, would easily satisfy the rational basis test under the Uniformity Clause even if it were.[14]

### E.    Redundant Claims Against Individual Defendants in Their Official Capacity (Rule 12(b)(6))

Suits against government employees in their official capacities "represent another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473

---

[14] The City reiterates that Count IV is not ripe and BAMP lacks standing because the Complaint does not allege that any members have paid any tax or even been requested to pay any tax related to the IZ-O.

U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978).  "The law is well-settled that where, as here, the appropriate governmental unit is identified as a defendant, official-capacity suits should be dismissed as redundant." *Perciavalle v. City of Aliquippa*, Civil Action No. 2:20-cv-474, 2021 U.S. Dist. LEXIS 15435, at *14-15 (W.D. Pa. Jan. 27, 2021) (citing *Graham*, 473 U.S. at 165-66); *Cuvo v. De Biasi*, 169 Fed. Appx. 688, 693 (3d Cir. 2006); *Stoltie v. Cerilli*, Civil Action No. 2:21-267, 2022 U.S. Dist. LEXIS 7557, at *19-20 (W.D. Pa. Jan. 14, 2022) ("It is common practice to dismiss redundant § 1983 claims against official-capacity defendants when the governmental entity that employs them is also named as a defendant." ); *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412, 419 (M.D. Pa. 2014) ("[I]t is a well established practice in the Third Circuit to dismiss redundant § 1983 claims against public officers in their official capacities where a claim has also been made against the public entity that employs them.") (internal quotations omitted).

Because the City of Pittsburgh is named as a Defendant, the official-capacity claims against Defendants Corey Layman, Karen Abrams, and Sarah Kinter should all be dismissed as redundant and duplicative. *See Rulli v. City of Pittsburgh*, Civil Action No. 2:20-cv-965, 2021 U.S. Dist. LEXIS 55919, at *14 (W.D. Pa. Mar. 23, 2021) (holding that duplicative official capacity claim against Mayor Peduto should be dismissed as redundant).

## V.  CONCLUSION

For the reasons addressed in this Brief, the City requests that this Honorable Court grant the instant Motion to Dismiss and enter the proposed Order of Court attached to the Motion.

Respectfully Submitted,

By:*/s/ Chad I. Michaelson*
Chad I. Michaelson
Pa. I.D. No. 88725
cim@muslaw.com

Kevin F. McKeegan
Pa. ID No. 36642
kfm@muslaw.com
Andrea Geraghty
Pa. ID No. 38525
ag@muslaw.com
Joseph A. Carroll
Pa. I.D. No. 324373
jac@muslaw.com
MEYER, UNKOVIC & SCOTT LLP
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222-2315
(412) 456-2800 (Phone)
(412) 456-2864 (Fax)

Krysia Kubiak
Pa. I.D. No. 90619
Krysia.kubiak@pittsburghpa.gov
Emily McNally
Pa. I.D. No. 206591
emily.mcnally@pittsburghpa.gov
Michael E. Kennedy
Pa. I.D. No. 52780
michael.kennedy@pittsburghpa.gov
CITY OF PITTSBURGH
Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
412-255-2613 (phone)
412-255-2285 (fax)
*Attorneys for Defendants City of Pittsburgh,
Corey Layman, Karen Abrams, and Sarah Kinter*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within **BRIEF IN SUPPORT OF MOTION TO DISMISS** was filed electronically on August 15, 2022.  Notice of this filing will be sent to all counsel of record via the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

MEYER, UNKOVIC & SCOTT LLP

By:*/s/ Chad I. Michaelson*
Chad I. Michaelson
*Attorneys for Defendants City of Pittsburgh, Corey Layman, Karen Abrams, and Sarah Kinter*