# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, <br><br> *Plaintiff,* <br><br><br> v. <br><br> CITY OF PITTSBURGH; *et al.,* <br><br><br> *Defendants.* | Civil Action <br><br><br> No. 2:22-cv-706-RJC <br><br><br> Judge Robert J. Colville |

<u>**DECLARATION OF DAVID BREINGAN**</u>

Pursuant to 28 U.S.C. § 1746, I, David Breingan, hereby declare as follows:

1.      I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.      I am over eighteen years of age and am otherwise competent to testify.

3.      I am the Executive Director of Lawrenceville United. I have served in that role since 2016.

4.      Lawrenceville United ("LU") is an inclusive, resident-driven, non-profit organization that works to improve the quality of life for all Lawrenceville residents. LU works in the areas of community planning and development, community engagement and advocacy, community restoration and beautification.

5.      To address food access, LU runs the Lawrenceville Farmers Market and a number of free food distribution programs. LU also runs the AdvantAGE program, a free membership program for older adults to support them aging in place successfully. LU runs the PEP Rally program to support and strengthen neighborhood public schools through parent organizing and

family engagement. LU also facilitates community development and neighborhood planning efforts, organizes community events, cleans and greens the neighborhood, and works on public safety.

6.      LU has 824 active members. Membership fees are $5 annually or $35 for a lifetime. Membership fees go toward funding the work of LU, including efforts to promote affordable housing.

7.      To promote affordable housing, LU utilizes community organizing and advocacy. LU has been a member of the Pittsburgh Housing Justice Table since its inception, helping to pass and fund the City's first Housing Opportunity Fund, among other efforts. LU's other affordable housing advocacy campaigns have included: advocating for the Inclusionary Zoning Ordinances; advocating for the adoption of Small Area Fair Market Rents for Housing Choice Vouchers; advocating for the establishment of the Upper Lawrenceville Affordable Housing Fund; and advocating for a Longtime Owner Occupant Protection (LOOP) program for low-income homeowners at risk of being priced out of their homes by property tax reassessments. LU is also a member of the Pittsburgh Eviction Prevention Cohort.

8.      To promote affordable housing, LU also provides direct support services. LU supports residents experiencing housing issues, especially those experiencing or at risk of homelessness or displacement, as well as low-income homeowners with home repair needs. LU also assists with distribution of rental assistance and organizes an annual Housing for All Event & Resource Fair to provide affordable housing resources to homeowners, tenants, and landlords. LU has a case manager on staff responsible for the direct services programs.

9.      LU co-facilitates a community review process for any new development in the Lawrenceville community, including any new housing development. Over 100 development

projects have come through this process.

10.    LU has dedicated significant time and effort to advancing inclusionary zoning as a tool for ensuring an inclusive and affordable Pittsburgh. LU initially led a campaign to craft and adopt the first iteration of an inclusionary zoning ordinance in Pittsburgh—the Interim Planning Overlay District (IPOD) in Lawrenceville. As part of this campaign effort, LU: facilitated meetings with City Council and the Mayor; hosted well-attended community meetings; published many communications to the neighborhood regarding inclusionary zoning; organized residents to attend City Council and Planning Commission hearings; met with City Planning to support writing the legislation with pro bono counsel Regional Housing Legal Services; attended and presented at national and local conferences; and presented to other community organizations in Pittsburgh and beyond (including other municipalities in PA). After passage of the original IPOD, LU led a similar campaign to successfully adopt the Inclusionary Zoning Ordinance ("IZO") at issue in the litigation.

11.    LU also advocated for the amendment of the City's LERTA (Local Earned Real Estate Tax Abatement) program in Pittsburgh to match the recommendations of the Inclusionary Zoning Exploratory Committee and provide an "offset" to accompany the IZO's affordability mandate.

12.    LU has been involved in the implementation of the IZO, supporting developers in Lawrenceville to comply with the requirements, and supporting City Planning to draft the policies and procedures needed for implementation (e.g. Affirmative Marketing Plan, deed restrictions, etc.).

13.    LU maintains a list of residents who are interested in inclusionary units as they become available.

14.     In light of its extensive efforts to secure affordable housing and inclusive mixed-income opportunities in Lawrenceville and other areas, LU has an interest in the litigation and in defending the IZO, which will directly benefit residents of Lawrenceville and LU's members.

15.     Invalidating the IZO would be devastating to LU's mission and work. Years of work and significant expenditure of resources to advance inclusionary zoning as a means to achieve affordable housing would be undone instantly. Hundreds if not thousands of staff hours over the past five years would be rendered meaningless. The loss of the IZO would undermine LU's credibility as an organization with their members, with the community, the City, and the broader region.

16.     Overturning the IZO would devastate the very essence of LU's organizational model, which is based on the principle that impacted residents are best suited to advocate for their own needs and to develop solutions to the challenges their neighborhood faces. The IZO is a direct result of that process. Eliminating the IZO would undermine the self-determination of LU's members and community.

17.     This lawsuit has already forced LU to divert resources from its ongoing affordable housing work, as well as LU's work addressing food access, supporting older adults, strengthening public schools, and neighborhood beautification and public safety work. Consuming staff time and energy, this diversion of resources has tangible consequences for the Lawrenceville community.

18.     If the IZO is overturned, LU will have to divert further resources to change its messaging and re-educate members and the public, to support members and Lawrenceville residents in need of affordable housing in the absence of units that would have otherwise become available under the IZO, and to educate and update developers LU is already assisting with IZO implementation. This additional but necessary work would limit LU's capacity to simultaneously

work on food access, elder support, and neighborhood and public school work.

19.    The loss of the IZO would deepen segregation in Lawrenceville and lead to the further displacement of more residents and LU members, especially residents from historically marginalized communities: low-income neighbors, Black residents, single mothers, children under eighteen, and seniors. This displacement would have long-lasting and drastic impacts to these residents' access to transit, amenities, jobs, food, healthcare, and education. It would also make it more difficult for Lawrenceville's businesses and organizations to find staff, as the workforce would have less affordable housing nearby.

20.    I declare under penalty of perjury that the foregoing is true and correct.


Executed this ___12th___ day of August, 2022, in Pittsburgh, Pennsylvania.


_____

David Breingan