**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, | ) | No. 2:22-cv-706-RJC |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) | |
| | ) | |
| CITY OF PITTSBURGH, COREY LAYMAN, in his official capacity as Zoning Administrator of the City of Pittsburgh, KAREN ABRAMS, in her official capacity as Director of City Planning of the City of Pittsburgh, and SARAH KINTER, in her official capacity as Director of Permits, Licenses, and Inspections of the City of Pittsburgh, | ) ) ) ) ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is Defendants, City of Pittsburgh, Corey Layman, Karen Abrams, and Sarah Kinter's, in their official capacities, (collectively, "the City") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Also, before the Court is a Motion to Intervene filed by Lawrenceville United, the Bloomfield Development Corporation, the Polish Hill Civic Association, the Hill District Consensus Group, and the Fair Housing Partnership of Greater Pittsburgh (collectively, "Intervenors"). The Motions have been fully briefed and are ripe for disposition.

## I.   Procedural History & Factual Background

Plaintiff, Builders Association of Metropolitan Pittsburgh ("BAMP") filed its Complaint on May 12, 2022. (ECF No. 1). On August 15, 2022, the City filed its Motion to Dismiss (ECF

No. 29) and its Brief in Support.  (ECF No. 30).  On October 31, 2022, BAMP filed its Opposition to the City's Motion to Dismiss (ECF No. 44) and its Brief in Opposition.  (ECF No. 45).  The City filed its Reply Brief on November 18, 2022.  (ECF No. 48).

The Intervenors filed their Motion to Intervene on August 15, 2022, (ECF No. 31) along with Exhibits (ECF No. 32) and their Brief in Support.  (ECF No. 33).  Along with their Motion to Intervene, the Intervenors filed their proposed Motion to Dismiss (ECF No. 34) and their Brief in Support of their proposed Motion to Dismiss.  (ECF No. 35).  BAMP filed their Brief in Opposition to the Intervenors' Motion to Intervene on August 25, 2022.  (ECF No. 36).  The Intervenors filed their Reply Brief on September 1, 2022.  (ECF No. 39).

Broadly speaking, BAMP alleges that that the IZ-O, Inclusionary Housing Zoning Ordinance ("IZO") enacted by the City on May 2, 2022, is unconstitutional.  BAMP is a non-profit trade association "with a membership comprised, in part, of businesses that specialize in residential construction and development, including at times on land owned by such businesses, in and around the City of Pittsburgh and Western Pennsylvania."  Compl. ¶ 4.

BAMP alleges that the IZO creates "Inclusionary Zoning Districts" in certain areas of the City, including Lower, Central, and Upper Lawrenceville, Bloomfield, and Polish Hill.  Compl. ¶ 30.  BAMP further alleges that the IZO applies to both new constructions and substantial improvements to buildings that contain:

    a.  '… 20 or more dwelling units' or '20 or more sleeping rooms . . . within a Multi-Suite Residential use' or 'any combination' of such dwelling units and sleeping rooms (Ordinance § 907.04.A.5(a), (b), and (c)); or

    b.  '. . . (i) one (1) or more zoning lots marketed as a single or unified project, (ii) sharing common elements or common financing, or (iii) comprising a part of a planned development.'  (Ordinance § 907.04.A.5(a); *see id.* at (b) and (c)).

*Id.* at ¶ 32.

BAMP alleges that for the above identified subject properties, ten percent of all units must be set aside as "Inclusionary Units" that will be rented or sold at below-market prices. *Id.* at ¶ 33. BAMP further alleges that the IZO requires the Inclusionary Units be equal to the market rate units in all ways and that the core amenities must be shared with no additional charges or restrictions to the individuals renting or purchasing the Inclusionary Units. *Id.* at ¶¶ 35-36. BAMP makes further allegations concerning the requirements and application of the IZO that are not relevant to the instant motion.

BAMP alleges that the IZO violates both the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the United States Constitution. *Id.* at ¶¶ 50, 73. Further, BAMP alleges that the IZO violates both Article IX, sec. 2 ("the Home Rule Law") and Article VIII, sec. 1 of the Pennsylvania Constitution. *Id.* at ¶¶ 85, 95.

## II.     Legal Standard

### A.  Motion to Dismiss

#### a.   Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists. *Brown v. Tucci*, Civil Action No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within

the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.

1977). The United States Court of Appeals for the Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (internal quotation marks omitted). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A "factual"

attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction,

one or more of the factual allegations is untrue, causing the case to fall outside the court's

jurisdiction. *Id.* In such a case, "no presumptive truthfulness attaches to plaintiff's allegations"

and the court must evaluate the merits of the disputed allegations because "the trial court's ... very

power to hear the case" is at issue. *Id.* With a factual attack, the Court is free to consider evidence

outside the pleadings and weigh that evidence. *Petruska*, 462 F.3d at 302 n.3; *see also Gould*

*Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts

will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891).

