# EXHIBIT C



City of Pittsburgh

**Text File**

510 City-County Building
414 Grant Street
Pittsburgh, PA 15219

| | |
|---|---|
| **Introduced:** 7/8/2022 | **Bill No:** 2022-0592, **Version:** 3 |
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

Ordinance amending the Pittsburgh Code, Title Nine, Zoning Code, Article I, Zoning Districts in General, Article II, Base Zoning District, Chapter 904 Mixed Use Districts; Article IV, Planning Districts, Chapter 908 Public Realm Districts; Article V, Use Regulations, Chapter 911, Primary Uses, Section 911.02, Use Table; and Section 911.04, Use Standards; Article VI Development Standards, Chapter 914 Parking Loading and Access, Chapter 915, Environmental Performance Standards, and Chapter 919, Signs; and Article VIII Review and Enforcement, Chapter 922 Development Review Procedures; and Article IX, Chapter 926 Definitions, to create three new base zoning districts, and other zoning amendments.
*(Public Hearing was recessed 9/14/22)*
*(Reconvened Public Hearing was held 12/5/22)*

## SEE ATTACHMENT

**The Council of the City of Pittsburgh hereby enacts as follows:**

**Section** 1. Amending the Pittsburgh Code, Title Nine, Zoning, Article I, Section 902.03 Zoning Map by changing certain parcels from R1A-VH Single-Unit Attached Residential Very High Density, R2-H Two-Unit Residential High Density, R3-M Three-Unit Residential Moderate Density, RM-H Multi-Unit Residential High Density, OPR-A Oakland Public Realm - Subdistrict A, OPR-C Oakland Public Realm - Subdistrict C, OPR-D Oakland Public Realm - Subdistrict to UC-E Urban Center - Employment, UC-MU Urban Center - Mixed Use, R-MU (Residential - Mixed Use), and P (Parks) in the Central, West, and North Oakland neighborhood as prescribed within the attached map for district and maximum height limits.

**Section** 2 Amending the Pittsburgh Code, Title Nine, Zoning, Article I, Section 902.03 Zoning Map, by adding certain properties as identified as mapped in a supplemental document, and generally to include the official boundaries of the following neighborhoods as mapped by the City of Pittsburgh's Geographic Information Systems Division of the Department of Innovation and Performance:, North Oakland, West Oakland, Central Oakland, and South Oakland, excluding any areas zoned EMI or UPR.

**Section** 3. Amending the Pittsburgh Code, Title Nine, Zoning, Article III, Overlay Zoning Districts, Chapter 907: Development Overlay Districts, 907.04.A, to expand the boundaries of the Inclusionary Overlay District as mapped in an additional supplement.

**Section** 4. Amending the Pittsburgh Code, Title Nine, Zoning, Article I, Section 902.03 Zoning Map, by changing from R1A-VH, Residential Single-Unit Attached Very High Density, to P, Parks, four parcels

---

| | |
|---|---|
| **Introduced:** 7/8/2022 | **Bill No:** 2022-0592, **Version:** 3 |
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

identified as 354 Craft Avenue Block No. 28-P Lots 162, 163, and 164 and 268 Dunseith Street Block No. 28-A Lot 133 all in the Allegheny County Block and Lot System.

**Section** 5. Amending the Pittsburgh Code, Title Nine, Zoning, Article I, Section 902.03 Zoning Map, by changing from OPR-D, Oakland Public Realm Subdistrict-D, to P, Parks, one parcel identified as 436 Zulema Street Block No. 28-R Lot 371 in the Allegheny County Block and Lot System and property on Boulevard of the Allies bounded by Bates Street, Block No. 28-R Lot 259, Juliet Street, and Boulevard of the Allies.

**Section 6.**

902.01 Establishment of Zoning Districts

902.01.A Base Zoning Districts

The following Base Zoning Districts are hereby established:

902.01.A.1 Residential Zoning Districts

Residential Zoning Districts are formed by combining a Use Subdistrict with a Development Subdistrict. The following Use and Development Subdistricts are established:

(a) Use Subdistricts

(1) R1D, Single-Unit Detached Residential

(2) R1A, Single-Unit Attached Residential

(3) R2, Two-Unit Residential

(4) R3, Three-Unit Residential

(5) RM, Multi-Unit Residential

(b) Development Subdistricts

(1) VL - Very Low-Density

(2) L - Low-Density

(3) M - Moderate-Density

(4) H - High-Density

(5) VH - Very High-Density

902.01.A.2 Mixed-Use Zoning Districts

---

| | |
|---|---|
| **Introduced:** 7/8/2022 | **Bill No:** 2022-0592, **Version:** 3 |
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

The following Use Districts are established:

(a) NDO, Neighborhood Office

(b) LNC, Local Neighborhood Commercial

(c) NDI, Neighborhood Industrial

(d) UNC, Urban Neighborhood Commercial

(e) HC, Highway Commercial

(f) GI, General Industrial

(g) GT, Golden Triangle

(1) GT-A, Golden Triangle District A

(2) GT-B, Golden Triangle District B

(3) GT-C, Golden Triangle District C

(4) GT-D, Golden Triangle District D

(h) UC-MU, Urban Center - Mixed Use

(i) UC-E, Urban Center - Employment

(j) R-MU Residential - Mixed Use

902.01.A.3 Special Purpose Districts

The following Special Purpose Districts are established:

(a) EMI, Educational/Medical Institutional

(b) P, Park

(c) H, Hillside

(d) RIV, R-GI, Riverfront General Industrial

(2) RIV-IMU, Riverfront Industrial Mixed Use

(3) RIV-MU, Riverfront Mixed Use

(4) RIV-NS, Riverfront North Shore

---

| | |
|---|---|
| **Introduced:** 7/8/2022 | **Bill No:** 2022-0592, **Version:** 3 |
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

(5) RIV-RM, Riverfront Mixed Residential

902.01.B Overlay Zoning Districts

The following Overlay Zoning Districts are hereby established:

(1) FP-O, Flood Plain Overlay

(2) [Reserved].

(3) LS-O, Landslide-Prone Overlay

(4) UM-O, Undermined Area Overlay

(5) VP-O, View Protection Overlay

(6) Reserved

(7) IB-O, Institutional Boundary Overlay

(8) AS-O, Advertising Sign Overlay

(9) IPOD, Interim Planning Overlay District

(a) IPOD-1, Oakland IPOD

902.01.C Public Realm Districts

The following Public Realm Districts are established:

(1) Grandview Avenue

(2) Oakland

902.01.D Planned Development Districts

The following Planned Development Districts are hereby established:

902.01.D.1 SP, Specially Planned

The following Specially Planned Districts are hereby established:

(a) SP-1, Pittsburgh Technology Center

(b) [Reserved]

(c) [Reserved]

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

(d) SP-4, Station Square

(e) SP-5, South Side Works

(f) SP-6, Palisades Park

(g) SP-7, Oakland Planned Unit Development District

(h) SP-8, Riverfront Landing

(i) SP-9, Bakery Square

(j) SP-10, Hazelwood Green

(k) SP-11, Lower Hill Planned Development District

902.01.D.2 PUD, Planned Development

The following Planned Unit Development Districts are hereby established:

(a) RP, Residential Planned Unit Development

(b) CP, Commercial/Medical Unit Development

(c) AP, Residential/Commercial Planned Unit Development

902.01.D.3 Neighborhood Business Sign District

The following Neighborhood Business Sign Districts are hereby established:

(a) East Carson Street

902.02. – Zoning District Hierarchy.

References in this Code to less restrictive or more restrictive zoning districts refer to the base zoning districts established by Section 902.01 <https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINEZOCO_ARTINES_CH902ZODIGE_902.01ESZODI> and represent a progression from the most restrictive to least restrictive as follows:

A. H, Hillside

B. P, Park

C. R1D, Residential Single-Unit Detached

D. R1A, Residential Single-Unit Attached

E. R2, Residential Two-Unit

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

F. R3, Residential Three-Unit

G. RM, Residential Multi-Unit

H. R-MU Residential - Mixed Use

I. NDO, Neighborhood Office

I. LNC, Limited Neighborhood Commercial

J.K. OPD, Oakland Public Realm, SP-7, Oakland Planned Unit Development

L. UC-MU, Urban Center - Mixed Use

M. UC-E, Urban Center - Employment

K. N. NDI, Neighborhood Industrial

L. O. UNC, Urban Neighborhood Commercial

M. P. HC, Highway Commercial

N. Q. EMI, Educational/Medical Institution

O. R. UI, Urban Industrial District

P. S. GI, General Industrial

Public Realm districts, Downtown Districts, Riverfront Districts, Overlay Zoning Districts, and Planned Development Districts are not included in the zoning district hierarchy.

**Section 7.** The Pittsburgh Code, Title Nine, Zoning Code, Article II, Base Zoning Districts, is hereby amended at Chapter 904, Mixed Use Zoning Districts, to create a new Section 904.08, Urban Center Mixed Use as follows:

904.08. UC-MU Urban Center Mixed Use

904.08.A Purpose

The intent of the UC-MU District is to allow for commercial uses while also providing diverse housing options, including affordable and workforce housing. To ensure each new development contributes to the public realm, publicly accessible open spaces are required, along with active ground floor uses and adequate sidewalk width. To transition from smaller scale residential adjacent to this district, green spaces and other buffers are required between lower scale residential and taller new buildings. Commercial uses in the UC-MU should include neighborhood serving retail and other businesses serving residents and other uses.

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

904.08.B Use Regulations

904.08.B.1 Primary Uses

Primary Uses shall be allowed in the UC-MU District in accordance with the Use Table of Sec. 911.02.

904.08.B.2 Accessory Uses

Accessory Uses shall be allowed in the UC-MU District in accordance with the Accessory Use regulations of Chapter 912.

Surface parking shall be permitted as accessory to Multi-Unit Residential uses with at least fifty (50) dwelling units for no more than ten (10) spaces. Surface parking accessory to such Multi-Unit Residential uses shall be subject to the landscaping and screening standards of Chapter 918, regardless of the applicability related to number of spaces set forth therein, and shall not be located in any Build-To Zone.

904.08.C Site Development Standards

Site and Design Standards for the UC-MU shall be in accordance with 922.15.

904.08.C.1 Height

a. Base height without Performance Points is as illustrated in the Height Map, including limits in the mapped Height Reduction Zone. New development shall not to be permitted to use the Contextual Height Provisions of 925.07.D.

b. A minimum height of twenty-four (24) feet is required for Primary Structures.

c. The maximum height of a Primary Structure may exceed the base height, up to the maximum height illustrated in the Height Map, provided the following conditions are met:

(1) Height Bonus

To increase the base height as illustrated in the height map, a development must qualify for a height bonus as described in 904.08.C.5 and 915.07.

(2) Height Design Standards

To exceed the base height as permitted in the Height Map, buildings must meet the following design standards (See Figure 1):

(a) Where a building exceeds sixty-five (65) feet in height, step-backs are required as follows:

(i) A minimum front and street-side step-back of ten (10) feet is required for structures of sixty-five (65) feet in height or greater.

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

(ii) Structures in excess of eighty-five (85) feet in height shall meet one of the following standards beginning no higher than eighty-five (85) feet:

(A) Additional front and street-side step-backs of ten (10) feet are required, in addition to the ten (10) foot step-back required at sixty-five (65) feet.

(B) The portion of the structure that exceeds eighty-five (85) feet in height must be no more than eighty (80) percent of the building footprint. The required ten-foot step-back at sixty-five (65) feet shall be maintained.

(iii) Any required building step-back may begin at a lower height, including at ground level, but at a minimum must occur at the portion of a building exceeding sixty-five (65) feet or six (6) stories, whichever occurs first.

(iv) In the required stepbacks, above grade can be open air balconies and other architectural design features that project from the facade, provided they are not enclosed square footage. At ground level, open space shall be provided that meets Urban Open Space standards and may be used to meet Urban Open Space Requirements.

(b) When a development includes a new Primary Structure with a maximum height of more than twice the average height of an existing adjacent Primary Structure, a Green Buffer shall be provided. This provision applies to parcels abutting another parcel with the smaller structure, not across a Street or Way. The Green Buffer(s) shall be located as an interior sideyard(s) or rear yard along the lot line(s) abutting the lot(s) with the shorter structure(s). Additions to existing structures in the Green Buffer shall be permitted as a Special Exception, subject to the provisions of 922.07.

(c) For structures that exceed sixty-five (65) feet in height, applicants must submit a shadow study demonstrating the effects of the proposed structure to the Zoning Administrator. Pre- and post-development shadows must be included in the shadow study. The study must depict, at a minimum, mid-morning and mid-afternoon shadows cast on the following dates: March 21, June 21, September 22, and December 21, corresponding to the first day of each season.

Figure 1.

---

**Introduced:** 7/8/2022                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

BUILDING HEIGHT AND UPPER-STORY STEP BACKS FOR UC-E AND UC-MU



#### 904.08.C.2 Build-To Zone

a. When abutting a street, a build-to zone is imposed between zero (0) and ten (10) feet inward from the property line (See Figure 2). A build-to zone is imposed on all street frontages, except where the applicant can document that the frontage requirements cannot be met due to Green Buffer or Urban Open Space requirements.

b. When abutting a Street, a minimum of sixty (60) percent of the building frontage or façade must be located in the Build-To Zone.

Figure 2.

---

**Introduced:** 7/8/2022                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

STREET BUILD-TO ZONE FOR UC-MU

#### 904.08.C.3 Sidewalks

Along Boulevard of the Allies, continuous pedestrian sidewalks at least twelve (12) feet wide shall be provided, with a clear path exclusive of obstructions of at least six (6) feet. Street trees and other landscaping is required in this sidewalk to manage stormwater and provide an improved pedestrian experience. In all other locations in this district, continuous pedestrian sidewalks of at least ten (10) feet along a street, with a clear path exclusive of obstructions of at least five (5) feet. The continuous pedestrian sidewalk is inclusive of obstructions including street furniture, tree pits, and Green Infrastructure. If the sidewalk does not have the necessary width available in the public right-of-way as determined by the City, the additional width must be provided on the development parcel. Where the sidewalk is extended onto private property, this portion of the site may also be counted to Urban Open Space requirements, if that portion of the site otherwise meets the Urban Open Space standards. ==Buildings may encroach over the air space above any additional sidewalk width provided on a development parcel provided that the underside of the encroachment is a minimum of 2 (two) stories above grade.==

#### 904.08.C.4 Urban Open Space

Urban Open Space shall be provided at ground level on lots of twenty thousand (20,000) square feet or more in an amount at least equal to ten (10) percent of the lot area.

#### 904.08.C.5 Performance Points

a. New buildings and renovations in this district can utilize a subset of the bonus system of Section 915.07. Points earned by satisfying the bonus goals can be utilized in this district to achieve the bonus height as identified in Section 904.08.C.1. Each point equates to fifteen (15) feet of additional building

---

**Introduced:** 7/8/2022                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

height. Points may be transferred from a development site to another, if approved by Planning Commission as part of a Master Development Plan, in accordance with procedures as developed by the Department of City Planning.

b. All projects pursuing bonus options in the UC-MU shall meet the following requirements:

(1) All projects seeking Performance Points must show satisfactory efforts made to meet City of Pittsburgh policies regarding minority and women business enterprises found in Section 177A.02 of the City Code.

(2) All projects seeking Performance Points must meet the standards for the lowest point of the relevant energy consumption point for the project type (i.e., new construction or existing building).

c. In the UC-MU, the following bonus points are available:

(1) Zero Energy or Zero Carbon Buildings 915.07.D.1.a-1.c: Points as listed

(2) On-Site Energy Generation 915.07.D.3.a-3.e : Points as listed

(3) Affordable Housing: Section 915.07.D.4.a-4.d.; points modified as follows: 4.c is four (4) points; 4.d is six (6) points.

(4) Rainwater 915.07.D.5.a - 5.e: Points as listed

==(5) Building Reuse Section 915.07.D.6.c; Points as listed==

(6) On Site Public Art Section 915.07.D.9.a-9.c; Points as listed.

(7) Equitable Development: Section 915.07.D.12.a-12.c.e.g: points modified as follows: 12.c is five (5) points

(8) Fresh Food Access: Section 915.07.D.13.a Points as listed.

#### 904.08.C.6 Sustainable Development Bonuses

Developments are not eligible for the provisions of 915.04, Sustainable Development Bonus.

#### 904.08.D Review Procedures

#### 904.08.D.1 Site Plan Review

The following development actions are subject to Site Plan Review and approval per Section 922.04, unless such actions meet the thresholds of Section 904.08.D.2, in which case they are subject to Project Development Plan review and approval per Section 904.07:

a. All new construction of Primary Structures.

b. Any expansion or any exterior renovation to an existing Primary Structure.

---

**Introduced:** 7/8/2022                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

c. All new construction of parking structures.

Any existing single-family detached dwellings located within this District are exempt from Site Plan Review, unless otherwise explicitly required by the Zoning Code.

#### 904.08.D.2 Project Development Plan

The following development actions are subject to Project Development Plan review and approval by Planning Commission per Section 922.10.

a. All new construction of fifteen thousand (15,000) square feet or more in gross floor area.

b. Any addition or expansion of fifteen thousand (15,000) square feet or more in gross floor area or building footprint.

c. Commercial structured parking of forty (40) or more spaces.

d. Demolition of any Primary Structure of fifteen thousand (15,000) square feet or greater or a total of five (5) or more Primary Structures under the same ownership or control

e. New Parks and Recreation (Limited and General) uses of two thousand four hundred (2,400) square feet or greater, where Art Commission review and approval is not required.

Project Development Plans that are filed for building demolitions not part of an application for new construction shall include a report, study, or statement of the property's future use that meets the review criteria of Section 922.10.F.2.

**Section 8.** The Pittsburgh Code, Title Nine, Zoning Code, Article II, Base Zoning Districts, is hereby amended at Chapter 904, Mixed Use Zoning Districts, to create a new Section 904.09, Urban Center Employment as follows:

#### 904.09 UC-E Urban Center Employment

#### 904.09.A Purpose

The intent of the UC-E District is to support life sciences, healthcare, and other industrial sectors that benefit from locating together and provide employment for a variety of workers and educational levels. The priority is on employment over residential uses. As this district draws the most users and visitors, new development shall provide publicly accessible open space, active ground floor uses, adequate sidewalk width, and varied community services and amenities to create an active and inviting public realm experience. Multi-modal transportation is encouraged, especially transit, and where parking is provided it should be shared. Commercial uses in the UC-E include neighborhood serving retail and other businesses serving residents and users.

#### 904.09.B Use Regulations

#### 904.09.B.1 Primary Uses

**Introduced: 7/8/2022**  **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  **Status:** Passed Finally

Primary uses shall be allowed in the UC-E District in accordance with the Use Table of Sec. 911.02.

904.09.B.2 Accessory Uses

Accessory uses shall be allowed in the UC-E District in accordance with the Accessory Use regulations of Chapter 912.

904.09.C Site Development Standards

Site and Design Standards for the UC-E shall be in accordance with 922.15.

904.09.C.1 Height

a. Base height without Performance Points is as illustrated in the Height Map, including limits in the mapped Height Reduction Zone. New development shall not to be permitted to use the Contextual Height Provisions of 925.07.D.

b. A minimum height of forty (40) feet is required for Primary Structures.

c. The maximum height of a Primary Structure may exceed the base height, up to the maximum height illustrated in the Height Map, provided the following conditions are met:

(1) Height Bonus

To exceed the base height as illustrated in the height map, a development must qualify for a height bonus as described in Sections 904.09.C.4 and 915.07 <https://library.municode.com/pa/pittsburgh/codes/code_of_ordinance>/nodeId=PIZOCO_TITNINEZUCO_ARTVIDEST_CH915ENPEST_915.07PEPOSY>.

(2) Height Design Standards

To exceed the base height as permitted in the Height Map, buildings must meet the following design standards (See Figure 1):

(a) Where a building exceeds sixty-five (65) feet in height, step-backs are required as follows:

(i) A minimum front and street-side step-back of ten (10) feet is required for structures of sixty-five (65) feet in height or greater.

(ii) Structures in excess of eighty-five (85) feet in height shall meet one of the following standards beginning no higher than eighty-five (85) feet:

(A) Additional front and street-side step-backs of ten (10) feet are required, in addition to the ten (10) foot step-back required at sixty-five (65) feet.

(B) The portion of the structure that exceeds eighty-five (85) feet in height must be no more than eighty (80) percent of the building footprint. The required ten-foot step-back at sixty-five (65) feet shall be maintained.

---

**Introduced: 7/8/2022**  **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  **Status:** Passed Finally

(iii) Any required building step-back may begin at a lower height, including at ground level, but at a minimum must occur at the portion of a building exceeding sixty-five (65) feet or six (6) stories, whichever occurs first.

(iv) In the required stepbacks above grade, projections may include open balconies and other architectural design features that project from the façade, provided they are not enclosed square footage. At ground level, open space shall be provided that meets Urban Open Space standards and may be used to meet Urban Open Space Requirements.

(b) For structures that exceed sixty-five (65) feet in height, applicants must submit a shadow study demonstrating the effects of the proposed structure to the Zoning Administrator. Pre- and post-development shadows must be included in the shadow study. The study must depict, at a minimum, mid-morning and mid-afternoon shadows cast on the following dates: March 21, June 21, September 22, and December 21, corresponding to the first day of each season.

Figure 1.



BUILDING HEIGHT AND UPPER-STORY STEP BACKS FOR UC-E AND UC-MU

904.09.C.2 Sidewalks

Along Fifth Avenue and Forbes Avenue, continuous pedestrian sidewalks at least twenty (20) feet wide shall be provided, with clear path exclusive of obstructions of at least ten (10) feet. In all other locations in this district, continuous pedestrian sidewalks of at least ten (10) feet along a Street, with a clear path exclusive of obstructions of at least five (5) feet. The continuous pedestrian sidewalk is inclusive of obstructions including

---

**Introduced: 7/8/2022**  **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  **Status:** Passed Finally

street furniture, tree pits, and Green Infrastructure. If the sidewalk does not have the necessary width available in the public right-of-way as determined by the City, the additional width must be provided on the development parcel. Where the sidewalk is extended onto private property, the portion of the site may be used to meet Urban Open Space requirements, if that portion of the site otherwise meets the Urban Open Space standards. Buildings may encroach over the air space above any additional sidewalk width provided on a development parcel provided that the underside of the encroachment is a minimum of 2 (two) stories above grade.

904.09.C.3 Urban Open Space

Urban Open Space shall be provided at ground level on lots of twenty thousand (20,000) square feet or more in an amount at least equal to ten (10) percent of the lot area.

904.09.C.4 Performance Points

a. New buildings and renovations in this district can utilize a subset of the bonus system of Section 915.07. Points earned by satisfying the bonus goals can be utilized in this district to achieve the bonus height as identified in Section 904.09.C.1. Each point equates to fifteen (15) feet of additional building height. Points may be transferred from a development site to another, if approved by Planning Commission as part of a Master Development Plan, in accordance with procedures as developed by the Department of City Planning.

b. All projects pursuing bonus options in the UC-E shall meet the following requirements:

(1) All projects seeking Performance Points must show satisfactory efforts made to meet City of Pittsburgh policies regarding minority and women business enterprises found in Section 177A.02 of the City Code.

(2) All projects seeking Performance Points must meet the standards for the lowest point of the relevant energy consumption point for the project type (i.e., new construction or existing buildings).

c. In the UC-E, the following bonus points are available:

(1) Zero Energy or Zero Carbon Buildings 915.07.D.1.a-1.e; Points as listed

(2) On-Site Energy Generation 915.07.D.3.a-3.e.; Points as listed

(3) Affordable housing: Section 915.07.D.4.a-4.d.; points modified as follows: 4.c is four (4) points; 4.d is six (6) points.

(4) Rainwater 915.07.D.5.a - 5.c; Points as listed

(5) Building Reuse Section 915.07.D.6.c.; Points as listed

(6) On Site Public Art Section 915.07.D.9.a-9.e; Points as listed.

(7) Workforce development: Section 915.07.D.12.a-12.e points modified as follows.c. 12.c is five (5)

---

**Introduced: 7/8/2022**  **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  **Status:** Passed Finally

points.

904.09.C.5 Sustainable Development Bonuses

Developments are not eligible for the provisions of 915.04, Sustainable Development Bonus.

904.09.D Review Procedures

904.09.D.1 Site Plan Review

The following development actions are subject to Site Plan Review and approval per Section 922.04, unless such actions meet the thresholds of Section 904.09.D.2, in which case they are subject to Project Development Plan review and approval.

a. All new construction of Primary Structures.

b. Any expansion or any exterior renovation to an existing Primary Structure.

c. All new construction of parking structures.

Any existing single-family detached dwellings located within this District are exempt from Site Plan Review, unless otherwise specifically required by the Zoning Code.

904.09.D.2 Project Development Plan

The following development actions are subject to Project Development Plan review and approval by Planning Commission per Section 922.10.

a. All new construction of fifteen thousand (15,000) square feet or more in gross floor area.

b. Any addition or expansion of fifteen thousand (15,000) square feet or more in gross floor area or building footprint.

c. Commercial structured parking of forty (40) or more spaces.

d. Demolition of any Primary Structure of fifteen thousand (15,000) square feet or greater or a total of five (5) or more Primary Structures under the same ownership or control

e. New Parks and Recreation (Limited and General) uses of two thousand four hundred (2,400) square feet or greater, where Art Commission review and approval is not required.

Project Development Plans that are filed for building demolitions not part of an application for new construction shall include a report, study, or statement of the property's future use that meets the review criteria of Section 922.10.E.2.

Section 9. The Pittsburgh Code, Title Nine, Zoning Code, Article II, Base Zoning Districts, is hereby amended at Chapter 904, Mixed Use Zoning Districts, to create a new Section 904.10, Residential Mixed Use as follows:

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

904.10. R-MU Residential Mixed Use

904.10.A Purpose

The intent of this district is to provide healthy, attractive, and affordable rental housing in multifamily buildings. Encourage a mixture of restored historic homes and modern apartment buildings, with neighborhood serving retail.

904.10.B Use Regulations

904.10.B.1 Primary Uses

Primary uses shall be allowed in the R-MU District in accordance with the Use Table of Sec. 911.02.

904.10.B.2 Accessory Uses

Accessory Uses shall be allowed in the R-MU District in accordance with the Accessory Use regulations of Chapter 912.

904.10.C Site Development Standards

Site and Design Standards for the R-MU shall be in accordance with 922.15.

904.10.C.1 Height

a.  Base height without Performance Points is as illustrated in the Height Map, including limits in the mapped Height Reduction Zone. New development shall not to be permitted to use the Contextual Height Provisions of 925.07.D.

b. A minimum height of twenty-four (24) feet is required for Primary Structures.

c. The maximum height of a Primary Structure may exceed the base height up to the maximum height illustrated in the Height Map, provided the following conditions are met:

(1) Height Bonus

To exceed the base height as illustrated in the height map, a development must qualify for a height bonus as described in Sections 904.10.C.6 and *915.07* <https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?>

(2) Height Design Standards

To exceed the height the base height as permitted in the Height Map, buildings must meet the following design standards (See Figure 3):

(a) Where a building exceeds forty-five (45) feet in height, step-backs are required as follows:

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(i) A minimum front and street-side step-back of ten (10) feet is required for structures of forty-five (45) feet in height or greater.

(ii) Structures in excess of sixty-five (65) feet in height shall meet one of the following standards beginning no higher than sixty-five (65) feet:

(A) Additional front and street-side step-backs of ten (10) feet are required, in addition to the ten (10) foot step-back required at forty-five (45) feet.

(B) The portion of the structure that exceeds sixty-five (65) feet in height must be no more than eighty (80) percent of the building footprint. The required ten-foot step-back at forty-five (45) feet shall be maintained.

(iii) Any required building step-back may begin at a lower height, including at ground level, but at a minimum must occur at the portion of a building exceeding forty-five (45) feet or six (4) stories, whichever occurs first.

(iv) In the required stepbacks, above grade can be open air balconies and other architectural design features that project from the façade, provided they are not enclosed square footage. At ground level, open space shall be provided that meets Urban Open Space standards and may be used to meet Urban Open Space Requirements.

(b) When a development includes a new Primary Structure with a maximum height of more than twice the average height of an existing adjacent Primary Structure, a Green Buffer shall be provided. The Green Buffer(s) shall be located as an interior sideyard(s) or rear yard along the lot line(s) abutting the lot(s) with the shorter structure(s). Additions to existing structures in the Green Buffer shall be permitted as a Special Exception, subject to the provisions of 922.07.

(c) For structures that exceed sixty-five (65) feet in height, applicants must submit a shadow study demonstrating the effects of the proposed structure to the Zoning Administrator. Pre- and post-development shadows must be included in the shadow study. The study must depict, at a minimum, mid-morning and mid-afternoon shadows cast on the following dates: March 21, June 21, September 22, and December 21, corresponding to the first day of each season.

Figure 3.

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

BUILDING HEIGHT AND UPPER STORY STEP BACKS FOR R-MU



904.10.C.2 Rear Setback

A five (5) foot rear setback shall be required when not adjacent to a way, two (2) feet if adjacent to a way.

904.10.C.3 Build to Zone

(1) When abutting a Street, a build-to zone is imposed between zero (0) and twenty (20) feet inward from the property line (See Figure 4).

(2) When abutting a Street, a minimum of sixty (60) percent of the building frontage or façade must be located in the Build-To Zone.

(3) Where a project has frontage on two (2) or more Streets, a build-to zone is imposed on all the Street frontages, except where the applicant can document that the frontage requirements cannot be met due to setback, Green Buffer, or Urban Open Space requirement.

Figure 4

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

STREET BUILD-TO ZONE FOR R-MU



Sidewalks

Continuous pedestrian sidewalks at least ten (10) feet wide shall be provided, with clear path exclusive of obstructions of at least five (5) feet. The continuous pedestrian sidewalk is inclusive of obstructions including street furniture, tree pits, and Green Infrastructure. If the sidewalk does not have the necessary width available in the public right-of-way as determined by the City, the additional width must be provided on the development parcel. Where the sidewalk is extended onto private property, this portion of the site may also be counted to Urban Open Space requirements, if that portion of the site otherwise meets the Urban Open Space standards. Buildings may encroach over the air space above any additional sidewalk provided on a development parcel provided that the underside of the encroachment is a minimum of 2 (two) stories above grade.

904.10.C.5 Urban Open Space

Urban Open Space shall be provided at ground level on lots of twenty thousand (20,000) square feet or more in an amount at least equal to ten (10) percent of the lot area.

904.10.C.6 Performance Points

a. New buildings and renovations in this district can utilize a subset of the bonus system of Section 915.07. Points earned by satisfying the bonus goals can be utilized in this district to achieve the bonus height as identified in Section 904.10.C.1. Each point equates to fifteen (15) feet of additional building height. Points may be transferred from a development site to another, if approved by Planning Commission as part of a Master Development Plan, in accordance with procedures as developed by the Department of City Planning.

b. All projects pursuing bonus options in the R-MU shall meet the following requirements:

(1) All projects seeking Performance Points must show satisfactory efforts made to meet City of Pittsburgh policies regarding minority and women business enterprises found in Section 177A.02 of the City Code.

