**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH and S. RAND WERRIN, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:22-CV-00706-RJC |
| v. | ) ) | |
| CITY OF PITTSBURGH | ) ) | |
| Defendant. | ) ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant City of Pittsburgh ("the City"), by and through undersigned counsel, submits this Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1):

**I.      INTRODUCTION**

This case epitomizes the structural, constitutional, jurisdictional, and prudential necessity of the standing and ripeness doctrines in the land use context. Plaintiffs ask this Court to take the extraordinary step of striking down land use regulations that are "uniquely matters of local concern more aptly suited for local resolution" and to conduct the required fact-intensive constitutional analysis without the "development of a full record" or "knowledge as to how a regulation will be applied to a particular property." *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214, 217 (3d Cir. 2009). Plaintiffs have not been hindered in the development of any particular property and have suffered no injury in fact. It is impossible for any court to evaluate hypothetical harms that might result from a wholly speculative future application of a zoning ordinance to a nonexistent plan advanced by an unidentified entity for the potential development

of some unspecified property at an unknown location.

Because Plaintiffs lack standing and their claims are not ripe, the First Amended Complaint must be dismissed on jurisdictional and prudential grounds pursuant to Fed. R. Civ. P. 12(b)(1). This Court should refuse Plaintiffs' invitation to use the federal judiciary as a vehicle for political advocacy (which they candidly admit to be the purpose of their lawsuit).[1] The federal judiciary is "not a legislative assembly, a town square, or a faculty lounge. Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024).

## II. FACTUAL BACKGROUND

### A. The IZ-O

The "IZ-O, Inclusionary Housing Overlay District" section (the "IZ-O") of the City's Zoning Code (the "Zoning Code") establishes the Inclusionary Housing Planning Overlay District ("IZ-O District")[2] that includes portions of the Lawrenceville, Bloomfield, Oakland, and Polish Hill neighborhoods. Zoning Code § 907.04.A.1.[3] The purpose of the IZ-O is "to promote the public health and welfare by increasing the supply of affordable housing for a range of family sizes and promoting economic integration within the District boundaries." *Id.* § 907.04.A.3.

---

[1] Werrin testified that he became a named plaintiff in this lawsuit to "win." Ex. B, Werrin Dep., at 38:12-14. Werrin further explained he wants to "win so that we can take this (sic) onerous regulations and stipulations and roadblocks of the City away so that we can develop the property, because in the United States of America, it's supposed to be the land of the free, it's not supposed to be that you are regulated to death by some bureaucrat in an office that doesn't get elected making decisions that have nothing to do with freedom of the sale of my property. How's that?" *Id.*, at 38:16-24. BAMP has similar motives in this litigation: "[BAMP's] concern with this ordinance goes far beyond those five neighborhoods [within the IZ-O] and the discussions and public pronouncements of members of counsel [sic] that they want to expand this to become citywide. And certainly proponents in those public hearings have been pushing to make it citywide and also to increase the percentage. So, you know, when do we say . . . enough is enough?" Ex. A, Rule 30(b)(6) BAMP Designee Dep. ("BAMP Dep."), at 90:15-24.

[2] An interactive version of the City's Zoning District Map can be found at: https://gis.pittsburghpa.gov/pghzoning/.

[3] Overlay Districts, including the IZ-O District, apply over underlying zoning districts to "impose[] additional requirements or provisions above that required by the underlying zoning district" without removing the requirements of the underlying zoning district. Zoning Code § 926(162).

To effectuate this purpose, the IZ-O requires that for projects involving the new construction or "Substantial Improvement" of buildings with twenty or more dwelling units a minimum of ten percent shall be "Inclusionary Units." *Id.* §§ 907.04.A.5, 907.04.A.6(e). An Inclusionary Unit's rental rate or selling price cannot exceed a specified limit. *Id.* §§ 907.04.A.4, 907.04.A.6(a). The IZ-O includes a special exception process that allows the Inclusionary Units to be constructed off site. *Id.* § 907.04.A.7.

**B.    The UC-E**

The Urban Center Employment ("UC-E") Zoning District is located in the Oakland neighborhood. "The intent of the UC-E District is to support life sciences, healthcare, and other industrial sectors that benefit from locating together and provide employment for a variety of workers and educational levels. The priority is on employment over residential uses." *Id.* § 904.09.A. To further these goals, properties in the UC-E District must comply with various use regulations, including height restrictions. *Id.* §§ 904.09.B-904.09.D.2. Because of the prioritization of employment over residential use, multi-family residential development is limited to mixed-use projects with a residential component less than 50%, or purely affordable residential developments. *Id.* § 911.04.A.85(c).

