IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH and S. RAND WERRIN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PITTSBURGH, <br><br> Defendant. | Civil Action No. 2:22-CV-00706-RJC |

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS</u>**

AND NOW, come Plaintiffs, Builders Association of Metropolitan Pittsburgh ("BAMP") and S. Rand Werrin ("Dr. Werrin", and together with BAMP, the "Plaintiffs"), by counsel, and file this Response in Opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction filed by Defendant, the City of Pittsburgh ("City" or "Defendant"), as follows:

**I.   BACKGROUND**

On October 6, 2023, Plaintiffs filed the First Amended Complaint (the "Complaint")(ECF No. 80) against the City.[1]  The Complaint challenges Pittsburgh City Ordinance 2021-1414 (The "Ordinance"), including the "IZ-O, Inclusionary Housing Overlay District" section (the "IZ-O") of the City's Zoning Code (the "Zoning Code").  Plaintiffs contend that the Ordinance and the IZ-O created thereunder violates (1) the Takings Clause of the Fifth Amendment and (2) Article IX, Section 2 of the Pennsylvania Constitution and the Home Rule Charter and Optional Plans

---

[1] A full account of the facts and issues underlying this action is set forth in the Complaint, which Plaintiffs incorporate herein by reference.

Law (the "Home Rule Law"), 53 Pa. C.S. § 2901 et seq. The IZ-O violates the Takings Clause of the Fifth Amendment because it conditions the issuance of a government permit on the owner's relinquishment of a portion of his property. (ECF No. 80, ¶ 62). There is neither a required nexus nor rough proportionality between the requirements of the ordinance and the effects of the developments that are subject to the ordinance. *Id*. Additionally, the IZ-O violates Article IX, Section 2 of the Pennsylvania Constitution and the City's Home Rule Charter because it places duties responsibilities, or requirements upon businesses, occupations, and employers, and is therefore null and void. *Id*. at ¶ 80.

The City filed a Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction on August 23, 2024 (the "Motion to Dismiss")(ECF No. 105), pursuant to Fed.R.Civ.P. 12(b)(1), alleging that 1.) Plaintiffs lack standing, and 2.) Plaintiffs' claims are unripe.

For the reasons set forth below, the Motion to Dismiss should be denied.

**II.     ARGUMENT**

    **A.     Plaintiffs Have Standing to Bring the Claims Raised in the Complaint**

The doctrine of standing refers to "the determination of whether a specific person is the proper party to bring a particular matter to a federal court for adjudication." *Miller v. Hygrade Food Prod. Corp.*, 89 F. Supp. 2d 643, 646 (E.D. Pa. 2000). In order for a party to establish that it has constitutional standing to assert a claim, the party must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual *or* imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (emphasis added). In determining whether standing exists, the primary

2

objective of the court "is to separate those with a true stake in the controversy from those asserting 'the generalized interest of all citizens in constitutional governance.'" *Id.* (*quoting Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 483, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

The doctrine of Associational Standing provides that "'an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)." *Lower Susquehanna Riverkeeper v. Keystone Protein Co.*, 520 F. Supp. 3d 625, 633 (M.D. Pa. 2021).

Here, the facts and testimony obtained in this case show that both BAMP and Dr. Werrin satisfy all requirements needed to find that standing exists in connection to their claims. As plead in the Complaint and set forth herein and in the attached affidavits, BAMP has standing because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 283 (2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343). Further, Dr. Werrin has standing because he owns property that he cannot sell because of the challenged law.

  a. **Plaintiffs Have Suffered an Injury in Fact**

BAMP, through its members, and Dr. Werrin have suffered an "injury-in-fact" necessary for standing. The injury-in-fact requirement "distinguish[es] a person with a direct stake in the

3

outcome of a litigation—even though small—from a person with a mere interest in the problem." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017).  In other words, "the requirement serves to filter out those with merely generalized grievances" who are "bringing suit to vindicate an interest common to the entire public."  *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000).  Notably, ***"[t]he injury-in-fact requirement is very generous to claimants, demanding only that the claimant allege some specific, identifiable trifle of injury."*** *Id.* [Emphasis Added](quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) (internal quotation marks omitted).  In order to establish injury-in-fact, a plaintiff need only allege that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* at 162-63 (internal quotations omitted).  Critically, ***"a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a classic and paradigmatic form of injury in fact."*** *Id.* [Emphasis Added](internal citations omitted).  In fact, "where a plaintiff alleges financial harm, standing is often assumed without discussion." *Id.* (internal citations omitted).  "Even a small financial loss" by a plaintiff satisfies the injury-in-fact element of standing.  *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as amended* (Mar. 21, 2013).

