IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH and S. RAND WERRIN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PITTSBURGH <br><br> Defendant. | Civil Action No. 2:22-CV-00706-RJC |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant City of Pittsburgh ("the City"), by and through undersigned counsel, submits this Reply Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1):

**I.    INTRODUCTION**

Plaintiffs do not dispute any of the case law or evidence supporting the City's Motion to Dismiss. Instead, Plaintiffs rely on never-before-seen, post-discovery affidavits, which should be disregarded because they contradict the evidence Plaintiffs produced during discovery. Further, the affiants are not even members of the Plaintiff association. Allowing these self-serving, untested sham affidavits to establish standing would render the already questionable doctrine of associational standing (*see* ECF No. 106, at n.6) to be truly boundless by bestowing standing on any person or entity who is not a member of the association, but unilaterally declares a nonspecific, wholly self-serving "affiliation" with it for the purpose of manufacturing standing.

In contrast to these belated affidavits, Plaintiffs' undisputed deposition testimony, written discovery responses, and documents produced in discovery clearly show that Plaintiffs have failed

to meet *their burden* (*see* ECF No. 106, at 6-7) to prove that they have standing to pursue ripe claims. First, the deposition testimony and documents produced in discovery by Plaintiffs show that S. Rand Werrin ("Werrin") did not suffer the very injury-in-fact he complains of—the inability to sell his properties. Plaintiffs have not, and cannot, dispute the fact that, despite Werrin's minimal efforts to sell the properties, a developer signed four separate agreements to purchase the properties for $5.5 million. ECF No. 106, at 4-5. Second, Plaintiffs have offered no proof that the IZ-O has impacted their properties. Plaintiffs do not dispute the fact that neither Werrin, nor any member of BAMP has ever applied for, let alone been denied, a variance or any other relief from the IZ-O. Third, and finally, Plaintiffs' attempt to circumvent their failure to apply for relief from the IZ-O by claiming it would be futile to do so is a mere assertion, unsupported by any evidence whatsoever, which is refuted by the plain language of the Zoning Code and the facts of record.

The City asks this Court to reject Plaintiffs' last-ditch efforts to establish standing and ripeness with irrelevant, self-serving affidavits that fail to address the fundamental deficiencies of Plaintiffs' Amended Complaint; namely, the impossible request for this Court to apply a "nexus" and "rough proportionality" test to a wholly speculative future application of the IZ-O that would be subject to the City's decision on a request for a variance or other relief that has not been made. For these reasons, this Court should find that Plaintiffs lack standing to bring their unripe claims and dismiss Plaintiffs' claims in their entirety.

## II. ARGUMENT

### A. The Supposed "Affiliates" of BAMP Members Do Not Have Standing, Cannot Establish BAMP's Associational Standing Even if They Did, and Have Submitted Affidavits that Must Be Disregarded.

Despite admitting in discovery that they have suffered no financial harm as a result of the enactment of the IZ-O, Plaintiffs have suddenly and belatedly found purported "affiliates" of

BAMP members who are alleged to have suffered the financial harm required for Plaintiffs to establish standing. Specifically, BAMP contends that "Walnut Capital Management, Inc. conducts business through its affiliates, Pitt Blue Holdings, LP and Walnut Capital – McKee, LP, and through these affiliates owns multiple properties on McKee Street in Pittsburgh." ECF No. 112, at 6. Plaintiffs claim that these "affiliates" "have been informed by the City that they must set aside ten percent of units in the Project for affordable units." *Id.*; ECF No. 112-2, ¶¶ 9-10; ECF No. 112, at 6. Neither Pitt Blue Holdings, LP, nor Walnut Capital-McKee, LP are members of BAMP. ECF No. 112, at 6; ECF No. 112-2, at 1; Exs. R, S (BAMP membership lists, which do not include either entity).

BAMP also points to Laurel Communities, LLC ("Laurel Communities") as an alleged member of BAMP which has been injured by the IZ-O. ECF No. 112, at 7; ECF No. 112-3, ¶ 4. Laurel Communities is not a member of BAMP, *see* Exs. R, S, rendering its affidavit and the related arguments wholly irrelevant.[1]

Regardless, the relevancy of BAMP's new affidavits and arguments rely on the faulty premise that injury suffered by an entity "affiliated" (whatever that might mean) with a member of the association is sufficient to satisfy the requirements of associational standing. Plaintiffs have not cited any authority to suggest that an alleged injury suffered by a so-called "affiliate" of a member confers standing on the association because it does not. *See Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 90-92 (D.C. Cir. 1987) (holding that an organization did not have standing to bring suit on behalf of its "supporters," who were not members of the organization).