### b.  Fed. R. Civ. P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In

deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled

factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S.*

*Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need

detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B.  Motion to Intervene

With respect to intervention as of right, Fed. R. of Civ. P. 24 provides:

(a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

Where a litigant seeks intervention as of right under Rule 24(a)(2), the United States Court of Appeals for the Third Circuit has held that the litigant must establish:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir.1998)).  "Each of these requirements must be met to intervene as of right."  *Id.* at 220 (quoting *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995)).

With respect to permissive intervention, Rule 24 provides, in relevant part:

(b) Permissive Intervention.

    (1) In General.  On timely motion, the court may permit anyone to intervene who:

        (A) is given a conditional right to intervene by a federal statute; or

        (B) has a claim or defense that shares with the main action a common question of law or fact.

. . . .

    (3) Delay or Prejudice.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

### III.    Discussion

#### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

The City argues that BAMP's claims against it should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because BAMP has failed to allege facts to support a finding that its claims are ripe and that BAMP has standing.  Br. in Supp. 7-14.  Based on the arguments raised in the City's motion to dismiss, the Court finds that the City is only raising a facial challenge to ripeness and standing.  *See* Br. in Supp. 2, 5, 12-13.  As the City has only raised a facial challenge, the Court will accept the allegations in the Complaint as true.

####### *i.* **Ripeness**

With respect to the ripeness requirement, the United States Court of Appeals for the Third Circuit has explained that "[t]he ripeness doctrine serves to 'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). Generally, in a land-use case, "a property owner does not have a ripe, constitutional claim until the zoning authorities have had 'an opportunity to arrive[] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question.'" *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 597 (3d Cir. 1998) (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985)). This is referred to as the finality rule.

Under the finality rule, the City asserts that BAMP has not alleged that any of its members requested or were denied a certificate of occupancy or permit under the IZO and, therefore, BAMP's claims are not ripe. Br. in Supp. 8-9, 12. Further, the City argues that because the IZO allows for a variance, BAMP was additionally required to allege that one of its members sought a variance under the IZO which was subsequently denied. *Id.* The City argues that without these allegations, BAMP has failed to allege a harm that is anything other than hypothetical and therefore, its claims are unripe. *Id.* at 12.

BAMP argues that it is not required to await enforcement of the IZO before it challenges its constitutionality because the mere presence of the IZO on the books is enough to create an actual injury. Br. in Opp'n 6. BAMP argues there is a realistic danger that if its members seek to develop property in an area governed by the IZO, the City will enforce the IZO against them and

cause harm.  *Id.*  Further, BAMP argues that it is not required to assert allegations about a potential variance or any other kind of exception under the IZO because it raises a facial challenge to the IZO and therefore, no final decision is required.  *Id.* at 7.  In the alternative, BAMP argues that seeking a variance would be futile and that seeking an exception would not change the harm BAMP's members face if the IZO is applied.  *Id.* at 8-15.

The Court agrees with BAMP that it has raised facial challenges to the IZO as to Counts I, III, and IV.  BAMP's Complaint as to these counts alleges the IZO is unconstitutional as enacted and not as applied to BAMP members.  Compl. ¶¶ 50, 61-62, 65-68, 85-86, 88-90, 93-96.  Further, the Court agrees with BAMP that the finality rule only applies to as-applied challenges and not facial challenges.

> The Third Circuit has held that in as-applied challenges "in cases involving land-use decisions, a property owner does not have a ripe constitutional claim until the zoning authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question."  *Sameric Corp. of DE v. City of Philadelphia*, 142 F.3d 582 (3d Cir. 1998).  *See also Acierno v. Mitchell*, 6 F.3d 970, 974-975 (3d Cir. 1993); *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993).  Under the "finality rule," a plaintiff property owner must prove that a "final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds."
> . . .
> The finality rule does not apply "to facial attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection."  *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

*RHJ Medical Center, Inc. v. City of DuBois*, 754 F. Supp. 2d 723, 766-67 (W.D. Pa. 2010).

Therefore, Counts I, III, and IV are ripe for adjudication even without a final decision or a BAMP member requesting a variance or exception under the IZO.  The City cites to numerous cases in support of its arguments that BAMP is required to allege that one of its members sought a permit and a variance that were both denied in order to meet the requirements for a ripe claim.

9

*See* Br. in Supp. 9-10.  However, the cases cited by the City only deal with circumstances where a plaintiff is asserting an as-applied challenge to an ordinance and not simply a facial challenge.  *See Id.*  As such, the case law cited by the City is not relevant to Counts I, III, and IV where BAMP alleges only a facial challenge.

However, the Court is not convinced that Count II as pled raises only a facial challenge to the IZO.  The language in Count II focuses only on the effects of the IZO against BAMP and its members and does not allege that the enactment of the IZO itself violates the Due Process Clause. Instead, BAMP's Complaint alleges that the IZO violates the Due Process Clause because of how it is applied to BAMP's members.  Because Count II is plead as an as-applied challenge, BAMP was required to allege that a final decision was made concerning the application of the IZO to one of its members in order for it to assert a ripe claim.  Such an allegation has not been pled, therefore, Count II is not ripe and will be dismissed without prejudice. BAMP is granted leave to amend so as to plead a facial challenge on these grounds, or to reassert the as-applied claim if it becomes ripe.  Further, BAMP argued in its Brief in Opposition that it has asserted only facial challenges which suggests that BAMP intended Count II to be a facial challenge.  The Court does not, however, conclude or suggest in any manner that a facial challenge to the IZO on the grounds that it violates the Due Process Clause of the Fourteenth Amendment would be successful on the merits.