(2) All projects seeking Performance Points must meet the standards for the lowest point of the relevant energy consumption point for the project type (i.e., new construction or existing buildings).

c. In the R-MU, the following bonus points are available:

(1) Zero Energy or Zero Carbon Buildings 915.07.D.1.a-1.e; Points as listed

(2) On-Site Energy Generation 915.07.D.3.a-3.c.; Points as listed

(3) Affordable housing: Section 915.07.D.4.a-4.d ; points modified as follows: 4.c is four (4) points; 4.d is six (6) points.

(4) Rainwater 915.07.D.5.a - 5.c; Points as listed

(5) Building Reuse Section 915.07.D.6.b- 6.c; Points as listed

(6) On Site Built Art Section 915.07.D.9.a-9.c; Points as listed.

904.09.C.7 Sustainable Development Bonuses

Developments are not eligible for the provisions of 915.04, Sustainable Development Bonus.

904.10.D Review Procedures

904.10.D.1 Site Plan Review

The following development actions are subject to Site Plan Review and approval per Section 922.04, unless such actions meet the thresholds of Section 904.10.D.2, in which case they are subject to Project Development Plan review and approval:

a. All new construction of Primary Structures.

b. Any expansion of an exterior renovation to an existing Primary Structure.

c. All new construction of parking structures.

Any existing single-family detached dwellings located within this District are exempt from Site Plan Review, unless otherwise specifically required by the Zoning Code.

904.10.D.2 Project Development Plan

The following development actions are subject to Project Development Plan review and approval by Planning Commission per Section 922.10.

---

a. All new construction of fifteen thousand (15,000) square feet or more in gross floor area.

b. Any addition or expansion of fifteen thousand (15,000) square feet or more in gross floor area or building footprint.

c. Commercial structured parking of forty (40) or more spaces.

d. Demolition of any Primary Structure of fifteen thousand (15,000) square feet or greater or a total of five (5) or more Primary Structures under the same ownership or control

e. New Parks and Recreation (Limited and General) uses of two thousand four hundred (2,400) square feet or greater, where Art Commission review and approval is not required.

Project Development Plans that are filed for building demolitions not part of an application for new construction shall include a report, study, or statement of the property's future use that meets the review criteria of Section 922.10.E.2.

**Section 10.** The Pittsburgh Code, Title Nine, Zoning Code, Article IV, Planning Districts is hereby amended in Chapter 908.03, Oakland Public Realm as follows:

908.03. Oakland Public Realm District.

908.03.A General Boundaries

Specific boundaries of the Oakland Public Realm District are mapped on the City's Zoning District Map.

908.03.B Objective

Oakland is a place of unusual density and concentrated public activity due to the lively environment of highly mixed uses, monumental and grand civic buildings, and large educational and medical institutions. The intent of the Oakland Public Realm District (OPR) is to provide regulations for the development and growth of Oakland in an effort to preserve the mixed use nature of the community while enhancing the sense of place within Oakland's public areas. The Oakland Improvement Strategy, A Comprehensive Strategy for the Development, Improvement and Zoning of Oakland's Public Corridors, Housing and Commercial Areas, identified the need to create zoning standards reflective of the vast areas of Oakland used and seen by the general public. Four (4) sub-districts have been designed to accentuate the positive attributes of each area, and to protect and enhance the fine qualities of Oakland.

Specifically, the intent of the Oakland Public Realm District is to:

To enact and implement new zoning districts to enhance and protect Oakland's special character;

To protect the character of less intensive uses from impacts of more intensive uses;

To provide a guide to non-residential and residential development in order to encourage growth that will be both pedestrian friendly and compatible with the existing neighborhood; and

---

To encourage mixed use development that allows non-residential and residential uses to co-exist without conflict.

908.03.C General Provisions

The provisions of this section shall apply to the entire Oakland Public Realm District unless otherwise noted hereunder.

*908.03.C.1 Use*

Permitted uses shall be those listed in each subdistrict below.

*908.03.C.2 Development Standards*

Site Development Standards are listed in each subdistrict below.

The Residential Compatibility Standards of Chapter 916 shall impose additional height and setback standards on new High Density and Very High Density Residential and nonresidential development abutting Residential and H Districts.

The Environmental Performance Standards of Chapter 915 shall impose additional restrictions on site development.

New development shall be allowed to use Contextual Setbacks and Contextual Building Heights in accordance with the provisions of Sec. 925.06 and Sec. 925.07.

908.03.D Oakland Public Realm Subdistricts

908.03.D.1 Oakland Subdistrict A OPR-A: Atwood Street District

(a) Purpose

To encourage limited retail and restaurant uses in the ground floors of residential-like structures.

To maintain the existing residential scale and character of the street in order to address potential impacts of commercial development in a residential area.

(b) Permitted Uses

The following uses shall be permitted by-right in the OPR-A Subdistrict.

Single-unit detached residential

Single-unit attached residential

Two-unit residential

Art or Music Studio

---

Medical Office (limited)

Restaurant, Fast Food (limited)

Restaurant (limited)

Retail Sales and Services (limited)

Sidewalk Cafe

Accessory uses shall be allowed in accordance with the Accessory Use regulations of Chapter 912.

(c) Site Development Standards

| Site Development Standard | OPR-A Regulation |
|---|---|
| Minimum Lot Size | None |
| Maximum Floor Area Ratio | 3:1 |
| Minimum Front Setback | 0 feet |
| Minimum Rear Setback. When not adjacent to way. When adjacent to way | 20 feet. 0 feet |
| Minimum Interior Sideyard Setback | 0 feet |
| Minimum Street Sideyard Setback | 5 feet |
| Maximum Lot Coverage | 80% |
| Maximum Height | 40 feet |

(d) Specific Project Development Plan Standards

No parking shall be permitted in the front yard; interior garages on the front facade are not permitted. Accessory detached garages are permitted only in the rear yard.

New construction shall maintain a sixty-five (65) percent building frontage along the established build-to-line.

The design of any structure used for non-residential purposes that does not occupy a structure originally designed as a residence shall be residential in character. The building design may employ sloped roofs, gables, porches, double-hung windows, and other elements associated with residential structures.

Entrances to first floor uses shall provide a prominent and highly visible street level doorway or entrance on the facade of the building that fronts onto Atwood Street.

(e) Use Exceptions

Use exceptions are the same as those for the Neighborhood Office NDO district as listed in the Use Table in Chapter 911.02.

**Top-left panel:**

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

~~908.03.D.2 Oakland Subdistrict B/OPR-B: Craig Street~~

(a) Purpose

To encourage retail and restaurant uses in the ground floors of buildings.

To encourage a variety of residential and office-like uses on the upper floors of buildings.

(b) Permitted Uses

The following uses shall be permitted by-right in the OPR-B Subdistrict:

Two-unit residential

Three-unit residential

Multi-unit residential

Art or Music Studio

Bank or Financial Institution (limited)

Bed and Breakfast (limited)

Community Center (limited)

Cultural Services (limited)

Library (limited and general)

Medical Office (limited and general)

Office (limited and general)

Religious Assembly (limited)

Restaurant, Fast Food (limited)

Restaurant (limited)

Retail Sales and Services (limited)

Sidewalk Cafe

Accessory uses in accordance with the Accessory Use regulations of Chapter 912. In addition, accessory uses in the uses in the OPR-B Subdistrict shall not exceed twenty-five (25) percent of the gross floor area of the primary use.

(c) Site Development Standards

| | |
|---|---|

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(d) Specific Project Development Plan Standards

No accessory surface parking will be permitted without the applicant providing the alternatives considered and the reasons why those alternatives were not determined to be acceptable by the applicant.

New construction shall maintain a sixty-five (65) percent building frontage along the established build-to-line.

The street level façade shall be transparent between the height of three (3) feet and eight (8) feet above the walkway grade for no less than sixty (60) percent of the horizontal length of the building façade.

All Primary Structures shall provide a prominent and highly visible street level doorway or entrance on the façade of the building that fronts on Craig Street.

(e) Use Exceptions

Use exceptions are the same as those for the Local Neighborhood Commercial/LNC district as listed in the Use Table in Chapter 911.02.

(f) Special Exception for Height in the OPR-B Subdistrict

Additional height above sixty (60) feet in the Oakland Public Realm Subdistrict B shall be allowed in accordance with the Special Exception procedures of Section 922.07 with the following standards:

The maximum height shall be eighty-five (85) feet;

The additional height will not create detrimental impacts on nearby properties through consideration of the additional traffic impacts caused by the additional height, the impacts on views from such properties, and the impacts of the bulk of the buildings on such properties.

**Bottom-left panel:**

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

~~908.03.D.3 Oakland Subdistrict C/OPR-C: Fifth & Forbes District~~

~~(a) Purpose~~

~~To provide a district where an intensive concentration of mixed uses that accommodate office, retail, housing, institutional, classrooms, and student housing of all types.~~

~~To encourage continuous retail business frontage at street or similar pedestrian level, with additional retail, office, classrooms, institutional, and residential uses as the primary uses of upper stories of buildings.~~

~~To encourage private development which creates a vibrant and attractive pedestrian environment along the public streets.~~

~~(b) Permitted Uses~~

~~The following uses shall be permitted by-right in the OPR-C Subdistrict:~~

~~Multi-unit Residential~~

~~Art or Music Studio~~

~~Bank or Financial Institution (limited and general)~~

~~Bed and Breakfast (limited and general)~~

~~Child Care (limited and general)~~

~~Community Center (limited and general)~~

~~Cultural Services (limited and general)~~

~~Grocery Store (limited)~~

~~Hotel/Motel (limited and general)~~

~~Laboratory/Research Services (limited and general)~~

~~Library (limited and general)~~

~~Medical Office (limited and general)~~

~~Office (limited and general)~~

~~Parking Structure (limited and general)~~

~~Religious Assembly (limited and general)~~

~~Restaurant, Fast Food (limited)~~

~~Restaurant (limited and general)~~

**Bottom-right panel:**

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

~~Retail Sales and Services (limited and general)~~

~~Sidewalk Cafe~~

~~Vocational School (limited)~~

~~Accessory uses in accordance with the Accessory Use regulations of Chapter 912. In addition, accessory uses in the OPR-C Subdistrict shall not exceed twenty-five (25) percent of the gross floor area of the primary use.~~

~~(c) Site Development Standards~~

| ~~Site Development Standard~~ | ~~OPR-C Regulation~~ |
|---|---|
| ~~Minimum Lot Size~~ | ~~None~~ |
| ~~Maximum Floor Area Ratio~~ | ~~6:1 (see Section 908.03.D.3.g for Special Exception for additional floor area)~~ |
| ~~Minimum Front Setback~~ | ~~0 feet~~ |
| ~~Minimum Rear Setback  When not adjacent to way  When adjacent to way~~ | ~~0 feet  20 feet~~ |
| ~~Minimum Interior Sideyard Setback~~ | ~~0 feet~~ |
| ~~Minimum Street Sideyard Setback~~ | ~~0 feet~~ |
| ~~Maximum Lot Coverage~~ | ~~90%~~ |
| ~~Maximum Height~~ | ~~85 feet (see Section 908.03.D.3.f for Special Exception for additional height)~~ |

~~(d) Specific Project Development Plan Standards~~

~~No accessory surface parking will be permitted without the applicant providing the alternatives considered and the reasons why those alternatives were not determined to be acceptable by the applicant.~~

~~New construction shall maintain eighty-five (85) percent building frontage along the established build-to-line.~~

~~The street level façade shall be transparent between the height of three (3) feet and eight (8) feet above the walkway grade for no less than sixty (60) percent of the horizontal length of the building façade.~~

~~Ground floor retail or commercial space shall be provided along the entire building frontage along Forbes and Fifth Avenues.~~

~~All Primary Structures shall provide a prominent and highly visible street level doorway or entrance on the~~

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

facades of the building which front onto either Fifth Avenue, Forbes Avenue or cross streets.

Continuous pedestrian sidewalks shall be provided along the main facade of building that front onto Forbes Avenue and Fifth Avenue.

(e) Use Exceptions

Use exceptions are the same as those for the Urban Neighborhood Commercial/UNC district as listed in the Use Table in Chapter 911.02.

(f) Special Exception for Height in the OPR-C Subdistrict

Additional height above eighty-five (85) feet in the Oakland Public Realm Subdistrict C shall be allowed in accordance with the Special Exception procedures of Section 922.07 with the following standards:

The building shall have frontage along Fifth Avenue;

The maximum height shall be one hundred twenty (120) feet, measured from Fifth Avenue;

The additional height will not create detrimental impacts on nearby residential properties through consideration of the additional traffic impacts caused by the additional height, the impacts on views from such residential properties, and the impacts of the bulk of the buildings on such residential properties.

(g) Special Exception for FAR in the OPR-C Subdistrict

Additional FAR allowance in the Oakland Public Realm Subdistrict C shall be allowed in accordance with the Special Exception procedures of Section 922.07 with the following standards:

The maximum FAR for structures that contain residential dwelling units shall be 7.5, provided that the total amount of residential floor area equals or exceeds twice the amount of bonus floor area.

The additional density will not create detrimental impacts through consideration of the additional traffic impacts caused by the additional density and the impacts of the bulk of the buildings on such residential properties.

908.03.D.4 Oakland Subdistrict D/OPR-D: Boulevard of the Allies

(a) Purpose

To encourage the redevelopment of the Boulevard of the Allies as a grand boulevard and an entrance to Oakland and Schenley Park as well as an attractive connection to Downtown.

To create consistency in scale, size and design of buildings on the Boulevard of the Allies in order to reflect the desire to create an urban boulevard.

To address the need for an alternative and safe pedestrian environment which promotes strong connections between neighborhoods on both sides of the street.

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(b) Permitted Uses

The following uses shall be permitted by right in the OPR-D Subdistrict:

Single-unit attached residential

Two-unit residential

Three-unit residential

Multi-unit residential

Housing for the Elderly (limited)

Animal Care (limited)

Art or Music Studio

Bank or Financial Institution (limited and general)

Bed and Breakfast (limited and general)

Child Care (limited and general)

Community Center (limited and general)

Cultural Services (limited and general)

Grocery Store (limited and general)

Hotel/motel (limited and general)

Laboratory / Research Services (limited and general)

Library (limited and general)

Medical Office (limited and general)

Nursery (limited)

Office (limited and general)

Parking Structure (limited and general)

Parks and Recreation, Indoor (limited)

Parks and Recreation, Outdoor (limited)

Religious Assembly (limited and general)

Restaurant, Fast Food (limited)

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

Restaurant (limited and general)

Retail Sales and Services (limited and general)

Safety Service

Sidewalk Cafe

Vocational School (limited)

Accessory uses in accordance with the Accessory Use regulations of Chapter 912. In addition, accessory uses in the OPR-D Subdistrict shall not exceed twenty-five (25) percent of the gross floor area of the primary use.

(c) Site Development Standards

| Site Development Standard | OPR-D Regulation |
|---|---|
| Minimum Lot Size | None |
| Maximum Floor Area Ratio - When not located within 1,500 ft. of a Major Transit Facility - When located within 1,500 ft. of a Major Transit Facility | - 4:1 - - 5:1 |
| Maximum Lot Coverage | 80% |
| Minimum Front Setback | 20 feet |
| Minimum Rear Setback - When not adjacent to way - When adjacent to way | - 20 feet- 0 feet |
| Minimum Sideyard Setback | 0 feet |
| Maximum Height | 60 feet (see Section 908.03.D.4.f for Special Exception for additional height) |

(d) Specific Project Development Plan Standards

Any parking area adjacent to the Boulevard of the Allies must be adequately screened from view with decorative fencing or landscaping.

New construction shall maintain a fifty (50) percent building frontage along the established build-to-line.

Varied building designs that avoid long, flat facades are required, and continuous linear strip developments are prohibited.

Each principal building on a site shall have a clearly-defined, highly-visible entrance. Main entrances to buildings should be emphasized using larger doors and framing devices such as deep overhangs, recesses,

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

peaked roof forms, an arches. This entrance shall face the Boulevard of the Allies.

Sidewalks at least six (6) feet in width shall be provided along the Boulevard of the Allies, and at least one (1) continuous pedestrian walkway must be provided from the street to the principal building entrance.

Street trees are required along the entire frontage along the Boulevard of the Allies according to standards outlined in Section 918: Landscaping & Screening Standards. Additional landscaping shall be in the required twenty-foot front setback with the purpose to screen buildings and parking areas; such landscaping shall be a considered in the Project Development Plan review process. Use of earthen berms, low walls, ornamental fences and other such screening types should be considered as components of the landscaping plan in the frontyard setback.

(e) Use Exceptions

Use exceptions are the same as those for the Urban Neighborhood Commercial/UNC district as listed in the Use Table in Chapter 911.02.

(f) Special Exception for Height in the OPR-D Subdistrict

Additional height above sixty (60) feet in the Oakland Public Realm Subdistrict D shall be allowed in accordance with the Special Exception procedures of Section 922.07 with the following standards:

The maximum height shall be eighty-five (85) feet;

The additional height will not create detrimental impacts on nearby properties through consideration of the additional traffic impacts caused by the additional height, the impacts on views from such properties, and the impacts of the bulk of the buildings on such properties.

**Section 11.** The Pittsburgh Code, Title Nine, Zoning Code, Article V, Use Standards is hereby amended in Chapter 911, Use Table as follows:

**911.02 Use Table.**

| | | |
|---|---|---|
| | | |
| | | |

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

*Residential Uses*

Single Unit Detached Residential

Single Unit Attached Residential

Two Unit Residential *(Ord. 3)*

Three Unit Residential *(Ord. 3)*

Multi Unit Residential

*Assisted Living*

Assisted Living Class

Assisted Living Class

Assisted Living Class

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

*Community Home*

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

*Dormitory*

*(Ord. 11/November 23, 2005)*
*(Ord. 24/August 21, 2006)(A 1/23)*

*Fraternity/Sorority*

*(Ord. 12/November 23, 2005)*

Housing for the Elderly (Limited)

Housing for the Elderly (General)

Multi Suite Residential (Limited) *(22, 2005)*

Multi Suite Residential (General) *(3, 2005)*

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

Personal Care Residence (Large)

Personal Care Residence (Small)

**Introduced:** 7/8/2022  

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  

**Status:** Passed Finally



Non Residential Uses
Adult Entertainment
Agriculture (General)
Agriculture (Limited) With Beekeeping
Agriculture (Limited)
Amusement Arcade

---

**Introduced:** 7/8/2022  

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  

**Status:** Passed Finally

Animal Care (Limited)
Animal Care (General)
Art or Music Studio
Public Assembly (Limited) 3005)
Public Assembly (General) 3005)

Bank or Financial Institution (Limited)
Bank or Financial Institution (General) (Ord. 32 November 23, 2005)
Basic Industry

---

**Introduced:** 7/8/2022  

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  

**Status:** Passed Finally

Bed and Breakfast (Limited)
Bed and Breakfast (General)
Car Wash



Cemetery
Check Cashing

---

**Introduced:** 7/8/2022  

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development  

**Status:** Passed Finally

Child Care

Introduced: 7/8/2022

Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally





Introduced: 7/8/2022

Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

Introduced: 7/8/2022

Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally



Introduced: 7/8/2022

Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally



**Introduced:** 7/8/2022

**Committee:** Committee on Land Use and Economic Development

**Bill No:** 2022-0592, **Version:** 3

**Status:** Passed Finally

**Introduced:** 7/8/2022

**Committee:** Committee on Land Use and Economic Development

**Bill No:** 2022-0592, **Version:** 3

**Status:** Passed Finally

**Introduced:** 7/8/2022

**Committee:** Committee on Land Use and Economic Development

**Bill No:** 2022-0592, **Version:** 3

**Status:** Passed Finally

**Introduced:** 7/8/2022

**Committee:** Committee on Land Use and Economic Development

**Bill No:** 2022-0592, **Version:** 3

**Status:** Passed Finally

**Panel 1 (Page 49 of 185)**

Introduced: 7/8/2022 — Bill No: 2022-0592, Version: 3
Committee: Committee on Land Use and Economic Development — Status: Passed Finally



City of Pittsburgh — Page 49 of 185 — Printed on 3/15/2023

**Panel 2 (Page 50 of 185)**

Introduced: 7/8/2022 — Bill No: 2022-0592, Version: 3
Committee: Committee on Land Use and Economic Development — Status: Passed Finally



City of Pittsburgh — Page 50 of 185 — Printed on 3/15/2023

**Panel 3 (Page 51 of 185)**

Introduced: 7/8/2022 — Bill No: 2022-0592, Version: 3
Committee: Committee on Land Use and Economic Development — Status: Passed Finally



City of Pittsburgh — Page 51 of 185 — Printed on 3/15/2023

**Panel 4 (Page 52 of 185)**

Introduced: 7/8/2022 — Bill No: 2022-0592, Version: 3
Committee: Committee on Land Use and Economic Development — Status: Passed Finally



City of Pittsburgh — Page 52 of 185 — Printed on 3/15/2023

Introduced: 7/8/2022     Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development     Status: Passed Finally

Salvage Yard

School, Elementary or Secondary

School, Elementary or Secondary (Lim...

School, Elementary or Secondary (Gen...

Service Station

Sidewalk Cafe

Transit Facility

Utility (Limited)

## Top-right quadrant

Introduced: 7/8/2022     Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development     Status: Passed Finally

Utility (General)

Vehicle/Equipment Repair (Limited)

Vehicle/Equipment Repair (General)

## Bottom-left quadrant

Introduced: 7/8/2022     Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development     Status: Passed Finally

Vehicle/Equipment Sales

Vehicle/Equipment Sales (Limited)

-Ord.
Deleted 22-2009 & U 26(Ord. 12-2009)

Vehicle/Equipment Sales (General)

Vocational School

Vocational School (Limited)

Vocational School (General)

Warehouse

Warehouse (Limited)

## Bottom-right quadrant

Introduced: 7/8/2022     Bill No: 2022-0592, Version: 3

**Committee:** Committee on Land Use and Economic Development     Status: Passed Finally

Warehouse (General)

Warehouse, Residential Storage

Welding or Machine Shop

New and Unlisted Uses

911.04. Use Standards.

No permit shall be issued for any development or use of land unless the activity is in compliance with all applicable provisions of this Code, including the standards established in this section. For the purposes of this Chapter, the following terms, phrases, words and their derivations shall have the meaning given herein unless

**Introduced:** 7/8/2022     **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

otherwise specifically provided in this Chapter, or Chapter 926, unless the context clearly indicates otherwise or unless such meaning would be inconsistent with the manifest intent of Council.

911.04.A Standards That Apply to Uses Listed in the Use Table

The following standards apply to uses listed in the Use Table, to the extent stated.

911.04.A.1 Adult Entertainment

Adult Entertainment uses shall be subject to the following standards:

(a) Separation From Other Adult Entertainment Uses

The building housing an Adult Entertainment use shall not be located within one thousand (1,000) feet of any of the following uses: Adult Entertainment uses, Amusement Arcade, Hotel/Motel, bar or nightclub or Gaming Enterprise. This one thousand-foot area shall be defined by a radius of one thousand (1,000) feet from the center point of the subject building. This separation distance requirements may be waived upon a determination of the following:

(1) That the proposed use shall not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this Zoning Code shall be observed;

(2) That the establishment of an additional regulated use in the area shall not be contrary to any program of neighborhood conservation nor shall it interfere with any program of urban renewal; and

(3) That all applicable regulations of this Zoning Code shall be observed.

(b) Separation From Other Uses

The building housing an Adult Entertainment use shall be located at least five hundred (500) feet from the following uses. The five hundred-foot area shall be defined by a radius of five hundred (500) feet from the property line of the subject building:

(1) Religious Assembly;

(2) Library;

(3) Cultural Service;

(4) Child Care Center;

(5) Elementary or Secondary School;

(6) Community Center;

(7) Single-Unit Detached Residential;

---

(8) Single-Unit Attached Residential;

(9) Two-Unit Residential;

(10) Three-Unit Residential; and

(11) Public Assembly (General).

(c) Prohibited Activities

An Adult Entertainment use shall not be conducted in any manner that provides the observation of any material depicting, describing or relating to "specified sexual activities" or "specified anatomical areas", from any public right-of-way. This provision shall apply to any display, decoration or show window.

(d) Operational Standards

(1) Establish a minimum size space for adult cabaret performance.

(2) Establish a minimum size space for showing movies or videos.

(3) Stages are required for all live entertainment.

(4) A floor layout of premises is required that ensures that the manager has visual control of the premises.

(5) Operating days and hours shall be specified.

(6) Access control measures shall be specified.

(7) Posting and enforcement of a "no-loitering" policy is required.

(8) All Adult Entertainment establishments shall be licensed with the Bureau of Building Inspections.

911.04.A.2(a) Agriculture (General)

Agriculture (General) shall be subject to the following standards:

(1) The site shall be at least two (2) acres in size;

(2) No structure, including beehives, chicken coops, or any similar accessory structures, except a dwelling unit shall be located within fifty (50) feet of any lot line;

(3) The sale of non-mechanical agricultural and farm products that are grown, used, produced on site, or are part of an affiliated Community Supported Agriculture program shall be permitted and shall comply with the standards of Section 912.06, Outdoor Retail Sales and Service (Accessory Use);

---

(4) Killing or dressing of animals raised on the premises shall be permitted if conducted entirely within an enclosed building;

(5) The keeping of poultry birds, livestock, and domestic small farm animals shall be permitted within a securely fenced and enclosed area. Only chickens, ducks, bees, and goats may be permitted when there is not also a residential use of the property;

(6) All animal structures and roaming areas shall be kept sanitary and free from accumulations of animal excrement and objectionable odor;

(7) All seed, fertilizer, and animal feed shall be stored in a secured, rodent-proof container and housed within an enclosed structure; and

(8) All applications shall be in compliance with Environmental Overlay District regulations of Chapter 906.

911.04.A.2(b) Agriculture (Limited) With Beekeeping

Agriculture (Limited) with Beekeeping shall be subject to the following standards:

(1) The sale of non-mechanical agricultural and farm products that are grown, used, produced on site, or are part of an affiliated Community Supported Agriculture program shall be permitted, and shall comply with the standards of Section 912.06, Outdoor Retail Sales and Service (Accessory Use);

(2) The keeping of poultry, livestock, and domestic small farm animals is not permitted;

(3) For property with a minimum of two thousand (2,000) square feet in size, the property owner is permitted to keep two (2) beehives. For every additional two thousand (2,000) square feet of property, the owner is permitted two (2) additional beehives.

(4) All structures necessary for and related to the housing of honeybees shall be subject to any required setbacks of the underlying zoning district, but shall in all cases be a minimum of ten (10) feet from any property line;

(5) A "flyway barrier" of at least six (6) feet in height shall be provided at all places on the property line that are within twenty (20) feet of the hive(s). The "flyway barrier" shall consist of a solid fence or wall, dense vegetation, or combination thereof. No flyway is required for hives that are located on porches or balconies at least ten (10) feet above grade, except where such porch or balcony is located less than five (5) feet from a property line.

(6) Roof-mounted beehives shall be located on primary and accessory structures no lower than ten (10) feet from grade and shall not be within the required setback;

(7) All seed, fertilizer, or similar products shall be stored in a secured, rodent-proof container

---

and housed within an enclosed structure; and

(8) All applications shall be subject to the Environmental Overlay District regulations of Chapter 906.

911.04.A.2(c) Agriculture(Limited)

Agriculture (Limited) shall be subject to the following standards:

(1) The sale of non-mechanical agricultural and farm products that are grown, used, produced on site, or are part of an affiliated Community Supported Agriculture program shall be permitted, and shall comply with the standards of Section 912.06, Outdoor Retail Sales and Service (Accessory Use);

(2) The keeping of poultry, livestock, and domestic small farm animals is not permitted;

(3) All seed, fertilizer, or similar products shall be stored in a secured, rodent-proof container and housed within an enclosed structure; and

(4) All applications shall be subject to the Environmental Overlay District regulations of Chapter 906.

911.04.A.3 Amusement Arcade

Amusement Arcades shall be subject to the following standards:

(a) Location in Historic District Prohibited

The building shall not be located within a City Council designated "Historic District" per Chapter 1007 of the Pittsburgh Code of Ordinances.

(b) Located in Building Containing Residential Dwelling Units

When the arcade is located in a building containing residential dwelling units, the space to be occupied for arcade shall not be located directly above or beneath the residential space.

(c) Separation from Residential Zoning Districts and Historic Districts

The arcade shall not be located within three hundred (300) feet of a LNC District, residential zoning district or City Council designated "Historic District," as measured from each pedestrian entrance or exit of the arcade to the nearest boundary of the LNC District, residential zoning district or "Historic District."

(d) Separation From Other Uses

A lot containing an arcade shall not be located within five hundred (500) feet of a lot containing any of the following:

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

---

(1) Other Amusement Arcade;

(2) Religious Assembly;

(3) Elementary or Secondary School;

(4) Library;

(5) Cultural Service;

(6) Community Center; or

(7) Park or Recreation (Limited).

(c) Impact on Surrounding Community

Before approving an arcade use, the Approving Body shall determine that the proposed use shall not create detrimental impacts on the community, taking into consideration traffic generation, the relationship of the proposed use to surrounding structures, the availability of parking; and hours of operation; and the volume of people.

911.04.A.4 Animal Care (Limited)

(a) In the GT, DR and EMI Districts

Animal Care (Limited) uses in the GT, DR and EMI Districts shall be subject to the following standards:

(1) Animal care activities shall be completely screened from view from any off-site location; and

(2) The design of the structure shall include features that acoustically shield any animal noises from being heard outside the property line.

(b) In the RIV, UC-E, UC-MU, and R-MU Districts

Animal Care (Limited) use in the RIV Districts shall be subject to the following standards:

(1) The design of the structure shall include features that acoustically shield any animal noises from being heard outside the property line.

911.04.A.5 Assembly, Public (Limited)

(a) In NDI, UNC, UI, RIV-MU, RIV-IMU, UC-E, UC-MU, and HC districts Assembly, Public (Limited) uses shall be subject to the following standards:

i. A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

---

2. Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts; and

3. The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, noise generation, and the hours of operation.

4. The proposed use shall be subject to the Site Plan Review Procedures of Section 922.04.

(b) In P District

Assembly, Public (Limited) uses shall be subject to the following standards in the P District:

(1) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

(2) Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts;

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, noise generation, and the hours of operation; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In EMI districts Assembly, Public (General) uses shall be subject to the following standards:

(1) The design shall include devices which prevent noise associated with the use of the facility from being heard on other properties in the vicinity;

(2) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

(3) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(4) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.6 Assembly, Public (General)

(a) In HC and UI Districts

Assembly, Public (General) uses shall be subject to the following standards in the HC and UI

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

---

Districts:

(1) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets, and that residential streets in the vicinity shall not be used for parking for the proposed development;

(2) The design shall include devices which prevent noise associated with the use of the facility from being heard on other properties in the vicinity;

(3) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(4) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

(5) Parking shall be provided in a location and manner that allows for all parking to be located outside of residential districts; and

(6) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation.