**C.    The Zoning Code**

The IZ-O operates as an integral component of the full Zoning Code. The Zoning Code requires a property-specific analysis of a proposed land use involving, *inter alia*, the submission site plans or project development plans reviewed and acted upon by the City's Planning Commission. *Id.* § 922.04. Applicants may seek relief from various provisions of the Zoning Code through administrator exceptions, special exceptions, and/or variances from the City's Zoning Board of Adjustment. *See id.* §§ 922.07-922.09. Variances permit a particular use of land to

proceed where strict compliance with other provisions of the Zoning Code, including the IZ-O, may not be possible. *See id.* § 922.09.

### D. Builders Association of Metropolitan Pittsburgh and Member Properties

BAMP is a trade association comprised of members who own and manage properties in Western Pennsylvania, including the Pittsburgh area. ECF No. 80, Ex. A ¶ 3; BAMP Dep., at 23:22-24:11. BAMP claims to have members who own, manage, and develop properties within the IZ-O District. ECF No. 80, Ex. A ¶¶ 3, 5-7. BAMP further claims that there are members who would construct and/or develop properties within the IZ-O District, but for the IZ-O. *Id.*, Ex. A ¶¶ 8-9. Despite these claims, BAMP cannot point to a single member that has advanced beyond the application stages for a project that may implicate the affordable housing requirements of the IZ-O.[4] Ex. L, Response to RFA No. 3; BAMP Dep., 38:15-39:5. BAMP likewise cannot point to a single member who has been denied a variance, special exception, or any other relief from the IZ-O. Ex. L, Responses to RFAs Nos. 1-2; BAMP Dep. 30:4-31:9, 32:14-20, 37:25-38:14. Instead, BAMP baldly asserts that "[its] entire membership is harmed by [the IZ-O]" merely because some members have properties within the IZ-O District. BAMP Dep., 42:14-43:20.

### E. S. Rand Werrin and the Werrin Properties

Werrin alleges that he is a "property owner with various interests in real properties" located at 3504, 3506, 3508 and 3510 Fifth Avenue. ECF 80 ¶ 14. While Werrin is the sole owner of 3510

---

[4] The Werrin properties are addressed at length *infra*. *See* § II(d). Werrin, through counsel, submitted a preliminary application and has not taken any subsequent steps through the City's Zoning Review process for development of his property. Ex. M, Responses to RFA Nos. 1-2; Ex. Q, Affidavit of Zoning Administrator Corey Layman, dated August 22, 2024 ("Layman Affidavit") ¶¶ 4-8. BAMP also points to 262 McKee Place, but this reliance is misplaced. First, 262 McKee Place is still in the application phase of development; it has yet to implement any affordable housing requirements under the IZ-O. Layman Affidavit ¶¶ 10-11 Second, the applicant for development of 262 McKee Place has indicated it intends to comply with the IZ-O; its application states that it will "provide seventeen (17) inclusionary housing units in accordance with the IZ-O's provisions[.]" *Id.* ¶ 11. The applicant for development of 262 McKee Place is seeking a variance for the property, but not from the IZ-O, even though this avenue of relief is available to it. *Id.* ¶¶ 12-13; *see* Zoning Code § 922.09.

Fifth Avenue, he does not have *any* ownership interest in 3508 Fifth Avenue, is one of three owners of a limited liability company that owns 3504 Fifth Avenue, and is only a partial owner of 3506 Avenue with John W. Gruendel, Jr. *See* Exs. D-G (property records for 3504-3510 Fifth Avenue); Ex. M, Responses to RFA Nos. 3-5; Werrin Dep., at 11:10-20, 17:6-19, 25:3-8. Werrin joined BAMP for the purposes of joining the instant lawsuit against the City. Werrin Dep., at 37:20-22. BAMP and Werrin filed their First Amended Complaint on October 6, 2023 (ECF No. 80), but Werrin did not submit his membership dues for BAMP until October 16, 2023, and his membership began on November 1, 2023. Ex. P, Werrin Membership Documents.