     As set forth in the Complaint, Dr. Werrin is a member of BAMP and a property owner with various ownership interests in real properties located at 3504 Fifth Avenue, Pittsburgh, Pennsylvania 15213, Parcel ID:  0028-F-00029-000-00 (hereinafter "3504 Fifth"); 3506 Fifth Avenue, Pittsburgh, Pennsylvania 15213, Parcel ID:  0028-B-00074-000-00 (hereinafter "3506 Fifth"); and 3510 Fifth Avenue, Pittsburgh, Pennsylvania 15213, Parcel ID:  0028-B-00076-000-

00 (hereinafter "3510 Fifth") (3504 Fifth, 3506 Fifth and 3510 Fifth are collectively referred to as the "Werrin Properties"). (Complaint, ¶¶ 13-14).

While the City attempts to portray Dr. Werrin as a "political" advocate, the facts solicited during limited discovery demonstrate that Dr. Werrin owns real property that he cannot sell due to the unlawful requirements imposed under the challenged Ordinance. It should be beyond dispute that Dr. Werrin owns real estate that he is trying to develop. The issue to be considered at this early stage is "why" can't Dr. Werrin sell his property.

Dr. Werrin testified at deposition that he is unable to complete the sale of the Werrin Properties for development because, "they can't buy it and develop it because it doesn't make economic sense when the City makes it so difficult to have any kind of development." (Dr. Werrin Deposition Transc., 23:7-10). Dr. Werrin further testified that the City's Ordinance has prevented him from entering into a final sales agreement for 3510 Fifth:

> Q. Okay. And, again, like the other properties, no final sales agreement has been executed for 3510?
>
> A. No.
>
> Q. Correct. Okay.
>
> A. I Can't.
>
> Q. Okay.
>
> A. As I stated before.

(Dr. Werrin Deposition Transc., 31:14-21)

This testimony establishes that Dr. Werrin (a member of BAMP) has a "direct stake" in the outcome of this case. If the Ordinance is declared unconstitutional and the City enjoined

from enforcement, as it should be, then Dr. Werrin will be able to proceed with an economically sensible sale of his property and Dr. Werrin's injury in fact will be abated.

The financial harm incurred by Dr. Werrin, Walnut Capital Management, Inc. and Laurel Communities, LLC, all members of BAMP, as a result of the Ordinance is further set forth in the Affidavits of Dr. Werrin, Todd E. Reidbord and E. Martin Gillespie, attached hereto as Exhibits A, B and C, respectively.

As stated by Todd E. Reidbord, CEO of Walnut Capital Management, Inc., Walnut Capital Management, Inc. conducts business through its affiliates, Pitt Blue Holdings, LP and Walnut Capital – McKee, LP[2]., and through these affiliates owns multiple properties on McKee Street in Pittsburgh.  Reidbord Affidavit, ¶¶ 5 & 6.  Walnut Capital Management, Inc. and its affiliates currently have pending before the department of City Planning a ten plus story apartment complex project (the "Project").  *Id*., ¶ 7. Pursuant to the Ordinance, Walnut Capital Management, Inc. and its affiliates have been informed by the City that they must set aside ten percent of units in the Project for affordable units. *Id*., ¶ 9.  The application of inclusionary zoning and this requirement under the Ordinances to the Project will cause Walnut Capital Management, Inc. to come up with significant additional equity, in excess of $1 million, in order to meet the requirements under the Ordinances. *Id*., ¶ 10.  In addition, without outside financial support from another governmental agency, the rent derived from the inclusionary units will be