---

[1] In the City's very first Interrogatory, it asked BAMP to identify its members. ECF No. 107-12, Ex. L, at 2. BAMP responded by referring to two excel spreadsheets with lists of its members. *Id.* at 2-3; *see* Exs. R, S. BAMP cannot now blatantly contradict the information contained in its discovery responses and membership records with self-serving post-discovery affidavits. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007); *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004); *McLaughlin v. Bayer Essure, Inc.*, No. 14-7316, 2020 WL 1625549, at *6 (E.D. Pa. Apr. 2, 2020).

-3-

If the already shaky doctrine of associational standing (*see* ECF No. 106, at n.6) can be based on harm suffered by third parties who are somehow "affiliated" with a member, then associational standing truly has no boundaries. If Plaintiff's argument were accepted, any person or entity could manufacture standing by unilaterally declaring an "affiliation" with a named plaintiff, an offense made more egregious here because the affiliation was first declared after discovery had been completed without any mention of the existence or description of these so-called "affiliates."

BAMP's reliance on the injuries alleged by these supposed "affiliates" is particularly egregious because it is entirely inconsistent with BAMP's Bylaws and its sworn deposition testimony regarding the categories of BAMP membership and their respective requirements. *See* Ex. T (BAMP's Bylaws); Ex. U, at 73-84 (excerpts from BAMP Designee Deposition transcript). BAMP testified to a detailed membership application process, including the requirement that members have an established business, mandatory initial and annual dues, sponsors required for membership, review and approval by the membership committee and board of directors, membership renewals, and the different categories of membership. *See* Ex. U, at 73-84. BAMP has not met its burden to show that any of these supposed "affiliates" have satisfied the requirements to become a member of the organization.

The illusory and unsubstantiated nature of these supposed "affiliates" is exposed by the fact that BAMP specifically recognizes an "Affiliate Membership" category. *See* Ex. T, at BAMP000074, BAMP000075.[2] Despite BAMP's intentionally loose use of the term "affiliate" in

---

[2] BAMP's Bylaws state:
> <u>Affiliate Membership</u> shall be extended to any individual who is an employee of a firm or corporation who is a member of good standing in this Association and is represented by another builder or associate member of this Association, who shall subscribe to the Association's Code of Ethics, and who is of good character and business reputation shall be eligible to be an affiliate member subject to two-thirds (2/3) vote of the Board of Directors. Such Affiliate Members shall not have voting rights in the Association reserved for builder and associate members and their

its sham affidavits, it is undisputed that Pitt Blue Holdings, LP, Walnut Capital – McKee, LP, and Laurel Communities are not "Affiliate Members" of BAMP. BAMP's transparent attempt to manufacture associational standing with eleventh-hour, ambush affidavits that avoid the scrutiny of discovery is insufficient as a matter of law to cure the deficiencies in its Amended Complaint.

To establish associational standing, the Third Circuit requires that the "association must make specific allegations establishing that **at least one identified <u>member</u>** had suffered or would suffer harm." *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015) (internal quotations omitted) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014)) (emphasis added). The Third Circuit does not recognize associational standing based on alleged harm to non-members which allegedly have some unspecified and undefined alleged affiliation with a member. Unsurprisingly, *associational* standing requires that the injured party actually be a member of the association. *See id.*

Moreover, the evidence in the affidavits submitted by Walnut Capital and Laurel Communities' CEOs directly contradict prior discovery responses submitted by BAMP. ECF Nos. 112-2, 112-3. Courts may disregard "contradictory" or "sham" affidavits that are authored "solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). The "sham affidavit doctrine" generally applies when an affidavit "is submitted in opposition to a motion for summary judgment [and] the affidavit contradicts the affiant's prior deposition testimony." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) (internal quotations omitted). It further applies when an affidavit contradicts prior discovery responses. *See*

---

representative as outlined in the Article 1, Section 5 of these bylaws, but can serve on committees and as a member of the Board of Directors subject to the written approval of the builder or associate representative. Only one (1) affiliate member, from the same company membership, may serve on the Board of Directors at the same time. Membership as an affiliate member shall automatically expire if the principle membership outlined in Sections 1(a) and (b) above ceases to remain in good standing and is terminated by the Board.

Ex. T, at BAMP000075.