### ii.    *Standing*

Because BAMP only seeks to pursue claims on behalf of its members and does not allege any injury to itself, the Court must determine if BAMP has associational standing to bring its claims.  An association has standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested required the participation of individual

members in the lawsuit." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977). An individual has standing when the following three requirements are met: 1) injury-in-fact, 2) causation, and 3) redressability. *See generally*, U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The City argues that BAMP does not have standing to assert its claims because it has failed to allege that one of its members has suffered an injury in fact. Br. in Supp. 13. Specifically, the City argues BAMP has only alleged a hypothetical harm that may occur at some non-specific time in the future based on an assumption that the IZO may be applied against BAMP's members in an unconstitutional manner. *Id.* BAMP argues that it has sufficiently alleged that its members have suffered an injury in fact through the Affidavit of Mr. Eichenlaub, BAMP's Executive Director. Br. in Opp'n. 5-6; *see also* Compl., Ex. A. The Affidavit of Mr. Eichenlaub provides that "[o]ne or more Affected BAMP Members currently own and/or control real property in the Subject Areas, including property that is of sufficient size and zoning to permit the construction of twenty or more dwelling units." *Id.* at ⁋ 7. Mr. Eichenlaub further states that "[i]f the ordinance were [sic] not in effect, then one or more Affected BAMP Members would construct project(s) consisting of twenty or more dwelling units on their property in the Subject Areas and would begin such projects in the next few months." *Id.* at ⁋ 8.

Here, BAMP has sufficiently alleged that one of its members has suffered an injury in fact. To begin, BAMP is not required to provide the identity of any of its members or allege an injury to a specific member in order to establish standing. *See Forum for Academic and Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 289-290 (D. N.J. 2003) (An organization "need not reveal its membership list at the pleading stage in order to bring suit on its members behalf." Instead, courts must consider "whether the factual allegations in a given context sufficiently

demonstrate that an association indeed has members that have suffered an injury in fact."); *see also Ranchers-Cattlemen Action Legal fund, United Stockgrowers of America v. Unites States Department of Agriculture*, 573 F.Supp.3d 324, 335-36 (D. D.C. 2021) (Holding that when a facial challenge to standing is brough under Rule 12(b)(1), an association is only required to allege generally that one of its members has standing, it is not required to allege or present evidence that a specific identified member has standing).   Therefore, BAMP's general allegations that one or more of its members has suffered this harm is enough to establish that one or more of its members may have standing.

Next, BAMP has sufficiently alleged, through the affidavit of Mr. Eichenlaub, that one or more of BAMP's members have suffered an actual injury or are in immediate danger of an injury. As BAMP has asserted a pre-enforcement action, the focus is on the threat of future harm.  "Where threatened action by the government is concerned, courts 'do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.'"  *New Jersey Civil Justice Institute v. Grewal*, Civil No. 19-17518, 2020 WL 4188129, at *4 (D. N.J. July 21, 2020) (citing *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017)).  "Instead, the question is whether the plaintiff has alleged a 'sufficiently imminent' injury."  *Id.* (citing *Susan B. Anthony List v. Driehaus ("SBA List")*, 573 U.S. 149, 159 (2014)).

Here, the Affidavit of Mr. Eichenlaub states that BAMP's members include developers that have built and will build single- and multi-family housing in the City of Pittsburgh that would be affected by the IZO.  Compl., Ex. A ¶¶ 5, 7.  Further, that those members would construct new and/or additional projects that fall under the IZO if the IZO were not in effect.  *Id.* at ¶¶ 8, 10. While BAMP has only alleged future injuries, the Court finds that BAMP has sufficiently alleged that there is a substantial risk these future injuries will occur because BAMP alleges that it has

members who have already developed properties subject to the IZO in areas where the IZO is applicable and that it has members who intend to continue to engage in these kinds of developments.

As the City has not argued that BAMP did not allege causation or redressability in order to establish that a member has standing, the Court will not address these elements. Therefore, BAMP has sufficiently alleged that one of its members has standing. Further, the City has not argued that BAMP failed to allege elements two and three of associational standing and, therefore, the Court will not address these elements either. For these reasons, the City's motion to dismiss the Complaint for lack of standing is denied. The Court makes this decision with the important understanding that although BAMP's allegations are sufficient to survive a facial motion to dismiss, BAMP will face a far more substantial hurdle of establishing standing at the next stages of the proceedings.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The City's remaining arguments in its motion to dismiss assert that Count III should be dismissed because the City possessed the authority to enact the IZO and that Count IV should be dismissed because the IZO does not impose a tax, and, even if it did, it imposes a permissible tax.