(b) In P District

Assembly, Public (General) uses shall be subject to the following standards in the P District:

(1) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

(2) Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts;

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, noise generation, and the hours of operation; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In EMI Districts

(1) [Reserved.]

(2) The design shall include devices which prevent noise associated with the use of the

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

---

facility from being heard on other properties in the vicinity;

(3) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(4) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district;

(5) Parking shall be provided in a location and manner that allows for all parking to be located outside of residential districts;

(6) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation; and

(7) The proposed use shall be in compliance with an approved Institutional Master Plan;

(8) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(d) In RIV Districts

(1) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets, and that residential streets in the vicinity shall not be used for parking for the proposed development;

(2) The design shall include devices which prevent noise associated with the use of the facility from being heard on other properties in the vicinity;

(3) Parking shall be provided in a location and manner that allows for all parking to be located outside of residential districts; and

(4) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation.

911.04.A.7 Bed and Breakfast

Bed and Breakfast uses shall be subject to the following standards:

(a) The Bed and Breakfast use shall have a manager available on the premises on a twenty-four-hour-day basis while guests are on the premises;

(b) Food and beverage service shall be limited to breakfast for registered, paying overnight guests except in the case of limited social and business functions held on premises;

(c) Guests shall be limited to a maximum length of stay of fifteen (15) consecutive days in any thirty-day period;

(d) Wherein limited retail sales limited to incidental, occupant convenience items, and marketing and promotional items of our city are allowed to be sold to guests and visitors on the premises provided that there is no indication of items for sale by way of exterior signs or window displays;

(e) Wherein limited social and business functions may occur provided that:

    (1) The hours are limited to no later than 6:00 p.m. daily for bed and breakfasts (Limited); and no later than 11:00 p.m. Monday through Saturday, and 6:00 p.m. on Sunday for bed and breakfasts (General). No bed and breakfast shall host more than two (2) scheduled social or business functions per week.

    (2) Valet parking shall be provided having a minimum of one (1) parking stall for every four (4) occupants permitted under the occupancy placard issued by the Bureau of Building Inspection.

    (3) Strict compliance with the local noise ordinance is maintained.

    (4) Occupancy shall not exceed the number of persons listed on the occupancy placard by the Bureau of Building Inspection.

(f) Any structure in which a Bed and Breakfast use is to be located shall not be enlarged to provide for more guest rooms or guest room accommodations if such an enlargement would intrude on any front, side or rear setback requirements of the zoning district in which it is located;

(g) A license shall be obtained as provided by Chapter 701 of the Pittsburgh Code of Ordinances prior to issuance of a Certificate of Occupancy;

(h) A daily register of guests shall be maintained and made available for inspection by any City of Pittsburgh Code Enforcement Officer; and

(i) No more than one (1) Bed and Breakfast use shall be permitted in a building and only in a single-unit residential structure.

(j) The Bureau of Building Inspection shall designate at least on enforcement officer to be available during evening hours on weekdays and weekends to enforce the restrictions contained in this chapter.

(k) A Bed and Breakfast Problem Solving Task Force is hereby created comprising Public Safety, Bureau of Building Inspection, City residents living adjacent to Bed and Breakfast, and representatives of Bed and Breakfast Association to (1) receive complaints and mediate disputes and (2) initiate a report to City Council at the end of twelve (12) months with

---

recommendations for legislative amendments if needed. This shall take effect upon the date of the Mayor's signature (March 26, 1999), and will expire one (1) year later.

(Ord. No. 3/April 1, 1999/Amend. U-4)

**911.04.A.8 Bed and Breakfast (Limited)**

(a) In Residential and Grandview Public Realm, RIV-RM, and EMI Districts, Bed and Breakfast (Limited) uses shall be subject to the following standards:

Bed and Breakfast (Limited) uses shall be subject to the following standards in all residential and Grandview Public Realm zoning districts:

    (1) The Bed and Breakfast use shall be limited to no more than three (3) guest rooms, to be occupied by a total of no more than five (5) guests;

    (2) An identification sign, non-illuminated and no larger than four (4) square feet in size, shall be permitted only on the wall of the structure;

    (3) Automobile parking space shall be provided on the basis of one (1) parking stall for the resident operator and one (1) parking stall for each guest room within the boundaries of the same zoning lot in which the Bed and Breakfast use is approved. The zoning lot shall not include any building that is intended to be razed for parking purposes or has been razed at any time during a three-year period prior to an application for occupancy as a Bed and Breakfast; and

    (4) In R1D-VL and R1D-L Districts, a bed and breakfast use may only be located in a historically designated structure.

**(b) In the UC-E, UC-MU, and R-MU, parking shall be provided in accordance with the Parking Demand Analysis provisions of Section 914.02.B.**

**911.04.A.9 Bed and Breakfast (General)**

(a) In R2, RM, Grandview Public Realm, RIV-RM and EMI Zoning Districts, Bed and Breakfast (General) uses shall be subject to the following standards:

    (1) The Bed and Breakfast use shall be limited to no more than ten (10) guest rooms and each guest room may provide lodging for up to two (2) individuals, unless children under the age of sixteen (16) years are accompanying the guests, and in no instance shall the total number of guests in a Bed and Breakfast use exceed thirty (30);

    (2) An identification sign, non-illuminated and no larger than four (4) square feet in size shall be permitted only on the wall of the structure; and

---

    (3) Automobile parking shall be provided on the basis of and shall not exceed two (2) parking stalls for the resident operator and one (1) parking stall for each guest room within the boundaries of the same zoning lot in which the Bed and Breakfast use is approved. The zoning lot shall not include any building that is intended to be razed for parking purposes or has been razed at any time during a three-year period prior to an application for occupancy for a Bed and Breakfast use.

**(b) In the UC-E, UC-MU, and R-MU, parking shall be provided in accordance with the Parking Demand Analysis provisions of Section 914.02.B.**

**911.04.A.10 Car Wash**

(a) In all Districts

Car Wash uses shall be subject to the following standards in all districts:

    (1) Curb cuts shall be located a minimum of sixty (60) feet from an intersection; and

    (2) The proposed use shall require Site Plan Review.

(b) In the UNC District

Car Wash uses in the UNC District shall be subject to the following standards:

    (1) All primary uses shall be completely enclosed within a structure; and

    (2) Accessory uses, including, but not limited to, vacuum stations and window washing stations, shall be screened from the street and adjacent residential properties in accordance with the Landscaping and Screening Standards of Chapter 918.

(c) In the UI District

Car Wash uses shall be subject to the Site Plan Review procedures of Section 922.04.

(d) In the NDI, and RIV-IMU, and UC-MU Districts, car wash uses shall be subject to the following standards:

    (1) Curb cuts shall be located a minimum of sixty (60) feet from an intersection;

    (2) Curb cuts shall be minimized to the maximum extent feasible in order to achieve access to the site; and

    (3) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking, pedestrian safety, noise, and hours of operation.

**911.04.A.11 Cemetery**

---

Sufficient on-site roadways and parking areas shall be provided within Cemeteries to accommodate peak traffic demands.

**911.04.A.12 Child Care (Limited and General)**

Child Care (Limited and General) shall be subject to the health and safety, site, and transportation standards outlined in Title 55 of the Pennsylvania Code. In addition, the following standards shall apply:

(a) In R1D and R1A Districts

Child Care (Limited and General) uses in R1D and R1A Districts shall be subject to the following standards:

    (1) The Approving Body shall determine that the proposed use will not create detrimental impact on the surrounding properties, taking into consideration the probable traffic generation, height, bulk and scale of the proposed structure, compatibility of the proposed structure with residential structures in the district, parking needs, noise generation, the volume of people, and hours of operation;

    (2) Outdoor play areas shall be sufficiently enclosed and screened from the street such that children are protected from vehicular traffic, and that neighboring properties are screened in order to minimize external impacts of the play areas; and

    (3) The proposed use shall not include any signage.

(b) In the GI District

Child Care uses shall be subject to the following standards in the GI District:

    (1) Child Care uses shall be located and designed so as to protect children from any external impacts of industrial operations in the vicinity;

    (2) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04;

    (3) Parking and access shall be provided in such a way as to protect users from any external impacts of traffic in the vicinity; and

    (4) The Approving Body shall determine that the proposed location of such use will not create detrimental impacts for children attending such facility, taking into consideration surrounding industries, hazardous conditions, traffic generation and hours of operation.

(c) In the UI, RIV-MU and RIV-IMU Districts

Child Care uses shall be subject to the following standards in the UI, RIV-MU and RIV-IMU Districts:

Introduced: 7/8/2022

Committee: Committee on Land Use and
Economic Development

Bill No: 2022-0592, **Version:** 3

**Status: Passed Finally**

(1) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04;

(2) Child Care uses shall be located and designed so as to protect children from any external impacts of industrial operations in the vicinity; and

(3) Parking and access shall be provided in such a way as to protect users from any external impacts of traffic in the vicinity.

(d) In EMI Districts

Child Care uses shall be subject to the following standards:

(1) Outdoor play areas shall be sufficiently enclosed and screened from the street such that children are protected from vehicular traffic, and that neighboring properties are screened in order to maximize external impacts of the play areas;

(2) Parking shall be provided in location and manner that allows for all parking to be located outside of residential districts; and

(3) The proposed use shall be subject to the site plan review procedures of Section 922.04.

911.04.A.13 Communication Towers and Antennas

The following standards shall apply to all Communication Tower and Antenna Primary Uses:

(a) The following standards shall apply to all Communication Tower and Antenna uses in all zoning districts in addition to the standards required for each Class of Tower (Class A, B, and C) listed hereafter:

(1) In all zoning districts:

(i) All Tower and Antenna applications on parcels of land shall be submitted to the Zoning Administrator for the Administrator's review and comment.

(ii) All applications that are within a Public Right-of-Way shall be subject to all applicable guidelines and standards as adopted by the Art Commission, and all applicable standards and processes within the City Code regarding obstructions or otherwise dealing with structures within Rights-of-Way, Administration of approvals and permits within Rights-of-Way shall be as prescribed by the Director of Mobility and Infrastructure.

(iii) Applications shall be deemed complete only upon receipt of all requisite documents necessary for review including, but not limited to those listed in Section 911.04.A.13(a)(8), and certification that the submitted documents are adequately complete and accurate for review.

(iv) Applications where the subject is a Primary Use will be reviewed in accordance

---

Introduced: 7/8/2022

Committee: Committee on Land Use and
Economic Development

Bill No: 2022-0592, **Version:** 3

**Status: Passed Finally**

with the process and standards herein.

(v) Applications where the subject is an Accessory Use or Structure will be reviewed by the Administrator as an Administrator's Exception and approved or rejected in accordance with the procedure set forth in Section 922.08, and in accordance with the standards within Section 912.04.G of the Code.

(vi) Applications where the subject is a Primary Use, and where the proposal meets the criteria below, will be reviewed by the Zoning Administrator as an Administrator's Exception and approved or rejected in accordance with the procedure set forth in Section 922.08:

a. New Antenna locating and co-locating on an existing Tower or Alternative Antenna Support Structures.

b. New concealed, stealth or camouflaged Towers, Antenna, DAS or Alternative Antenna Support Structures which are designed to blend in with the surroundings, including but not limited to, Antennas located in a structure such as a church steeple, or bell tower but which are not noticeable to the reasonable observer, and Antennas disguised as things such as trees, flagpoles, chimneys, grain silos or anything consistent with the surroundings.

c. New Antenna installed on a structure other than a Tower; provided the Antenna and supporting electrical and mechanical equipment must be of a neutral color that is closely comparable with the color of the supporting structure so as to make the Antenna and related equipment as visually unobtrusive as possible. Specifically, the application will be reviewed to determine whether it is compatible with the neighborhood, the surrounding uses, and the skyline.

d. Amateur Radio Antennas up to eighty (80) feet, that are owned and operated, exclusively, by a federally licensed amateur radio station operator. Approval of said Amateur Radio Antennas is conditioned upon the lack of interference with immediate neighbors' quiet enjoyment of their property.

e. Temporary Towers and Antennas, where temporary means six (6) months or less, and said Towers and Antennas shall not exceed eighty (80) feet.

(2) The owner shall maintain the Tower, Antenna, Communications Facility, Station and Transmission Equipment in compliance with standards contained in applicable Federal, State and Local laws and regulations.

(3) All Towers, except concealed, stealth or camouflaged Towers and Antenna which are designed to blend in with the surroundings, and Alternative Antenna Support Structures shall be designed for collocation, which shall mean the ability of a

---

Introduced: 7/8/2022

Committee: Committee on Land Use and
Economic Development

Bill No: 2022-0592, **Version:** 3

**Status: Passed Finally**

structure to allow for the placement of antennae for three (3) or more tenants. As a condition of issuing a permit to construct or operate a Tower in the City, the owner/operator of the Tower is required to allow collocation until said Tower has reached maximum structural and frequency capacity. Any expansion of a Tower requires the entire site and/or Communications Facility to comply with the standards and conditions set forth in this Pittsburgh Zoning Code.

(4) Communications Facility shall mean any accessory building, structure, equipment cabinet, Base Station, Transmission Equipment or any other equipment installed in connection with Towers and/or Antennas for the direct or indirect purpose of providing low power radio communications service and shall be:

(i) Constructed so as to conform with all aspects of the Pittsburgh Code, including but not limited to, requirements regarding height, setback, lighting, landscaping, screening, construction materials, etc., and

(ii) Fully automated and unattended on a daily basis and shall be visited only for periodic maintenance, and

(iii) Accessed by means of a public street or easement to a public street. The easement shall be a minimum of twenty (20) feet in width and shall be improved to a width of at least twelve (12) feet with a dust-free, all-weather surface for the entire length. The access shall be landscaped to the satisfaction of the Zoning Administrator.

(5) A soil report complying with the standards of Appendix I: Geotechnical Investigations, ANSI EIA-222-E, as amended, shall be submitted to the City, sealed by a Professional Engineer, to document and verify the design specifications of the foundation for the Communications Tower and/or Antenna, and anchors for the guy wires if used.

(6) The Towers and Antennas erected thereon as well as free-standing Communication Antennas shall be designed to withstand wind gusts in accordance with actual Tower has reached maximum structural and frequency capacity in accordance with the current Structural Standards for Steel Antenna Towers and Antenna Supporting Structures, published by the Electrical Industrial Association/Telecommunications Industry Association and applicable requirements of the Pennsylvania Uniform Construction Code and other applicable regulations, current BOCA Code standards and/or other applicable generally accepted industry standards, laws, ordinances and regulations.

(7) All new Applications for Communications Towers shall be accompanied with a statement from an engineer qualified in the field of radio frequency engineering, certifying that the Communications Tower and Communications Facility are within the applicable standards adopted by the Federal Communications Commission (FCC) for safety levels with respect to human exposure to radio frequency electromagnetic fields, as the same shall exist at the time of application.

---

Introduced: 7/8/2022

Committee: Committee on Land Use and
Economic Development

Bill No: 2022-0592, **Version:** 3

**Status: Passed Finally**

(8) All applications shall include:

(i) A map illustrating the location of the site for the proposed Tower, Antenna, Station and/or Communications Facility. The site shall be physically and visually marked in the field, for immediate identification, with any combination of survey irons or flags.

(ii) Explanation from the Applicant as to why the site was selected. No new Tower or Antenna shall be permitted unless the Applicant submits evidence that demonstrates that no existing Tower, Antenna, Station, Communications Facility or structure can accommodate the Applicant's proposed antenna.

(iii) A written commitment from the Zoning Administrator from the owner/operator of the Tower that the owner/operator shall allow collocation on the Tower where structurally and economically feasible.

(iv) A visual analysis, which may include photo simulation or other techniques, which identifies the potential visual impacts of the proposed Tower, Antenna, Station or Communications Facility. Visual analysis of the Tower, Antenna, Station or Communications Facility shall be from at least two (2) directions.

(v) Radio Frequency Propagation Maps.

(vi) A NEPA (National Environmental Policy Act) Environmental Compliance Checklist prepared in accordance with Section 106 of NEPA; which shall be provided by the Applicant prior to the issuance of a permit.

(vii) A report by a certified engineer documenting the following:

a. Tower or Antenna height and design, including technical, engineering, collocation, economic and other pertinent factors governing selection of the proposed design. Height shall be measured to the highest point of the structure and/or the highest point of its accessory equipment or antenna, whichever is higher. A cross section of the Tower or Antenna shall be included.

b. Total anticipated capacity of the site, including number and types of Antennas which can be accommodated.

c. Evidence of structural integrity of the Tower and/or the Antenna structure.

d. Failure characteristics of the Tower and/or Antenna and demonstration that the site and setbacks are of adequate size to accommodate debris.

e. Ice hazards and mitigation measures which have been employed, including increased setbacks and/or deicing equipment.

f. Specific design and construction plans for the Tower, Antenna, Station or

Introduced: 7/8/2022                                    Bill No: 2022-0592, **Version**: 3

**Committee**: Committee on Land Use and                **Status**: Passed Finally
Economic Development

Communications Facility which include the means by which shared use requirements will be met.

(viii) Site plans.

    a. A plot plan shall be submitted with the application showing the location and dimensions of the Tower, Antenna, Station and/or Communications Facility and all improvements in the project area, including information concerning (if required) rights-of-way and easements, topography, setbacks, ingress/egress, parking, fencing, landscaping, screening, concealment, and adjacent zoning and uses. Concept plan approval by the Approving Body is required for applications requiring ZBA or City Council approval. Final Site Plan approval is required by the Zoning Administrator prior to the issuance of an Occupancy Permit. Final Site Plan approval by the Zoning Administrator is also required for administratively approved applications.

    b. As part of the plot plan review, screening, fencing, or anti-climbing security features will be required, at the discretion of the Zoning Administrator, around the base of the Tower, Antenna, Station and/or Communications Facility and any shelters as listed in the Use Standards for the specific Class of Tower.

(9) Abandoned Towers and Antennas.

(i) The Tower, Antenna, Station and/or Communications Facility shall be utilized continuously for communication services. In the event the Tower, Antenna, Station and/or Communications Facility ceases to be used for communication services for a period of six (6) consecutive months, the Tower, Antenna, Station and/or Communications Facility shall be removed. The Applicant may be granted an extension up to six (6) months at the discretion of the Zoning Administrator.

(ii) All abandoned Towers, Antennas, Stations and/or facilities improvements above ground and to three (3) feet below grade shall be removed within ninety (90) days of abandonment.

(iii) All unused building-mounted Antennas shall be removed within sixty (60) days of abandonment.

(iv) The Department of Permits, Licensing and Inspections, as well as the Department of Public Works and Department of Mobility and Infrastructure will monitor the Towers, Antennas, Stations and/or facilities for signs of abandonment.

(10) Damaged/Destroyed Towers and Antennas.

Any Tower, Antenna, Station and/or Communications Facility damaged/destroyed by vandalism, terrorism, faulty construction or design, wind, ice, snow, earthquake, fire,

---

Introduced: 7/8/2022                                    Bill No: 2022-0592, **Version**: 3

**Committee**: Committee on Land Use and                **Status**: Passed Finally
Economic Development

or other act of nature or God, that was completely operational/functional at the time of the damage/destruction, must be repaired/replaced within six (6) months of damage/destruction. If the Tower, Antenna, Station and/or Communications Facility is not repaired/replaced within six (6) months the requirements under "Abandoned Towers and Antennas" will apply.

(11) Replacement Towers and Antennas.

(i) Any Tower or Antenna can be replaced with a similar Tower or Antenna for reasons of structural integrity, or advances that have been made in technology since the installation of the existing Tower, or for the installation of a less intrusive technology or stealth technology.

(ii) Replacement Towers must meet the requirements of this Section.

(iii) Replacement Towers must receive administrative approval and are subject to the fee schedule in this Section.

(b) Communication Tower, Class A (zero (0) feet to eighty (80) feet).

Communication Towers, Class A shall be subject to the following standards:

(1) In NDI, UI and GI Districts.

Communication Towers, Class A shall be subject to the following standards in the NDI, UI and GI Districts:

(i) The structure shall comply with the setback requirements of the district. In addition, the Tower shall be set back a minimum of three hundred (300) feet from the lot line of any adjacent R-zoned lot that is occupied by one (1) or more dwelling units. Peripheral supports and guy anchors for radio or television transmission or receiving Towers may be located within required yards, provided that they shall be located entirely within the boundaries of the property on which the Tower is located and shall be located no closer than five (5) feet from any property line, and no closer than ten (10) feet from the lot line of an R-zoned lot that is occupied by one (1) or more dwelling units;

(ii) The Tower may exceed the height limit of the zoning district in which it is located to a height of no more than eighty (80) feet provided it is demonstrated to the Administrator that such height is necessary and essential for the proper functioning of the concerned Tower, Antenna, Station and/or Communications Facility and said Tower, Antenna, Station and/or Communications Facility employs concealment, stealth technology, or is otherwise camouflaged with a design to blend in with the surroundings or otherwise be disguised consistent with the surroundings;

(iii) The applicant shall demonstrate to satisfaction of the Zoning Administrator that

---

Introduced: 7/8/2022                                    Bill No: 2022-0592, **Version**: 3

**Committee**: Committee on Land Use and                **Status**: Passed Finally
Economic Development

such use is reasonably necessary at the proposed location for the convenience of the people at large or for the general welfare and that the proposed Tower, Antenna, Station and/or Communications Facility cannot be co-located on an existing structure. The information submitted by the applicant shall include a map of the area to be served by the Tower, Antenna, Station and/or Communications Facility and the relationship of the proposed site to other telecommunications Towers, Antennas, Stations and/or facilities;

(iv) A fence or wall not less than six and one-half (6½) feet in height from finished grade shall be constructed around each Tower and around each guy anchor and peripheral support. The fence or wall shall comply with all provisions of this Zoning Code, including but not limited to the relevant provisions of Chapters 918 and 925 of this Zoning Code, as well as with the following standards:

    a. Access to the Tower shall be through a locked gate in the required fence or wall;

    b. The required fencing shall consist of a masonry wall or solid fence with trees planted along the exterior of the wall or fence, or an open fence with an evergreen screen that consists of a continuous hedge with a minimum height of five (5) feet with trees planted along the exterior of the screen. Tree plantings shall consist of three-inch minimum caliper deciduous or evergreen trees planted twenty (20) feet on center maximum. Existing vegetation shall be preserved to the maximum extent possible; and

    c. If high voltage is necessary for the operation of the Tower and it is present in a ground grid or in the Tower, signs located every twenty (20) feet and attached to the fence or wall shall display in large bold letters the following: "HIGH VOLTAGE - DANGER";

(v) The Tower shall not encroach into or through any established public or private airports approach path as established by the Federal Aviation Administration (FAA);

(vi) All obsolete or unused Towers shall be removed within six (6) months of cessation of use;

(vii) The Tower shall comply with current Federal Communications Commission standards for non-ionizing electromagnetic radiation (NIER);

(viii) The Tower may be located on lots occupied by another primary use and may occupy a leased parcel on a lot meeting the minimum lot size requirement of the district in which it is located; and

(ix) No Antenna or Tower structure shall be illuminated, except as may be required by the Federal Aviation Administration (FAA) or the Federal Communication

---

Introduced: 7/8/2022                                    Bill No: 2022-0592, **Version**: 3

**Committee**: Committee on Land Use and                **Status**: Passed Finally
Economic Development

Commission (FCC).

(2) In all other Districts.

Communication Towers, Class A shall be subject to the following standards in all districts except NDI, UI and GI:

(i) Communication Towers shall be located on a zoning lot complying with the yard requirements of the zoning district in which such use is located, except that the widths of certain yards shall be as follows:

    a. The minimum setback between Communication Towers and property lines of non-residentially zoned lots shall be at a distance equal to twenty (20) percent of the height of the Tower;

    b. Communication Towers shall be setback a minimum of fifty (50) feet from any existing or planned right-of-way; and

    c. Communication Towers shall be set back a minimum of three hundred (300) feet from the lot line of any adjacent R-zoned lot that is occupied by one (1) or more dwelling units.

(ii) Peripheral and guy anchors for Communication Towers may be located within required yards, provided that they shall be located entirely within the boundaries of the property on which the Tower is located and shall be located no closer than five (5) feet from any property line, and no closer than ten (10) feet from the lot line of an R-zoned lot that is occupied by one (1) or more dwelling units.

(iii) The Tower may exceed the height limit of the zoning district in which it is located provided it is demonstrated to Council that such height is necessary and essential for the proper functioning of the concerned Tower, Antenna, Station and/or Communications Facility and said Tower, Antenna, Station and/or Communications Facility employs concealment, stealth technology, or is otherwise camouflaged with a design to blend in with the surroundings or otherwise be disguised consistent with the surroundings.

(iv) When a Communication Tower, Antenna, Station and/or Communications Facility is proposed to be located in any district, the applicant shall demonstrate to satisfaction of Council that such use is reasonably necessary at the proposed location for the convenience of the people at large or for the general welfare and that the proposed Communication Tower, Antenna, Station and/or Communications Facility cannot be co-located on an existing structure and that a diligent effort was made to locate on an existing structure . The information submitted by the Applicant shall include a map of the area to be served by the Tower, Antenna, Station and/or Communications Facility and the relationship of the proposed site to other telecommunications Towers.

---

**Introduced:** 7/8/2022        **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

a. When the proposed site is in any residential district, the Applicant shall demonstrate to the satisfaction of Council that the proposed Communication Tower, Antenna, Station and/or Communications Facility cannot be co-located on an existing Tower, Antenna, Station and/or Communications Facility within a nonresidential district and that a diligent effort was made to locate on an existing structure. The information submitted by the Applicant shall include a map of the area to be served by the Tower, Antenna, Station and/or Communications Facility and the relationship of the proposed site to other telecommunications Towers.

(v) A fence or wall not less than six and one-half (6½) feet in height from finished grade shall be constructed around each Communication Tower and around each guy anchor and peripheral support. The fence or wall shall comply with all provisions of this Zoning Code, including but not limited to the relevant provisions of Chapters 918 and 925 of this Zoning Code, as well as with the following standards:

a. Access to the Tower shall be through a locked gate in the required fence or wall;

b. In accordance with Chapter 918, the required fencing shall consist of a masonry wall or solid fence with trees planted along the exterior of the wall or fence, or an open fence with an evergreen screen that consists of a continuous hedge with a minimum height of five (5) feet with trees planted along the exterior of the screen. Tree plantings shall consist of three-inch minimum caliper deciduous or evergreen trees planted twenty (20) feet on center maximum. Existing vegetation shall be preserved to the maximum extent possible; and

c. If high voltage is necessary for the operation of the radio or television transmission or receiving Tower and it is present in a ground grid or in the Tower, signs located every twenty (20) feet and attached to the fence or wall shall display in large bold letters the following: "HIGH VOLTAGE-DANGER".

(vi) Communication Towers shall not encroach into or through any established public or private airport approach path as established by the Federal Aviation Administration (FAA).

(vii) All obsolete or unused Communication Towers shall be removed within six (6) months of cessation of use.

(viii) Communication Towers shall comply with current Federal Communication Commission standards for non-ionizing electromagnetic radiation (NIER).

---

**Introduced:** 7/8/2022        **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(ix) Communication Towers may be located on lots occupied by another primary use and may occupy a leased parcel on a lot meeting the minimum lot size requirement of the district in which it is located.

(x) No antenna or Tower structure shall be illuminated, except as may be required by the Federal Aviation Administration (FAA) or the Federal Communication Commission (FCC).

(c) Communication Tower, Class B (eighty-one (81) feet to one hundred eighty (180) feet can be allowed as Special Exceptions in accordance with the Review Procedures of Sec. 922.07; and Class C (one hundred eighty-one (181) feet and above) can be allowed as Conditional Uses in accordance with the Review Procedures of Sec. 922.06: Communication Towers, Class B and Communication Towers, Class C shall be subject to the following standards in all districts:

(1) Communication Towers shall be located on a zoning lot complying with the yard requirements of the zoning district in which such use is located, except that the widths of certain yards shall be as follows:

(i) The minimum setback between Communication Towers and property lines of non-residentially zoned lots shall be at a distance equal to twenty (20) percent of the height of the Tower;

(ii) Communication Towers shall be setback a minimum of fifty (50) feet from any existing or planned right-of-way; and

(iii) Communication Towers shall be set back a minimum of three hundred (300) feet from the lot line of any adjacent R-zoned lot that is occupied by one (1) or more dwelling unit.

(iv) Peripheral and guy anchors for Communication Towers may be located within required yards, provided that they shall be located entirely within the boundaries of the property on which the Tower is located and shall be located no closer than five (5) feet from any property line, and no closer than ten (10) feet from the lot line of an R-zoned lot that is occupied by one (1) or more dwelling units.

(2) Class B and C Communication Towers' height must be demonstrated to the appropriate approving body, such as the ZBA, Planning Commission or City Council that such height is necessary and essential for the proper functioning of the concerned Tower, Antenna, Station and/or Communications Facility and said Tower, Antenna, Station and/or facility employs concealment, stealth technology, or is otherwise camouflaged with a design to blend in with the surroundings or otherwise be disguised consistent with the surroundings.

(3) When a Class B or C Communication Tower is proposed to be located in any district, the Applicant shall demonstrate to satisfaction of the appropriate approving body, such

---

**Introduced:** 7/8/2022        **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

as the ZBA, Planning Commission or City Council that such use is reasonably necessary at the proposed location for the convenience of the people at large or for the general welfare and that the proposed Communication Tower, Antenna, Station and/or Communications Facility cannot be co-located on an existing Tower, Antenna, Station and/or facility and that a diligent effort was made to locate on an existing structure. The information submitted by the Applicant shall include a map of the area to be served by the Tower, Antenna, Station and/or Communications Facility and the relationship of the proposed site to other telecommunications Towers.

(i) When the proposed site is in any residential district, the Applicant shall demonstrate to the satisfaction of the appropriate approving body, such as the ZBA, Planning Commission or City Council that the proposed Communication Tower, Antenna, Station and/or Communications Facility cannot be co-located on an existing Tower, Antenna, Station and/or facility within a nonresidential district and that a diligent effort was made to locate on an existing structure. The information submitted by the Applicant shall include a map of the area to be served by the Tower, Antenna, Station and/or Communications Facility and the relationship of the proposed site to other telecommunications Towers.

(4) A fence or wall not less than six and one-half (6½) feet in height from finished grade shall be constructed around each Communication Tower and around each guy anchor and peripheral support. The fence or wall shall comply with all provisions of this Zoning Code, including but not limited to the relevant provisions of Chapters 918 and 925 of this Zoning Code, as well as with the following standards:

(i) Access to the Tower shall be through a locked gate in the required fence or wall;

(ii) The required fencing shall consist of a masonry wall or solid fence with trees planted along the exterior of the wall or fence, or an open fence with an evergreen screen that consists of a continuous hedge with a minimum height of five (5) feet with trees planted along the exterior of the screen. Tree plantings shall consist of three-inch minimum caliper deciduous or evergreen trees planted twenty (20) feet on center maximum. Existing vegetation shall be preserved to the maximum extent possible; and

(iii) If high voltage is necessary for the operation of the Communication Tower and it is present in a ground grid or in the Tower, signs located every twenty (20) feet and attached to the fence or wall shall display in large bold letters the following: "HIGH VOLTAGE - DANGER".