Werrin intends to sell the properties at 3504, 3506, and 3510 Fifth Avenue. Werrin Dep., at 11:8-20; 40:14-21 (Werrin agreeing that he intends to sell, not develop, the properties at 3504, 3506, and 3510 Fifth Avenue). Wilmorite Construction LLC ("Wilmorite") has signed agreements to purchase the properties at 3504, 3506,[5] 3508, and 3510 Fifth Avenue. Exs. H-K. Wilmorite agreed to purchase 3504, 3508, and 3510 for $1.35 million each and 3506 for $1.45 million, for a total of $5.5 million. *See* Exs. H-K; Kelly Dep., at 33:3-5, 38:20-24, 41:14-15, 41:14-15. These agreements were reached *after* the IZ-O had been enacted. *See* Exs. H-K; Zoning Code § 907.04.

Despite Werrin's plan to sell the properties (and the executed contracts to do so), in December 2023 his counsel submitted a "preapplication" to the City seeking input on a potential development at 3510 Fifth Avenue. Werrin Dep., at 31:22-32:7; Ex. M, Response to RFA No. 6; Ex. N, at BAMP00085-BAMP0093. The preapplication included plans to build a 210-foot tall "new multi-unit residential building consisting of 116 units" within the UC-E. Ex. M, Response to RFA No. 7; Ex. N, at BAMP000085, BAMP000089-BAMP000090. Aside from his attorney's submission of this preapplication, Werrin has not taken any other steps to develop the property.

---

[5] The agreement for 3506 Fifth Avenue is signed by Werrin and Wilmorite, but not his co-owner John Gruendel. Ex. I, at Werrin00072; Werrin Dep., 25:20:22-24.

Ex. M, Responses to RFA Nos. 1-2; *see* Ex. N, at BAMP000085 (the Department of City Planning's response to Werrin's pre-application, explaining that it "does not represent a comprehensive review" and is a "pre-application review only" and stating: "For final determinations on all aspects of development, please file a complete Zoning Development Review Application"); Kelly Dep., at 57:25-58:10; Layman Affidavit ¶¶ 6-9. Specifically, since the preapplication meeting, "[n]either Attorney Cromer nor Werrin have submitted an application for the development of the property located at 3510 Fifth Avenue." Layman Affidavit ¶ 7.

## III.    PROCEDURAL HISTORY

On April 3, 2023, this Court issued an opinion granting Defendants' Motion to Dismiss in part, and denying it in part. ECF No. 54. This Court permitted BAMP to pursue its claims under the Takings Clause of the Fifth Amendment and Article IX, Section 2 of the Pennsylvania Constitution and the Home Rule Law. The Court specifically cautioned, however, that it was allowing the claims to proceed "with the important understanding that although BAMP's allegations are sufficient to survive a facial motion to dismiss, BAMP will face a far more substantial hurdle of establishing standing at the next stages of the proceedings." *Id.* at 13. The parties have completed discovery relevant to the standing and ripeness issues, and BAMP and Werrin now face the burden of overcoming this "substantial hurdle."

## IV.    LEGAL STANDARD

This Court detailed the standard governing review of a Motion to Dismiss under Rule 12(b)(1) in its April 3, 2023 opinion:

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). **The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists.** *Brown v. Tucci*, Civil Action No. 12-1769, 2013

WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)….

A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. *Id.* In such a case, **"no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's ... very power to hear the case" is at issue. *Id.* With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence.** *Petruska*, 462 F.3d at 302 n.3; *see also Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). **"[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."** *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891).

*Builders Ass'n of Metro. Pittsburgh v. City of Pittsburgh*, 2:22-CV-706-RJC, 2023 WL 2758931, at *2 (W.D. Pa. Apr. 3, 2023) (Colville, J.) (emphasis added). The instant Motion raises a factual challenge, which "may occur at any stage of the proceedings." *Mortensen*, 549 F.2d at 891.

## V.    ARGUMENT

### A.    BAMP and Werrin Lack Standing

#### 1.    *The Elements of Standing and Associational Standing*

The Supreme Court recently underscored the importance of the standing requirement: "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *All. for Hippocratic Med.*, 602 U.S. at 397 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). Standing is an indispensable, threshold requirement "to invoke the jurisdiction of the federal courts under Article III of the United States Constitution." *Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 524 (3d Cir. 2018). The party

invoking federal jurisdiction bears the burden of proving three elements to establish the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), which the Third Circuit has summarized as:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).

An association "*may* have standing to sue where (1) the organization itself has suffered injury to the rights and/or immunities it enjoys; or (2) where it is asserting claims on behalf of its members and those individual members have standing to bring those claims themselves." *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015) (emphasis added; internal quotations omitted). When an organization sues on behalf of its individual members, the organization must prove: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir.2005)).