---

[2] James M. Eichenlaub, the Executive Director of BAMP, explained in his deposition testimony that BAMP does not require each subsidiary or affiliate entities of BAMP members to maintain separate membership with BAMP: "We don't require each of those individual subsidiary development names to be a member of it. We recognize as the – as Eddy Homes or, in this instance, Walnut Capital, as the member…But we don't require each of the entities that they own to become a member of the Association.  We recognize the main company as the investing company, as the one who's managing those developments and invested in those specific developments that are titled under, you know, a different LLC. That's standard around the industry." Eichenlaub Deposition Transc., 49:22 - 50:14.

significantly less than the rents necessary to justify the costs of building the inclusionary unit. *Id.*

Additionally, E. Martin Gillespie, the CEO for Laurel Communities, LLC, sets forth in his attached affidavit that Laurel Communities, LLC has under contract multiple development parcels located on Herron Avenue in the Polish Hill neighborhood in Pittsburgh. Gillespie Affidavit, ¶ 5. Laurel Communities, LLC would pursue a development in excess of twenty units on these parcels if the inclusionary zoning provisions under the Ordinances were not applicable to the parcels; however, as a result of the financial impact associated with complying with the requirements under the Ordinances, Laurel Communities, LLC has capped the number of units in its development at nineteen units. See, *Id.*, ¶¶ 6-7. This has resulted in a significant financial loss to Laurel Communities, LLC, as limiting the number of units in the development reduces the financial gain that Laurel Communities, LLC can realize from the development. *Id.*, ¶ 7.

Similarly, James M. Eichenlaub testified that BAMP member Paramount Construction made the decision to decrease the number of units in a development project located in Oakland from twenty to nineteen in order to avoid the onerous requirements of the Ordinance, stating, "They decided to take the economic hit of losing one unit in order to not have the substantial economic hit that is mandated by the ordinance." Eichenlaub Deposition Transc., 37:17-20.

The financial harm detailed above satisfies the injury-in-fact requirement for standing.

      **b.**    **The Injury is Fairly Traceable to the Ordinance**

The financial harm suffered by Dr. Werrin and BAMP's members is fairly traceable to the Ordinance.

As stated by Dr. Werrin, Mr. Eichenlaub and in the attached affidavits, the restrictions and unlawful requirements imposed under the Ordinance have prevented them from pursuing the sale

and development of their properties, and in doing so have deprived Dr. Werrin and BAMP's members of the right to the economically viable use of their land.

Consequently, the harm suffered by Dr. Werrin and BAMP's members is shown to have a causal connection to the Ordinance, and the traceability requirement for standing is satisfied.

      c.    **Redressability**

As set forth above, in Dr. Werrin's deposition testimony and in the attached affidavits, the harm suffered by Dr. Werrin and BAMP's members is shown to have a causal connection to the Ordinance. As such, the declaration and injunction requested in the Complaint would redress this harm by rendering the Ordinance unenforceable and establishing that Plaintiffs are not required to comply with the unlawful requirements imposed under the Ordinance.

    **B.**    **Plaintiffs' Claims are Ripe for Adjudication by the Court**

The doctrine of ripeness "is a justiciability doctrine intended to prevent a court from entangling itself in abstract disagreements by avoiding premature adjudication." *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005). In this case, the facts and evidence support that Plaintiffs' claims are ripe for adjudication by the Court.

"Ripeness requires 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). "[T]he most important factors in determining whether a case is ripe are 'the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment.'" *Id*. (quoting *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir.1990)). The U.S. Supreme Court and courts within the Third Circuit have articulated that in declaratory

judgment cases, "It is, however, not necessary for the party seeking a declaratory judgment to have suffered an actual harm to establish adversity of interest. *Id*. at 412. Rather, the element of adversity can be demonstrated so long as the 'probability of that future event occurring is real and substantial,' 'of sufficient immediacy and reality.'" *Travelers Ins.*, 72 F.3d at 1154 (citing *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)))." *Mills v. City of Philadelphia*, 630 F. Supp. 3d 638, 647 (E.D. Pa. 2022).