*McLaughlin v. Bayer Essure, Inc.*, No. 14-7316, 2020 WL 1625549, at *6 (E.D. Pa. Apr. 2, 2020) (holding that the sham affidavit rule is not "limited to circumstances in which an affidavit or declaration contradicts prior deposition testimony" and applies to "circumstances in which the affidavit or declaration contradicts a prior interrogatory answer.").

Here, BAMP provided discovery responses in which it did not identify: (1) a single member who "would otherwise have standing to sue in their own right" or who would construct projects with twenty or more units but for the IZ-O (ECF No. 107-12, Ex. L, Response to Interrogatory Nos. 2, 6); (2) any members who suffered any financial loss, let alone a loss in excess of $1 million as the Walnut Capital affidavit contends (*id.*, at No. 8); and (3) failed to identify any steps Walnut Capital, Pitt Blue Holdings, LP, Walnut Capital – McKee, LP, or Laurel Communities had taken to develop property within the IZ-O (*id.*, at No. 5).

But now, after discovery is closed and the lack of evidence to establish standing is laid bare, Plaintiffs suddenly claim there are "affiliates" of members who have sustained losses as a result of the IZ-O. BAMP claims Laurel Communities was forced to build a 19-unit development project because of the IZ-O, which has "significantly impacted the financial viability of the Project in that it has reduced the number of units that would have otherwise been built as part of the Project." ECF No. 112-3, ¶¶ 5-6. Plaintiff also claims that "affiliates" of Walnut Capital have been required to include affordable units in its project and will suffer economic losses in excess of $1 million by doing so. ECF No. 112-2, ¶¶ 9-10. The alleged harm caused by the IZ-O and the properties subject to this alleged harm were central issues in this case and subject to extensive discovery requests. The City diligently sought this information, and is now presented with it for the first time in affidavits submitted in opposition to its Motion to Dismiss.

This Court should not permit Plaintiffs to rely on these untested affidavits and should, instead, consider only (or, at a minimum, only find credible) the evidence of record that was produced during discovery. BAMP cannot be permitted to, for example, respond to a request for production to "[p]roduce all documents related to payments, expenditures, or financial losses, aside from attorneys' fees and costs, allegedly incurred because of or resulting from the IZ-O or the Ordinances" with an unqualified "none," only to attach an affidavit to its response boldly declaring unsubstantiated harm "in excess of $1,000,00.00." ECF No. 107-12, Request for Prod. No 10.

### B. Werrin Has Not Met His Burden to Prove He Has Suffered Harm Necessary to Establish His Individual Standing or BAMP's Associational Standing

Plaintiffs point to Werrin in an effort to show that a member of BAMP has suffered the concrete, particularized injury necessary for BAMP to have associational standing. ECF No. 112, at 4-5. This reliance on Werrin overlooks two important facts of record: (1) Werrin was not a member of BAMP when the instant action was filed; and (2) a developer agreed to purchase the properties on which Werrin bases his claim for $5.5 million after enactment of the IZ-O.

BAMP and Werrin filed their First Amended Complaint on October 6, 2023 (ECF No. 80), but Werrin did not submit his membership dues for BAMP until October 16, 2023, and his membership began on November 1, 2023. ECF No. 107-16, Ex. P, Werrin Membership Documents. The Amended Complaint relies on Werrin's membership in BAMP, ECF No. 80, ¶¶ 12-15, 45-49, 66, but the fact that Werrin was not a member of BAMP at the time the Amended Complaint was filed is fatal to BAMP's reliance on him to establish subject matter jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 575 (2004) ("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.") (internal citation omitted); *Steele v. First Nat'l*

*Bank of Mifflintown*, No. 1:11-cv-1124, 2012 U.S. Dist. LEXIS 187604, at *20 (M.D. Pa. July 3, 2012) (citing Grupo, 541 U.S. at 574) ("a court assessing whether it has subject matter jurisdiction must look at the state of things at the time the action was first brought").

Furthermore, the record does not support Werrin's unsupported, self-serving testimony regarding the harm he allegedly sustained, and the Court need not credit it. Generally, "self-serving deposition testimony is insufficient to raise a genuine issue of material fact." *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011); *see Vashisht v. Sidhu Subs, LLC*, No. CV 19-1509, 2021 WL 5239971, at *4 (W.D. Pa. Nov. 10, 2021) (Horan, J.) (internal quotations omitted) ("At summary judgment, the ultimate question is whether self-serving testimony, when considered in conjunction with other evidence, is sufficient for a rational factfinder to credit [the declarant's] testimony, in spite of the testimony's self-serving nature."). Moreover, because the City's Motion to Dismiss raises a factual attack to Plaintiffs' Complaint, this Court must weigh the evidence and need not accept Plaintiffs' allegations as true. ECF No. 106, at 7 (citing cases).