#### i. Count III

In Count III, BAMP alleges that the IZO violates the Home Rule Law and Article IX, section 2 of the Pennsylvania Constitution.

It is well-established that a city's "ability to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." *City of Philadelphia v. Schweiker*, 858 A.2d 75, 84 (Pa. 2004). When analyzing a home rule municipality's exercise of power, the Court "begin[s] with the view that it is valid absent a

limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and [the Court] resolve[s] ambiguities in favor of the municipality." *Nutter v. Doughtery*, 938 A.2d 401, 411 (Pa. 2007) (citing *County of Delaware v. Township of Middletown*, 511 A.2d 811, 813 (Pa. 1986)).

In the Complaint, BAMP alleges that the IZO violates both the Home Rule Law and Article IX, section 2 of the Pennsylvania Constitution.  First, BAMP alleges that the Business Exclusion, under Section 2962(f) of the Home Rule Law, expressly limits the City's home rule powers by stating that

> "[a] municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses . . . except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities."

Compl. ¶ 81 (citing 53 Pa.C.S. § 2962(f)).  Second, BAMP alleges that the City's home rule powers are also limited by Section 2962(c) of the Home Rule Law which prohibits a municipality from "[e]xercis[ing] powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth."  Compl. ¶ 82 (citing 53 Pa.C.S. § 2962(c)(2)).  Finally, BAMP alleges that both Article IX, section 2 of the Pennsylvania Constitution and the Home Rule Law, limit home-rule authority conferred upon municipalities to those not denied by the Pennsylvania Constitution, by statute, or by the City's home rule charter. Compl. ¶ 83 (citing Pa. Const. Art. IX, § 2; 53 Pa.C.S. § 2961)  In sum, BAMP alleges that because the IZO violates the Business Exclusion of the Home Rule Law, it in turn violates Sections 2961 and 2962(c) of the Home Rule Law and Article IX, section 2 of the Pennsylvania Constitution meaning the City did not have the authority to enact the IZO.

The City argues that BAMP has failed to state a claim under Count III because the City had the authority to enact the IZO and neither the Pennsylvania Constitution nor the Home Rule

14

Law restricted the City's authority.  The City further argues that BAMP is incorrect in its allegations that the IZO is a business regulation under the Business Exclusion and that, even if it regulates businesses, the Business Exclusion outlines an exception where the City has authority to regulate businesses when a statute provides it such authority.  Br. In Supp. 15.  In support of its arguments, the City cites to Sections 25052-25058 of the Second Class City Code ("SCCC") which it asserts provides the City the statutory authority necessary under the Business Exclusion to regulate businesses.  *Id.*; 53 P.S. §§ 25052-25058.  The City argues that it possesses "broad, statutory zoning authority" under the SCCC and that the SCCC "empowers the City to enact land use regulations, such as the [IZO]."  *Id.* (citing 53 P.S. § 25053).

The Court must first determine whether BAMP has sufficiently alleged that the IZO falls within the Business Exclusion.  BAMP has alleged that the IZO "determine[s] duties, responsibilities or requirements placed upon businesses" and falls within the Business Exclusion. 53 Pa.C.S. § 2962(f).  Further BAMP has cited to case law that supports these allegations.  *See Apartment Association of Metropolitan Pittsburgh, Inc. v. City of Pittsburgh*, 228 A.3d 960, 964-65 (Pa. Commw. Ct. 2020) (holding that an ordinance requiring landlords to comply with federal Section 8 Programs was an affirmative obligation on business under the Business Exclusion). While the City argues the IZO is only a land use regulation and not a business regulation, the City has not cited to case law in support of this argument and the Court is not persuaded by this argument.  *See* Br. in Supp. 16.  However characterized, the Court find at this juncture it is sufficient that BAMP has set forth allegations that the IZO regulates businesses and falls within the Business Exclusion.

The next question before the Court is whether the SCCC expressly authorizes the City to enact the IZO and in turn regulate businesses under the Business Exclusion.  In support, the City

specifically focuses on Sections 25051 and 25053 of the SCC.   Specifically, Section 25051 provides:

> For the purpose of promoting health, safety, morals or the general welfare of the community, cities of the second class are hereby empowered to regulate, restrict or determine, the height, number of stories and size of buildings and other structures, the percentage of lot that may be built upon, the size of yards, courts and other open spaces, the density of population, and the location, use and occupancy of buildings, structures and land for trade, industry, residence or other purposes.

53 P.S. § 25051.

Further, Section 25053 provides:

> Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements.  Such regulations shall be made with reasonable consideration, among other things, to the topography and character of the district, with its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city.

53 P.S. § 25053.

Here, the City has only offered conclusory assertions that it had the authority to enact the IZO under Sections 25051 and 25053 of the SCCC.  The City only broadly cites to the SCCC as providing it the general authority to enact the IZO arguing that because the City has the authority to act for the "general welfare" under Section 25051 of the SCCC, the City has the authority to enact the IZO.   However, Section 25051 provides that the City may "regulate, restrict, or determine, the height, number of stories and size of buildings and other structures, the percentage of lot that may be built upon, the size of yards, courts and other open spaces, the density of population, and the location, use and occupancy of buildings, structures and land for trade, industry, residence or other purposes" for the purpose of the general welfare.  *See* 53 P.S. § 25051.