(5) Communication Towers shall not encroach into or through any established public or private airport approach path as established by the Federal Aviation Administration (FAA).

(6) All obsolete or unused Communication Towers shall be removed within six (6) months

---

**Introduced:** 7/8/2022        **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

of cessation of use.

(7) Communication Towers shall comply with current Federal Communication Commission standards for non-ionizing electromagnetic radiation (NIER).

(8) Communication Towers may be located on lots occupied by another primary use and may occupy a leased parcel on a lot meeting the minimum lot size requirement of the district in which it is located.

(9) No Antenna or Tower structure shall be illuminated, except as may be required by the Federal Aviation Administration (FAA) or the Federal Communication Commission (FCC).

(Ord. No. 33-2016, § 1, eff. 12-13-16; Ord. No. 25-2018, § 3, eff. 7-19-18)

911.04.A.14 Community Center (Limited and General)

(a) Community Center (Limited)

(1) In all Residential, Grandview Public Realm, and RIV-RM Districts, R-MU Community Center (Limited) uses shall be subject to the following standards:

(i) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site;

(ii) All activities conducted on the premises of the Community Center shall be noncommercial and nonprofit;

(iii) The Approving Body shall determine that the Community Center use will not be detrimental impacts to the neighborhood, taking into consideration the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, social activities to be conducted and the number of people using the premises at any one (1) time; and

(iv) The Residential Compatibility Standards of Chapter 916 shall apply.

(2) In NDO District

Community Center (Limited) uses shall be subject to the following standards:

(i) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site;

(ii) All activities conducted on the premises of the Community Center shall be noncommercial and nonprofit; and

(iii) The Residential Compatibility Standards of Chapter 916 shall apply.

---

(3) In all UI and EMI Districts

Community Center (Limited and General uses) shall be subject to the following standards:

(i) The proposed use shall be subject to the Site Plan Review Procedures of Section 922.04; and

(ii) Parking and access shall be provided in such a way as to protect users from any external impacts of traffic in the vicinity.

(b) Community Center (General)

(1) In NDO Districts

Community Center (General) uses shall be subject to the following standards:

(i) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site;

(ii) All activities conducted on the premises of the Community Center shall be noncommercial and nonprofit;

(iii) The Approving Body shall determine that the Community Center use will not be detrimental impacts to the neighborhood, taking into consideration the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, social activities to be conducted and the number of people using the premises at any one (1) time; and

(iv) The Residential Compatibility Standards of Chapter 916 shall apply.

(2) In P and Grandview Public Realm Districts

Community Center (General) uses in the P and Grandview Public Realm Districts shall be subject to the following standards:

(i) Potential detrimental impacts of traffic and parking shall be addressed, taking into account the needs of events which may occur on site;

(ii) All activities conducted on the premises of the Community Center shall be noncommercial and nonprofit;

(iii) The Approving Body shall determine that the Community Center use will not create detrimental impacts to the neighborhood, taking into consideration the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, social activities to be conducted, and the number of people using the premises at any one (1) time; and

(iv) The Residential Compatibility Standards of Chapter 916 shall apply.

---

(3) In EMI Districts

Community Center (General) uses shall be subject to the following standards:

(i) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04;

(ii) Parking shall be provided in a location and manner that allows for all parking to be located outside of residential areas.

(4) In RIV Districts and R-MU

Community Center (General) uses shall be subject to the following standards:

(i) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site; and

(ii) The Approving Body shall determine that the Community Center use will not create detrimental impacts to the neighborhood, taking into consideration the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, social activities to be conducted and the number of people using the premises at any one (1) time.

911.4.A.15 Construction Contractor (Limited)

(a) In LNC, NDI, UNC, and RIV Districts

Construction Contractor (Limited) uses shall be subject to the following standards in the LNC, NDI, UNC, and RIV Districts:

(1) All storage of materials and vehicles shall be within a completely enclosed structure; and

(2) Sufficient space shall be provided to park and store all construction vehicles off the public rights-of-way.

911.4.A.16 Correctional Facility (Limited)

Correctional Facility (Limited) uses shall be subject to the following standards:

(a) The facility shall be designed to address the safety of those within and outside of the facility;

(b) Walls, fences, and other physical barriers shall be designed to be compatible with the architecture of the facility, and shall not include barbed wire, razor wire or other similar devices;

(c) The facility shall be located within convenient walking distance of public transportation

---

service;

(d) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation and the physical relationship of the proposed use and structure to surrounding uses and structures; and

(e) The Approving Body shall request a report and recommendation from the Planning Director on the planning aspects of the proposed use and structures.

911.04.A.17 Correctional Facility (General)

Correctional Facilities (General) shall be subject to the following standards:

(a) The facility shall be designed to address the safety of those within and outside of the facility;

(b) Walls, fences, and other physical barriers shall be designed to be compatible with the architecture of the facility, and shall not include barbed wire, razor wire or other similar devices;

(c) The facility shall be located within convenient walking distance of public transportation service;

(d) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation and the physical relationship of the proposed use and structure to surrounding uses and structures; and

(e) The Approving Body shall request a report and recommendation from the Planning Director on the planning aspects of the proposed use and structures.

911.04.A.18 Cultural Service (Limited)

(a) In Residential and RIV-RM Districts

Cultural Service (Limited) uses shall be subject to the following standards in residential districts:

(1) Parking demand shall be addressed in a manner which does not interfere with parking spaces required for surrounding residential uses;

(2) All activities conducted on the premises of the Cultural Service shall be noncommercial and nonprofit;

(3) The Approving Body shall determine that the such use will not create detrimental impacts on the neighborhood, taking into consideration the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, social

---

activities to be conducted and the number of people using the premises at any one (1) time; and

(4) The Residential Compatibility Standards of Chapter 916 shall apply.

(b) In the P District

Cultural Service (Limited) uses shall be subject to the following standards in the P District:

(1) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site;

(2) All activities conducted on the premises of the Cultural Service shall be noncommercial and nonprofit; and

(3) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In NDO Districts

Cultural Service (Limited) uses shall be subject to the following standards:

(1) Parking demand shall be addressed in a manner which does not interfere with parking spaces required for surrounding residential uses; and

(2) All activities conducted on the premises of the cultural service shall be noncommercial and nonprofit; and

(3) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

(d) In EMI Districts

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.19 Cultural Service (General)

(a) In NDI and LNC Districts

Cultural Service (General) uses shall be subject to the following standards in the NDI and LNC Districts:

(1) Cultural Service (General) uses shall be controlled in such a manner as to offer reasonable protection to the neighborhood against possible detrimental impacts, taking into consideration the physical relationship to surrounding properties, the hours of

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

operation and access to the site;

(2) The design of the structure shall follow the development standards for commercial uses in the LNC and NDI Districts; and

(3) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets.

(b) In the P District

Cultural Service (General) uses shall be subject to the following standards in the P District:

(1) Potential detrimental impacts of traffic and parking shall be addressed, taking into consideration the needs of events which may occur on site;

(2) All activities conducted on the premises of the Cultural Service shall be noncommercial and nonprofit; and

(3) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In the GI District

Cultural Service (General) uses shall be subject to the following standards in the GI District:

(1) Parking facilities shall be designed and located to avoid disruption of industrial facilities in the area;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby streets;

(3) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets;

(4) Parking and access shall be provided in such a way as to protect users from any external impacts of industry in the vicinity; and

(5) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding district, taking into consideration potential traffic generation, pedestrian access, and hours of operation.

(d) In EMI Districts

Cultural Service (General) uses shall be subject to the following standards:

(1) The Approving Body shall determine that such use will not create detrimental impacts

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the emission of noise or glaring light, and proposed accessory uses, such as meeting facilities;

(2) The proposed use shall be in compliance with an approved Institutional Master Plan;

(3) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.20 Educational Classroom Space (Limited)

(a) In non-EMI Districts

Educational Classroom Space (Limited) shall be subject to the following standards:

(1) The design of the structure shall follow the district's development standards for commercial uses;

(2) The height and bulk of the proposed structure shall be designated as to minimize blocking of views from adjacent residential properties;

(3) Access to the facility shall be addressed in a manner which emphasizes the use of public transit to the facility, and clearly meets the peak demands of the facility in a manner which does not require the use of parking spaces on residential streets; and

(4) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking in surrounding residential uses, and the size and bulk of the building;

(5) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

(b) In EMI Districts

Educational Classroom Space (Limited) shall be subject to the following standards:

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.21 Educational Classroom Space (General)

(a) In UNC Districts

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

Educational Classroom Space (General) shall be subject to the following standards:

(1) The design of the structure shall follow the district's development standards for commercial uses;

(2) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(3) Access to the facility shall be addressed in a manner which emphasizes the use of public transit to the facility, and clearly meets the peak demands of the facility in a manner which does not require the use of parking spaces on residential streets; and

(4) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking in surrounding residential uses, and the size and bulk of the building;

(b) In EMI Districts

Educational Classroom Space (Limited) shall be subject to the following standards:

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(c) In R1V Districts

Educational Classroom Space (General) shall be subject to the following standards:

(1) Access to the facility shall be addressed in a manner which emphasizes the use of public transit to the facility, and clearly meets the peak demands of the facility in a manner which does not require the use of parking spaces on residential streets; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking in surrounding residential uses, and the size and bulk of the building.

(d) In the UC-E and UC-MU, Educational Classroom Space (Limited and     General) shall be subject to the following standards:

(1) Access to the facility shall be addressed in a manner which emphasizes the     use of public transit to the facility, and clearly meets the peak demands of the     facility in a manner which does not require

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

the use of parking spaces on          residential streets; and

(2) The Approving Body shall determine that such use will not create detrimental  impacts on the surrounding properties, taking into consideration probable traffic   generation, the physical relationship of the proposed use and structure to          surrounding uses and structures, the probable hours of operation, the impacts of   parking in surrounding residential uses, and the size and bulk of the building

(3) Educational Classroom Space shall be permitted only in mixed use structures  where there is at least one (1) additional primary use. The two (2) or more primary uses may be under common ownership or control, but it is not required.          The Educational Classroom Space shall be less than fifty (50) percent of the Gross Floor Area in the mixed-use structure in the UC-MU. The Educational Classroom Space shall be less than fifty (50) percent of the Gross Floor Area in the mixed-use structure in the UC-E. For purposes of this calculation, shared spaces between the primary uses shall be excluded from the calculation of Gross Floor Area.

911.04.A.22 Excavation/Grading/Fill, Major

Excavation, Grading or Fill, Major operations and any temporary or permanent construction or facilities associated with such operation shall be subject to the following standards:

(a) The proposed operation shall meet all requirements of the Land Operations Ordinance and Title Thirteen: Stormwater Management, as applicable;

(b) The operation shall be controlled in such a manner as to offer reasonable protection to the neighborhood against possible detrimental impacts, taking into consideration the physical relationship to surrounding properties and access to the site;

(c) Residential streets shall not be used for routing of vehicles serving the excavation or fill, unless there is no other physical option; and

(d) A plan shall be prepared and submitted to the Planning Director addressing the number of vehicles that will access the site and the routes the vehicles will travel. The plan and proposed use of any street for incidental trucking operations shall have the approval of the Department of Public Works and the Department of Mobility and Infrastructure.

911.04.A.22A Forestry Uses Shall be Subject to the Following Standards:

(a) Site Plan (Logging Plan) Review will be required as per Section 922.04.

(1) Such a plan must be drawn to scale and in addition to information required in Section 922.09 of the Zoning Code depict: the location of trees to be cut and residual stands; the location of all skid roads, skid trails and log landings; the location of any streams or wetlands; the

**Panel 1 (top-left):**

location of curb cuts; the location of public or private easements; the location of any residential structure within fifty (50) feet of the property line.

(2) Forestry activities shall be at least fifty (50) feet from property lines.

(3) Forestry activities shall be at least one hundred (100) feet from a residential structure.

(4) Debris shall not be stored within the previously specified setbacks.

(5) Log Landings, skid roads and skid trails as specific forestry activities shall observe previously specified setbacks.

(6) Access to haul roads shall be via an approved curb cut.

(7) Forestry activities shall not occur between 10:00 p.m. and 7:00 a.m. and may have further restrictions placed on hours of operation as determined by the Zoning Administrator.

(8) Prior to approval, the Zoning Administrator will require the approval of all haul roads by the Department of Mobility and Infrastructure.

(9) Timber harvesting shall not occur on slopes greater than forty (40) percent.

(10) No more than fifty (50) percent of the trees shall be removed on slopes greater than twenty-five (25) percent.

(11) No more than fifty (50) percent of the trees shall be removed within fifty (50) feet of any stream or wetland.

(12) Compliance with Environmental Overlay Districts (906) requirements must be assured.

(13) An approved revegetation plan depicting the planting of specific species by area is required; no invasive species may be employed in that planting plan.

(14) Proof of liability insurance naming the property owner and the City of Pittsburgh as insured or additional insureds with combined coverage of no less than one million dollars ($1,000,000.00).

(15) Compliance with all applicable City of Pittsburgh, Allegheny County, Commonwealth of Pennsylvania and Federal laws.

911.04.A.23 Fraternity/Sorority and Dormitory

(a) Fraternity/Sorority

Fraternity/Sorority uses shall be subject to the following standards:

(1) The building shall be used solely for undergraduate or graduate students of an

educational institution;

(2) The building shall be located with the EMI District of the institution at which the students are enrolled;

(3) An Operation and Management Plan for the proposed Fraternity/Sorority use shall be submitted as part of the occupancy permit application and shall describe programs of operation and management including but not limited to:

(i) Uses and activities that will occur in conjunction with the Fraternity/Sorority use;

(ii) Hours of operation of non-residential services;

(iii) Noise control; and

(iv) Traffic generation.

(4) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the Operation and Management Plan, probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking in surrounding residential uses, and the size and bulk of the building;

(5) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(6) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(b) Dormitory

Dormitory uses shall be subject to the following standards:

(1) The building shall be used solely for undergraduate or graduate students of an educational institution;

(2) The building shall be located within the same district of the institution at which the students are enrolled;

(3) An Operation and Management Plan for the proposed Dormitory use shall be submitted as part of the occupancy permit application and shall describe programs of operation and management including but not limited to:

(i) Use and activity that will occur in conjunction with the Dormitory use;

(ii) Hours of operation of non-residential services;

(iii) Noise control; and

**Panel 3 (bottom-left):**

(iv) Traffic generation.

(4) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the Operation and Management Plan, probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking in surrounding residential uses, and the size and bulk of the building;

(5) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(6) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(Ord. No. 24/August 21, 2000/Amend U-23)

911.04.A.24 Freight Terminal

(a) In HC and RIV Districts

Freight Terminals shall be subject to the following standards in the HC District:

(1) Every portion of the property used for Freight Terminal purposes shall be located not closer than two hundred (200) feet to any property in a R or H District, and one hundred (100) feet from any property in a NDI, UNC or LNC District;

(2) Access for motor-freight vehicles shall be by way of streets of adequate width as determined by the Approving Body;

(3) The site shall be fully enclosed with a barrier adequate to insure that no portion of a vehicle shall extend beyond the lot line;

(4) In addition to adequate area within the site for docking, manipulation and maneuver of motor-freight vehicles, a reservoir of parking area for motor-freight vehicles waiting to be loaded or unloaded, shall be provided at the rate of one (1) parking space sufficient to park a motor freight vehicle for every four (4) loading or unloading docks;

(5) The site shall be designed in such a manner as to permit forward movement of all vehicles both upon entering and upon leaving the site; and

(6) The number, location and width of entrances to and exits from the site shall be determined by the Approving Body after recommendations thereon by the Department of Public Works and Bureau of Traffic Engineering and/or Department of Mobility and Infrastructure.

911.04.A.25 Funeral Home

Funeral Home uses shall be subject to the following standards:

(a) There shall be no crematory or receiving vault on the premises, and no preparation room or display of merchandise visible from outside the main or accessory building;

(b) No loading or unloading shall be permitted on public right-of-way; and

(c) No parking or standing of motor vehicles accessory to the Funeral Home shall occur on adjoining streets other than passenger automobiles when funeral processions are being organized.

911.04.A.26 Golf Course

Golf Course uses shall be subject to the following standards:

(a) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required; and

(b) The Approving Body shall determine that the design and location of the parking facility is screened from surrounding residential properties and has created the minimum possible disruption to the landscape.

911.04.A.27 Hazardous Operations

Hazardous Operations shall be subject to the following standards:

(a) Hazardous Operations shall not be permitted within three hundred (300) feet of any districts other than GI or RIV-GI;

(b) Hazardous Operations shall not be permitted within a distance determined by the Fire Department, as necessary to secure special protection to such public facilities as bridges, tunnels, highway interchanges, power stations, communication centers and the like; and

(c) Suitable measures shall be taken for the disposal of waste without adversely affecting adjacent areas.

911.04.A.28 Helicopter Landing Facilities

The following regulations shall govern and control the erection, installation and enlargement of all helicopter facilities, including Heliports, Helipads and Helistops.

(a) A helicopter landing area shall not be approved if its associated approach/departure flight

path extends over an Elementary or Secondary School which has a minimum of fifty (50) students attending on a regular basis, school stadium, school playground, or school sports field. The Zoning Board of Adjustment or City Council may allow the approach/departure flight path associated with a medical use helicopter landing area to fly over a school if that portion of the flight path is at least nine hundred (900) feet from the landing area and it can be demonstrated there is no feasible alternative flight path.

(b) A helicopter landing area shall be located at least one hundred eighty (180) feet from a school stadium, playground, school athletic field or public right-of-way adjacent to and within one-quarter (¼) mile of such school facilities. The Zoning Board of Adjustment may allow a medical landing area to be closer if it can be demonstrated that sufficient barriers exist, between the landing area and the pertinent above features, which would assure there would be no fire danger, associated with three hundred fifty (350) gallons of jet fuel burning on the landing area, to any person located on the pertinent above features.

(c) A helicopter landing area shall be located at least four hundred (400) feet from an Elementary or Secondary School building which has a minimum regular attendance of fifty (50) or more students.

(d) A helicopter landing area with more than three (3) flights per month occurring between 10:00 p.m. and 7:00 a.m. shall be located at least four hundred (400) feet from residential uses in residential, RP, AP, SP, and LNC Districts.

(e) A helicopter landing area with three (3) or fewer flights per month occurring between 10:00 p.m. and 7:00 a.m. shall be located at least three hundred (300) feet from residential uses in residential, RP, AP, SP, and LNC Districts.

(f) A helicopter landing area shall not be permitted on rooftops in the GT and RIV-NS Districts.

(g) A helicopter landing area shall be spaced at least two thousand (2,000) feet from any other helicopter landing area. This spacing requirement may be reduced to one thousand five hundred (1,500) feet if it is demonstrated that all associated approach/departure flight paths are at least one thousand five hundred (1,500) feet from one (1) another and there is a compelling need for that landing area that cannot otherwise be met.

(h) A helicopter landing area shall be setback at least fifty (50) feet from property lines.

(i) A helicopter landing area shall be licensed by State or Federal licensing agencies such as the Pennsylvania Department of Transportation's Bureau of Aviation (PennDOT-BOA) and/or Federal Aviation Administration prior to becoming operational, and shall continue to be in compliance with such licensing regulations.

(j) A helicopter landing area shall have primary and secondary approach/departure flight paths approved by the Federal Aviation Administration or PennDOT BOA when required. Such

flight paths shall reflect cognizance of zoning district height limitations, air rights and topographic features.

(k) Any significant change, subsequent to zoning approval, in aircraft related technology employed at the facility or related to the craft using the facility shall be approved by the pertinent State, Federal and local zoning and public safety approval authorities. Such changes include but are not limited to the provision of instrument flight capabilities, change in type of fuel used, use of vertical takeoff/landing craft other than helicopters, use of helicopters larger than for which the pad was designed applying PennDOT and FAA design criteria, or use of helicopters which produce an increase of three (3) db in noise levels, measured at a four hundred-foot distance, over the craft previously used at the site.

(l) A helicopter landing area shall maintain a log of all arrivals and departures indicating time of arrival, time of departure, operator and owner. A helicopter medical private use landing area shall maintain a log of all arrivals and departures indicating time of arrival, time of departure, operator, owner and purpose of trip. This log shall be submitted quarterly in April, June, October and January to the Zoning Administrator.

(m) A helicopter landing area shall meet any other conditions required by the pertinent approval authorities such as the Zoning Board of Adjustment, City Planning Commission and City Council, and compliance with the City Building Code, relating to hours of operation; number of helicopters based; type of operations, surface transportation, parking, site circulation, screening or other aspects of the site development or use.

(n) Applicants for a helicopter landing area shall submit a site plan as depicted by and with the seal of a registered engineer or architect or surveyor depicting pertinent setback and spacing requirements and all associated approach/departure flight paths. The applicant shall also submit evidence that the Allegheny County Aviation Department (ACAD) has been notified of the landing area proposal and has been invited to comment directly in the Zoning Administrator within a thirty-day period commencing on ACAD's receipt of notification.

### 911.04.A.29 Helipads

Helipads shall comply with the following requirements:

(a) Helipads shall comply with the Helicopter Landing Facility requirements of Sec. 911.04.A.28;

(b) An environmental report addressing the pertinent sixteen (16) specific environmental categories (out of twenty (20) categories) outlined by the Federal Aviation Administration in Order 5050.4A. Airport Environmental Handbook (as may be amended), shall be submitted by the applicant to the City Planning Commission so that the environmental effects of the proposed heliport along with the proposed use, purpose and need of the

heliport can serve as the basis for the Planning Commission's recommendation to City Council concerning approval of the proposed heliport. In evaluating the impact of the environmental categories, the reviewing authority shall adopt and use for helicopter landing areas the regulations and descriptions of the specific impact categories contained in the Federal Aviation Administration Order 5050.4A. Airport Environmental Handbook as may be amended. The sixteen (16) categories are:

(1) Noise in terms of Ldn via analysis utilizing the FAA helicopter noise model;

(2) Compatible land use within four hundred (400) feet of the heliport and under approach/departure paths and associated transition zones;

(3) Social impacts;

(4) Induced socioeconomic impacts;

(5) Air quality;

(6) Water quality;

(7) Department of Transportation Section 4(f) lands involving public parks and recreation areas;

(8) Historical, architectural, archaeological and cultural resources;

(9) Biotic communities, wildlife refuges or Greenways;

(10) Flora and fauna;

(11) Wetlands;

(12) Floodplains;

(13) Energy supply and natural resources;

(14) Light emissions;

(15) Solid waste impacts; and

(16) Construction impacts.

### 911.04.A.30 Heliports

Heliports shall be subject to the following standards in the GI, RIV-GI, and MP Districts:

(a) Heliports shall comply with the Helicopter Landing Facility requirements of Sec. 911.04.A.28;

(b) An environmental report addressing the pertinent sixteen (16) specific environmental

categories (out of twenty (20) categories) outlined by the Federal Aviation Administration in Order 5050.4A. Airport Environmental Handbook (as may be amended), shall be submitted by the applicant to the City Planning Commission so that the environmental effects of the proposed heliport along with the proposed use, purpose and need of the heliport can serve as the basis for the Planning Commission's recommendation to City Council concerning approval of the proposed heliport. In evaluating the impact of the environmental categories, the reviewing authority shall adopt and use for helicopter landing areas the regulations and descriptions of the specific impact categories contained in the Federal Aviation Administration Order 5050.4A. Airport Environmental Handbook as may be amended. The sixteen (16) categories are:

(1) Noise in terms of Ldn via analysis utilizing the FAA helicopter noise model;

(2) Compatible land use within four hundred (400) feet of the heliport and under approach/departure paths and associated transition zones;

(3) Social impacts;

(4) Induced socioeconomic impacts;

(5) Air quality;

(6) Water quality;

(7) Department of Transportation Section 4(f) lands involving public parks and recreation areas;

(8) Historical, architectural, archaeological and cultural resources;

(9) Biotic communities, wildlife refuges or Greenways;

(10) Flora and fauna;

(11) Wetlands;

(12) Floodplains;

(13) Energy supply and natural resources;

(14) Light emissions;

(15) Solid waste impacts; and

(16) Construction impacts.

The report shall also address the heliport's effect on ground transportation, parking, steep slopes, stormwater management, utilities and zoning compliance. In addition to identifying project effects the report shall identify potential mitigation measures for any significant effect and shall address project alternatives (no project, another site or another scale). The environmental report

Introduced: 7/8/2022                                                Bill No: 2022-0592, Version: 3

Committee: Committee on Land Use and                          Status: Passed Finally
Economic Development

submission is in addition to site plan requirements and other pertinent information requested by the Zoning Administrator.

911.04.A.31 Helistops

Helistops shall be subject to the following standards:

(a) Helistops shall comply with the Helicopter Landing Facility requirements of Sec. 911.04.A.28;

(b) Applicants shall submit a noise analysis demonstrating the noise impact in terms of Ldn. If this analysis demonstrates a +3 dBLdn increase due to the helistop and this increase results in noise levels exceeding seventy-five (75) dBLdn at residential uses in residential zoning districts, the application shall be denied.

(c) An environmental report addressing the pertinent sixteen (16) specific environmental categories (out of twenty (20) categories) outlined by the Federal Aviation Administration in Order 5050.4A. Airport Environmental Handbook (as may be amended), shall be submitted by the applicant to the City Planning Commission so that the environmental effects of the proposed heliport along with the proposed use, purpose and need of the heliport can serve as the basis for the Planning Commission's recommendation to City Council concerning approval of the proposed heliport. In evaluating the impact of the environmental categories, the reviewing authority shall adopt and use for helicopter landing areas the regulations and descriptions of the specific impact categories contained in the Federal Aviation Administration Order 5050.4A. Airport Environmental Handbook as may be amended. The sixteen (16) categories are:

(1) Noise in terms of Ldn analysis utilizing the FAA helicopter noise model;

(2) Compatible land use within four hundred (400) feet of the heliport and under approach/departure paths and associated transition zones;

(3) Social impacts;

(4) Induced socioeconomic impacts;

(5) Air quality;

(6) Water quality;

(7) Department of Transportation Section 4(f) lands involving public parks and recreation areas;

(8) Historical, architectural, archaeological and cultural resources;

(9) Biotic communities, wildlife refuges or Greenways;

---

Introduced: 7/8/2022                                                Bill No: 2022-0592, Version: 3

Committee: Committee on Land Use and                          Status: Passed Finally
Economic Development

(10) Flora and fauna;

(11) Wetlands;

(12) Floodplains;

(13) Energy supply and natural resources;

(14) Light emissions;

(15) Solid waste impacts; and

(16) Construction impacts.

911.04.A.32 Helistops in GT, CP, SP, UI, GI, RIV-IMU, RIV-NS, and EMI Districts:

The following standards shall apply to all Helistops in GT, CP, SP, UI, GI, RIV-IMU, RIV-NS, and EMI Districts:

(a) The applicant shall submit a noise analysis demonstrating the noise impact in terms of Ldn. If this analysis demonstrates a +3 dBLdn increase due to the helistop and this increase results in noise levels exceeding seventy-five (75) dBLdn at residential uses in R, RP, AP, SP, UNC or LNC Districts, the application shall be denied.

(b) The applicant shall submit an environmental report addressing environmental categories listed in subsection 911.04.A.30, entitled Heliports in GI and RIV-GI Districts.

911.04.A.33 Hotel/Motel (Limited)

(a) In LNC, UNC and NDI Districts

Hotel/Motel (Limited) uses shall be subject to the following standards in the LNC, UNC and NDI Districts:

(1) The design of the structure shall follow the development standards for commercial uses in the UNC and NDI Districts; and

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets.

(b) In EMI Districts

Hotel/Motel (Limited) uses shall be subject to the following standards:

(1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation; and

---

Introduced: 7/8/2022                                                Bill No: 2022-0592, Version: 3

Committee: Committee on Land Use and                          Status: Passed Finally
Economic Development

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(c) In RIV Districts and UC-E, UC-MU, and R-MU.

Hotel/Motel (Limited) uses shall be subject to the following standards:

(1) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation; and

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets.

911.04.A.34 Hotel/Motel (General)

(a) In UNC, LNC and NDI Districts

Hotel/Motel (General) uses shall be subject to the following standards:

(1) The design of the structure shall follow the development standards for commercial uses in the UNC District;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets;

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the emission of noise or glaring light, and proposed accessory uses such as restaurants and meeting facilities; and

(4) The Approving Body shall request a recommendation from the Planning Director on the Planning aspects of the proposed uses and structures.

(b) In EMI Districts

Hotel/Motel (General) uses shall be subject to the following standards:

(1) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(2) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation; and

(3) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

---

Introduced: 7/8/2022                                                Bill No: 2022-0592, Version: 3

Committee: Committee on Land Use and                          Status: Passed Finally
Economic Development

(c) In the RIV-MU District; UC-E, UC-MU, and R-MU.

Hotel/Motel (General) uses shall be subject to the following standards:

(1) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the emission of noise or glaring light, and proposed accessory uses such as restaurants and meeting facilities.

911.04.A.35 Housing for the Elderly

(a) In all Districts except RIV and UC-E, UC-MU, and R-MU

Housing for the Elderly (Limited and General) shall be subject to the following standards in all districts:

(1) Certain special features shall be permitted, usually associated with group living needs for comfort, health, safety and welfare of elderly persons such as dispensaries, medical facilities, common dining facilities, group recreation facilities and similar or related facilities;

(2) The development should be located in an area of determined need for such housing, but should not be of such a scale as to create a demographic imbalance with the neighborhood;

(3) The site should be in an area of relatively flat terrain;

(4) The site should be reasonably accessible to food markets, drug stores, medical facilities and social services;

(5) The site shall have reasonable access to public transit;

(6) The development shall provide common dining and social rooms;

(7) The site shall not be immediately adjacent to waste and pollution producing activities;

(8) Not less than forty (40) percent of the required lot shall be in usable open space at ground level, not less than eight (8) feet in width, located, arranged and oriented to provide optimal exposure to fresh air and sunlight, and developed and maintained to suit the needs of elderly people. Equivalent open space, not on the same zoning lot but easily accessible for elderly people located on public land in public control or under contractual agreement with the applicant, may be considered as meeting this requirement; and

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

(9) The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular programs or residents of the facility will require such additional parking;

(b) In Residential Districts and RIV-RM

Housing for the Elderly shall be subject to the following standards in all residential zoning districts:

(1) The building shall be designed to be in keeping with the residential character of the surrounding area;

(2) The Approving Body may permit additional density beyond that permitted in the district, but not to exceed four hundred fifty (450) square feet per unit, if it finds that the additional density will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, and the design and location of parking facilities relative to surrounding properties;

(c) In the UI District

Housing for the Elderly in the UI District shall be subject to the Site Plan Review procedures of Sec. 922.04.