To meet the first element of associational standing, the organization must establish the three familiar components . . . of standing: injury-in-fact, causation, and redressability." *PJM Power Providers Grp. v. FERC*, 88 F.4th 250, 265 (3d Cir. 2023) (quoting *Lujan*, 504 U.S. at,

560). "In practice, this means that the association must make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Am. Chiropractic Ass'n*, 625 F. App'x at 176 (internal quotations omitted) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014)). The injury-in-fact element is critical; it "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381.

### 2. *BAMP Lacks Standing*

BAMP fails to satisfy its burden to prove any of the elements of associational standing.[6] BAMP cannot satisfy the first element because it cannot point to a single member who has suffered an injury in fact. An injury in fact is actual and concrete; "[i]t is not enough to assert a generalized, abstract grievance shared by a large number of similarly situated people." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009); *see Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009) (internal quotations and citations omitted) (injury in fact requires a plaintiff to suffer a "palpable and distinct harm. . . [that] affect[s] the plaintiff in a personal and individual way."). In the context of land use regulations, a plaintiff does not suffer an injury in fact when a development project has not been delayed or otherwise "thwarted" by the land use regulation at issue. *See Warth v. Seldin*, 422 U.S. 490, 515-16 (1975).

In *Warth*, the Supreme Court found that a home builders' association lacked standing to

---

[6] Recently, in a June 2024 concurring opinion, Justice Thomas questioned the very concept of associational standing. *All. for Hippocratic Med.*, 602 U.S. at 397-405 (Thomas, J., concurring). In his opinion, Justice Thomas explained that the Supreme Court's third-party doctrine is "mistaken," and "a plaintiff cannot establish an Article III case or controversy by asserting another person's rights." *Id.* at 398. Associational standing, which is "form of third-party standing," is thus likewise flawed. *Id.* Such a theory of standing "relax[es] both the injury and redressability requirements for Article III standing," *id.* at 399, and illustrates "how far [the Supreme Court] has strayed from the traditional rule that plaintiffs must assert only their injuries." *Id.* at 400. In light of this recent guidance, the City too questions whether associational standing is a viable avenue for BAMP's attempt to have this Court hear its case, and the City notes that it challenges the concept of associational standing generally. This Court not need to reach this larger issue, however, given that BAMP cannot show it meets the elements required for associational standing.

intervene in a lawsuit challenging a local land use ordinance. *Id.* at 516. The association failed to identify a "specific project of any of its members that is currently precluded either by the ordinance or by [the municipality's] action in enforcing it." *Id.* Moreover, the association failed to identify a member that applied to the municipality for a permit or variance. *Id.* Without this information, there was "no indication that [the municipality has] delayed or thwarted any project currently proposed by [the association's] members, or that any of its members has taken advantage of the remedial processes available under the ordinance." *Id.* For these reasons, the Supreme Court held: "[the association] has failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention." *Id.*

Here, BAMP has not identified a single member who has taken anything beyond preliminary steps to develop residential property that would be subject to the IZ-O's affordable housing requirements. Ex. L, Responses to Interrogatories Nos. 3-5. BAMP admits that any project that a developer would pursue but for the ordinance is "purely hypothetical" at this juncture. *Id.*, Responses to Interrogatory Nos. 2, 6 (responding to questions asking BAMP to identify members who would have standing to sue in their own right or who would construct projects of twenty or more units if the IZ-O were not in effect by (a) not identifying a single member or property and (b) referring to a "hypothetical list of members and/or properties" and "steps taken to develop these hypothetical properties"). BAMP cannot point to a single project that has been "precluded by the [IZ-O] or [the City's] action in enforcing it." *See Warth*, 422 U.S. at 516. BAMP attempts to circumvent this problem by pointing to Werrin's property and 262 McKee Place. As discussed *infra*, Werrin has not suffered the harm he alleges and likewise lacks standing. *See* § V(B). The developer of 262 McKee Place submitted an application that includes affordable units, and has not sought any relief from the IZ-O. Layman Affidavit ¶¶ 11-13.