Here, all three factors considered by the courts when assessing ripeness are present. As set forth above, Dr. Werrin and BAMP's members have already suffered actual financial harm as a result of the Ordinance and will continue to be deprived of their right to the economically viable use of their land as long as the Ordinance remains in effect. Accordingly, adversity of interests between Plaintiffs and the City has been established. The declaratory judgment sought by Plaintiffs would eliminate confusion and uncertainty as to the enforceability of the Ordinance and as to whether Plaintiffs are required to comply with the Ordinance, and an injunction prohibiting the City from enforcing the Ordinance would redress the harm detailed above. As such, both the second and third ripeness factors are satisfied.

The City alleges that Plaintiffs' claims are unripe under the finality rule outlined in *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and argues that Plaintiffs have not availed themselves of the variance procedures under the Ordinance. Notably, and as acknowledged by the City in the Motion to Dismiss, the finality rule is not applicable to facial attacks on a zoning ordinance, such as those brought by Plaintiffs. As stated by the Third Circuit, "This rule does not apply, however, to *facial* attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes a taking without

just compensation, or a substantive violation of due process or equal protection…. A "final decision" is not necessary in that context because 'when a landowner makes a facial challenge, he or she argues that any application of the regulation is unconstitutional; for an as-applied challenge, the landowner is only attacking the decision that applied the regulation to his or her property, not the regulation in general.'" *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006)(Internal Citations Omitted).

Further, and as set forth in detail in Plaintiff's Brief in Opposition to the City's first Motion to Dismiss, filed on October 31, 2022 ("Plaintiffs' First Opposition to MSD") (ECF No. 45), which Plaintiffs hereby incorporate by reference herein, there is no viable discretionary administrative relief available that could alleviate the challenged unconstitutional conditions of the Ordinances. Contrary to the City's assertions, Pittsburgh's regulatory regime does not offer the possibility of a variance from the confiscatory IZO regulations at issue, nor can Plaintiffs obtain relief from the unconstitutional harms imposed under the Ordinance through a special exception or administrative exception. *See*, Plaintiffs' First Opposition to MSD at 8–15.  For these reasons, it would be vain and futile to undertake the considerable time and expense associated with the variance process, and "the law, which is eminently practical, does not require the doing of a vain thing." *Abdallah v. Abdallah*, 359 F.2d 170, 175 (3d Cir. 1966) (quoting *Unatin 7-Up Co. v. Solomon*, 39 A.2d 835, 837 (Pa. 1944)).  Notably, the Supreme Court has agreed that a plaintiff need not apply for a permit before coming to court when such an application would be "pointless." *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992); see also *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997) (holding that land use board had no discretion over how landowner could use her property such that "no occasion exists for applying *Williamson County's* [finality] requirement").

For these reasons, the City's argument that Plaintiffs' claims are unripe is unfounded, and the Motion to Dismiss should be denied.

## III.  CONCLUSION

As set forth above, Plaintiffs have demonstrated that they have standing to bring the claims raised in the Amended Complaint, and that such claims are ripe for adjudication by the Court. Accordingly, the City's Motion to Dismiss should be denied, and the case should proceed to be litigated and decided on the merits.

Respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Dated: October 24, 2024          By: /s/ Richard J. Cromer
                                     Richard J. Cromer, Esq.
                                     PA ID No. 79214
                                     rcromer@leechtishman.com

                                     David V. Weicht, Esq.
                                     PA ID No. 65191
                                     dweicht@leechtishman.com

                                     Daniel P. Yeomans, Esq.
                                     PA ID No. 323449
                                     dyeomans@leechtishman.com

                                     525 William Penn Place, 28th Floor
                                     Pittsburgh, PA 15219
                                     (412) 261-1600

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS was filed electronically October 24, 2024. Notice of this filing will be sent to all counsel of record via the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

Respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Dated: October 24, 2024          By: */s/ Richard J. Cromer*
                                      Richard J. Cromer, Esq.
                                      PA ID No. 79214
                                      rcromer@leechtishman.com

                                      David V. Weicht, Esq.
                                      PA ID No. 65191
                                      dweicht@leechtishman.com

                                      Daniel P. Yeomans, Esq.
                                      PA ID No. 323449
                                      dyeomans@leechtishman.com

                                      525 William Penn Place, 28th Floor
                                      Pittsburgh, PA 15219
                                      (412) 261-1600