Werrin claims he has standing to sue in his own right "because he owns property that he cannot sell because of the challenged law." ECF No. 112, at 3. The record unequivocally disproves this claim. Despite his mere assertions that sellers "can't buy [his properties] and develop [them] because it doesn't make economic sense when the City makes it so difficult to have any kind of development," ECF No. 112, at 5 (citing Werrin Dep., 23:7-10), the record contains sales agreements executed by a developer after the passage of the IZ-O to buy all four properties for $5.5 million. Exs. H-K; ECF No. 107-3, Kelly Dep., at 33:3-5, 38:20-24, 41:14-15, 41:14-1. Plaintiffs have not disputed this fact. Werrin clearly has not suffered the injury he complains of, and does not satisfy the injury-in-fact element of standing. Likewise, BAMP cannot rely on Werrin for associational standing.

### C. The Entities Identified by BAMP Have Not Requested or Been Denied a Variance, Special Exception, or Any Relief from the IZ-O, and Their Claims are Therefore Unripe

It is undisputed that Werrin, Walnut Capital's alleged "affiliates," and Laurel Communities have not applied for a variance, special exception, or other relief from the City's IZ-O—all of which are avenues of relief available under the City's Zoning Code. ECF No. 107-13, Ex. M, Response to RFA No. 1; ECF No. 107-12, Ex. L, Responses to RFAs Nos. 1-2; ECF No. 107-1, BAMP Dep. 30:4-31:9, 32:14-20, 37:25-38:14; ECF Nos. 112-2, 112-3; *see* City's Zoning Code, §§ 907.04.A.7, 922.07, 922.08, 922.09. Plaintiffs' failure to avail themselves of these avenues of relief render their claims unripe before this Court.

As recently explained by the Supreme Court, a plaintiff's "failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 480 (2021). To satisfy this "finality" requirement, a plaintiff must show "there [is] no question...about how the regulations at issue apply to the particular land in question." *Id.* (internal quotations omitted) (quoting *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739 (1997)). Thus, "a takings claim based on a . . . regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21 (2001); *see Palmer Kearny Mesa Properties, LP v. City of San Diego*, No. 23-CV-1755-DMS-BJC, 2024 WL 3907049, at *9 (S.D. Cal. Aug. 22, 2024) (Sabraw, C.J.) (to ripen their takings claim, "Plaintiffs must request modification under [the municipality's code] so long as denial is not certain."). Here, Werrin, Walnut Capital's "affiliates,"

and Laurel Communities have failed to ripen their alleged claims because they did not request any relief under the City's Zoning Code.

First, Werrin admits he wants to sell—not develop—his properties. ECF No. 107-2, Werrin Dep., 40:19-21. While Werrin's counsel submitted a "preapplication" to the City for development of his properties, he has not pursued any plans beyond this preliminary application (which is consistent with the executed agreements to sell the properties). ECF No. 107-13, Ex. M, Responses to RFA Nos. 1, 2, 6; ECF No. 107-17, Ex. Q ¶¶ 4-9.[3] Plaintiffs' Response Brief does not dispute that Werrin has not sought a variance or any other relief from the IZ-O.

Second, Walnut Capital's "affiliates" claim they are in the process of developing properties at McKee Place. ECF No. 112-2, ¶¶ 6-7. The project is currently "obtaining approvals from the City," and Walnut Capital's "affiliates" have allegedly been advised that they must set aside ten percent of their units for affordable housing. *Id.* ¶ 9. Yet, it is undisputed that Walnut Capital's "affiliates" have not requested a variance, special exception, or any other relief from this directive through the Zoning Board. *See id.*; ECF No. 107-17, Ex. Q, ¶ 13. This failure to request relief is particularly striking because a variance is being sought for the property, but not from the IZ-O. *See* ECF No. 106, at 4 n.4.[4] Moreover, the pendency of the other variance request and the general uncertainties surrounding developments render any claim related to the IZ-O unripe because the proposed project is precluded for reasons wholly unrelated from the IZ-O. *See* Ex. U, BAMP

---

[3] Werrin's attorney nonetheless submitted a preapplication to the City with development plans and alleges in a recent affidavit that he "cannot develop the property without sustaining financial harm." ECF No. 112-1, ¶ 8. In the next paragraph of the affidavit, he changes course and claims the financial harm is not his inability to develop the properties, but his inability to sell the properties at a market rate. *Id.* ¶ 9. As discussed above, Werrin has executed sales agreements for the sale of all of the properties for $5.5 million. *See* Exs. H-K; ECF No. 107-3, Kelly Dep., at 33:3-5, 38:20-24, 41:14-15, 41:14-15.