16

While the IZO may imputatively constitute an effort by the City to promote the general welfare by regulating the "use and occupancy" of buildings, the City has offered no specific argument as to how the IZO is authorized by the SCCC.  Because the City has offered little more than conclusory statements as to how the SCCC provided it the authority to enact the IZO, the City has not met its burden on a motion to dismiss to establish that BAMP has not stated a claim.

Further, in its Reply Brief, the City argues for the first time that the Municipalities Planning Code ("MPC") provides it further authority to enact the IZO.  Reply Br. 8.  As the MPC was referenced for the first time in the City's Reply Brief and BAMP did not have an opportunity to respond to these arguments, the Court will not address them at this juncture.  *See Dunn v. PHH Mortgage Corp.*, Civil No. 20-5848, 2021 WL 870659, at *3 (D. N.J. March 9, 2021) (where the court noted that it would not address new arguments raised for the first time in a reply brief); *see also Manasse v. United States*, Civil No. 15-4153, 2016 WL 7130916, at *4 (D. N.J. Dec. 7, 2016) (noting that new arguments "cannot be raised for the first time in reply briefs").  Therefore, the City's motion to dismiss is denied as to Count III.  The Court's Order denying the City's motion to dismiss as to Count III is entered without prejudice to the City's ability to raise the potential applicability of the MPC in the future.

### ii.    *Count IV*

In Count IV, BAMP alleges that the IZO violates Article VIII, section 1 of the Pennsylvania Constitution ("Uniformity Clause").  Specifically, BAMP alleges that the IZO is a *de facto* tax ordinance which violates the Uniformity Clause.

The Uniformity Clause provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws."  Pa. Const. Art. 8, sec. 1.  "When challenging a taxing statute,

it is the taxpayer's burden to demonstrate that a classification is unreasonable, in that it is not rationally related to any legitimate state purpose." *Parsowith v. Com., Dept. of Revenue*, 723 A.2d 659, 663 (Pa. 1999) (citing *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985)).

The City argues that first, the IZO does not impose a tax and second, even if it did, the tax does not violate the Uniformity Clause. Specifically, the City argues that the IZO only regulates the use of property once it is already constructed and does not mandate any additional expenditures on behalf of the property developers and is therefore, not a tax. Br. in Supp. 17. Further, the City argues that even if the IZO was a tax, the City meets the rational basis hurdle and BAMP has not met its burden of alleging facts to support a showing that the tax was unreasonable. *Id.* at 18-19.

BAMP argues that the IZO imposes a tax because it compels developers to provide housing infrastructure on behalf of the Housing Authority to address a problem that should instead be addressed by general taxes. Br. in Opp'n. 25. Further, BAMP argues the IZO compels developers to enter into a master lease with an Affordable Housing provider which triggers Pennsylvania and local realty transfer taxes that are applicable to leases for terms of thirty years or greater, of which Pennsylvania is a direct beneficiary. *Id.* at 25-26. In sum, BAMP argues the IZO is a *de facto* tax because the IZO "compels owners and developers to pay large sums . . . and be a revenue stream to finance the City's subsidized housing." *Id.* at 26. BAMP additionally argues that the IZO is not a reasonable land use regulation because it is applied non-uniformly and it regulates not just use, but the particulars of construction and administration of private properties.

The Court agrees with the City that BAMP has failed to state a claim for violation of the Uniformity Clause. In *Synagro-WWT, Inc. v. Rush Tp., Penn.*, 204 F. Supp. 2d 827 (M.D. Pa. 2002), the Middle District of Pennsylvania dismissed a plaintiff's cause of action for violation of the Uniformity Clause where the defendant, Rush Township, enacted an ordinance concerning the

regulation of sewage sludge.  204 F. Supp. 2d at 833.  The Middle District of Pennsylvania held

that the plaintiff "ha[d] not met its burden [of] demonstrat[ing] that any alleged classification [wa]s

unreasonable and not rationally related to any legitimate state purpose."  *Id.* at 845.  The court

went on to explain that the plaintiff's "unsupported legal conclusions relating to the lack of

uniformity of the [o]rdinance [we]re insufficient to survive a 12(b)(6) motion."  *Id.*  The court then

went on to dismiss the plaintiff's claims because the defendant met its burden of establishing the

ordinance was rationally related to a legitimate purpose and was applied uniformly.  *Id.*

Here, like in *Synagro-WWT, Inc.*, BAMP has not alleged that the IZO was not related to a

legitimate purpose and was not applied uniformly, outside of barebone, conclusory allegations.