(d) In RIV-MU, RIV-NS, ~~and~~ RIV-IMU, and UC-E, UC-MU, and R-MU,

Housing for the Elderly (Limited and General) shall be subject to the following standards:

(1) Certain special features shall be permitted, usually associated with group living needs for comfort, health, safety and welfare of elderly persons such as dispensaries, medical facilities, common dining facilities, group recreation facilities and similar or related facilities;

(2) The site should be reasonably accessible to food markets, drug stores, medical facilities and social services;

(3) The site shall have reasonable access to public transit; and

(4) The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular programs or residents of the facility will require such additional parking;

**911.04.A.36 Incinerator, Solid Waste**

Incinerator, Solid Waste uses shall be subject to the following standards:

---

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

(a) Technical analysis shall be submitted attesting to the level of emissions of the facility; and

(b) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable hours of operation, traffic generation, and the emission of odors, fumes, dust, noise, vibration and glaring light.

**911.04.A.37 Laboratory, Research Services (Limited and General)**

(a) In NDI and UNC Districts

Laboratory, Research Services (General) uses shall be subject to the following standards in the NDI and UNC Districts:

(1) The design of the structure shall follow the development standards for commercial uses in the UNC Districts.

(b) In EMI Districts

Laboratory, Research Services (Limited and General) uses shall be subject to the following standards:

(1) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(2) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation; and

(3) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(4) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

**911.04.A.38 Library (Limited and General)**

(a) In R1D, R1A, R2, R3, RM, and RIV-RM Subdistricts

Library (Limited) uses shall be subject to the following standards in the R1D, R1A, R2, R3, RM, and RIV-RM Subdistricts:

(1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, and hours of operation; and

(2) The residential Compatibility Standards of Chapter 916 shall apply.

---

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

(b) In NDO District

Library (Limited) uses shall be subject to the following standards in the NDO District:

(1) The Residential Compatibility Standards of Chapter 916 shall apply; and

(2) The Site Plan Review Procedures of the Section 922.04 shall apply.

(c) In EMI Districts

Library (Limited and General) uses shall be subject to the following standards:

(1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the emission of noise or glaring light, and proposed accessory uses, such as meeting facilities;

(2) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(3) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

**911.04.A.39 Manufacturing and Assembly (Limited and General)**

(a) In GT and DR Districts

Manufacturing and Assembly (Limited and General) uses shall be subject to the following standards in the GT and DR Districts:

(1) Manufacturing and Assembly uses shall be limited to the following:

(i) Laboratories: experimental, photo or motion picture, film or testing;

(ii) Manufacture of musical and small precision instruments, watches and clocks, jewelry, toys, novelties, rubber and metal hand stamps, candy and bakery products;

(iii) Manufacture of pottery and figurines or other similar ceramic products, using only previously pulverized clay and kilns fired only by electricity or gas; and

(iv) Printing, lithographing, type composition, ruling and binding establishment.

(2) Manufacturing and Assembly uses shall only be permitted when conducted within a completely enclosed building, and when located above the ground floor.

(b) In NDI and UNC Districts

---

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

Manufacturing and Assembly (Limited) uses shall be subject to the following standards in the NDI and UNC Districts:

(1) All uses shall be conducted within a completely enclosed building and shall create no external visible sign of the operation, such as noise, smoke, vibration or other factor;

(2) The design of the structure shall follow the development standards for commercial uses in the UNC District; and

(3) In UNC Districts, the Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, and the emission of odors, fumes, dust, noise, vibration, and glaring light.

(c) In the RIV-MU UC-E, UC-MU, and ~~District~~ Districts.

Manufacturing and Assembly (Limited) uses shall be subject to the following standards:

(1) All uses shall be conducted within a completely enclosed building and shall create no external visible sign of the operation, such as noise, smoke, vibration or other factor; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, and the emission of odors, fumes, dust, noise, vibration, and glaring light.

**911.04.A.40 Manufacturing and Assembly (General)**

(a) In NDI, UI, RIV and HC Districts

Manufacturing and Assembly (General) uses shall be subject to the following standards in the NDI, UI, RIV and HC Districts:

(1) All uses shall be conducted within a completely enclosed building and shall create no external visible sign of the operation, such as noise, smoke, vibration or other factor; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, and the emission of odors, fumes, dust, noise, vibration, and glaring light.

**911.04.A.41 Multi-Suite Residential**

Multi-Suite Residential (Limited and General) uses shall be subject to the following standards:

---

**Introduced:** 7/8/2022       **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(a) Multi-Suite Residential (Limited)

(1) In the RM and Grandview Public Realm Districts

  a. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building;

  b. The building shall be designed to be in keeping with the residential character of the surrounding area;

  c. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities;

  d. Parking will be provided at a minimum one (1) space per two (2) sleeping rooms;

  e. The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular use of the facility will require such additional parking.

(2) In the LNC District

Multi-Suite Residential (Limited and General) uses shall be subject to the following standards:

  a. The proposed use shall be subject to the Site Plan Review procedures of Section 922.04;

  b. The building shall be designed to be in keeping with the character of the surrounding area;

  c. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities; and

  d. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms.

(3) In EMI Districts

Multi-Suite Residential (Limited) shall be subject to the following standards:

  a. The building shall be designed to be in keeping with the character of the surrounding area;

  b. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge

---

**Introduced:** 7/8/2022       **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

areas and similar or related facilities;

  c. The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular use of the facility will require such additional parking;

  d. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building;

  e. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms; and

  f. The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(b) Multi-Suite Residential (General)

(1) In the LNC District

  a. The building shall be designed to be in keeping with the character of the surrounding area;

  b. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities;

  c. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms;

  d. The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular use of the facility will require such additional parking;

  e. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building.

(2) In the UI District

  a. The proposed use shall be subject to Site Plan Review;

  b. The building shall be designed to be in keeping with the character of the surrounding area;

---

**Introduced:** 7/8/2022       **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

  c. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities; and

  d. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms.

(3) In Grandview Public Realm Districts

  a. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building;

  b. The building shall be designed to be in keeping with the residential character of the surrounding area;

  c. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities;

  d. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms;

  e. The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular use of the facility will require such additional parking.

(4) In EMI Districts

Multi-Suite Residential uses shall be subject to the following standards:

  a. The building shall be designed to be in keeping with the character of the surrounding area;

  b. Certain special features shall be permitted, usually associated with shared living arrangements, such as common dining facilities, shared laundry facilities, lounge areas and similar or related facilities;

  c. The Approving Body may require additional parking beyond that required in Chapter 914, if it determines that the particular use of the facility will require such additional parking;

  d. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building;

---

**Introduced:** 7/8/2022       **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

  e. Parking will be provided at a minimum of one (1) space per two (2) sleeping rooms; and

  f. The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(5) In the UC-E, UC-MU and R-MU

  a. Parking shall be provided in accordance with the Parking Demand Analysis provisions of Section 914.02.B; and

  b. The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the hours of operation, the impacts of parking on surrounding residential uses, and the size and bulk of the building.

(6) In the UC-E District

Multi-Suite Residential uses shall meet one (1) of the following standards in the UC-E District:

  (a) All residential uses shall meet the requirements of 907.04.A.6 and shall otherwise follow the processes and procedures of 907.04.A, excluding 907.04.A.5 Applicability and 907.04.A.7 Off-Site Inclusionary Standards. One hundred (100) percent of the units shall be affordable and shall be located on site; or

  (b) Residential housing shall be less than fifty (50) percent of the Gross Floor Area in a mixed-use structure. For purposes of this calculation, shared spaces between residential uses and commercial shall be excluded from the calculation of Gross Floor Area.

911.04.A.42 Office (Limited) in the NDO and EMI Districts:

(a) In NDO District

Office (Limited) uses shall be subject to the following standards:

  (1) The proposed use shall be subject to the Residential Compatibility Standards of Chapter 916;

  (2) The proposed use shall be subject to the Landscaping and Screening Standards of Chapter 918;

Introduced: 7/8/2022                                                    Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                              **Status:** Passed Finally
Economic Development

(3) The design of any structure in an NDO District used for non-residential purposes that does not occupy a structure originally designed as a residence shall be of a scale and character that is consistent with the scale and character of adjacent residential neighborhoods;

(4) The gross floor area of any non-residential development, or any portion of any development which is non-residential in use shall not exceed eight thousand (8,000) square feet;

(5) Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts; and

(6) For Office (General) uses, the Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, noise generation, and the hours of operation.

(b) In EMI Districts

Office (limited) uses shall be subject to the following standards:

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.43 Office (General) in LNC, NDI, GI, NDO, RIV and EMI Districts

(a) In the LNC, RIV and NDI Districts Office (General) uses shall be subject to the following standards:

(1) The approving body shall determine that the proposed use will not create detrimental impacts on the surrounding properties and district, taking into consideration the probable traffic generation, hours of operation, noise and light.

(b) In the GI District Office (General) uses shall be subject to the following standards:

(1) The use shall be allowed only in buildings that were in existence prior to the effective date specified by the provisions of Section 901.05 and only when located above the ground floor.

(c) In the NDO District Office (General) uses shall be subject to the following standards:

(1) The proposed use shall be subject to the Residential Compatibility Standards of Chapter 916;

## Panel 2 (top right)

Introduced: 7/8/2022                                                    Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                              **Status:** Passed Finally
Economic Development

(2) The proposed use shall be subject to the Landscaping and Screening Standards of Chapter 918;

(3) The design of any structure in an NDO District used for non-residential purposes that does not occupy a structure originally designed as a residence shall be of a scale and character that is consistent with the scale and character of adjacent residential neighborhoods;

(4) Parking shall be provided in a location and manner that allows for all parking requirements by the facility, and all traffic created by the facility, to be located outside of residential districts; and

(5) For Office (General) uses, the approving body shall determine that such use will not create detrimental impacts on the surrounding properties taking into consideration the probable traffic generation, parking needs, noise generation, and the hours of operation.

(d) In EMI Districts

Office (General) uses shall be subject to the following standards:

(1) The proposed use shall be in compliance with an approved Institutional Master Plan;

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.44 Parking, Commercial (Limited)

(a) In NDI, UNC, and GI Districts

Parking, Commercial (limited) uses shall be subject to the following standards in NDI, UNC, and GI districts:

(1) The use shall be located to minimize disruption to pedestrian movements; and

(2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts.

(b) In LNC and RIV Districts:

Parking, Commercial (limited) uses shall be subject to the following standards in the LNC and RIV Districts:

(1) The use shall be located to minimize disruption to pedestrian movements;

(2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts; and

Introduced: 7/8/2022                                                    Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                              **Status:** Passed Finally
Economic Development

(3) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, noise, and light.

(c) In EMI districts

Parking, Commercial (Limited) uses shall be subject to the following standards:

(1) The use shall be located to minimize disruption to pedestrian movements;

(2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(3) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(4) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.45 Parking, Commercial (General)

(a) In all non-EMI Districts

Parking, Commercial (General) uses shall be subject to the following standards:

(1) The use shall be located to minimize disruption to pedestrian movements;

(2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts; and

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, noise, and light.

(4) The lot containing the Parking, Commercial (General) use shall not be located within one thousand (1,000) feet from a Gaming Enterprise as measured from the lot lines of the subject properties.

(b) In EMI districts

Parking, Commercial (Limited) uses shall be subject to the following standards:

(1) The use shall be located to minimize disruption to pedestrian movements;

(2) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(3) The proposed use shall be in compliance with an approved Institutional Master Plan; and

## Panel 4 (bottom right)

Introduced: 7/8/2022                                                    Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                              **Status:** Passed Finally
Economic Development

(4) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(c) In RIV-NS District

Parking, Commercial (Limited) uses shall be subject to the following standards:

(1) Commercial parking lots shall be permitted only when they also serve as accessory or shared parking for on-site or adjacent uses at different peak parking demands.

911.04.A.46 Parks and Recreation (Limited and General)

(a) In Residential, Grandview Public Realm and EMI Districts.

Parks and Recreation (Limited and General) uses shall be subject to the following standards in residential and Grandview Public Realm districts:

(1) Parking shall be screened from view from adjacent residential properties;

(2) Buildings shall be designed to be compatible with surrounding residential structures and landscape; and

(3) The Approving Body shall determine that the proposed use will not create detrimental impacts taking into consideration potential noise generation, traffic generation, and the physical relationship of the proposed use to surrounding structures.

(b) In H Districts

Parks and Recreation (Limited) uses shall be subject to the following standards in H districts:

(1) No more than twenty-five (25) percent of the lot shall be graded.

(2) Site Plan Review shall be required in accordance with Sec. 922.04.

(c) In GI Districts

Parks and Recreation (Limited and General) uses shall be subject to the following standards in the GI District:

(1) The proposed use shall be part of an approved plan adopted by the City of Pittsburgh.

911.04.A.47 Recreation and Entertainment, Indoor (General)

(a) In UNC Districts

Recreation and Entertainment, Indoor (General) uses shall be subject to the following standards in the UNC District:

(1) The design of the structure shall follow the development standards for commercial uses

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

in the UNC Districts; and

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets.

(b) In P Districts

Recreation and Entertainment, Outdoor (General) uses shall be subject to the following standards in the P District:

(1) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets; and

(2) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In LNC and NDI Districts

(1) The design of the structure shall follow the development standards for commercial uses in the LNC and NDI Districts; and

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets.

(d) In GI Districts

Recreation and Entertainment, Indoor (General) uses shall be subject to the following standards in the GI District:

(1) Parking facilities shall be designed and located to avoid disruption of industrial facilities in the area;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby streets;

(3) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets;

(4) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding district, taking into consideration potential traffic generation, pedestrian access, and hours of operation.

(e) In EMI Districts

Recreational and Entertainment, Indoor (General) uses shall be subject to the following

---

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

standards:

(1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation;

(2) A traffic study, in a form approved by the Zoning Administrator, shall be submitted with the application, and shall address parking and traffic impacts of the development;

(3) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(4) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(5) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(f) In UC-E and UC-MU Districts

Recreation and Entertainment, Indoor (General) uses shall be subject to the following standards:

(1) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets; and

(2) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding district, taking into consideration potential traffic generation, pedestrian access, and hours of operation.

911.04.A.48 Recreation and Entertainment, Indoor (Limited)

(a) In P District

Recreation and Entertainment, Indoor (Limited) uses shall be subject to the following standards in the P District:

(1) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets; and

(2) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(b) In EMI Districts

---

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

Recreational and Entertainment, Indoor (Limited) uses shall be subject to the following standards:

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.49 Recreation and Entertainment, Outdoor (Limited)

(a) In LNC, NDI and UNC Districts

Recreation and Entertainment, Outdoor (Limited) uses shall be subject to the following standards in the LNC, NDI and UNC Districts:

(1) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets; and

(3) Any enclosure, such as fences and walls, shall be designed to be compatible with surrounding structures and shall not include the use of barbed or razor wire.

(b) In P Districts

Recreation and Entertainment, Outdoor (Limited) uses shall be subject to the following standards in the P District:

(1) The design of the structure shall follow the development standards for commercial uses in the UNC District;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets;

(3) Any enclosure, such as fences and walls, shall be designed to be compatible with surrounding structures and shall not include the use of barbed or razor wire; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In EMI Districts

Recreational and Entertainment, Outdoor (Limited) uses shall be subject to the following standards:

---

| Introduced: 7/8/2022 | Bill No: 2022-0592, **Version:** 3 |
|---|---|
| **Committee:** Committee on Land Use and Economic Development | **Status:** Passed Finally |

(1) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(2) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.50 Recreation and Entertainment, Outdoor (General)

(a) In GI District

Recreation and Entertainment, Outdoor (General) uses shall be subject to the following standards in the GI District:

(1) Parking facilities shall be designed and located to avoid disruption of industrial facilities in the area; and

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby streets;

(3) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets; and

(4) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding district, taking into consideration potential traffic generation, pedestrian access, and hours of operation.

(b) In P District

Recreation and Entertainment, Outdoor (General) uses shall be subject to the following standards in the P District:

(1) The design of the structure shall follow the development standards for commercial uses in the UNC District;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets;

(3) Any enclosure, such as fences and walls, shall be designed to be compatible with surrounding structures and shall not include the use of barbed or razor wire; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In EMI Districts

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

Recreational and Entertainment, Outdoor (General) uses shall be subject to the following standards:

(1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation;

(2) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets;

(3) Any enclosure, such as fences and walls, shall be designed to be compatible with surrounding structures and shall not include the use of barbed or razor wire;

(4) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(5) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.51 Recycling Collection Station

Recycling Collection Stations shall be subject to the following standards:

(a) Recycling storage containers shall be completely enclosed; and

(b) Vehicular drop-off areas shall be located a minimum of sixty (60) feet from any intersection or driveway and shall not conflict with residential parking.

911.04.A.52 Recycling Processing Center

(a) In NDI, RIV, and HC Districts

Recycling Processing Centers shall be subject to the following standards in the NDI and HC Districts:

(1) The use shall be conducted within a completely enclosed building;

(2) Vehicular access shall not be from the primary commercial frontage if access from the rear or side is possible; and

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation, truck routes, hours of operation, and noise generation.

911.04.A.53 Religious Assembly (Limited and General)

Religious Assembly (Limited and General) uses shall be subject to the following standards:

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(a) Parking demand shall be addressed so as to meet parking needs for both normal and event use, and to discourage parking on nearby residential streets;

(b) In residential zoning districts, the Approving Body shall request a report and recommendation from the Planning Director on the planning aspects of the application; and

(c) Where recommended by the Planning Director, the Approving Body may modify the height, yard, open space, area, and parking requirements;

(d) The Residential Compatibility Standards of Chapter 916 shall apply; and

(e) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, and hours of operation.

911.04.A.54 Reserved

911.04.A.55 Restaurant, Fast Food

(a) In IIC and GI Districts

Restaurant, Fast Food uses shall be subject to the following standards in the GI District:

(1) The applicant shall provide a transportation impact study, based on an approved transportation scoping form, prepared by a qualified transportation engineer, for review and approval by the Department of Mobility and Infrastructure. The applicant shall implement any required mitigation from the detrimental impacts of the drive through use, as determined in the approved transportation impact study.

(2) The Zoning Board of Adjustment shall determine that such use will not create detrimental impact on surrounding properties, taking into consideration transportation-related impacts, and the physical relationship of the proposed use and structure to the surrounding businesses and uses.

911.04.A.56 Restaurant (Limited)

(a) In GI District

Restaurant (Limited) uses shall be subject to the following standards in the GI District:

(1) Parking shall be located in such a way as to avoid conflicts with industrial operations; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration the probable traffic generation,

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

parking needs and hours of operation.

(b) In P District

Restaurant (Limited) uses shall be subject to the following standards in the P District:

(1) The use shall be located in a building existing on February 26, 1999;

(2) Parking for the use shall not be provided;

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable generation of traffic and the location of the use; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(c) In EMI Districts

Restaurant (Limited) uses shall be subject to the following standards in the EMI District:

(1) Parking facilities and access shall be designed and located to clearly meet the demand of the facility in a way which does not interfere with parking spaces required for surrounding residential uses; and

(2) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

911.04.A.57 Restaurant (General)

(a) In LNC, NDI, UNC, RIV, UC-MU and EMI Districts

Restaurant (General) uses shall be subject to the following standards in the LNC, NDI and UNC Districts:

(1) Parking facilities and access shall be designed and located to clearly meet the demand of the facility in a way which does not interfere with parking spaces required for surrounding residential uses;

(2) Off-site impacts of the use, which are directly attributed to activities occurring on-site, shall be controlled to avoid conflicts with surrounding residential use; and

(3) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

(b) In GI District

Restaurant (General) uses shall be subject to the following standards in the GI District:

(1) Parking shall be located in such a way as to avoid conflicts with industrial operations;

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

and

(2) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration the probable traffic generation, parking needs and hours of operation.

(c) In P District

Restaurant (General) uses shall be subject to the following standards in the P District:

(1) The use shall be located in a building existing on February 26, 1999;

(2) Parking for the use shall not be provided;

(3) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable generation of traffic and the location of the use; and

(4) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

911.04.A.58 Retail Sales and Service (Limited)

(a) In GI Districts

Retail Sales and Service (Limited) uses shall be subject to the following standards in GI District:

(1) Off-street parking, loading and hours of operation shall be conducted in a manner that does not interfere with any industrial operations in the vicinity.

911.04.A.59 Retail Sales and Services (General)

(a) In GI Districts

Retail Sales and Service (General) uses shall be subject to the following standards in GI District:

(1) Off-street parking, loading and hours of operation shall be conducted in a manner that does not interfere with any industrial operations in the vicinity.

(b) In UNC District

Retail Sales and Service (General) shall be subject to the following standards in the UNC District:

(1) Parking facilities and access shall be designed and located to clearly meet the demand of the facility in a way which does not interfere with parking spaces required for surrounding residential uses

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(c) In LNC and NDI Districts

Retail Sales and Services (General) shall be subject to the following standards in the LNC and NDI Districts:

    (1) Parking and access facilities shall be designed and located to clearly meet the demand of the facility in a way that does not interfere with parking spaces required for the surrounding residential uses.

(d) In EMI Districts

Retail Sales and Services (General) shall be subject to the following standards:

    (1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation;

    (2) A traffic study, in a form approved by the Zoning Administrator, shall be submitted with the application, and shall address parking and traffic impacts of the development;

    (3) Off-street parking, loading and hours of operation shall be conducted in a manner that does not interfere with institutional operations in the vicinity;

    (4) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

911.04.A.60 Retail Sales and Service, Residential Convenience except in RIV Districts

Retail Sales and Service, Residential Convenience uses shall be subject to the following standards:

    (a) The use shall be located on the ground-floor a building containing at least fifty (50) dwelling units;

    (b) No direct, exterior entrance to the street or sidewalk shall be permitted;

    (c) The gross floor area of all such uses within a single building shall not exceed fifty (50) percent of the gross floor area of the first level of the building; and

    (d) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

911.04.A.61 Safety Service

Safety Service uses shall be subject to the following standards:

    (a) In all Districts

Curb cuts, driveways, and other vehicular areas shall be designed and located to minimize detrimental impacts on the surrounding residential properties.

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(b) In Residential Districts

Safety Service uses shall be subject to the following standards in all residential zoning districts:

    (1) Height, yard, and area requirements shall be those of the residential district in which the facility is located; and

    (2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, truck routes, on-site storage, and noise generation.

(c) In LNC, NDI and UNC Districts

Safety Service uses shall be subject to the following standards in the LNC, NDI and UNC Districts:

    (1) Curb cuts and vehicular drives shall be designed according to the Parking Area Location and Design Standards of Sec. 914.09; and

    (2) The design of the structure shall follow the development standards for commercial uses in the UNC District.

(d) In NDO and P Districts

    (1) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, truck routes, on-site storage, and noise generation.

    (2) A maximum of fifty (50) percent of the lot shall contain impervious surfaces.

    (3) Parking and driveway area shall be screened from view from adjacent streets and residential uses.

(e) In EMI Districts

Safety Service uses shall be subject to the following standards:

    (1) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, generation of noise and the hours of operation;

    (2) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

911.04.A.62 Salvage Yard

(a) In GI and RIV Districts

Salvage Yard uses shall be subject to the following standards in the GI and RIV Districts:

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

    (1) The proposed use shall be fully enclosed;

    (2) The proposed use shall be subject to the Screening Standards of Sec. 918.03; and

    (3) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04.

911.04.A.63 School, Elementary or Secondary (Limited)

School, Elementary or Secondary (Limited) uses shall be subject the following standards:

    (a) In Residential and Grandview Public Realm Districts

        (1) The Residential Compatibility Standards of Chapter 916 shall apply;

        (2) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development;

        (3) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity; and

        (4) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking in to consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses other than normal hours.

    (b) In NDO, LNC, NDI, UI, RIV, UC-E, UC-MU, R-MU and EMI Districts.

        (1) The Approving Body shall determine that such use shall not create detrimental impacts on surrounding properties, taking into consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses outside of normal hours of operation;

        (2) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development; and

        (3) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity.

    (c) In UNC and HC Districts

        (1) Site Plan Review shall be required; and

        (2) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity.

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

911.04.A.64 School, Elementary or Secondary (General)

School, Elementary or Secondary (General) uses shall be subject the following standards:

    (a) In Residential and Grandview Public Realm Districts

        (1) The Residential Compatibility Standards of Chapter 916 shall apply;

        (2) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development;

        (3) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity; and

        (4) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking in to consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses other than normal hours.

    (b) In NDO, LNC, RIV UC-E, UC-MU, R-MU, and EMI Districts.

        (1) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses outside of normal hours of operation;

        (2) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development;

        (3) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity.

    (c) In NDI and UI Districts

        (1) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses outside of normal hours of operation;

        (2) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development; and

        (3) Parking and access shall be provided in such a way as to protect students from any external impacts of traffic in the vicinity.

**Top-left panel:**

(d) In the UNC and IIC Districts

(1) Site Plan Review shall be required;

(2) Parking and access shall be provided in such a way as to protect children from any external impacts of traffic in the vicinity.

911.04.A.65 Service Station

Service Station uses shall be subject to the following standards:

(a) Gasoline pumps shall be setback at least 20 feet from any right-of-way. All stands, racks and other features shall be setback at least thirty-five (35) feet from any right-of-way;

(b) Curb cuts shall be located at least sixty (60) feet from the tangent points of the curb radius at any street intersection;

(c) Service stations may have a sign on each pump identifying the pumps in addition to business signs located as permitted under Chapter 919;

(d) Activities such as car washing, oil changing and greasing must be conducted within a completely enclosed building;

(e) In the NDI, UNC, RIV, UC-MU, and LNC Districts, the Approving Body shall determine that such use will be controlled against detrimental impact to surrounding properties, taking into consideration among other things, the probable traffic generation, the physical relationship of the proposed use to the surrounding structures, the probable hours of operation, the distance from places of public assembly and the omission of fumes, odors, dust, noise, vibration or glaring light: and

(f) Any lot containing a Service Station use shall be located at least one hundred fifty (150) feet from any residential zoning district;

(g) In the LNC, UC-MU, and RIV-MU Districts, a maximum of two (2) curb cuts shall be provided, and shall be a minimum of sixty (60) feet apart;

(h) In the LNC, UC-MU, NDI and UNC districts, the building shall be placed along the same frontage, with the same setbacks, as the abutting buildings, and the parking and driveway areas shall be placed at the back of the building, unless the Approving Body determines that such an arrangement will create security problems or congestion or other operational problems on the site;

(i) In the LNC, UC-MU, NDI and UNC districts, the Approving Body shall require that the site and any structures form a compatible relationship with the surrounding sites and structures, taking into consideration the building materials, shape of the structures, size of buildings

**Top-right panel:**

and signs, locations of the structures on the site, and the amount and location of landscaping. The Approving Body shall impose additional conditions as may be necessary for the site and structures to form a compatible relationship with the adjacent and surrounding sites and structures.

911.04.A.66 Assisted Living Facility

(a) Class A

(1) In all Districts

Assisted Living Facility (Class A) uses shall be subject to the following standards in all districts:

(i) Lot area shall be provided at the rate of five thousand (5,000) square feet plus five hundred (500) square feet for each sleeping room in excess of three (3). Every unit of two (2) beds, or fraction thereof, in a sleeping room shall be counted as a separate sleeping room. This provision may be reduced by the Board when the facility is to be located in a building that has been constructed prior to May 10, 1958;

(ii) Any Assisted Living Facility use shall be limited to no more than one (1) per building, shall not be located in a building that is occupied by any other residential type of use; and shall be spaced no closer than eight hundred (800) feet from any other authorized Assisted Living Facility, group residence facility or group care facility. This distance shall be measured imposing a circular area on an accurate plan by locating a point on the center of the subject building and by extending a radius of eight hundred (800) feet. Any other building occupied as an authorized Assisted Living Facility that is located totally within this circular space shall be cause for rejection of the application;

(iii) Supervision shall be provided in accord with the regulations of the certifying agency(ies) by at least one (1) responsible non-client adult available on the premises on a 24 hour-a-day basis while any of the clients are on the premises;

(iv) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes;

(v) New buildings shall be situated within the buildable area of the lots as determined by the zoning district regulations; however, the minimum interior side yard setback in residential districts shall be not less than ten (10) feet; and

(vi) On-site parking facilities shall be provided at a ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff residents who are eligible and are permitted by the operator to operate a motor

vehicle.

(2) Residential and Grandview Public Realm Districts

Assisted Living Facility (Class A) uses shall be subject to the following standards in Residential and Grandview Public Realm Districts:

(i) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds.

(3) NDO, LNC and NDI Districts

Assisted Living Facility (Class A) uses shall be subject to the following standards in NDO, LNC and NDI Districts:

(i) The proposed use shall be subject to the Site Plan Review procedures in accordance with the provisions of Sec. 922.04.

(b) Class B

Assisted Living (Class B) uses shall be subject to the following standards:

(1) Lot area shall be provided at the rate of five thousand (5,000) square feet plus three hundred (300) square feet for each sleeping room in excess of three (3). Every unit of two (2) beds, or fraction thereof, in a sleeping room shall be counted as a separate sleeping room. This provision may be reduced by the Board when the facility is to be located in a building that has been constructed prior to May 10, 1958;

(2) Any Assisted Living Facility use shall be limited to no more than one (1) per building, shall not be located in a building that is occupied by any other residential type of use; and shall be spaced no closer than eight hundred (800) feet from any other authorized Assisted Living Facility, group residence facility or group care facility. This distance shall be measured imposing a circular area on an accurate plan by locating a point on the center of the subject building and by extending a radius of eight hundred (800) feet. Any other building occupied as an authorized Assisted Living Facility that is located totally within this circular space shall be cause for rejection of the application;

(3) Supervision shall be provided in accord with the regulations of the certifying agency (ies) by at least one (1) responsible non-client adult available on the premises on a 24 hour-a-day basis while any of the clients are on the premises;

(4) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes;

(5) New buildings shall be situated within the buildable area of the lots as determined by the zoning district regulations; however, the minimum interior side yard setback in residential districts shall be not less than ten (10) feet;

(6) On-site parking facilities shall be provided at a ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff residents who are eligible and are permitted by the operator to operate a motor vehicle; and

(7) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds.

(c) Class C

(1) In all Districts

Assisted Living Facility (Class C) uses shall be subject to the following standards in all districts:

(i) Lot area shall be provided at the rate of five thousand (5,000) square feet plus three hundred (300) square feet for each sleeping room in excess of three (3). Every unit of two (2) beds, or fraction thereof, in a sleeping room shall be counted as a separate sleeping room. This provision may be reduced by the Board when the facility is to be located in a building that has been constructed prior to May 10, 1958;

(ii) Any Assisted Living Facility use shall be limited to no more than one (1) per building, shall not be located in a building that is occupied by any other residential type of use; and shall be spaced no closer than eight hundred (800) feet from any other authorized Assisted Living Facility, group residence facility or group care facility. This distance shall be measured imposing a circular area on an accurate plan by locating a point on the center of the subject building and by extending a radius of eight hundred (800) feet. Any other building occupied as an authorized Assisted Living Facility that is located totally within this circular space shall be cause for rejection of this application;

(iii) Supervision shall be provided in accord with the regulations of the certifying agency(ies) by at least one (1) responsible non-client adult available on the premises on a 24 hour-a-day basis while any of the clients are on the premises;

(iv) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes;

**Introduced:** 7/8/2022                                      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                **Status:** Passed Finally
Economic Development

(v) New buildings shall be situated within the buildable area of the lots as determined by the zoning district regulations; however, the minimum interior side yard setback in residential districts shall be not less than ten (10) feet; and

(vi) On-site parking facilities shall be provided at a ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff residents who are eligible and are permitted by the operator to operate a vehicle.