Any harm BAMP alleges is purely conjectural and hypothetical. BAMP concludes that members have properties "affected by the Ordinances" but fails to buttress those allegations with any factual support in the record. ECF No. 80 ¶ 8. BAMP's allegations assume that the IZ-O will be enforced against them in an unconstitutional manner. However, other than the developer of 262 McKee Place, which included affordable housing in its application, none of its members have sought—let alone been denied—approval of any application for any use of land within the IZ-O District. Ex. L, Responses to RFAs Nos. 1-2; BAMP Dep. 30:4-31:9, 32:14-20; Layman Affidavit ¶ 11. BAMP cannot even point to any "payments, expenditures, or financial losses" a member has incurred because of the IZ-O. Ex. L, Response to RFA No. 10. The record only establishes that the vague harm alleged by BAMP's members has not occurred, may never occur, and would require a particularized analysis based on a record that does not exist because no BAMP member has applied for approval of any project that runs afoul of the IZ-O. For these reasons, BAMP fails to establish "that at least one identified member had suffered or would suffer harm." *Am. Chiropractic Ass'n*, 625 F. App'x at 176. Any injury to a member of BAMP is purely "conjectural or hypothetical," not actual or imminent. *See Storino*, 322 F.3d at 296.

BAMP cannot meet the second element required for standing because it cannot show an injury, let alone an injury that can be traced to the IZ-O. BAMP has not adduced any evidence whatsoever that the IZ-O forecloses profitable non-residential use of any member's property. *See, e.g.*, Werrin Dep., 34:14-35:18 (describing his property as "oceanfront property" for numerous types of buyers, including retailers and hospitals).[7] Moreover, BAMP cannot point to evidence

---

[7] BAMP has even taken the position that the IZ-O is toothless and that developers who have complied with the IZ-O would have included the requisite affordable units regardless of the IZ-O. *See* BAMP Dep., 64:1-70:19 (testifying that it is BAMP's position that the IZ-O had no impact on developers' behaviors and that "tax incentives or the city's involvement in assembling the land for redevelopment were the reasons for creating the affordable housing and not the mandates required through the inclusionary zoning requirements.").

that any member's hypothetical project could be pursued but for the ordinance. For example, BAMP cannot identify any member who has adequate funding to construct or improve a structure with more than twenty residential units that complies with the numerous other requirements of the Zoning Code regardless of the IZ-O.

Lastly, BAMP has not and cannot prove the third element of showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560. Because BAMP's alleged harm involves purely hypothetical projects, BAMP cannot show that elimination of the ordinance would allow BAMP members to pursue their hypothetical projects. Again, other roadblocks such as funding and land use restrictions aside from the IZ-O may prohibit any given project. For these reasons, BAMP lacks associational standing to bring the instant action.

### 3. *Werrin Similarly Lacks Standing*

Rather than curing BAMP's lack of standing, the addition of Werrin to BAMP's lawsuit emphasizes both parties' inability to satisfy this threshold requirement. Werrin has suffered no actual injury and his alleged harms amount to no more than generalized grievances about government regulation. *See* Werrin Dep., at 38:12-24 ("[I]n the United States of America, it's supposed to be land of the free, it's not supposed to be that you are regulated to death by some bureaucrat in an office that doesn't get elected making decisions that have nothing to do with freedom of the sale of my property. How's that?").

Werrin generally alleges that the IZ-O has "severely negatively limit[ed] [his] property rights, as well as the value and utility of the [properties]." *Id.* ¶ 47. Werrin further claims that he has been "unable to reach an agreement to sell and/or develop the [properties]" because of the IZ-O. *Id.* ¶ 49. But the record blatantly contradicts these contentions, and this Court need not presume

they are true. *See Mortensen*, 549 F.2d at 891 (in analyzing a factual Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations.").

First, Werrin owns only one of the four properties identified in the Amended Complaint, 3510 Fifth Avenue. *See* Ex. G (property record for 3510 Fifth Avenue). He is one of three members in a company that owns 3504 Fifth Avenue, a joint owner of 3506 Fifth Avenue, and has no ownership interest whatsoever in 3508 Fifth Avenue. Exs. D-F (property records for 3504-3508 Fifth Avenue); Ex. M, Responses to RFA Nos. 3-6; Werrin Dep., at 11:10-20, 17:6-9, 25:3-8.

Second, Werrin's claim that he cannot sell his property because of the ordinances is unequivocally contradicted by the record. Werrin has, in fact, secured a buyer for all of the properties and has produced fully executed Sales Agreements for 3504, 3508, and 3510 Fifth Avenue. Exs. H-K (sales agreements for 3504-3510 Fifth Avenue); Kelly Dep., 32:11-33:2; 40:9-41:13; 43:4-44:25; 45:3-9. The only signature missing from any of the agreements is that of John Gruendel, the co-owner of 3506 Fifth Avenue. Ex. I (sales agreement for 3506 Fifth Avenue). Werrin cannot credibly argue that the ordinances have prevented him from selling his property when a buyer has executed contracts (dated *after* the passage of the IZ-O) to purchase all four properties for the handsome sum of $5.5 million. *See* Exs. H-K; Kelly Dep., at 33:3-5, 38:20-24, 41:14-15, 41:14-15.