[4] BAMP's reliance on this McKee Place development should further be disregarded under the sham affidavit doctrine. *See* cases *supra*. During discovery, BAMP's designee specifically denied any knowledge of this project. Ex. U, BAMP Designee Dep. at 72:2-73:9. After the close of (phase one) discovery, BAMP is suddenly able to attach an affidavit with unexamined assertions from non-members. BAMP cannot feign ignorance under oath during discovery and be permitted to rely on a previously undisclosed affidavit to defeat a motion to dismiss.

Designee Dep., at 51:11-52:7 (testifying that the development process takes years, including preliminary plans, purchasing the land, due diligence, preliminary drawings, and financing).

Third, non-member Laurel Communities summarily concludes that its property would have been subject to the IZ-O, without indicating that the City ever informed it of the same. ECF No. 112-3, ¶ 5. In fact, BAMP admitted that Laurel Communities is currently engaged in "litigation over another aspect of [its] project" that it must "get through … *before* they would have to apply for … the variance related to [the IZ-O]." Ex. U, BAMP Dep. Excerpts, at 32:14-25. Because of this pending litigation on matters unrelated to the IZ-O, and its undisputed failure to seek a variance or other relief from the IZ-O, non-member Laurel Communities' alleged claims are far from ripe. According to the testimony of BAMP's own designee, Laurel Communities' supposed claims are unripe because "they haven't reached that stage yet." *Id.* at 33:19. There is no evidence of record Laurel Communities ever requested a variance, special exception, or any other relief from the IZ-O. ECF No. 112-3; ECF No. 107-12, Ex. L, Responses to RFA Nos. 1, 2. To the contrary, Laurel Communities has unilaterally decided to avoid any potential, speculative obligations under the IZ-O by including less than twenty units in its project without complaint. ECF No. 112-3, ¶ 6.

In sum, Plaintiffs have not pursued any relief from the requirements of the IZ-O, cannot show the City has made a final decision with respect to these properties, and certainly cannot show the City had an opportunity "clarify or change its decision" after relief from the IZ-O was requested. *Pakdel*, 594 U.S. at 480. Thus, Plaintiffs' claims are unripe. *See id.* (emphasis added) (for a plaintiff's claim to be ripe, there must be "*no* question . . . about how the regulations at issue apply to the particular land in question.").

### D. The Record Does Not Support BAMP's Mere Assertion that Any Application for a Variance, Special Exception, or Other Relief from the IZ-O Would be *Per Se* Futile

Plaintiffs claim that a member of BAMP need not actually apply for relief from the IZ-O because any such request would be *per se* futile. ECF No. 112, at 10. In support of this claim, Plaintiffs assert: "[The City's] regulatory regime does not offer the possibility of a variance from the confiscatory IZO regulations at issue, nor can Plaintiffs obtain relief from the unconstitutional harms imposed under the Ordinance through a special exception or administrative exception." *Id.* However, the face of the City's Zoning Code, the face of the IZ-O, and the record adduced in this matter defeats this conclusory argument. *See* ECF No. 106, at 18-19.

First, the IZ-O itself provides an avenue of relief. The IZ-O includes a special exception process that allows the Inclusionary Units to be constructed off site. *Id.* § 907.04.A.7. Second, the Zoning Code permits applicants to seek relief from various provisions of the Zoning Code through administrator exceptions, special exceptions, and/or variances from the City's Zoning Board of Adjustment. *See id.* §§ 922.07-922.09. Variances permit a particular use of land to proceed where strict compliance with other provisions of the Zoning Code, including the IZ-O, may not be possible. *See id.* § 922.09 (containing variance procedures that allow relief from "unnecessary hardship"). Third, and critically, Plaintiffs have not produced any evidence that any person or entity—whether a member of BAMP or otherwise—has ever applied for or been denied a variance or any other relief from the IZ-O. ECF No. 107-12, Ex. L, Responses to RFAs Nos. 1-2.