BAMP's only allegations to these points are that the IZO "does not substantially advance any

legitimate government interest" and that the Uniformity Clause "requires strict uniformity of

taxes."  Compl. ⁋ 66, 95.  BAMP has alleged no facts as to why the IZO does not advance a

legitimate government interest or that the IZO is not applied uniformly, despite its arguments to

these points in its Brief.  Therefore, BAMP has failed to plead a cause of action for violation of

the Uniformity Clause and the City's motion to dismiss is granted as to Count IV, without

prejudice.  Because the City has not addressed how the IZO is applied uniformly in order to

establish that the IZO does not violate the Uniformity Clause as a matter of law, the Court cannot

find that the IZO does not violate the Uniformity Clause. [1]  As such, Count IV is dismissed without

prejudice.

---

[1] The Court notes that while the City argues the IZO is applied uniformly in its motion to dismiss as to Count III, the
City did not address this argument as to Count IV.  Further, the City's arguments as to the uniformity of the application
of the IZO as to Count III concern whether the IZO is applied uniformly under the provisions of the SCCC and not
the Uniformity Clause.  Br. in Opp. 10.

## C.  Redundant Claims

The City argues that the claims against the individual defendants should be dismissed with prejudice because the City is named as a defendant in this action and the individual claims are duplicative and redundant.  Br. in Supp. 19-20.  In response, BAMP asserts that it is agreeable to dismissing the claims against the individual defendants but only if the dismissal is *without prejudice*.  Pl. Resp. 2 n.1 (emphasis added).  BAMP provides no authority for its proposition that the dismissal should be without prejudice.  The City argues that dismissal of these claims with prejudice is proper because "their defect, i.e., their redundancy, cannot be remedied by amendment."  Reply Br. 15.  In support, the City cites to numerous cases where this Court has dismissed similar claims with prejudice.  *Id.* at 14.

The Court will dismiss the claims against Corey Layman, Karen Abrams, and Sarah Kinter in their official capacities with prejudice given the case law cited by the City.  *See Rulli v. City of Pittsburgh*, Civil Action No. 2:20-cv-965, 2021 WL 1391761, at *7 (W.D. Pa. March 23, 2021); *see also Perciavalle v. City of Aliquippa*, Civil Action No. 2:20-cv-474, 2021 WL 269792, at *5 (W.D. Pa. Jan. 27, 2021); *see also Soltie v. Cerilli*, Civil Action No. 2:21-267, 2022 WL 465422, at *7 (W.D. Pa. Jan. 14, 2022); *see also Fitzgerald v. Martin*, Civil Action No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017); *see also M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412, 433 (M.D. Pa. 2014).

## D.  Motion to Intervene

The Intervenors are composed of nonprofit community organizations located in Pittsburgh "who advocated for passage of the IZO and represent members and communities who will directly benefit from the inclusive mixed-income neighborhoods the IZO aims to create."  Mot. to Intervene 1.  The Intervenors move to intervene as of right, or, in the alternative, permissibly.  *Id.*

        *i.*    ***Intervention as of Right***

The Intervenors assert that they are entitled to intervene in this action as of right because they have a strong, vested interest in upholding the IZO.  Brief in Supp. of Intervention 2.  BAMP argues that the Intervenors have not demonstrated a protectable legal interest or a cognizable interest in this case.  Br. in Opp'n to Intervention 5-6.

To begin, BAMP makes no argument as to whether the Intervenors have filed a timely application to intervene.  The Intervenors assert that their application is timely as they filed their motion on August 15, 2022, the deadline for the City to file any responsive pleadings.  Brief in Supp. of Intervention 9.  As such, the Intervenors argue their motion is not impeding the advancement of this case or prejudicing the parties.  *Id.*  The Court agrees that the Intervenors motion to intervene is timely.  *See Land v. Delaware River Basin Commission*, 3:16-cv-00897, 2017 WL 63918, at *3 (M.D. Pa. Jan. 5, 2017) (holding that a motion to intervene was timely where the motion was filed prior to discovery and prior to the Court's ruling on dispositive motions).

Therefore, the remaining three elements of intervention as of right are at issue – whether the intervenors have established a sufficient interest in the underlying litigation, a threat that the interest will be impaired or affected by the disposition of the underlying action, and that the existing parties to the action do not adequately represent the prospective intervenor's interests.

        ***a. Whether the Intervenors have shown a sufficient interest in the underlying litigation and whether that interest may be impaired or affected by the underlying litigation***

With respect to whether the Intervenors have a sufficient interest in this matter and whether that interest may be impaired or affected by this action, the United States Court of Appeals for the Third Circuit has explained that, "[t]o justify intervention as of right, the

applicant must have an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).

As explained by the United States Court of Appeals for the Third Circuit in *Treesdale*, 419 F.3d 216, wherein the Third Circuit quoted its decision in *Mountain Top*, 72 F.3d 361:

> While the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition, some general guidelines have emerged.... [A]n intervenor's interest must be one that is significantly protectable. [This means that] the interest must be a legal interest as distinguished from interests of a general and indefinite character. The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene. This interest is recognized as one belonging to or one being owned by the proposed intervenors.

*Treesdale*, 419 F.3d at 220–21 (quoting *Mountain Top*, 72 F.3d at 366) (emphasis added).