(2) In RM and Grandview Public Realm Districts

In addition to the standards listed above, Assisted Living Facility (Class C) uses shall be subject to the following standards in the RM and Grandview Public Realm Districts:

(i) The facility shall be designed to appear as a residential structure, and parking shall be located and screened so as to not be visible from adjacent properties or right-of -way;

(ii) The required lot area shall be determined using the lot area requirements for residential dwelling units, allowing two (2) beds for each dwelling unit; and

(iii) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds.

(3) In NDO, LNC, NDI, and UNC Districts

Assisted Living Facility (Class C) uses shall be subject to the following standards in the NDO, LNC, NDI, and UNC District:

(i) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds.

911.04.A.67 Laundry Services

Laundry Service uses shall be subject to the following standards:

(1) All uses shall be conducted within a completely enclosed building and shall be designed to minimize external signs of the operation, such as noise, odor, smoke, vibration or other

---

**Introduced:** 7/8/2022                                      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                **Status:** Passed Finally
Economic Development

factors; and

(2) The Approving Body shall determine that the proposed use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, loading and unloading, hours of operation, and the emission of odors, fumes, dust, noise, vibration, and glaring light;

911.04.A.68 Sidewalk Cafe

Sidewalk Cafe uses shall be subject to the following standards:

(a) The public sidewalk shall be used for tables and chairs only, for use by customers; service equipment shall not be placed on the public sidewalk;

(b) The use shall be permitted provided that such use is accessory to an existing functioning restaurant which directly abuts the sidewalk or right-of-way to be utilized and is within the same frontage as the restaurant with which it is to be associated;

(c) The portion of the sidewalk or right-of-way to be used shall be no greater than one-half (½) of the space measured between the outside face of the curb and the property line. An unobstructed pedestrian passageway of no less than five (5) feet shall be provided between the curb and the cafe area.

(d) The sidewalk cafe area shall be separated from the designated pedestrian passageway by a removable barrier surrounding the perimeter. The height of the barrier shall be approximately three (3) feet and removed when the cafe is closed. The hole in the sidewalk shall be capped when the barrier is not in place. The barrier shall be of material and design in keeping with the character of the neighborhood;

(e) No obstruction shall be placed within eighteen (18) inches of the face of any curb, within five (5) feet of any fire exit, fire hydrant, or building corner;

(f) It shall be determined that the proposed cafe service will in no way endanger the health, safety or welfare of the public or be detrimental to surrounding property values; and

(g) The Certificate of Occupancy shall not be issued until a sidewalk encroachment document has been approved by the Department of Mobility and Infrastructure.

911.04.A.69 Single-Unit Detached and Attached Residential

(a) In H Districts

Single-Unit Detached and Attached Residential uses shall be subject to the following conditions in the H District.

(1) Topography. Primary structure must be located on buildable land defined as a

---

**Introduced:** 7/8/2022                                      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                **Status:** Passed Finally
Economic Development

contiguous area of the lot less than thirty (30) percent in existing slope.

(2) Soils. Any site proposed for development in the H District shall be investigated to determine the soil characteristics. A soils engineering report may be required at the discretion of the Zoning Administrator. Factors to be considered by the Zoning Administrator when determining whether an engineering report will be required include the following (any one (1) factor may warrant an engineer's report):

a. Nature, distribution, and strength of existing soils as described in the County Soils Survey;

b. Any development proposed on natural slopes greater than 20%;

c. Areas that are landslide-prone;

d. Areas with soils that have a high shrink-swell potential;

(3) Vegetation. The proposed development shall be designed to minimize the incidence of erosion. The Zoning Administrator shall be reviewing the application to determine how the applicant uses the vegetation to reduce erosion. The application must show the Administrator how:

a. Any deep-rooted woody vegetation reduces storm runoff volume over the slope;

b. Existing and proposed foliage reduces the velocity of raindrops by reducing their energy when they strike the ground;

c. Existing and proposed vegetation increases the roughness of the ground surface which slows the velocity of surface water flow; and

d. Existing root networks will be protected to bind the soil.

(4) Access. For any new construction of a dwelling, or dwellings, on a lot fronting on a substandard hillside street, the Zoning Administrator will be reviewing the application to determine how the applicant accesses the street and will be making recommendations to improve any substandard conditions that will be conditions of any approval for a building and occupancy permit. The Zoning Administrator will consider the following existing conditions in the review: road width and slope, road surface condition, drainage, sight distance, availability of on-street and off-street parking, and presence of retaining walls.

(5) Infrastructure. Public water and sewer must be available for connection at the lot line.

If the lot in which the owner-applicant is requesting to build upon is determined to meet these five (5) conditions, the Zoning Administrator will then review the plot plan for compliance with the Development Standards in Section 905.02.C, 905.02.D, and 905.02.E.

(b) Existing vegetation shall be cleared only to the extent needed for the structure, driveway, and

---

**Introduced:** 7/8/2022                                      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                **Status:** Passed Finally
Economic Development

outdoor activities that are associated with the residential use. In no case shall more than ten (10) percent, or two thousand four hundred (2,400) square feet, whichever is larger, be cleared.

(c) Single-Unit Attached dwellings are permitted by Special Exception in the H District provided that no more than four (4) units are constructed in any cluster.

911.04.A.70 Transit Facility

Transit Facility uses shall be subject to the following standards:

(a) Parking and vehicular storage areas shall be screened according to the Landscaping and Screening Standards of Chapter 918;

(b) Pedestrian walkways and loading areas shall be designed to be an integral part of the surrounding street system, and to minimize conflicts with vehicles; and

(c) Site development standards, off-street parking and loading requirements and landscaping and screening standards shall be established by the Planning Commission, based on an evaluation of the specific Transit Facility proposal.

911.04.A.71 Utility (Limited)

(a) In all Districts

Utility (Limited) uses shall be subject to the following standards

(1) Overhead lines shall be organized, designed and located to avoid conflict with existing trees and other existing landscape features;

(2) Where wiring or cables are intended to serve new structures of more than ten (10) new residential units, or new structures of two (2) or more nonresidential buildings within a single development, lines and cables shall be located underground;

(3) Accessory structures shall not be located in the street side yard; and

(4) When located in an interior side yard, accessory equipment shall be completely screened from view except as needed for access, according to the Landscaping and Screening Standards of Chapter 918.

911.04.A.72 Utility (General)

Utility (General) uses shall be subject to the following standards:

(a) In all districts, all facilities which can physically and technically be within an enclosed building shall be within a completely enclosed building;

**Top-left panel:**

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

(b) In all districts other than GI or the RIV, the design of the structure shall follow the development standards for commercial uses in the UNC District;

(c) The Approving Body shall require additional landscaping and screening of the facility if required to sufficiently screen the facility from surrounding properties; and

(d) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to the surrounding uses and structures, the probable hours of operation, the design and location of areas for parking and maneuvering of vehicles, and the emission of odors, fumes, dust, noise, vibration, or glaring light.

911.04.A.73 Vehicle/Equipment Repair (Limited)

(a) In the LNC, NDI and UNC Districts

Vehicle/Equipment Repair (Limited) uses shall be subject to the following standards in the LNC, NDI and UNC Districts:

(1) The use shall be located within a completely enclosed structure;

(2) The facility shall be designed according to the development standards for commercial uses in the district;

(3) The building housing such use shall be located at least thirty (30) feet from any right-of-way line and at least sixty (60) feet from any lot in a residential zoning district; and

(4) Access to such use shall not be provided from a primary commercial frontage where access from the rear is possible.

(5) In the NDI and UNC Districts, the Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking, pedestrian safety, noise and hours of operation.

(b) In the GT, DR and EMI Districts.

Vehicle/Equipment Repair (Limited) uses shall be subject to the following standards in the GT and DR Districts:

(1) The uses shall be only permitted as accessory uses within a larger structure;

(2) Vehicular access shall not be provided from the primary commercial frontage where rear vehicular access is possible; and

(3) All repair and service work to vehicles shall be conducted within an entirely enclosed

**Top-right panel:**

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

structure, and no such work shall be conducted in a location which is visible from adjacent properties or a right-of-way.

(c) In RIV districts.

Vehicle/Equipment Repair (Limited) uses shall be subject to the following standards:

(1) The uses shall be only permitted as accessory uses within a larger structure;

(2) All repair and service work to vehicles shall be conducted within an entirely enclosed structure, and no such work shall be conducted in a location which is visible from adjacent properties or a right-of-way.

911.04.A.74 Vehicle/Equipment Repair (General)

Vehicle/Equipment Repair (General) uses shall be subject to the following standards:

(a) The building housing such use shall be located at least thirty (30) feet from any right-of-way line and at least sixty (60) feet from any lot in a residential zoning district;

(b) Access to such facility shall not be provided from a primary commercial frontage where access from the rear is possible; and

(c) In the NDI and UNC Districts, the Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking, pedestrian safety, noise and hours of operation.

911.04.A.75 Vehicle/Equipment Sales (Limited)

(a) In LNC, UNC, UI, RIV and NDI Districts

Vehicle/Equipment Sales (Limited) shall be subject to the following standards in the LNC, UNC, UI, RIV and NDI Districts:

(1) The facility shall be designed according to the development standards for commercial uses in the district; and

(2) Curb cuts and vehicular drives shall be designed according to the Parking Area Location and Design Standards of Section 914.09; and

(3) The public right-of-way shall not be used for the storage of vehicles; and

(4) Except as provided for in other regulations, no unregistered or unregistered or uninspected motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepaired, or in the process of being stripped or dismantled; and

(5) The Landscaping and Screening Standards of Chapter 918 shall apply regardless of the

**Bottom-left panel:**

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

number of parking spaces provided.

(b) The definition of vehicle/equipment sales, Section 911.02, includes the retail, wholesale, or rental of motorized vehicle, etc.

(Ord. 30/November 11, 2000/Amend. U-27)

911.04.A.76 Vehicle/Equipment Sales (General)

Vehicle/Equipment Sales (General) shall be subject to the following standards:

(a) In the UNC, RIV and NDI Districts

(1) The facility shall be designed according to the development standards for commercial uses in the district;

(2) Curb cuts and vehicular drives shall be designed according to the Parking Area Location and Design Standards of Sec. 914.09;

(3) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration probable parking needs, traffic generation, and the design and location of areas for parking and maneuvering of vehicles.

(b) In the HC District

(1) The facility shall be designed according to the development standards for commercial uses in the district;

(2) Curb cuts and vehicular drives shall be designed in accordance to the Parking Area Location and Design Standards of Sec. 914.09;

(3) The Landscaping and Screening Standards of Chapter 918 shall apply; and

(4) Site Plan Review shall be required.

(c) In the UI District

(1) The facility shall be designed according to the development standards for commercial uses in the district;

(2) Curb cuts and vehicular drives shall be designed in accordance to the Parking Area Location and Design Standards of Sec. 914.09;

(3) The Landscaping and Screening Standards of Chapter 918 shall apply; and

(4) Site Plan Review shall be required.

**Bottom-right panel:**

Introduced: 7/8/2022     Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development     **Status:** Passed Finally

911.04.A.77 Vocational School (Limited and General)

(a) Vocational School (Limited) uses shall be subject to the following standards:

(1) In EMI Districts

(i) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(ii) The proposed use shall be subject to the Project Development Plan Procedures of Section 922.10.

(b) Vocational School (General) uses shall be subject to the following standards:

(1) In all Districts

The facility shall be designed according to the development standards for commercial uses in the district.

(2) In NDI, and RIV Districts, UC-E, and UC-MU,

(i) the approving body shall determine that such use will not create detrimental impacts on surrounding properties, taking into consideration probable traffic generation, parking needs, the size and bulk of the building, and the impacts of uses outside of normal hours of operation; and

(ii) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed development.

(3) In EMI Districts

Vocational School (General) uses shall be subject to the following standards:

(i) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(ii) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.78 Warehouse (Limited and General)

(a) In EMI Districts

Warehouse (Limited) uses shall be subject to the following standards:

(1) Every portion of the property used for Warehouse (Limited) uses shall be located not closer than two hundred (200) feet from any property in a R or H district and one

hundred (100) feet from any property in a NDI, UNC or LNC district;

(2) Any vehicular maneuvering shall be located on-site;

(3) Curb cuts shall be minimized to the maximum extent feasible in order to achieve access to the site;

(4) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the emission of noise or glaring light, and proposed accessory uses, such as meeting facilities;

(5) The proposed use shall be subject to the Site Plan Review Procedures of Section 922.04.

(b) In the HC District

Warehouse (General) uses shall be subject to the following standards:

(1) Every portion of the property used for Warehouse (General) uses shall be located not closer than two hundred (200) feet from any property in a R or H District, and one hundred (100) feet from any property in a NDI, UNC or LNC District;

(2) All maneuvering of vehicle shall be on-site;

(3) Curb cuts shall be minimized to the maximum extent feasible in order to achieve access to the site; and

(4) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable truck maneuvering, traffic generation, paved surfaces, glaring lights and hours of operation.

(c) In the UI District

Warehouse (General) uses shall be subject to the following standards:

(1) Every portion of the property used for Warehouse (General) uses shall be located not closer than two hundred (200) feet from any property in a R or H District, and one hundred (100) feet from any property in an NDI, UNC, or LNC District;

(2) All maneuvering of vehicles shall be on-site;

(3) Curb cuts shall be minimized to the maximum extent feasible in order to achieve access to the site; and

(4) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

(d) In RIV Districts

---

Warehouse (Limited and General) uses shall be subject to the following standards:

(1) Any vehicular maneuvering shall be located on-site; and

(2) Curb cuts shall be minimized to the maximum extent feasible in order to achieve access to the site.

911.04.A.79 Welding or Machine Shop

Welding or Machine Shop uses shall be subject to the following standards:

(a) In the NDI and HC Districts

(1) The use shall be conducted within a completely enclosed building and shall create no external visible sign of the operation, such as noise, smoke, vibration or other factor; and

(2) The Approving Body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, hours of operation, and the emission of odors, fumes, dust, noise, vibration, and glaring light.

(b) In the UI District

(1) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04.

911.04.A.80 Nursery, Retail (Limited and General)

Nursery, Retail (Limited and General) uses shall be subject to the following standards:

(a) Nursery, Retail (Limited) in P districts

(1) Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts;

(2) All facilities shall be designed to be compatible with the surrounding landscape, such that the minimum possible grading will be required and the minimum disturbance and removal of existing vegetation will be required.

(b) Nursery, Retail (Limited) in NDO and LNC districts

The proposed use shall be subject to the Landscaping and Screening Standards of Chapter 918.

(c) Nursery, Retail (General) in NDI District

(1) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04;

(2) The proposed use shall be subject to the Landscaping and Screening Standards of

---

Chapter 918; and

(3) Parking demand shall be addressed so as to meet parking needs and to discourage parking on nearby streets.

(d) Nursery, Retail (General) in GI Districts

(1) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04; and

(2) Parking demand shall be addressed so as to meet parking needs and to discourage parking on nearby streets.

(e) Nursery, Retail (General) in RIV Districts

(1) Parking demand shall be addressed so as to meet parking needs and to discourage parking on nearby streets.

911.04.A.81 Medical Office (Limited and General)

(1) In the NDO District

Medical Office (Limited) uses shall be subject to the following standards in the NDO District:

(i) The proposed use shall be subject to the Residential Compatibility Standards of Chapter 916; and

(ii) The proposed use shall be subject to the Landscaping and Screening Standards of Chapter 918.

(iii) The design of any structure in an NDO District used for non-residential purposes that does not occupy a structure originally designed as a residence shall be of a scale and character that is consistent with the scale and character of adjacent residential neighborhoods;

(iv) Parking shall be provided in a location and manner that allows for all parking required by the facility, and all traffic created by the facility, to be located outside of residential districts;

(v) For Medical Office (General) uses, the Approving Body shall determine that the site is sufficiently separated from property zoned Residential and that the additional size of the use will not create a detrimental impact on such properties through consideration of the additional traffic impacts caused by additional height and density, the impacts on views from such residential properties, and the impacts of the bulk of the buildings on such residential properties and noise generation and the hours of operation; and

(vi) A traffic study in a form approved by the Zoning Administrator shall be submitted with the application, and shall address parking and traffic impacts of the proposed

---

development. The transportation study shall illustrate that the proposed development will not create traffic congestion on the surrounding streets, and that residential streets in the vicinity shall not be used for parking for the proposed development.

(2) In the LNC and NDI Districts

Medical Office (Limited) uses shall be subject to the following standards in the LNC and NDI Districts:

(i) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04.

(3) In GI Districts

Medical Office (Limited) uses shall be subject to the following standards in the GI District:

(i) The proposed use shall be subject to the Site Plan Review procedures of Sec. 922.04; and

(ii) The proposed use shall be located within an existing structure.

(4) In EMI Districts

Medical Office (Limited and General) uses shall be subject to the following standards:

(i) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(ii) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

911.04.A.82 Grocery Store (Limited)

Grocery Store (Limited) uses shall be subject to the following standards:

(a) In LNC, NDI, UNC and EMI Districts.

(1) Site Plan review shall be required;

(2) Parking facilities and access shall be designed and located to minimize impacts on the surrounding properties and the district as a whole.

(b) In GI Districts

Grocery (Limited) uses shall be subject to the following standards in GI District:

(1) Off street parking, loading and hours of operation shall be conducted in a manner that does not interfere with any industrial operations in the vicinity.

911.04.A.83 Grocery Store (General)

(a) In GI Districts

Grocery Store (General) uses shall be subject to the following standards in GI District:

(1) Off street parking, loading and hours of operation shall be conducted in a manner that does not interfere with any industrial operations in the vicinity.

(b) In UNC, UI and EMI Districts

Grocery Store (General) shall be subject to the following standards in the UNC and UI Districts:

(1) Parking facilities and access shall be designed and located to clearly meet the demand of the facility in a way that does not interfere with parking spaces required for surrounding residential uses; and

(2) The proposed use shall be subject to the Site Plan Review Procedures of Sec. 922.04.

(c) In LNC and NDI Districts

Grocery Store (General) shall be subject to the following standards in the LNC and NDI Districts:

(1) Parking and access facilities shall be designed and located to clearly meet the demand of the facility in a away that does not interfere with parking spaces required for the surrounding residential uses;

(2) The Approving Body shall determine that such use will not create detrimental impacts on surrounding residential properties, considering, among others, the following factors: the adequacy of parking and loading facilities, trash storage, traffic generation, pedestrian access, exhaust odors, vibration, dust, noise, outdoor lighting, signage, and landscape features.

(3) The Approving Body shall determine that such use will not create detrimental impacts on surrounding properties considering the compatibility of the proposed uses with the surrounding and adjacent uses.

**911.04.A.84 Community Home**

Community Home uses shall be subject to following standards in all districts:

(a) The dwelling unit shall have one (1) primary means of ingress/egress, a single outside mail box, single utility connections (except for telephone, computer and cable service), and common eating/cooking areas;

(b) The use shall not require alteration to the exterior structure except where otherwise permitted for single family residential dwellings or where required under health/safety codes;

(c) The number of unrelated disabled persons shall not exceed an average of one (1) per

---

bedroom. The following persons shall not be included in determining the average number of persons per bedroom in the Community Home: persons with a permanent personal relationship choosing to share a bedroom with a disabled resident of the Community Home, parents or legal guardians of a resident of the Community Home who choose to live in said home. Further, the use shall not require substantial alterations to the interior of the structure for the purpose of creating additional bedrooms;

(d) On-site parking spaces shall be provided at the ratio of one (1) stall for every three (3) persons on duty;

(e) Any office located in the dwelling unit shall be limited to on-site program use only; and

(f) The Approving Body shall determine that the establishment of the Community Home will not detrimentally impact the neighborhood by contributing to the saturation of Community Homes or social service institutions.

**911.04.A.85 Multi-Unit Residential**

(a) In the UI District

Multi-Unit Residential uses in the UI District shall be subject to the following standards:

(1) All residential units may be limited to floors above the ground floor of the building when residential uses are not desirable on the ground floor.

(b) In the EMI District

Multi-Unit Residential uses shall be subject to the following standards in the EMI District:

(1) The proposed use shall be subject to the Residential Compatibility Standards of Chapter 916; and

(2) The Approving Body shall determine that the proposed use will not create detrimental impacts on surrounding residential properties, taking into consideration the compatibility of the proposed use with the surrounding and adjacent properties; the generation of light and noise from the proposed use; parking, loading and access.

(c) In the UC-E District

Multi-Unit Residential uses shall meet one (1) of the following standards in the    UC-E District:

(1)    All the residential units shall meet the requirements of 907.04.A.6 and shall otherwise follow the processes and procedures of 907.04.A, excluding 907.04.A.5 Applicability and 907.04.A.7 and Off-Site Inclusionary Standards.  One hundred (100) percent of

---

the units shall be affordable and shall be located on site.  Or

(2) Residential housing shall be less than fifty (50) percent of the Gross Floor    Area in a mixed-use structure.  For purposes of this calculation, shared    spaces  between residential uses and commercial shall be excluded from    the calculation of Gross Floor Area.

**911.04.A.86 Warehouse, Residential Storage**

(a) in the NDI District

Warehouse, Residential Storage uses shall be subject to the following standards in the NDI District:

(1) The Approving Body shall determine that the proposed use will not create detrimental impacts on surrounding properties, taking into account the probable traffic generation, the physical relationship of the proposed use and structure to the surrounding uses and structures, the probable hours of operation, and the design and location of parking and loading areas;

(2) The proposed use shall be subject to the Landscaping and Screening Standards of Chapter 918; and

(3) Curb-cuts shall be minimized to the maximum extent feasible in order to achieve access to the site.

**911.04.A.87 Parking Structure (Limited and General)**

(a) Parking Structure (Limited)

(1) In NDO, LNC, and NDI Districts

Parking Structure (Limited) uses shall be subject to the following standards:

(i) A needs assessment study shall be applied to the approving body by the applicant in order to demonstrate the necessity of the proposed use in the district;

(ii) The approving body shall determine that such use shall not create detrimental impacts on the surrounding properties, taking into account the probable relationship of the proposed use and structure to surrounding uses and structures, the impacts of traffic generation on surrounding residential and commercial uses, hours of operation, noise and light;

(iii) The use shall be located to minimize disruption to pedestrian movements;

(iv) The Residential Compatibility Standards of Chapter 916 shall apply;

---

(v) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(vi) The vehicular entrance and approach to the parking structure shall be clearly delineated by markings, striping and/or signage as determined by the approving body;

(vii) The design shall include devices which are intended to minimize noise associated with the mechanical systems of the facility from being heard on other properties in the vicinity;

(viii) The proposed use shall be subject to the site plan review procedures of Section 922.04;

(ix) The height and bulk of the proposed structure shall be designated to minimize blocking of views from adjacent residential properties; and

(x) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district.

(2) In EMI Districts

Parking Structure (limited) uses shall be subject to the following standards:

(i) The use shall be located to minimize disruption to pedestrian movements;

(ii) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(iii) The vehicular entrance and approach to the Parking Structure shall be clearly delineated by markings, striping and/or signage as determined by the Zoning Administrator;

(iv) The design shall include devices which are intended to minimize noise associated with the mechanical systems of the facility from being heard on other properties in the vicinity;

(v) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(vi) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(vii) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(3) In GT, UC-E, UC-MU, R-MU, and RIV Districts

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

Parking Structure (Limited) shall be subject to the following standards:

(i) The approving body shall determine that such use shall not create detrimental impacts on the surrounding properties, taking into account the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the impacts of traffic generation on surrounding residential and commercial uses, hours of operation, noise and light;

(ii) The use shall be located to minimize disruption to pedestrian movements;

(iii) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts; and

(iv) The vehicular entrance and approach to the parking structure shall be clearly delineated by markings, striping and/or signage as determined by the approving body.

(b) Parking Structure (General)

(1) In LNC Districts

Parking Structure (General) uses shall be subject to the following standards:

(i) A needs assessment study shall be supplied to approving body by the applicant in order to demonstrate the necessity of the proposed use in the district;

(ii) The approving body shall determine that such use shall not create detrimental impacts on the surrounding properties, taking into account the probable traffic generation, the physical relationship of the proposed use and structure to surrounding uses and structures, the impacts of traffic generation on surrounding residential and commercial uses, hours of operation, noise and light;

(iii) The use shall be located to minimize disruption to pedestrian movements;

(iv) The Residential Compatibility Standards of Chapter 916 shall apply;

(v) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(vi) The vehicular entrance and approach to the parking structure shall be clearly delineated by markings, striping and/or signage as determined by the approving body;

(vii) The design shall include devices which are intended to minimize noise associated with the mechanical systems of the facility from being heard on other properties in the vicinity;

(viii) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04;

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(ix) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties; and

(x) A traffic analysis shall be submitted demonstrating that the proposed development will not create traffic congestion in the district.

(2) In EMI Districts

Parking Structure (general) uses shall be subject to the following standards:

(i) The use shall be located to minimize disruption to pedestrian movements;

(ii) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(iii) The vehicular entrance and approach to the Parking Structure shall be clearly delineated by markings, striping and/or signage as determined by the Zoning Administrator;

(iv) The design shall include devices which are intended to minimize noise associated with the mechanical systems of the facility from being heard on other properties in the vicinity;

(v) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(vi) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(vii) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(3) In the HC, GT, UC-E, UC-MU, and RIV Districts:

Parking Structure (General) uses shall be subject to the following standards:

(i) The use shall be located to minimize disruption to pedestrian movements;

(ii) Curb cuts shall be located a minimum of sixty (60) feet from an intersection and sixty (60) feet from other curb cuts;

(iii) The vehicular entrance and approach to the parking structure shall be clearly delineated by markings, striping and/or signage as determined by the approving body.

(iv) The design shall include devices which are designed to minimize noise associated with the mechanical systems of the facility from being heard on other properties in the vicinity; and

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

(v) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties.

911.04.A.88 Club: Social, Fraternal, Athletic, Business or Professional

(i) Amount of required parking stalls shall be determined by the approving body based on the nature of the operation and the availability of off-site parking facilities.

(ii) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration the probable traffic generation, parking needs, hours and days of operation.

(Ord. 28/November 17, 2000/Amend. U-25)

911.04.A.89 Hospital

(a) In EMI Districts

Hospital uses shall be subject to the following standards:

(1) The design shall include devices which prevent noise and emissions associated with the use of the facility from being impacted on other properties in the vicinity;

(2) The height and bulk of the proposed structure shall be designed as to minimize blocking of views from adjacent residential properties;

(3) Parking shall be provided in a location and manner that allows for all parking to be located outside of residential districts;

(4) The proposed use shall be in compliance with an approved Institutional Master Plan; and

(5) The proposed use shall be subject to the Project Development Plan procedures of Section 922.10.

(b) In RM, LNC, UNC, HC, and UI Districts

Hospital uses shall be subject to the following standards:

(1) The buildable area of the lot shall not be nearer than thirty (30) feet to any lot line which is not a street line;

(2) The permissible height regulations of the district wherein such use is located shall apply, and may be exceeded provided any portion of a structure above the permissible height shall not exceed the height of inward-sloping planes; beginning at the rear lot line other than street line at the average grade level of the ground along such rear lot line opposite the structure concerned, and having a rise of one (1) foot for each two (2) feet

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

of horizontal dimensions; and, beginning at the respective side lot lines other than street lines at the average grade level of the ground along such lot lines opposite the structure concerned, and having a rise of one (1) foot for each two (2) feet of horizontal dimension;

(3) The total bulk of buildings upon the zoning lot shall not exceed the cubical contents of a prism having a base equal to the buildable area of the lot and height of eighty-five (85) feet;

(4) Automobile parking area may encroach on yards not abutting a street, but not closer to a lot line than fifteen (15) feet, provided it shall be visually screened from adjoining property in accordance with the screening provisions of Section 918.03.

(5) An Institutional Master Plan must be approved by Planning Commission prior to the review of the Conditional Use Application.

911.04.A.90 College or University Campus

(a) In LNC, UNC, IIC, UI and RM Districts: College or University Campus uses shall be subject to the following standards in LNC, UNC, HC, UI and RM Districts:

(1) The buildable area of the lot shall not be nearer than thirty (30) feet to any lot line which is not a street line;

(2) The permissible height regulations of the district wherein such use is located shall apply, and may be exceeded provided any portion of a structure above the permissible height shall not exceed the height of inward-sloping planes; beginning at the rear lot line other than street line at the average grade level of the ground along such rear lot line opposite the structure concerned, and having a rise of one (1) foot for each two (2) feet of horizontal dimensions; and, beginning at the respective side lot lines other than street lines at the average grade level of the ground along such lot lines opposite the structure concerned, and having a rise of one (1) foot for each two (2) feet of horizontal dimension;

(3) The total bulk of buildings upon the zoning lot shall not exceed the cubical contents of a prism having a base equal to the buildable area of the lot and a height of eighty-five (85) feet;

(4) Automobile parking area may encroach on yards not abutting a street, but not closer to a lot line than fifteen (15) feet, provided it shall be visually screened from adjoining property in accordance with the screening provisions of Section 918.03.

(5) An Institutional Master Plan must be approved by Planning Commission prior to the review of the Conditional Use Application.

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

911.04.A.91 Outdoor Retail Sales and Service (Non-Accessory Use).

Outdoor Retail Sales and Service (Non-Accessory Use) shall be subject to the following standards:

(a) A lot containing outdoor retail sales and service shall not be located within one hundred (100) feet of a lot with a certificate of occupancy for the sale of similar goods and service or an approved vending location selling similar goods and service; and

(b) When applicable to the proposed type of goods and service being sold the applicant must present a letter of compliance from Fire Prevention, Allegheny County Health Department and any other appropriate agency or department; and

(c) Must provide and have available sufficient on-site area to accommodate a standing area for customers purchasing or attempting to purchase goods and service without encroaching on the public right-of-way or adjacent property; and

(d) Must provide sufficient trash receptacles for wrappers, containers and other disposable products associated with the sale of goods and service.

911.04.A.92 Firearms Business Establishment

Firearms Business Establishment shall be subject to the following standards in the NDI, UNC, IIC, GI, UI, GT, and RIV Districts:

(a) Firearms Business Establishments shall not be located in a designated area that contains any of the following uses. The building shall not be located within a distance of five hundred (500) feet, measured along a straight line projected from each pedestrian entrance or exit of the subject occupancy to the nearest building wall or boundary line for a park or playground of any of the following:

(1) Elementary or secondary school;

(2) Public playground;

(3) Public or non-profit operated recreation center;

(4) Drug or alcohol rehabilitation center;

(5) Church, synagogue, or temple;

(6) Gaming enterprise.

(b) An adequate security system shall be provided as determined by the Board to be appropriate.