Third, despite these executed Sales Agreements, Werrin's attorney nonetheless submitted a preapplication[8] indicating he intended to build a residential development at 3510 Fifth Avenue. Ex. N, at BAMP 000085-00093. But the proposed structure failed to comply with other zoning requirements, including provisions of the UC-E, that must be satisfied before the IZ-O's

---

[8] Werrin is unaware as to whether he submitted a preapplication to the City and claims he intends to sell, rather than develop, his properties; he had never seen the preapplication prior to his deposition. Werrin Dep., at 31:22-32:16.

requirements would apply. *Id.* at BAMP000085; Ex. M, Response to RFA No. 8. For example, the 210-foot height of the proposed structure far exceeds the sixty-five foot limit in the UC-E District, meaning that Werrin would need to seek and obtain relief from this requirement before the IZ-O is even applicable. *See* Zoning Code §§ 904.09.B-904.09.D.2; *id.* § 904.09.B (if UC-E provisions are met, the properties are then subject to the requirements of any applicable overlay zoning districts). Thus, Werrin cannot show that his proposed project at 3510 Fifth Avenue has been, or imminently will be, subject to the IZ-O's requirements.

For these reasons, Werrin has failed to show he has suffered an actual injury, and this Court therefore lacks subject matter jurisdiction over his claims.

### B. BAMP and Werrin's Claims are Unripe

#### 1. The Ripeness Doctrine

"At its core, '[t]he ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Siemens United States Holdings Inc. v. Geisenberger*, 17 F.4th 393, 412 (3d Cir. 2021) (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)). "The purpose of the ripeness doctrine 'is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Federal courts' jurisdiction extends only to claims that are ripe for resolution. *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509, 522 (3d Cir. 2018) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). A claim is not ripe unless

deciding it "would amount to more than an advisory opinion based upon a hypothetical set of facts." *Battou v. Sec'y United States Dep't of State*, 811 F. App'x 729, 732 (3d Cir. 2020) (quoting *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994)). "When a plaintiff's alleged injury depends on a contingency, the parties' interests are typically not adverse enough to amount to an Article III case or controversy." *Id.* (quoting *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 411-12 (3d Cir. 1992)); *see also Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538-39 (3d Cir. 2017) (discussing the underpinning of the ripeness doctrine at length).

In addition to the constitutional and prudential imperative of ripeness, this doctrine has numerous, significant practical benefits—all of which are relevant to the instant matter. "The finality requirement of the ripeness inquiry: (1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows 'the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.'" *Congregation Anshei Roosevelt*, 338 F. App'x at 217 (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005)).

BAMP and Werrin raise both as-applied and facial challenges to the IZ-O in their First Amended Complaint. *See generally* ECF No. 80. However, neither approach renders their claims ripe for disposition before this Court.

### 2. As-Applied Challenge.

In its order on Defendants' Motion to Dismiss, this Court found that BAMP only raised

facial challenges to the IZ-O. ECF No. 54, at 10.[9] BAMP and Werrin nonetheless raised an as-applied challenge in their First Amended Complaint, and the City therefore provides the following brief argument of the issue.

The Supreme Court has held that a challenge to a land use regulation is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, (1985). "[T]he final decision requirement is not satisfied when a developer submits, and a land-use authority denies, a grandiose development proposal, leaving open the possibility that lesser uses of the property might be permitted." *Palazzolo v. Rhode Island*, 533 U.S. 606, 619 (2001). "[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." *Id.* at 620. To meet this finality requirement, the Supreme Court requires a landowner to "seek . . . a variance to ripen his claim" when "the regulatory regime offers the possibility of a variance from its facial requirements." *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736–37 (1997).

Here, the Zoning Code contains procedures for a particularized analysis and application of its provisions, including the IZ-O, based on the circumstances and conditions of a specific property. In addition to the IZ-O's special exception process for off-site inclusionary units, the Zoning Code contains variance procedures that consider the unique characteristics and conditions of particular properties and whether strictly applying the Zoning Code to the property in question works an "unnecessary hardship." Zoning Code § 922.09.E. Werrin admits that he has not applied for a special exception, variance, or any other relief from the IZ-O or any other provision of the

---

[9] BAMP also admitted it was only raising a facial challenge to the IZ-O in its Response to Defendants' Motion to Dismiss. ECF No. 45, at 7 ("BAMP's challenge is 'facial' rather than 'as-applied'").