The U.S. District Court for the Southern District of California recently considered a similar argument regarding the alleged "futility" of applying for relief from an inclusionary housing ordinance. *Palmer*, 2024 WL 3907049, at *8. Chief Judge Dana Sabraw's analysis, although not binding on this Court, is both persuasive and instructive. In *Palmer*, the municipality's code allowed for a "variance, waiver, adjustment or reduction" from the municipality's inclusionary zoning ordinance. *Id.* The plaintiff argued it was not required to apply for these avenues of relief

before pursuing their takings claim. *Id.* Specifically, the plaintiff argued that "it would be futile to pursue such relief because 'the inapplicability of the Code's very limited provisions for the City to possibly authorize a waiver or variance is apparent from the face of the Code.'" *Id.*

The district court rejected this argument, finding that the plaintiffs had not shown that seeking relief would be futile, "even if there are reasons to think that an outcome unfavorable to plaintiffs is probable." *Id.* (internal quotations omitted). Because the municipality's code did not require denial, the plaintiffs could not show that any attempt to seek relief would be futile. *Id.* at *8 ("Plaintiffs have not shown that seeking relief under either of these avenues would be futile or that the text of the Code requires denial of their request for modification."). The district court went one step further, finding that even if the municipality had never granted the relief available under its code, that fact still did not render the avenues of relief futile. *Id.* (emphasis in original) ("Plaintiffs' allegation that 'the City has not granted waivers or relief from the [inclusionary housing requirements] for projects such as Plaintiffs' Project' . . . even if true, does not negate the fact that the City may exercise discretion *here*.").[5]

Here, even if Plaintiffs believe the City is unlikely to grant them a variance, special exception, or other relief from the IZ-O (a belief which has no evidentiary support in the record), it does not mean an application for the same would be *per se* futile. The Zoning Code certainly does not require the City to deny a request for relief from the IZ-O. Instead, it permits the City to "exercise discretion" in determining whether a variance, special exception, or other relief should be granted. *See id.*; Zoning Code §§ 922.07-922.09. The plain language of the Zoning Code

---

[5] The cases cited by Plaintiffs (ECF No. 112, at 10) to argue that a request for relief from the IZ-O would be futile are readily distinguishable. *See Abdallah v. Abdallah*, 359 F.2d 170, 175 (3d Cir. 1966) (wholly dissimilar case, holding only that a party had repudiated an option contract by executing a binding sales agreement with someone else)); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 n.3 (1992) (the defendant "stipulated below that no building permit would have been issued under the 1988 Act, application or no application); *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997) (holding that the finality requirement was satisfied because "[i]t is undisputed" that the agency "has finally determined" the restriction on the use of land and "the agency has no discretion").

provides legitimate avenues for relief from the IZ-O, which neither Werrin, nor any member of BAMP has made any effort to pursue, and Plaintiffs have failed to present any evidence that, in practice, these avenues for relief are uniformly denied. In fact, they have not presented any evidence that any such request for relief from the IZ-O has <u>ever</u> been denied. As a result, there are no facts upon which this Court can rely to apply the required constitutional test, and Plaintiffs failure to seek relief from the IZ-O is fatal to their claims.

## V. CONCLUSION

The City requests that this Honorable Court grant the City's Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction.

Respectfully Submitted,

By: */s/ Hillary M. Weaver*
    Hillary M. Weaver
    Pa. I.D. No. 322545
    Hillary.Weaver@pittsburghpa.gov
    */s/ Krysia Kubiak*
    Krysia Kubiak
    Pa. I.D. No. 90619
    Krysia.Kubiak@pittsburghpa.gov

    CITY OF PITTSBURGH
    DEPARTMENT OF LAW
    313 City-County Building
    414 Grant Street
    Pittsburgh, PA 15219
    412-255-2613 (phone)
    412-255-2285 (fax)

    */s/ Chad I. Michaelson*
    Chad I. Michaelson
    Pa. I.D. No. 88725
    cim@muslaw.com

    */s/ Joseph A. Carroll*
    Joseph A. Carroll
    Pa. I.D. No. 324373
    jac@muslaw.com

       MEYER, UNKOVIC & SCOTT LLP
       Henry W. Oliver Building
       535 Smithfield Street, Suite 1300
       Pittsburgh, PA  15222-2315
       (412) 456-2800 (phone)
       (412) 456-2864 (fax)

       *Attorneys for Defendant City of Pittsburgh*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** was filed electronically November 7, 2024. Notice of this filing will be sent to all counsel of record via the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

                                                             By: */s/ Chad I. Michaelson*
                                                                 Chad I. Michaelson
                                                                 *Attorney for Defendant City of Pittsburgh*