The Intervenors contend that they represent the individuals and communities who will benefit from the IZO and have an "interest in defending their members' access to affordable and inclusive housing." Brief in Supp. of Intervention 10. Further, the Intervenors argue that because the purpose of the IZO aligns with the missions of their organizations, they have a sufficient interest in this case. *Id.* at 10-11. The Intervenors also argue that their interests will be impaired by the disposition of the underlying action because the injunctive and declaratory relief sought by BAMP threatens the Intervenors interests in affordable and inclusive housing.

BAMP argues that the Intervenors have failed to establish a sufficient interest in this litigation beyond only a general interest. Brief in Opp'n to Intervention 5. BAMP also argues that because one of the Intervenors, the Hill District Consensus Group, is an organization that represents communities completely outside of the scope of the IZO, it does not have an interest in this litigation. *Id.* at 9. Further, BAMP argues that this lawsuit does not involve the social, economic, or political importance of affordable and inclusive housing, but instead, only whether

the IZO is a legal mechanism for the City to provide affordable housing, implying that this lawsuit concerns issues outside the Intervenors purpose. *Id.* Lastly, Plaintiff argues that the Intervenors have failed to show that the IZO will create affordable housing for the residents they represent. *Id.* at 6.

In Reply, the Intervenors argue that while the Hill District Consensus Group does represent an area outside the scope of the IZO, it still has an interest in this litigation because it has an interest in the broader impact of the IZO on Pittsburgh. Reply Br. in Supp. of Intervention 3.

The Court finds the issues presented by the Motion to Intervene are materially identical to those addressed by the District Court for the Middle District of Pennsylvania in *American Farm Bureau Federation v. U.S. E.P.A.*, 278 F.R.D. 98 (M.D. Pa. 2011) and those addressed by the Ninth Circuit Court of Appeals in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983).

In *American Farm Bureau Federation*, the Middle District of Pennsylvania examined the interests of the Chesapeake Bay Foundation, a non-profit corporation dedicated to restoring and protecting the Chesapeake Bay, in a lawsuit where the plaintiff sought injunctive relief asking the court to vacate the total maximum daily load established by the EPA for the Chesapeake Bay. *American Farm Bureau Federation*, 278 F.R.D. at 100, 102. Specifically, the Chesapeake Bay Foundation argued that its members used the Chesapeake Bay for aesthetic and recreational purposes, that its purpose was for the restoration and preservation of the Chesapeake Bay, and that it was an active participant in the creation of the total maximum daily load. *Id.* at 106. Based on this, the Middle District of Pennsylvania found that the Chesapeake Bay Foundation had established a sufficient interest in the underlying litigation.

Likewise in *Sagebrush Rebellion, Inc.*, the Ninth Circuit found that the National Audubon Society, five local chapters of the National Audubon Society, five non-profit Idaho organizations

with environmental, conservation and wildlife interest and four Idaho residents had shown a sufficient interest in the underlying litigation to support a motion to intervene.  713 F.2d at 526, 528.  At issue was the Secretary of Interior's creation of the Birds of Prey Conservation Area in Idaho.  *Id.*  The Audubon Society participated in the process surrounding the Secretary's creation of the Birds of Prey Conservation Area.  *Id.* at 526-27.  The Ninth Circuit explained that the Audubon Society had an interest in the underlying litigation because if the plaintiff's action challenging the legality of the creation of the Birds of Prey Conservation Area was granted, it would impair the society's interest in the preservation of birds and their habitats."  *Id.* at 528.

Here, based on the above case law, the Intervenors have established a sufficient interest in the underlying litigation.  The Intervenors have argued that they advocated for the creation of the IZO and that they have an interest in the creation of affordable and inclusive housing.  Further, the Intervenors have established that their interests will be impaired by the disposition of this action because if the IZO is found to be unconstitutional, the Intervenors' interest in affordable and inclusive housing will be impaired.

> b.  **Whether the Intervenors have established that existing parties to the action do not adequately represent their interests**

The Intervenors argue that their interests differ from those of the City because the City is responsible for the administration of the IZO and not the representation of the Intervenors' specific and direct interests in promoting affordable and inclusive housing.  Brief in Supp. of Intervention 13.  Further, the Intervenors argue they have an interest in the individual neighborhoods and residents they represent while the City may instead "prioritize broader citywide interests and [its] interest in legislating via zoning controls."  *Id.* at 14.

BAMP argues that the Intervenors have failed to meet their burden of presenting clear and convincing evidence that the City does not adequately represent their interests in upholding the

Ordinance and carrying out its stated objective.  Br. in Opp'n to Intervention 7.  Further, BAMP argues that even if "the Court accepts that the . . . Intervenors have devoted resources to lobby[ing] for an inclusionary zoning ordinance, the . . . Intervenors have not demonstrated that those resources would be wasted or that the City would give up on its campaign to pass an inclusionary zoning ordinance by a finding that the [IZO] is unconstitutional." *Id.*