911.04.A.93 Check Cashing

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

The following standards shall apply to all Check Cashing uses:

(a) Check Cashing facilities shall not be open for business to customers for more than nine (9) hours within any twenty-four-hour period and shall not be open for business on Sundays;

(b) The building housing a Check Cashing facility shall not be located within five hundred (500) feet from any residential use as measured from the center point of the subject building;

(c) The building housing a Check Cashing facility shall not be located within one thousand (1,000) feet from another Check Cashing facility, a Pawn Shop, Gaming Enterprise or a facility containing mechanical or electronic devices, machines, tables or apparatus of any kind used for playing games of skill or amusement, as a primary or accessory use, as measured from the center point of the subject building;

(d) A Check Cashing use shall not be conducted as a unit of another business and shall be financed and conducted as a separate business unit, however, this shall not prevent a check cashing facility from leasing part of the premises of another business for the conduct of check cashing activities on the same premises;

(e) A Check Cashing facility may not accept money or currency for deposit or act as agent for persons, firms, partnerships, associations or corporations to hold money or currency in escrow for others for any purpose, however, a check cashing facility may act as agent for the issuer of money orders or travelers checks;

(f) The applicant is required to be licensed as a Check Casher with the Commonwealth of Pennsylvania Department of Banking;

(g) Not more than one (1) place of business may be operated under the same Commonwealth of Pennsylvania Department of Banking license;

(h) A licensee may not contract with another individual or business entity to manage the Check Cashing facility, not including persons employed to operate the facility;

(i) Check cashing facilities shall not issue tokens to be used in lieu of money for the purchase of goods or services from any enterprise;

(j) The use of bars, chains, or similar security devices that are visible from a public street or sidewalk shall be prohibited.

911.04.A.94 Custodial Care Facility

Custodial Care Facilities shall be subject to following standards in all districts:

(a) An Operation Management Plan for the proposed use shall be submitted as part of the application for the Occupancy Permit. The Plan shall describe programs of operation and

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

management including: Uses and activities that will occur in conjunction with the use, hours of operation of non-residential services, noise control, traffic generation, and methods to minimize loitering in the vicinity of the facility. In addition, a Communications Plan that describes how the provider will communicate with local community, neighborhood, and business organizations, and with adjacent neighbors on a regular basis, and how any community issues or concerns will be addressed

(b) The dwelling unit shall have one (1) primary means of ingress/egress, a single outside mail box, single utility connections (except for telephone, separate cable service), and common eating/cooking areas;

(c) The use shall not require alteration to the exterior structure except where otherwise permitted for single-family residential dwellings or where required under health/safety codes;

(d) Lot area shall be provided at the rate of five thousand (5,000) square feet plus three hundred (300) square feet for each sleeping room in excess of three (3) beds. Every unit of two (2) beds, or fraction hereof, in a sleeping room shall be counted as a separate sleeping room. The Board may reduce this provision when the use has been in existence since May 10, 1958;

(e) Supervision shall be provided in accord with the regulations of the certifying agency(ies) by at least one (1) responsible non-client adult available on the premises on a twenty-four-hour a day basis while any of the clients are on premises;

(f) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes; and

(g) On-site parking facilities shall be provided at the ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff members who are eligible and permitted by the operator to operate a motor vehicle.

911.04.A.95A Personal Care Residence (Large)

Personal Care Residence (Large) uses shall be subject to the following standards:

(a) Lot area shall be provided at the rate of five thousand (5,000) square feet plus three hundred (300) square feet for each sleeping room in excess of three (3). Every unit of two (2) beds, or fraction thereof, in a sleeping room shall be counted as a separate sleeping room. This provision may be reduced by the Board when the facility is to be located in a building that has been constructed prior to May 10, 1958;

(b) Any Personal Care Residence shall be spaced no closer than eight hundred (800) feet from any other authorized Personal Care Residence or health care related facility. This distance shall be measured imposing a circular area on an accurate plan by locating a point on the

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

center of the subject building and by extending a radius of eight hundred (800) feet. Any other building occupied as an authorized Personal Care Residence that is located totally within this circular space shall be cause for rejection of the application;

(c) Supervision shall be provided in accord with the regulations of the certifying agency(ies) and by at least one (1) responsible non-client adult available on the premises on a twenty-four-hour-a-day basis while any of the clients are on the premises. Failure to abide by the certifying body's supervision regulations may result in revocation of an Occupancy Permit;

(d) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes;

(e) New buildings shall be situated within the buildable area of the lots as determined by the zoning district regulations; however, the minimum interior side yard setback in residential districts shall be not less than ten (10) feet;

(f) On-site parking facilities shall be provided at a ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff members who are eligible and are permitted by the operator to operate a motor vehicle;

(g) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds; and

(h) Eighty (80) percent of the clients shall be sixty-two (62) or more years of age or disabled as defined by the Fair Housing Amendment Act of 1988.

911.04.A.95B Personal Care Residence (Small)

Personal Care Residence (Small) uses shall be subject to the following standards:

(a) In all Districts:

Personal Care Residences (Small) shall be subject to the following standards in all districts:

(i) Lot area shall be provided at the rate of five thousand (5,000) square feet plus three hundred (300) square feet for each sleeping room in excess of three (3). Every unit of two (2) beds, or fraction thereof, in a sleeping room shall be counted as a separate sleeping room. The Board may reduce this provision when the facility is to be located in a building that has been constructed prior to May 10, 1958;

(ii) Any Personal Care Residence shall be spaced no closer than eight hundred (800) feet

from any other authorized Personal Care Residence or health care related facility. This distance shall be measured imposing a circular area on an accurate plan by locating a point on the center of the subject building and by extending a radius of eight hundred (800) feet. Any other building occupied as an authorized Personal Care Residence that is located totally within this circular space shall be cause for rejection of this application;

(iii) Supervision shall be provided in accord with the regulations of the certifying agency (ies) and by at least one (1) responsible non-client adult available on the premises on a twenty-four-hour-a-day basis while any of the clients are on the premises. Failure to abide by the certifying body's supervision regulations may result in revocation of an Occupancy Permit;

(iv) Sleeping rooms shall not be located in any basement or cellar and shall comply with all applicable life-safety codes;

(v) New buildings shall be situated within the buildable area of the lots as determined by the zoning district regulations; however, the minimum interior side yard setback in residential districts shall be not less than two (10) feet;

(vi) On-site parking facilities shall be provided at a ratio of one (1) stall for every two (2) full-time staff members and an additional stall for every three (3) non-staff residents who are eligible and are permitted by the operator to operate a motor vehicle; and

(vii) Eighty (80) percent of the clients shall be sixty-two (62) or more years of age or disabled as defined by the Fair Housing Amendment Act of 1988.

(b) In RM and Grandview Public Realm Districts

In addition to the standards listed above, Personal Care Residences (Small) shall be subject to the following standards in the RM and Grandview Public Realm Districts:

(i) The facility shall be designed to appear as a residential structure, and parking shall be located and screened so as to not be visible from adjacent properties or right-of-way;

(ii) The required lot area shall be determined using the lot area requirements for residential dwelling units, allowing two (2) beds for each dwelling unit;

(iii) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds; and

(iv) Eighty (80) percent of the clients shall be sixty-two (62) or more years of age or

---

disabled as defined by the Fair Housing Amendment Act of 1988.

(c) In NDO, LNC, NDI, and UNC Districts

Personal Care Residences (Small) shall be subject to the following standards in the NDO, LNC, NDI, and UNC District:

(i) The Approving Body shall determine that the proposed use shall not create detrimental impacts to the community taking into consideration the relationship of the proposed use with the surrounding structures, the arrangement, illumination and enclosure of parking facilities, the location and enclosure of trash facilities, the type of signage and that adequate provisions are made for continuing maintenance of the buildings and grounds, and

(ii) Eighty (80) percent of the clients shall be sixty-two (62) or more years of age or disabled as defined by the Fair Housing Amendment Act of 1988.

911.04.A.96 Bank or Financial Institutional (Limited and General)

(a) In EMI Districts

Bank or Financial Institution (Limited and General) uses shall be subject to the following standards:

(1) Parking demand shall be addressed so as to meet parking needs and to discourage parking in residential districts;

(2) The proposed use shall be subject to the Site Plan Review procedures of Section 922.04.

911.04.A.97 Pawn Shop

The following standards shall apply to all Pawn Shop uses:

(a) Pawn Shop facilities shall not be open for business to customers for more than nine (9) hours within any twenty-four-hour period and shall not be open for business on Sundays;

(b) The building housing a Pawn Shop facility shall not be located within five hundred (500) feet from any residential use as measured from the center point of the subject building;

(c) The building housing a Pawn Shop facility shall not be located within one thousand (1,000) feet from another Pawn Shop, a Check Cashing facility, Gaming Enterprise or a facility containing mechanical or electronic devices, machines, tables or apparatus of any kind used for playing games of skill or amusement, as a primary or accessory use, as measured from the center point of the subject building;

---

(d) The use of bars, chains, or similar security devices that are visible from a public street or sidewalk shall be prohibited.

911.04.A.98 Controlled Substance Dispensation Facility

Controlled Substance Dispensation Facility uses shall be subject to the following standards in all Zoning Districts:

(a) The building or structure housing or enclosing a Controlled Substance Dispensation Facility shall not be established or operated within five hundred (500) feet of any of the following structures or use types, except when such facilities are within and interior to Hospitals in the EMI District, where Controlled Substance Dispensation Facility is a permitted use:

(1) Residential uses;

(2) School, Elementary or Secondary;

(3) Parks and Recreation;

(4) Child Care;

(5) Dormitory;

(6) Religious Assembly;

(7) Public Destination Facility;

(8) College or University campus;

(9) Educational Classroom Space; and

(10) Vocational School.

(11) Libraries

(b) The approving body shall determine that such use will not create detrimental impacts on the surrounding properties, taking into consideration probable traffic generation and the physical relationship of the proposed use and structure to surrounding uses and structures, the probable hours of operation, the impacts of parking and the number of people using the premises at any one (1) time.

(c) The facility shall include interior public lobbies or waiting areas sized to accommodate any and all individuals seeking treatment at any one (1) time.

911.04.A.99 Medical Marijuana Dispensary

---

Medical Marijuana Dispensary uses shall be subject to the following standards:

(a) Off-street parking, loading, and hours of operation shall be conducted in a manner that does not interfere with other uses in the vicinity.

Editor's note(s)-Former § 911.04.A.99 was repealed by Ord. No. 8-2013, adopted Jan. 31, 2013. Subsequently, Ord. No. 4-2018, § 2, effective March 6, 2018, enacted new provisions to read as herein set out.

911.04.A.100 Medical Marijuana Growing and Processing

Medical Marijuana Growing and Processing uses shall be subject to the following standards:

(a) All uses shall be conducted within a completely enclosed building and shall create no external visible sign of the operation, such as noise, smoke, vibration, or any other factor; and

(b) Off-street parking, loading, and hours of operation shall be conducted in a manner that does not interfere with any industrial operations in the vicinity**Section 12.** The Pittsburgh Code, Title Nine, Zoning Code, Article VI, Development Standards is hereby amended in Chapter 914.04, Off-Street Parking Exemption/Reduction Areas, as follows:

914.04. - Off-Street Parking Exemption/Reduction Areas

The minimum off-street parking requirements of Section 914.02.A shall be decreased as shown in the following table for uses located in districts designated on the Official Zoning Map as "Parking Exempt Areas." Uses located in Parking Exempt Areas shall provide no more than the otherwise required minimum parking ratio established in Section 914.02.A.

| Area | Use Type | Percent Decrease |
|---|---|---|
| SP Districts & PUDs | Any use | Parking Demand Analysis Required, see Sec. 914.02.B |
| Downtown | Any use | 100 |
| East Liberty | Any use except residential | 50 |
| SP-11 Lower Hill Planned Development | Any use | 100 |
| North Shore | Any use except residential | 25 |

| North Side | Any use except residential | 25 |
| Oakland | Any use except residential | 50 |
| Uptown Public Realm District | Any use | 100 |
| Riverfront Zoning Districts | Any use | 50 |
| UC-MU and R-MU Zoning Districts | Any use | 50 |
| UC-E Zoning Districts | Any use | 100 |

The parking reductions of this section shall not be applicable to the minimum Bicycle Parking requirements of Section 914.08 <https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINEZOCO_ARTVIDEST_CH914PALOAC_914.08BIPA>.

**Section 13.** The Pittsburgh Code, Title Nine, Zoning Code, Article VI, Development Standards is hereby amended in Chapter 915.07, Performance Points System, as follows:

915.07. Performance Points System.

915.07.A Purpose

The City of Pittsburgh recognizes that communities that embrace innovation and livability while remaining affordable to all citizens will be more sustainable both in their demands on the environment and their ability to continue to grow and succeed over time. This set of incentives for development seeks to increase the provision of affordable housing, increase the number of green buildings constructed, and incent the retention of existing structures that represent the city's built heritage.

915.07.B Applicability

The following incentives are available within designated zoning districts that include the following elements:

1. Provision enabling use of this bonus system;

2. Bonus Goals and Points section specifying the points awarded for each option; and

3. Bonus section specifying how points earned through the incentives can be used.

---

915.07.C Definitions

1. Reserved.

2. 95th Percentile Rain Event shall mean the measured precipitation depth accumulated over a 24-hour period for the period of record that ranks in the 95th percentile rainfall depth based on the range of all daily event occurrences during this period.

3. Affordable Housing shall mean housing with a gross cost, including utilities, that does not exceed thirty (30) percent of the occupant's income.

4. AIA 2030 Commitment Average Energy Reduction shall mean the average reported energy reduction of architecture firms that have committed to the AIA (American Institute of Architects) 2030 Challenge. Average savings levels can be found in the annual AIA 2030 Commitment Report.

5 4. Area Median Income (AMI) shall mean the average median income of the metropolitan area (MSA) or Non-Metropolitan areas (counties) as established annually by the U.S. Department of Housing and Urban Development (HUD).

6 5. Building Energy Model (BEM) shall mean the use of a physics-based software simulation of building energy use. A BEM program takes as input a description of a building form and materials, the building's use and operation including schedules for occupancy, lighting, plug-loads, and thermostat settings, and combines these inputs with information about local weather and uses physics equations to calculate thermal loads, system response to those loads, and resulting energy use, along with related metrics like occupant comfort and energy costs.

7 6. Distributed Energy Systems shall mean a range of smaller-scale technologies designed to provide electricity and thermal energy closer to consumers. These approaches include fossil and renewable energy technologies, micro-grids, on-site energy storage, and combined heat and power systems. Technologies could include: existing district energy facilities combined heat and power systems, microgrids, fuel cells, and batteries.

7. Fresh Food Market shall mean an establishment (under Grocery Store - General) primarily engage in the sale of grocery products and that provides all of the following:

i. At least five thousand (5,000) sq. ft. of customer-accessible floor area use for display and sales of a general line of food and nonfood grocery products such as dairy, canned and frozen foods, fresh fruits and vegetables, and fresh and prepared meats, fish, and poultry, intended for home preparation, consumption, and use;

ii. At least fifty (50) percent of such customer-accessible sales and display area is used for the sale of general line of food products intended for home preparation and consumption;

iii. At least twenty-five (25) percent of such total inventory by volume is in the form of perishable goods, which must include dairy, fresh fruits and vegetables, and frozen foods that may include fresh meats, poultry

---

and fish; and

iv. At least twenty-five (25) percent of such customer-accessible sales and display area is used for the sale of fresh fruits and vegetables.

8. Green Infrastructure shall mean systems and practices that use or mimic natural processes to infiltrate, evapotranspire, or reuse stormwater on the site where it is generated.

9. On-Site Renewable Energy shall mean renewable sources, such as wind, solar, and co-generation, that are generated on the project site, thereby relieving reliance on the grid and providing alternative sources of electricity.

10. National Median Site Energy Use Intensity shall mean the middle of the national population - half of buildings use more energy, half use less. The National median-source EUI is published regularly by the U.S. Environmental Protection Agency's Energy Star program.

11 10. Native Plants shall mean plants indigenous to Western Pennsylvania. This includes plants that have developed or occurred naturally, excluding invasive species.

12 11. Networked Walkshed shall mean the land area within a defined walking range, traversable on established streets or pathways.

13. Pittsburgh 2030 District shall mean the initiative led by the Green Building Alliance that supports business and building owners and managers in working toward fifty (50) percent reductions in energy use, water consumption, and transportation emissions (below baselines) by the year 2030.

14 12. Rapid Services shall mean all modes of transit which use an exclusive right-of-way or have at least seventy-five (75) percent of route miles along a fixed guideway.

15. Site Energy Use Intensity (EUI) shall mean the total, annual building energy use normalized by its gross square footage. Site energy is the amount of energy consumed by a building or development on-site—usually reflected on utility bills, but including heat and power generated and used on-site. Site EUI is a building's total annual on-site energy usage in kBTU/ft2 and can be determined by using an online calculator to aid in the assessment of energy performance of commercial building designs and existing buildings such as the U.S. Environmental Protection Agency's Target Finder.

16 13. Preferred Stormwater Management Technologies shall mean stormwater management practices that can provide additional co-benefits, increased reliability, or better performance than other technologies. Preferred Stormwater Management Technologies must be in accordance with the City of Pittsburgh Stormwater Design Manual.

14. Local Workforce Group shall mean an organization that provides publicly available workforce development services, career training services, entrepreneurial services, or business incubation and startup services or a local, non-franchise business owned and operated by City of Pittsburgh resident.

---

15. Underrepresented Groups shall mean existing residents of the Pittsburgh Metropolitan Statistical Area with incomes at or below eighty (80) percent AMI; or lack a four-year degree; or reside in a City of Pittsburgh neighborhood with an unemployment rate that is more than double the City of Pittsburgh average.

915.07.D Bonus Goals and Points

| Goal | Points |
| On-Site Energy Consumption - Zero Energy or Zero Carbon Buildings New Construction | |
| 1.8541 | Do Co A |
| 1.8642 | to Bu Bu to 1 |
| 1.8643 | co En |
| 2. Reserved On-Site Energy Consumption - Existing Buildings | |
| 2a.8a1 | |
| 2b.8a2 | |
| 2c.8a3 | |
| 3. On-Site Energy Generation | |

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

At least one (1) point from ~~On-Site Energy Consumption~~ Zero Energy or Zero Carbon Buildings required prior to using the On-Site Energy Generation points below.

| | | |
|---|---|---|
| 3.3.A.1 | | |
| 3.3.A.2 | | |
| | C.1 | |
| 3.475.3 | | |

4. Affordable Housing

Available only to projects where at least 50% of the gross floor area is used for residential units.

Points for options 4.c and 4.d below will only be awarded to development projects providing at least 20 housing units.

| | | |
|---|---|---|
| 4.1.A.1 | | |
| | 80 | |
| 4.1.A.2 | | |
| | 80 | |
| | At | |
| | be | |
| 4.1.A.3 | | |
| | At | |
| | be | |

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

| | | |
|---|---|---|
| | At | |
| | be | |
| 4. B.4 | | |
| | 80 | |
| | 20 | |
| | 60 | |

5. Rainwater

All vegetated Green Infrastructure must use at least 50% Native Plants.

| | | |
|---|---|---|
| 5.1.A.1 | | |
| | ca | |
| | in | |
| | At | |
| | ca | |
| 5.1.A.2 | | |
| | cr | |
| | in | |
| | At | |
| | cr | |
| 5.1.0.3 | | |
| | c | |
| | in | |
| | 45 | |
| | an | |

6. Building Reuse

| | | |
|---|---|---|
| 6.1.E.1 | | |
| | th | |
| | m | |
| | en | |
| 6.1.A.2 | | |
| | yc | |
| 6.1.E.3 | | |

7. Riverfront Public Access Easements, Trails and Amenities

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

| | | |
|---|---|---|
| 7.2.F.1 | | |
| | pr | |
| | of | |
| | bo | |
| 7.3.F.2 | | |
| | co | |
| | of | |
| | ex | |
| 7.1.F.1 | | |
| | im | |
| | on | |
| | ad | |
| 7.1.F.2 | | |
| | de | |
| | m | |
| 7.0.P.2 | | |
| | du | |
| 7.1.P.1 | | |
| | Se | |
| | to | |

8. Neighborhood Ecology

| | | |
|---|---|---|
| 8.1.G.1 | | |
| | tot | |
| 8.1.T.1 | | |
| | tot | |

9. Public Art

*The percent of estimated gross construction cost applied to public art includes artist engagement; design, fabrication and placement of art; insurance; and funds dedicated for ongoing maintenance.*

---

**Introduced:** 7/8/2022

**Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development

**Status:** Passed Finally

| | | |
|---|---|---|
| 9.1.A.1 | | |
| | cr | |
| | At | |
| | Ci | |
| | th | |
| 9.1.A.2 | | |
| | to | |
| | At | |
| | Ci | |
| | in | |
| 9.1.A.3 | | |
| | cr | |
| | At | |
| | Ci | |
| | th | |

10. Urban Fabric

| | | |
|---|---|---|
| 10.1.St.2 | | |
| | un | |

11. Transit-Oriented Development

| | | |
|---|---|---|
| 11.1.St.1 | | |
| 11.1.O.3 | | |
| | de | |

12. Equitable Development

| | | |
|---|---|---|
| 12.1.C.1 | | |
| | tt | |
| | co | |
| | Cr | |
| | of | |
| | an | |
| | tot | |
| | A. | |
| | for | |
| 12.1.C.2 | | |
| | tt | |
| | rec | |

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

| | | |
|---|---|---|
| Co of an tot | | |
| 12 Cli U/ res Cc po an tot | | |
| 13 Fresh Food Access | | |
| 13 The building is designed and constructed. c2 | | |

915.07.E Compliance and Enforcement

1. If a project is awarded a height or riparian buffer bonus pursuant to this subsection, the Developer shall provide the Department of City Planning with satisfactory evidence of having completed the procedures as developed by the Department of City Planning and the following steps in the process toward achieving the requirements of the bonus:

    a. On-site energy consumption and production Zero Energy or Zero Carbon Buildings:

    (1) Application and predesign phase: Submission of intent to comply with International Energy Conservation Code Section C407 Total Building Performance criteria of ASHRAE Standard 90.1- 2019 Appendix G Building Performance Rating Method and how the project intends to meet this requirement. the p4 Energy Declaration or other form as proscribed by the Zoning Administrator clearly indicating the EUI target of the building based upon percent reduction from the baseline. The baseline as determined by building use type is based upon the 2003 Commercial Building Energy Consumption Survey (CBECS) data. In addition to EUI target of the building, the Declaration must also include the energy efficiency approaches and technologies that will be used to minimize demand, any on-site energy generation systems, and the amount of expected building demand that will be offset.

    (2) Design completion and prior to construction: Provide design narrative and construction documents. For projects with at least 20,000 square feet of gross floor area a A BEM will be required showing that the building is designed to comply with International Energy Conservation Code Section C407 Total Building Performance criteria or ASHRAE Standard 90.1- 2019 Appendix G Building Performance Rating Method. meet the desired

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

site EUI reductions compared to national averages for the building type and size. All projects including those with less than 20,000 square feet of gross floor area, are required to submit an updated p4 Energy Declaration or other form as proscribed by the Zoning Administrator.

(3) Construction completion and building occupancy: Provide final performance-based commissioning report and/or a building energy model reflecting the as-built condition showing International Energy Conservation Code Section C407 Total Building Performance criteria or ASHRAE Standard 90.1- 2019 Appendix G Building Performance Rating Method. as applicable third party certification of energy performance (e.g., Passive House, Leadership in Energy and Environmental Design, Living Building Challenge).

(4) Following first-year operations completion: Provide proof of whole building energy consumption, verified with utility invoices or digital meter data for energy consumed and produced or third party verified by Portfolio Manager or equivalent. This requirement may be satisfied by ongoing participation in the Pittsburgh 2030 District.

    b. Affordable housing

    (1) All projects shall comply with On-Site Inclusionary Standards 907.04.A.6 (c) through (i).

    (2) Application and predesign phase: Provide a matrix that documents the unit count and includes AMI of occupants. Identify in writing all subsidies and/or financing programs the project will utilize in the provision of affordable housing. Provide letters of commitment for any subsidies and financing secured.

    (23) Design completion and prior to construction: Provide floor plans that identify housing unit types and location of amenities, entrances, and lobbies with American Disabilities Act (ADA) accessibility, and documenting compliance with On-Site Inclusionary Standards 907.04.A.6 (c) through (i). Provide letters of commitment for any subsidies and/or financing secured. Where letters of commitment are forthcoming, this requirement can be met by submitting the project for review by the Housing Department of the Urban Redevelopment Authority which will provide a memo to the Department of City Planning. identifying how the project satisfies the p4 Affordability component.

    c. Rainwater

    (1) Application and predesign phase: Provide a conceptual stormwater management plan in accordance with Title Thirteen: Stormwater Management and clearly identifying how the project will satisfy the bonus.

    (2) Design completion and prior to construction: Provide a Stormwater Management Site Plan in accordance with Title Thirteen: Stormwater Management and clearly identifying how the project will satisfy the bonus.

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

    (3) Construction completion and building occupancy: Provide documentation of completion of all Record Drawings, Completion Certificate, and Final Inspection requirements in accordance with Title Thirteen: Stormwater Management.

    (4) Following first-year operations completion: Provide a performance-based report following one (1) year of operation that shows stormwater management installations are performing as specified in the project's Stormwater Management Site Plan and in accordance with Title Thirteen: Stormwater Management requirements.

    d. On-Site Public Art:

    (1) Application and predesign phase: Provide a preliminary public art plan that clearly identifies how the project will satisfy the bonus, including estimated gross construction cost, opportunities for inclusion of public art, and a plan for artist engagement.

    (2) Design completion and prior to construction: The Department of City Planning will approve final plan for public art including a final budget, design of public art element(s), and proof of establishment of fund for ongoing maintenance.

    (3) Construction completion and building occupancy: Provide Department of City Planning with verification that art was installed as designed along with breakdowns and receipts of final project costs. If art was not installed as designed, provide narrative explanation of what alterations were made and why.

    e. Equitable Development

    (1) For projects providing the percentage employment from Underrepresented    Groups, initial compliance report shall be submitted to the Department of City    Planning no later than three (3) years following issuance of the    Certificate of Occupancy and shall meet standards set by the Department of City    Planning at the time of reporting. After that time, compliance reports must be    submitted every two (2) years through the first ten (10) years the building is operational.

    (2) For projects contributing to the City's Equitable Development Trust Fund per rentable commercial square foot (RCSF), seventy-five (75) percent of a    structure's Gross Floor Area must contain commercial, non-residential uses. For purposes of this calculation, shared spaces shall be excluded from Gross Floor    Area.

    (3) If a building should be figured at any point out of compliance with this    Performance Point, the property owner shall beginning that year pay the fee per    rentable commercial square foot (RCSF) option for the remainder of the ten    (10)    years from the date construction was completed. If this bonus point shall be exempt    from 915.07.E.2, however, the first    payment shall be made to the    Equitable    Development Trust Fund within thirty (30) days of the

---

**Introduced:** 7/8/2022                                    **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and                    **Status:** Passed Finally
Economic Development

documentation of non-    compliance or the City shall have the authority to    revoke the certificate of    occupancy for the building.

    f. Food Access

    (1) A project which receives bonus points for the presence of a Fresh Food    Market pursuant to Subparagraph 13(a) shall maintain such tenant or use for a    period of at least ten (10) years from the issuance of a Certificate of Occupancy.    The Fresh Food Market must be located on the ground floor of the structure and    accessible through a separate entrance that must be located on the primary street    frontage. At time of application, no Fresh Food Market may be in operation    within a 2,640-foot radius of the proposed project, as determined by the    Department of City Planning.

2. If the project does not provide satisfactory evidence of achieving the performance standards of each used bonus within three (3) years of receiving its initial certificate of occupancy then unless otherwise noted in this section, the developer property owner shall be subject to a fine equal to one (1) percent of the construction costs and shall provide a plan for compliance with the bonus point. If the plan is not submitted and the fine is not paid within thirty (30) days of the date it is imposed, then the City shall have the authority to revoke the certificate of occupancy for the building. If the project is not brought into compliance within one (1) year, then the City shall have the authority to revoke the certificate of occupancy for the building.

The following Performance Points shall have the compliance path as provided, if projects do not provide satisfactory evidence of achieving the performance standards of each used bonus at time of final inspection.

Build

    For 3.b, Connecting to distributed energy systems only, the property owner shall be subject to a    fine of two (2) percent of construction cost. If the fine is not paid within thirty (30) days of    the date it is imposed, then the City shall have the authority to revoke the certificate of    occupancy for the building.

Building Reuse

    For 6.b and 6.c , the property owner shall be subject to a fine of two (2) percent of construction    cost. If the fine is not paid within thirty (30) days of the date it is imposed, then the City    shall have the authority to revoke the certificate of occupancy for the building.

Urban Fabric

    For 10a, the property owner shall be subject to a fine of two (2) percent of construction cost. If    the fine is not paid within thirty (30) days of the date it is imposed, then the City shall have    the authority to revoke the certificate of occupancy for the building.

**Top-left column:**

<u>Transit Oriented Development</u>

(11) For 11.a, no fine shall be imposed, under section 915.07.E.2 if rapid service routes are discontinued through no fault of the property owner.

**Section 14.** The Pittsburgh Code, Title Nine, Zoning Code, Article VI, Development Standards, is hereby amended in Chapter 919, Signs, Section 919.03.F as follows:

919.03.F Real Estate and Political Signs

Temporary real estate signs pertaining to the sale or lease of the premises and temporary political campaign signs or posters relating to the election of a person to public office, to a political party or to a matter to be voted upon at an election called by a public body shall be subject to the following regulations.

919.03.F.1 General

(a) Such signs may be attached to a building wall and no part of the sign shall project    more than four (4) inches at a height below eighty (80) inches from the grade beneath the    sign. Signs attached to the building at a height above eighty (80) inches from the bottom    of the sign to the grade beneath the sign shall not project more than three (3) feet from the    building.

(b) Such signs shall be removed within thirty (30) days following the sale or election. An elected candidate in a primary election may maintain the sign until thirty (30) days         following the general election.

919.03.F.2 Residential, LNC, UNC, UC-MU, R-MU, GT, RIV-RM and EMI Districts

In the Residential, LNC, UNC, HC, GT, RIV-RM and EMI Zoning Districts such signs:

(a) Shall not exceed twelve (12) square feet in face area;

(b) Shall be nonilluminated and limited to one (1) along each street frontage.

919.03.F.3 HC, NDI, RIV-IMU, UC-E, RIV-GI, RIV-MU, RIV-NS, UI and GI Districts

In the HC, GI, UI, RIV-IMU, RIV-GI, RIV-MU, RIV-NS and NDI Zoning Districts, such signs:

(a) Shall not exceed thirty-two (32) square feet in face area;

(b) Shall be limited to two (2) along each street frontage and may be illuminated.