Zoning Code. Ex. M, Response to RFA No. 1. Likewise, BAMP cannot identify any member who applied for a special exception, variance, or any other relief from the IZ-O. BAMP Dep., 50:4-21. Thus, BAMP and Werrin have failed to meet their burden to show that their as-applied challenge is ripe for this Court's review.

### 3. Facial Challenge

BAMP and Werrin attempt to circumvent the lack of any final decision on any proposed use of any particular property by framing their challenge to the IZ-O as "facial," but this approach also fails. A facial challenge to a regulation alleges that "*any* application of the regulation is unconstitutional[.]" *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (emphasis in original). A facial challenge is "generally ripe the moment the challenged regulation or ordinance is passed, but face[s] an uphill battle, since it is difficult to demonstrate that mere enactment of a piece of legislation deprived [the owner] of economically viable use of [his] property." *Suitum*, 520 U.S. at 736 n.10 (internal quotations and citations omitted). This type of challenge can succeed only if the regulation does not "substantially advance" a "legitimate state interest" no matter how it is applied. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

When the "face" of the zoning code allows for exemptions from a particular ordinance, a "facial" challenge necessarily fails. Though merely persuasive, the district court's recent opinion in *Adams v. City of Seattle*, No. C22-1767 TSZ, 2024 WL 3253297 (W.D. Wash. June 28, 2024) is squarely on point and illustrates the exact ripeness issue before this Court. In *Adams*, the plaintiff was interested in building housing on her property for relatives. *Id.* at *1. The plaintiff claimed she was "hindered in her efforts" because of Seattle's affordable housing ordinance.[10] *Id.* at *1-2.

---

[10] Like the City's IZ-O, the performance option in *Adams* required a new structure to contain a certain number of units to be rented or sold at "below-market rates to persons with lower than median income." *Adams*, 2024 WL 3253297, at *2. The payment option involved "contributing cash to the City of Seattle, calculated as a specific amount per square foot of the development[.]" *Id.*

However, plaintiff had the option of seeking a modification of the ordinance under Seattle's zoning code. *Id.* at *2. The plaintiff in *Adams*, however, never sought such modification or waiver. *Id.* At the time the plaintiff filed suit, her development plans were in the "conceptual" phase, and plaintiff had not applied for a permit to develop her property. *Id.* at *1, 3.

The court granted Seattle's motion for summary judgment, rejecting the plaintiff's facial challenge for three reasons. *Id.* at *4. First, the plaintiff had not yet initiated development efforts and the performance option in the ordinance was therefore "dormant." *Id.* Second, the ordinance provided an alternative to the performance option (*i.e.*, the payment option) to avoid any physical taking. *Id.* Third, and critically, Seattle's zoning code provided a process whereby an applicant could seek a modification or waiver of the amount of performance or payment, "which render[ed] the ordinance subject to discretion, and not automatic or self-effectuating." *Id.*

Here, Plaintiffs cannot show that any application of the IZ-O would be unconstitutional or that the "mere enactment" of the IZ-O has denied them the economically viable use of their land. Like the ordinance in *Adams*, the plain language of the IZ-O and the Zoning Code states that a property may be excused from the requirements of the IZ-O if a special exception, administrator exception, or variance is granted by the Zoning Board of Adjustment. *See* Zoning Code, §§ 907.04.A.7, 922.07, 922.08, 922.09. The IZ-O is thus "subject to discretion, and not automatic or self-effectuating," which defeats Plaintiffs' facial challenge. *See Adams*, 2024 WL 3253297 at *5.

BAMP and Werrin try to circumvent these avenues of relief in the IZ-O and Zoning Code by suggesting that a request for a variance, special exception, or any other relief would be inherently futile. ECF No. 45, at 9. Yet, they have never even requested such relief, let alone had such a request denied, and they have not presented any evidence of any entity or person applying for or being denied such relief. The alleged hardship of complying with the IZ-O will vary from

property-to-property based on countless factors—the property's size, its topography, whether it is burdened with steep slopes or adverse environmental conditions, the alleged cost of compliance, engineering feasibility, the feasibility of the IZ-O's special exception, etc.—any one of which might create a legally sufficient unnecessary hardship justifying the grant of a variance.[11] Thus, BAMP and Werrin have no evidence to support their bald assertion that applying for a variance is *per se* futile.