In Reply, the Intervenors argue that BAMP is incorrect that Intervenors must establish that their interests are not adequately represented by clear and convincing evidence because that standard only applied in cases where the municipality is charged by law with representing the intervenors' interests, which is not the case here.  Reply Br. in Supp. of Intervention 8.  The Intervenors also point to *Shipyard Associates, L.P. v. City of Hoboken*, Civil Action No. 14-1145, 2014 WL 6685467 (D. N.J. Nov. 26, 2014), in support of their argument that their interests are not adequately represented by the City.  Reply Br. 7.  In *Shipyard Associates, L.P.*, the plaintiff challenged the city's ordinances that were enacted to address the construction of properties located on piers and platforms on the Hudson River.  2014 WL 6685467, at *1.  The prospective intervenors were a "nonprofit organization comprised of Hoboken residents focused on issues such as open space preservation and recreation along the Hudson River waterfront." *Id.*  The prospective intervenors pointed to the city's "delicate position as the entity with the police power to protect residents and the entity responsible for managing and interacting with municipal planning, zoning, and development interests" in support of its position.  *Id.* at *4.  In support of these arguments, the prospective intervenors submitted evidence of the sharp political divide that existed in the City Council, and that the City may not continue to defend the ordinance at issue. *Id.*  Based on this, the District Court of New Jersey granted the motion to intervene. *Id.*  The Court

notes that here, unlike in *Shipyard Associates L.P.*, the Intervenors have not submitted evidence of any conflict between themselves and the City.

Further, the Court agrees with BAMP that there is a presumption of adequate representation when there is "[a] government entity charged by law with representing a national policy." *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998).  Notwithstanding this presumption, "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." *Id.* (citing *Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)).  The Intervenors cite to this language in support of their argument that the relaxed standard applies to them.  However, the Third Circuit and this Court have made clear that the "relaxed standard is only appropriate where a conflict exists 'between the intervenor's *direct economic interests* and the government's shifting public policy interests.'" *Pennsylvania General Energy Co. v. Grant Tp.*, 2015 WL 6002163, at *4 (W.D. Pa. Oct. 14, 2015), aff'd, 658 Fed. Appx. 37 (3d Cir. 2016) (emphasis added), (quoting *Kleissler*, 157 F.3d at 972)); see U.S. v. Territory of Virgin Islands, 748 F.3d 514 (3d Cir. 2014).

Here, the Intervenors have pointed to no conflicting economic interests and therefore are required to make a compelling showing that their interests are not adequately protected by the City. The Intervenors' arguments that they have a stronger interest in safeguarding affordable housing than the City and that the City may decide to prioritize broader citywide interests over the interests of affordable housing, are not enough to meet this burden.  The City has defended the IZO so far and there is no evidence, at this time, that the City will not continue to defend the IZO.  Further, because the Intervenors' goals of affordable housing will be protected if the City defends the ordinance, the Court finds that the Intervenors' interests are adequately represented by the City.

*See Pennsylvania General Energy Co.*, 2015 WL 6002163, at *5 (finding that where the prospective intervenors' interests of the "health, safety, welfare, and natural environmental protection" of the watershed were protected by the Township's defense of the ordinance, the prospective intervenors were adequately represented by the Township and intervention of a right was denied).  As such, the Intervenor's motion for intervention of a right is denied.

> ### ii.     *Permissive Intervention*

The Intervenors argue alternatively that the Court should exercise its broad discretion to grant them permissive intervention.  The Intervenors argue that they have a common question of law with this action because they "seek to assert defenses against BAMP's claims that the IZO is unconstitutional and a violation of Pennsylvania law."  Br. in Supp. of Intervention 15.  Further, the Intervenors argue they will provide a distinct perspective on the IZO as they represent the interests of residents and communities who will be burdened if BAMP succeeds in its litigation. *Id.*  Lastly, the Intervenors argue that their intervention will not delay or prejudice the adjudication of the original parties and, as such, the Court should permit intervention.  *Id.*

BAMP argues permissive intervention should be denied because the Intervenors lack a common question of law with this action and do not have any independent claim or defense.  Br. in Opp'n to Intervention 8-9.  Further, BAMP argues the Court should use its discretion to deny intervention to "preserve judicial economy and streamline disposition of the case."  *Id.* at 9.

Here, "because the discretionary decision for permissive intervention relies heavily on the adequacy of representation of the proposed intervenors' interests," the Court finds that permissive intervention is denied for the same reasons discussed above in *supra* section III.D.i.b. *Pennsylvania General Energy Co.*, 2015 WL 6002163, at *5.[2]

---

[2] As noted by BAMP, it raises no objection to, and the Court would welcome, the putative Intervenors' ongoing input and involvement in this case, limited however, to the form of amicus curiae briefing where deemed warranted.

**IV.     Conclusion**

For the reasons discussed above, the Court will grant the City's Motion to Dismiss as to Counts II and IV, without prejudice and will deny the City's Motion to Dismiss as to Counts I and III.   The Court will also grant the City's Motion to Dismiss the claims against the individual Defendants, Corey Layman, Karen Abrams, and Sarah Kinter, with prejudice.   Further, the Court will deny the Intervenors' Motion to Intervene.

BY THE COURT:

*/s/ Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: April 3, 2023

cc: All counsel of record