**Section 15.** The Pittsburgh Code, Title Nine, Zoning Code, Article VI, Development Standards, is hereby amended in Chapter 919, Signs, Section 919.03.M as follows:

919.03.M.3 RP, EMI and GPR and OPR Zoning Districts

In the RP, R-MU, EMI, GPR and OPR Zoning Districts:

(a) Wall mounted signs shall be limited to one (1) along each street frontage, not exceeding eighty (80) square feet in face area and shall not extend more than forty (40) feet above grade. Such signs may be attached to a building wall and no part of the sign shall project more than four (4) inches at a height below eighty (80) inches from the grade beneath the sign. Signs attached to the building at a height above eighty (80) inches from the bottom of the sign to the grade beneath the sign shall not project more than three (3) feet from the building.

(b) Ground signs shall be limited to one (1) along each street frontage when the property frontage measures two hundred (200) feet or less. Otherwise, ground signs shall not be spaced within two hundred (200) feet of each other when located on the same zoning lot. Ground signs shall not extend more than twenty (20) feet from the top of the sign to the grade beneath the sign and shall not exceed a total face area of fifty (50) square feet;

(c) Roof signs shall not be permitted;

(d) These signs shall not contain animation, rotation (other than barber poles) or illumination that flashes or is intermittent;

(e) Marquee or canopy sign is a sign attached to, painted on or inscribed upon a marquee or canopy that otherwise complies with any other governmental regulation; the face of such sign shall not project above or below the marquee or canopy, shall not exceed eight (8) inches in height, shall not project more than six (6) inches horizontally from the surface of such marquee or canopy, shall not contain flashing lights or animation and shall not contain any advertising except for the name of the owner, name of the building or the name of the business.

919.03.M.4 HC Districts

In the HC Zoning Districts:

(a) Wall mounted signs are permitted provided that the total face area attached to a wall shall not exceed two (2) square feet of sign face area for each lineal foot of building wall width to a maximum of eighty (80) square feet, and shall be mounted no higher than forty (40) feet above grade except where expressly permitted. For buildings with multi-commercial tenants on the first and second floors there shall be street access one (1) additional tenant business or identification sign shall be permitted per tenant identifying the name of the tenant or business, the total face area of which shall not exceed two (2) square feet of sign face area for each lineal foot of store frontage to a maximum of eighty (80) square feet per sign, and shall be mounted no higher than the second floor above grade. Tenant signs are to be located within the façade area of the tenant. Maximum letter height on all wall signs below forty (40) feet above grade shall be four (4) feet.

(b) Ground signs shall be limited to one (1) along each street frontage when the property frontage measures one hundred fifty (150) feet or less, otherwise ground signs shall not be spaced within one hundred fifty (150) feet of each other when located on the same zoning lot. Ground signs shall not extend more than thirty (30) feet

from the top of the sign to the grade beneath the sign and shall not exceed a total face area of sixty (60) square feet;

(c) Signs attached to gasoline dispensing pumps shall be limited to one (1) sign not exceeding four (4) square feet in face area for each pump;

(d) Marquee or canopy sign is a sign attached to, painted on or inscribed upon a marquee or canopy that otherwise complies with any other governmental regulation; the face of such sign shall not project above or below the marquee or canopy, shall not exceed eight (8) inches in height, shall not project more than six (6) inches horizontally from the surface of such marquee or canopy, shall not contain flashing lights or animation and shall not contain any advertising except for the name of the owner, name of the building or the name of the business. Such signs may be attached to a building wall and no part of the sign shall project more than four (4) inches at a height below eighty (80) inches from the grade beneath the sign. Signs attached to the building at a height above eighty (80) inches from the bottom of the sign to the grade beneath the sign shall not project more than three (3) feet from the building.

919.03.M.5 LNC, UNC, UC-MU, UC-E, RIV-MU, RIV-IMU, CP, and AP Districts

In the LNC, UNC, UC-MU, UC-E, RIV-MU, RIV-IMU, CP, and AP Districts:

(a) Wall mounted signs are permitted provided that the total face area shall not exceed two (2) square feet of sign face area for each lineal foot of building wall width to a maximum of eighty (80) square feet and shall be mounted no higher than twenty (20) feet above grade except where expressly permitted. For buildings with multi-commercial tenants on the first and second floors one (1) additional tenant business or identification sign shall be permitted per tenant identifying the name of the tenant or business, the total face area of which shall not exceed two (2) square feet of sign face area for each lineal foot of tenant frontage to a maximum of eighty (80) square feet per sign on each wall or façade and shall be mounted no higher than the second floor above grade. Tenant signs are to be located within the façade area of the tenant. Maximum letter height on all wall signs below twenty (20) feet above grade shall be four (4) feet.

(b) Ground signs shall be limited to one (1) along each street frontage when the property frontage measures one hundred (100) feet or less, otherwise ground signs shall not be spaced within one hundred (100) feet of each other when located on the same zoning lot. Ground signs shall not extend more than forty (40) feet from the top of the sign to the grade beneath the sign and shall not exceed a total face area of one hundred fifty (150) square feet;

(c) Marquee or canopy sign is a sign attached to, painted on or inscribed upon a marquee or canopy that otherwise complies with any other governmental regulation; the face of such sign shall not project above or below the marquee or canopy, shall not exceed eight (8) inches in height, shall not project more than six (6) inches horizontally from the surface of such marquee or canopy, shall not contain flashing lights or animation and shall not contain any advertising except for the name of the owner, name of the building or name of the business.

(d) Wall mounted signs mounted between twenty (20) above grade and no higher than forty (40) feet above

**Bottom-right column:**

grade are permitted by Administrator's Exception provided that the following conditions are met:

1. The sign does not exceed two (2) square feet of sign face area for each lineal foot of    building wall width.

2. The letters of the sign do not exceed three (3) feet in height.

3. The sign is architecturally compatible with the building and surrounding buildings.

4. Zoning Administrator approval is in accordance with PDP review procedures as          outlined in the Zoning Ordinance.

5. The sign is limited to the business and identification exclusively and does not repeat    itself or include extraneous identifying information.

(e) Wall mounted signs exceeding eighty (80) square feet in area may be approved by Administrator's Exception if the following conditions are met:

1. The sign does not exceed two (2) square feet of sign face area for each lineal foot of    building wall width.

2. The letters of the sign do not exceed three (3) feet in height.

3. The sign is architecturally compatible with the building and surrounding buildings.

4. Zoning Administrator approval is in accordance with PDP review procedures as          outlined in the Zoning Ordinance.

5. The sign is limited to the business and identification exclusively and does not repeat    itself or include extraneous identifying information.

919.03.M.6 NDI, RIV-GI, GI and UI Districts

In the NDI, RIV-GI, GI and UI Zoning Districts:

(a) Wall mounted signs are permitted provided that the total face area shall not exceed two (2) square feet of sign face area for each lineal foot of building wall width, to a maximum of eighty (80) square feet and shall be mounted no higher than forty (40) feet above grade. For buildings with multi-commercial tenants on the first and second floors one (1) additional tenant business or identification sign shall be permitted per tenant identifying the name of the tenant or business, the total face area of which shall not exceed two (2) square feet of sign face area for each lineal foot of tenant frontage to a maximum of eighty (80) square feet per sign, and shall not extend higher than the second floor. Tenant signs are to be located within the façade area of the tenant. Maximum letter height on all wall signs below forty (40) feet above grade shall be four (4) feet.

(b) Ground signs shall not extend more than forty-five (45) from the top of the sign to the grade beneath the sign provided that no sign shall exceed two hundred (200) square feet in face area or a vertical measurement of

twenty (20) feet;

(c) Marquee or canopy sign is a sign attached to, painted on or inscribed upon a marquee or canopy that otherwise complies with any other governmental regulation; the face of such sign shall not project above or below the marquee or canopy, shall not exceed eight (8) inches in height, shall not project more than six (6) inches horizontally from the surface of such marquee or canopy, shall not contain flashing lights or animation and shall not contain any advertising except for the name of the owner, name of the building or name of the business.

919.03.M.7 GT and RIV-NS Zoning Districts

In the GT and RIV-NS Zoning Districts:

(a) Wall mounted signs, except for public destination facilities, are permitted provided that;

(i) The total face area shall not exceed two (2) square feet of sign face area for each lineal foot of building wall width to a maximum of eighty (80) square feet and shall be mounted no higher than forty (40) feet above grade except where expressly permitted.

(ii) For buildings with multi-commercial tenants on the first and second floors one (1) additional tenant business or identification sign shall be permitted per tenant identifying the name of the tenant or business, the total face area of which shall not exceed two (2) square feet of sign face area for each lineal foot of tenant frontage to a maximum of eighty (80) square feet per sign on each wall or façade and shall be mounted no higher than the second floor above grade.

(iii) Tenant signs are to be located within the façade area of the tenant. Maximum letter height on all wall signs below forty (40) feet above grade shall be four (4) feet.

(b) For public destination facilities, the total face area of wall mounted signs below forty (40) feet shall not exceed a total of three (3) percent of exposed building façade area or a maximum of two hundred (200) square feet per façade, whichever is smaller, shall permit electronic identification signs with no motion or animation, and shall be subject to design review and approval by the City Planning Commission.

(c) Only the name of the building or business shall be mounted higher than forty (40) feet above grade and may face in all directions but shall not be roof mounted nor project above the roof peak or parapet wall, shall not exceed in face area forty (40) square feet or two (2) percent of exposed façade area whichever is larger, shall be limited to four (4) per building, shall include no motion or animation, shall not exceed a luminance of two thousand five hundred (2,500) nits during daylight hours between sunrise and sunset, shall not exceed a luminance of two hundred fifty (250) nits at all other times, shall permit electronic illumination with no motion or animation, and shall be subject to design review and approval by the City Planning Commission. All applications shall include certification that the sign will comply with luminance level standards at the time of application and must certify again that the sign is operating in compliance with the standards prior to issuance of an occupancy permit.

(d) Ground signs shall be limited to one (1) along each street frontage when the property frontage measures one hundred (100) feet or less, otherwise ground signs shall not be spaced within one hundred (100) feet of each other when located on the same zoning lot. Ground signs shall not extend more than forty (40) feet from the top of the sign to the grade beneath the sign and shall not exceed a total face area of one hundred fifty (150) square feet;

(e) Marquee or canopy sign is a sign attached to, painted on or inscribed upon a marquee or canopy that otherwise complies with any other governmental regulation; the face of such sign shall not project above or below the marquee or canopy, shall not exceed eight (8) inches in height, shall not project more than six (6) inches horizontally from the surface of such marquee or canopy, shall not contain flashing lights or animation and shall meet the definition of business or identification sign; provided that a marquee or canopy sign attached to a Public Assembly (general) facility which shall otherwise be subject to this provision, may be up to eight (8) feet in height and subject to review by the Planning Commission under the Project Development Plan criteria put forth in Section 922.10 <http://library.municode.com/pa/pittsburgh/codes/code_of_ordinances?nodeId=PIZOCO_TITNINEZOCO_ARTVIIIREEN_CH922DEREPR_922.10PRDEPL>.
919.03.M.8 Projecting Signs

(a) Purpose

The purpose of these regulations is to permit and regulate the installation of projecting signs in commercial areas of the City.

(b) Definition

Projecting signs means any business or identification sign which sole means of support is by attachment to a legal structure on a zoning lot and which projects more than twelve (12) inches into a public right-of-way. A projecting sign shall contain no more than two (2) sign faces which include lettering, and these faces shall be back-to-back.

(c) Applicability

These regulations shall apply in the following districts:

(i) NDO/Neighborhood Office

(ii) LNC/Local Neighborhood Commercial

(iii) NDI/Neighborhood Industrial

(iv) UNC/Urban Neighborhood Commercial

(v) HC/Highway Commercial

(vi) UI/Urban Industrial

(vii) EMI/Educational/Medical Institute

## Bottom-left

(viii) GPR-C Grandview Public Realm Subdistrict C

(ix) OPR/Oakland Public Realm (Subdistricts A-D B)

(x) SP-4/Station Square

(xi) SP-5/South Side Works

(xii) CP/Commercial Planned Unit Development

(xiii) AP/Mixed Use Planned Unit Development

(xiv) GT/Golden Triangle

(xv) RIV/Riverfront

(xvi) UC-MU Urban Center - Mixed Use

(xvii) UC-E Urban Center - Employment

(xviii) R-MU Residential - Mixed Use

(d) General Requirements

(i) For each street-level business a maximum of one (1) projecting sign shall be permitted for each façade of a structure facing a street;

(ii) Projecting signs shall be a maximum of nine (9) square feet per side. The area of irregular or three-dimensional shapes shall be computed by multiplying the height and width at the widest points;

(iii) Projecting signs shall extend no more than four (4) feet from the front of a building or structure or two-thirds (⅔) of the width of the sidewalk beneath the sign where such sidewalk exists, whichever is less. The bottom most point of a projecting sign shall be no less than ten (10) feet above the grade beneath the sign; and

(iv) No projecting sign structure shall be placed onto or obscure or damage any significant architectural feature of a building.

**Section 16.** The Pittsburgh Code, Title Nine, Zoning Code, Article VIII, Review and Enforcement, is hereby amended in Chapter 922, to create a Section 922.15 Mixed Use Development Standards.

922.15 Mixed Use Development Standards

The following standards shall apply to the UC-MU, UC-E, and R-MU only.

922.15.A Parking

## Bottom-right

In addition to the Parking, Loading and Access requirements of Chapter 914, the following limitations on parking shall apply. In the case of conflict with other provisions of the Code, these provisions control

1. Required Parking

a. The minimum parking required in this District is fifty (50) percent of the minimum parking required in Schedule A of Section 914.02.A, unless otherwise provided.

b. The maximum parking limitation is the minimum parking required listed in Schedule A of Section 914.02.A.

c. Uses requiring parking demand analysis shall provide parking in accordance with Section 914.02.B without modification.

d. Reduction below fifty (50) percent of the minimum parking required in Schedule A required parking minimums requires contributing to a mobility improvement trust.

2. Surface Parking

a. Surface parking is prohibited, except as accessory to single and two-unit residential when located at the rear of the property, or as exempted in 904.08.B.2. Tuck-in parking, located at the rear and underneath multi-unit residential structures shall not be considered surface parking.

3. Structured and Integral Parking

a. New structured and integral parking with six (6) or more spaces, whether a Primary or Accessory use, must have at least ten (10) percent of spaces EV Ready or twenty (20) percent of spaces EV Capable. Structured and integral parking accessory to Affordable Housing, housing with a gross cost, including utilities, that does not exceed thirty (30) percent of the occupant's income, shall be exempt from this requirement. When the minimum number of EV spaces required results in a fractional number, a fraction of less than one-half (½) shall be rounded down to next lowest number and a fraction of one-half (½) or more shall be rounded to the next highest whole number. Prior to issuance of the Record of Zoning Approval, an electrical engineer or other qualified, licensed professional shall document that the building and/or electrical permit drawings approved by the Department of Permits, Licenses, and Inspections are in compliance with requirement.

b. On any Street frontage, ground level parking is prohibited except if lined with an active use. Active uses include residential, retail, office, lobbies, and bike facilities.

922.15.B Urban Open Space

**Panel 1 (top-left):**

Urban Open Space shall be provided in accordance with district requirements and shall be located, developed and maintained in accordance with the following standards.

1. Components

The particular functions and kinds of Urban Open Space to be provided at a development site shall be based upon consideration of existing and projected pedestrian volumes and circulation patterns; the location, size and character of existing Urban Open Space in the vicinity of the development site; existing and proposed land use patterns; relation to public transportation; and objectives contained in the adopted plan and policy documents pertaining to this District.

2. Development Standards

    a. There are two types of Urban Open Space:

Urban Open Space designed to facilitate pedestrian circulation or relieve pedestrian congestion. This type of Urban Open Space shall be at the same level as abutting public sidewalks, shall provide a clear path or area for movement, and shall be accessible to persons with disabilities throughout the entire area.

Urban Open Space designed to provide passive recreation space or informal activity areas. This type of Urban Open Space shall abut and be accessible from a public sidewalk. A plaza or park may be located above or below the level of the abutting sidewalk or open space provided it is accessible to the handicapped. A plaza or park shall contain seating, permanent landscaping and lighting for nighttime illumination.

    b. The Urban Open Space shall be open without restriction to the general public at least during business hours normal to the area in which it is located and during periods of heavy pedestrian movement in the area.

    c. Urban Open Space located under a colonnade is discouraged. If it is provided, the underside of the colonnade shall be two stories above grade. This style of colonnade should be at grade and lined with active uses. The colonnade shall be accessible at the entry and exits and to the extent possible, continuously open to the sidewalk.

    d. When a development site is adjacent to a bus stop or transit station, the Urban Open Space shall be designed to provide access to and waiting areas for transit riders.

    e. Loading and service uses, including trash storage, shall be separate from Urban Open Space to the largest extent feasible.

    f. Landscaping in the Urban Open Space shall assist in managing stormwater and an operations and maintenance plan shall be provided for all stormwater management features. Landscaping selections shall be appropriate for the urban environment and seventy-five (75) percent of planting area shall be composed of native species as defined by the Pennsylvania Department of

**Panel 2 (top-right):**

Conservation and Natural Resources' (DCNR's). Development applications shall include a statement from a registered landscape architect or other qualified professional regarding species selected for durability, survivability, and potential air pollution mitigation.

    g. The Planning Commission may approve the payment of funds in-lieu of the provision of open space in the following cases:

       (1) On small sites where required open space would result in areas of limited public usefulness;

       (2) In locations where required open space would be adjacent to existing large open spaces; or

       (3) In specific locations such as historic districts or other areas where the adopted plans and policy documents applicable to the district indicate that open space is not desirable.

The funds from any approved, in-lieu payments shall be used by the City for the acquisition and development of open space elsewhere within the same neighborhood. The amount of such payment shall be based upon the value of the land that would otherwise be required to be devoted to open space on the development site, plus the cost that would otherwise be incurred by the applicant for development of that space in accordance with the provisions of this section.

    h. Open air restaurants shall be permitted within the area of an Urban Open Space provided that seventy-five (75) percent of the urban open space is still available to the public without charge.

    i. Enlargement of a structure on a lot that does not comply with the required Urban Open Space at ground level may be permitted only if the enlargement does not reduce any of the existing Urban Open Space.

**922.15.C Building Length**

Building length on street facing facades is limited to a maximum of ~~four hundred (400)~~ feet, except in the UC-MU the maximum limit shall be four hundred twenty-five (425) feet where a building includes a Grocery Store (General) use with a gross floor area in excess of 15,000 square feet. Where a zoning lot has a building at a length of two hundred fifty (250) feet along a street facing facade, any new buildings or building addition on the same zoning lot shall be separated by at least ten (10) feet. Separate buildings connected by an above ground pedestrian bridge shall exclude the length of the pedestrian bridge from this calculation.

**922.15.D Mechanical Equipment**

Mechanical equipment includes heating, ventilation, and air conditioning (HVAC) equipment, electrical generators, and similar equipment. These standards do not apply to wind turbines and solar panels.

**Panel 3 (bottom-left):**

    a. Ground-Mounted Equipment

Mechanical equipment must be located to the side or rear of the structure. Any mechanical equipment visible from the public realm must be screened from view by a decorative wall or solid fence that is compatible with the architecture of the building and/or landscaping. The wall or fence must be of a height equal to or greater than the height of the mechanical equipment being screened.

    b. Roof-Mounted Equipment

Roof-mounted equipment visible from the proximal public realm must be screened.

    c. Wall-Mounted Equipment

1. Wall-mounted mechanical equipment is not permitted on any façade abutting a primary street frontage.

2. Wall-mounted mechanical equipment on a secondary street-fronting façade that protrudes more than twelve (12) inches from the outer building wall must be screened from view by structural features that are compatible with the architecture of the subject building. This does not apply to window-mounted air conditioners.

**922.15.E Alternative Compliance for Design Standards**

The Zoning Administrator may approve alternative design standard compliance where the alternative design is determined to achieve the purpose of the district equally or more so than through strict adherence to standards.

**922.15.F Design Standards for Commercial and Mixed Uses**

    a. Façade Design

1. The ground floor of a multi-story building must be a minimum of fifteen (15) feet in height measured floor to floor, to promote mixed-use and accommodate a variety of ground-floor uses.

2. No façade adjacent to a street shall contain a non-articulated condition greater than fifty (50) linear feet in length. Building wall articulation must be achieved through changes in the facade depth of no less than six (6) inches.

3. Facades must be designed with consistent building materials and treatments that wrap around all facades. A unifying architectural theme must be used for the entire development, using a common vocabulary of architectural forms, elements, materials, and/or colors.

    b. Building Entry

**Panel 4 (bottom-right):**

1. All buildings must maintain a public entrance from the sidewalk along the primary street frontage.

2. Public entrances on any façade must be designed as visually distinct elements of the façade.

    c. Fenestration Design

1. The street level façade shall be transparent between the height of three (3) feet and eight (8) feet above the walkway grade for no less than sixty (60) percent of the horizontal length of the building façade.

    d. Roof Design

1. Cool Roofs are required for new construction and for roof replacement on existing buildings. Solar Reflective Index values of cool roofs must be consistent with Energy Star Roof Products Key Product Criteria, except where Green Roofs are installed.

2. Reflective roof surfaces that produce glare are prohibited, except for solar panels or cool roofs intended to radiate absorbed or non-reflected solar energy and reduce heat transfer to the building.

    e. Site Design

1. Security elements, such as bollards, and site amenities, like bike racks, should be coordinated with the architectural theme of the building and/or the surrounding landscape and hardscape design and shall not impede the five (5) foot accessible pedestrian route in the sidewalk.

2. No curb cuts should be permitted along primary streets when access to a lot is otherwise available via a secondary street or a way, unless technically infeasible. Requests for curb cuts on primary streets shall include documentation from a licensed transportation professional and the Zoning Administrator shall consult with the Department of Mobility and Infrastructure on these requests.

    f. Flat Roof Features

1. Green roofs, rooftop decks, rooftop gardens, and stormwater management systems are permitted to extend above the parapet of any flat roof building.

2. Accessory rooftop features of a flat roof, including green roofs, rooftop decks, rooftop gardens, and stormwater management systems are excluded from the calculation of maximum building height.

**922.15.G Design Standards for Residential Uses**

Single-Unit Attached Residential, Two-Unit Residential, Three-Unit Residential and Multi-Unit Residential

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

uses must meet the following requirements:

1. Façades must be designed with consistent building materials and treatments that wrap around all façades. There must be a unifying architectural theme for the entire development, using a common vocabulary of architectural forms, elements, materials, and colors.

2. Façades of structures containing Multi-Unit Residential uses abutting a street must be articulated through the use of architectural elements to break up blank walls, add visual interest, and present a residential character. Two (2) or more of the following forms of building articulation must be incorporated into the design of structures containing Multi- Unit Residential uses:

    a. For façades over fifty (50) feet in length, modulation of the façade through the use of features such as projections or indentations. Such building modulations must either be projected or be set back a minimum of two (2) feet in depth, and must be a minimum of four (4) feet in width. There may be no more than fifty (50) feet between such modulations.

    b. Architectural elements such as balconies, bay windows, patios, porches, or terraces. There may be no more than fifty (50) feet between such elements.

    c. Changes in color, texture, or material. Changes should occur at inside corners to convey solidity and permanence, and should not occur on a flat wall plane or an outside edge. There may be no more than fifty (50) feet between such changes.

    d. Lighting fixtures or other building ornamentation such as artwork, trellises, or green walls. There may be no more than fifty (50) feet between such fixtures or elements of ornamentation.

3. Public entrances on any façade must be designed as visually distinct elements of the façade.

4. Where private open space for residents is maintained, only forty (40) percent of the total of such area may consist of impervious surface. Any fencing that delineates the private open space from public space must be open fencing of at least sixty (60) percent open design with a maximum height of six and one half (6) feet. Shadowbox fencing is prohibited.

5. Single-Unit Attached Residential uses are subject to the following curb cut standards.

    a. Garages and parking spaces must be accessed from the rear yard if rear yard access is available. Corner lots, with or without rear access, may alternatively access garages and parking spaces from the exterior side yard.

    b. In cases where front-loaded garage design is the remaining option, shared driveways with one (1) curb cut are encouraged.

**922.15.H Bird Safe Glazing**

Bird Safe Glazing is encouraged in the following applications:

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

    1. New Construction, except single-unit residential.

    2. Replacement of fifty (50) percent of the glazing on an existing structure except single-unit residential.

    3. Additions to existing buildings totaling of 15,000 sf or greater.

    4. New or renovated above grade pedestrian bridges.

On the first sixty (60) feet of the building from the ground floor, Bird Safe Glazing is required. Above sixty (60) feet, where Intensive Green Roof or Extensive Green Roof exists or trees and vegetation are architecturally integrated into patios or balconies, bird safe glazing is required on the façade of the floor immediately adjacent and the two floors above.

For locally designated historic structures and structures in local historic district subject to the provisions of Chapter 1101, reversible treatment methods may be used such as netting, glass films, grates and screens.

Where ground floor transparency is required, applicant shall work through the Design Review Process to ensure that the Bird Safe Glazing still meets the design intent of ground floor transparency, including visibility into the building from the adjacent pedestrian realm.

**922.15.I Fences and Walls**

1. Fences and walls in the Build-To Zones are permitted to a maximum four (4) feet in height and shall be of an open design.

2. Fences and walls in the rear and interior side yard are permitted to a maximum height of six (6) feet and may be opaque.

3. Fences and walls, shall meet the Materials and Methods Standards in 918.03.B.1.(b).

4. Fences that do not comply with the height standards above may be reviewed and approved in accordance with the Administrator Exception procedures of Section 922.08 subject to the following standards:

    a. No fence or wall shall exceed a height of one foot in additional to what is permitted in the standards above; and

    b. The exception shall not have a detrimental impact on adjacent, impacted, properties or streets.

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

**922.15.J Residential Compatibility**

The Building Height and Setback Standards of 916.02 shall not apply. The Screening standards of 916.03; the Site Design standards of 916.04; the Operating Hours standards of 916.05; Noise standards of 916.06; and Lighting standards of 916.07; and Odor standards of 916.08 shall apply.

**922.15.K Height Reduction Zone**

Where identified in Height map, the height reduction zone restricts building height for twenty (20) feet into the development parcel. Structures or portions of structures in this zone may not exceed the maximum height permitted in the adjacent zoning district plus twenty (20) feet. The height reduction zone is not a setback, it restricts height within the first twenty (20) feet as shown on the adopted height map.

**922.15.L Whole-Building Life-Cycle Assessment**

All projects requiring Planning Commission Review and Approval under 904.0B.D.2, 904.09.D.2, 904.10.D.2, shall submit an initial draft Whole-Building Life-Cycle Assessment as part of application materials, except building demolitions and new open spaces.

The intent of the study is to have those proposing new buildings or significant additions to identify pathways to reducing to zero (0) the net carbon emissions from the project. The study will allow the applicant to understand what would be required to meet that goal, and clearly show through the application review process what recommendations from the study are being incorporated into the project, what are not, and why.

The study must include the following elements:

1. Embodied carbon in existing structures. Includes consideration of how existing structures can be reused in whole through rehabilitation or in part through retaining components of the building or reusing significant portion of the building materials (e.g., bricks, timber, stonework).

2. Carbon capture value of existing trees on the site. Includes options for development that retain existing and mature trees already on the site in addition to inclusion of new trees and vegetation that would be added through development. Specifically, how can the building be shaped and massed around existing trees in ways that maintain their health and environmental function?

3. Zero Carbon energy source. How can the project's construction and operation result in zero net carbon emissions? How can energy for building operation be sources through on- or off-site renewables?

**Section 17.** The Pittsburgh Code, Title Nine, Zoning Code, Article IX, Measurements and Definitions, is hereby amended in Chapter 926, to add new definitions as follows:

33.1 Bird Safe Glazing shall mean glazing treatments or visual makers that minimize the impact of bird

---

**Introduced:** 7/8/2022      **Bill No:** 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and Economic Development      **Status:** Passed Finally

collisions that has been treated to a maximum threat factor of 30 in accordance with the American Bird Conservancy Bird Collision Threat Factor Rating, or with a relevant ASTM standard. These may include fritting, netting, frosted glass, exterior screens or physical grids placed on the exterior of glazing that are visible to birds.

**34.1 Buffers, Green**

Green Buffers shall be a minimum of fifteen (15) feet and may not include parking. There are two types of Green Buffers.

1. A Green Buffer designed for pedestrian access and use. This type of Green Buffer shall provide at least one pedestrian connection through the site. It shall be at the same level as abutting public sidewalks, shall provide a clear path or area for movement to avoid foot or wheel traffic damaging vegetation and soil, and shall be accessible to persons with disabilities throughout the entire area. This portion of the site shall be open to the public during daylight hours and shall include signage indicating such. This type of Green Buffer may count toward the Urban Open Space requirement.

2. Green Buffer designed for ecological benefit. This type of Green Buffer shall be designed to provide native habitat function and may include green infrastructure for stormwater management. Plantings must be native species that are appropriate for the urban environment, especially tree and plant species that have the largest impact to reduce air pollutants. Each application for this type of Green Buffer shall include a statement from a registered landscape architect or other qualified professional regarding plant species selected for durability, survivability, and potential mitigation on air pollution. An operations and maintenance plan shall be provided for all stormwater management features. This type of buffer is not required to be open to the public and may include an open fence of high-quality material meeting the standards of 918.03.B.1.(b), no more than 6 feet tall, that allows easy and free access of non-human animals.

74.1 EV Ready shall mean parking spaces that are built with necessary electrical wires, conduit, and dedicated electric panel space at the time of construction. This would allow charging stations to be added cost effectively at a future time or as part of the original construction of the parking. Specifically, it shall mean a parking space that is provided with dedicated branch circuit that meets the following requirements:

    a. Wiring capable of supporting a 40-amp, 208/240-volt circuit.

    b. Terminates at a junction box or receptacle located within 3 feet (914 mm) of the parking space, and

    c. The electrical panel directory shall designate the branch circuit as "For electric vehicle charging" and the junction box or receptacle shall be labelled "For electric vehicle charging".

Introduced: 7/8/2022                                   Bill No: 2022-0592, **Version:** 3

**Committee:** Committee on Land Use and            **Status:** Passed Finally
Economic Development

74.2 EV Capable shall mean parking spaces that are built with conduit serving the space to allow for future wiring and installation of charging stations. This does not require that the electric panel has dedicated space for these future charging connections, although this may be cost effective.  Specifically, it shall mean a parking space that is provided with conduit that meets the following requirements:

a. The conduit shall be continuous between a junction box or receptacle located within 3    feet (914 mm) of the parking space and an electrical panel serving the area of the parking space with sufficient dedicated physical space for a dual-pole, 40-amp breaker.

b. The conduit shall be sized and rated to accommodate a 40-amp, 208/240-volt branch    circuit and have a minimum nominal trade size of 1 inch.

c. The electrical junction box and the electrical panel directory entry for the dedicated        space in the electrical panel shall have labels stating "For future electric vehicle                charging."

261.05 Whole-Building Life-Cycle Assessment shall mean an assessment of the embodied carbon impact of a whole building. This includes the impact of all materials used in the project, or a subset of the project, like structure and/or envelope, throughout the life cycle of the building. Life-Cycle Assessment shall comply with ISO 14044.

262.1 Zero Carbon shall mean not using fossil fuel, greenhouse-gas-emitting energy to operate and are instead 100% powered by on-site and/or off-site renewable energy.