Though this Court is not analyzing the merits of Plaintiffs' case at this juncture, the fact that the Zoning Code provides avenues of relief from the IZ-O is relevant to BAMP's proffered "nexus" and "rough proportionality test," ECF No. 45 at 2, or under the *Penn Central* test. *See Palazzolo*, 533 U.S. at 617 (citing *Penn Central v. City of New York*, 438 U.S. 104, 124-25 (1978)). A request for a variance can incorporate the applicable constitutional test into the City and the Zoning Board of Adjustment's (an independent, quasi-judicial body) decision-making in light of the specific facts and circumstances of a particular property or development. *See* Zoning Code § 922.09.E (describing the conditions that warrant a grant of a variance, including lack of ability to strictly conform to ordinances and unnecessary hardship). Unless and until the City's Zoning Board of Adjustment makes a final decision in the variance process and creates a factual record in the process, it is premature to determine whether the IZ-O and the City have committed an unconstitutional taking. *See Laredo Vapor Land, LLC v. City of Laredo, Texas*, No. 5:19-CV-00138, 2022 WL 791660, at *4 (S.D. Tex. Feb. 18, 2022) (internal quotations omitted) ("The finality requirement is important because the Court cannot examine the factors of particular significance in a takings inquiry without a final, definitive position from the government agency

---

[11] *See Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) ("This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is <u>not</u> required to show that the property at issue is valueless without the variance *or* that the property cannot be used for any permitted purpose.") (emphasis added).

about how the regulations at issue apply to the land in question.).

Plaintiffs' facial challenge also fails in light of Werrin's sale of his property despite the enactment of the ordinances. *See infra* § V.A.3. A developer agreeing to purchase the properties for a total of $5.5 million, Exs. H-K; Kelly Dep., at 33:3-5, 38:20-24, 41:14-15, 41:14-15, does not win the "uphill battle" to prove that the "mere enactment" of the IZ-O deprived Werrin of "economically viable use" of the properties. *Suitum*, 520 U.S. at 736, n.10. BAMP and Werrin's reliance on 262 McKee Place only underscores the deficiency in Plaintiffs' facial challenge. The developer of 262 McKee Place has indicated it intends to comply with the IZ-O and is continuing through the development process. Layman Affidavit ¶ 11. There is no evidence that the project is no longer economically viable due to this compliance. In fact, the developer of 262 McKee Place is availing itself of the variance process, but only for a variance from a height requirement, not the IZ-O. *Id.* ¶¶ 12-13. Accordingly, Plaintiffs' facial challenge to the IZ-O does not render their claims ripe for disposition, and this Court lacks subject matter jurisdiction over them.

## V. CONCLUSION

The City requests that this Honorable Court grant the instant Motion to Dismiss Plaintiffs' Amended Complaint[12] for Lack of Subject Matter Jurisdiction and enter the proposed Order of Court attached to the Motion.

Respectfully Submitted,

By: */s/ Hillary M. Weaver*
    Hillary M. Weaver
    Pa. I.D. No. 322545
    Hillary.Weaver@pittsburghpa.gov

---

[12] The City's arguments for dismissal of Plaintiffs' First Amended Complaint apply equally to Counts I and II. Furthermore, if the Court dismisses Count I as unripe and for lack of standing, this Court should decline to exercise supplemental jurisdiction over the state law cause of action in Count II. *See* 28 U.S.C. § 1367(c)(3); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (stating that district courts must decline to exercise jurisdiction over pendent state claims unless considerations of judicial economy and fairness provide affirmative justification for retaining jurisdiction).

/s/ Krysia Kubiak

Krysia Kubiak
Pa. I.D. No. 90619
Krysia.Kubiak@pittsburghpa.gov

CITY OF PITTSBURGH
DEPARTMENT OF LAW
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
412-255-2613 (phone)
412-255-2285 (fax)

/s/ Chad I. Michaelson

Chad I. Michaelson
Pa. I.D. No. 88725
cim@muslaw.com

/s/ Joseph A. Carroll

Joseph A. Carroll
Pa. I.D. No. 324373
jac@muslaw.com

MEYER, UNKOVIC & SCOTT LLP
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222-2315
(412) 456-2800 (phone)
(412) 456-2864 (fax)

*Attorneys for Defendant City of Pittsburgh*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within **BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** was filed electronically August 23, 2024. Notice of this filing will be sent to all counsel of record via the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

By:*/s/ Hillary M. Weaver*
    Hillary M. Weaver
    *Attorney for Defendant City of Pittsburgh*