IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUILDERS ASSOCIATION OF
METROPOLITAN PITTSBURGH and
S. RAND WERRIN,

                Plaintiffs,                Civil Action No. 2:22-CV-00706-RJC

vs.

CITY OF PITTSBURGH,

                Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.    INTRODUCTION:**

Almost three (3) years ago, Plaintiff Builders Association of Metropolitan Pittsburgh ("BAMP") filed a Complaint at the above captioned number and term alleging, *inter alia*, that the City of Pittsburgh's Inclusionary Zoning Ordinance (the "IZ Ordinance") violated the United States Constitution, Article IX, Section 2 of the Pennsylvania Constitution and various other statutes. Since the initial filing of the Complaint, the City of Pittsburgh (the "City") has raised a number of technical objections in these proceedings including, but not limited to, the defense that the City had not yet applied the provisions of the IZ Ordinance to any member of BAMP.

Walnut Capital Management, Inc. ("Walnut Capital") is a member of BAMP. Walnut Capital's affiliate, Walnut Capital McKee, L.P. ("Walnut McKee"), is also a member of BAMP[1]. Walnut McKee owns property in the City's Oakland neighborhood known as 262 McKee Place, Pittsburgh, Pennsylvania 15213 (the "Property"). The Property is located in the City's R-MU Zoning District and is within the area designated by the City as being bound by the provisions of the City's IZ Ordinance.

Walnut McKee is currently constructing an approximately $80,000,000.00 real estate development on the Property known as "The Caroline". The Caroline consists of 160 residential units and will be approximately 12 stories tall. The Caroline will be primarily a student housing facility with some first floor retail space. After almost seven (7) months of work, Walnut McKee's general contractor is nearing completion of The Caroline's foundations. As such, Walnut McKee is now requesting that the City issue a full building permit so that Walnut McKee may complete its construction on the remainder of the building. This matter is extremely time sensitive as Walnut McKee's current construction schedule allows for The Caroline to be open for occupancy in time for the fall academic year in 2027, and contracts and subcontracts have been awarded to various contractors based on meeting such deadline.

On May 9, 2025, a representative of the City of Pittsburgh's Department of City Planning ("DCP") sent an email demand to Walnut McKee's representatives informing Walnut McKee that DCP would *not* issue the required Record of Zoning Approval (the "ROZA") to Walnut McKee, which is a precondition to the issuance of a building permit, unless Walnut McKee agreed that "[a]

---

[1] Walnut Capital Management has been a member of BAMP for many years. In order to avoid any concerns on "standing", Walnut Capital McKee, L.P., although an affiliate of Walnut Capital Management, Inc., has also joined BAMP as a full member.

Deed restriction is recorded allowing the City and Eligible Households to enforce the on-site inclusionary standards and related City regulations prior to [the issuance of a] Certificate of Occupancy."[2] On May 20, 2025, Walnut McKee complied with the DCP's request and provided the City with an IZ Commitment Letter and Restrictive Covenant Agreement so that the City could process the ROZA.

The City's conduct and express requirement that BAMP Member Walnut McKee agree to subject the Property to a Restrictive Covenant, in accordance with the terms of the IZ Ordinance, and as a precondition to the issuance of a Certificate of Occupancy clearly eviscerates any prior position taken by the City that the terms of the IZ Ordinance are not being applied against BAMP or its members. In fact, the City is now requiring this covenant to be imposed on an active construction project as a precondition to the City's issuance of a zoning permit and building permit for the same. The City's actions have significant impact on BAMP's members, and in this case, on an active construction project. Thus, BAMP now requests that this Court issue a Preliminary Injunction and Temporary Restraining Order formally restraining the City from engaging in such illegal and unlawful conduct.

## II.   FACTS:

The First Amended Complaint filed by the Plaintiffs in this matter on October 26, 2023, as supplemented by the averments contained in this Memorandum of Law are incorporated by reference herein. Additional facts, specific to BAMP Member Walnut McKee, are contained in the Affidavit of Todd E. Reidbord[3], which is attached hereto as Exhibit "B" and is incorporated by

---

[2] A copy of this email is attached as Exhibit "A."
[3] Mr. Reidbord is the President of Walnut Capital-McKee Management, Inc., a Pennsylvania corporation, which is the General Partner of Walnut Capital-McKee, L.P., a Pennsylvania limited partnership. Mr. Reidbord previously provided an Affidavit in this matter in his capacity as President of BAMP Member Walnut Capital Management,

3

reference herein.

### III. LEGAL ARGUMENT:

#### A. Legal Standard Governing Motions for Injunctive Relief.

Rule 65 of the Federal Rules of Civil Procedure provides that a Court may issue preliminary injunctive relief on notice to the adverse party. *Fed. R. Civ. P. 65(a)(1)*. The Third Circuit has held that a preliminary injunction requires a moving party to show: (1) a likelihood of success on the merits by the moving party; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors relief. *Kos Pharmas., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cit. 2004); *New Jersey Hosp. Ass'n. v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995). The first two factors are the most important factors for the court to consider. *Tilden Recreational Vehicles, Inc., v. Belair*, 2019 WL 4200263*2 (3d Cir. 2019). A primary purpose of a temporary restraining order and a preliminary injunction is to preserve the status quo until a decision can be made on the merits. *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d. Cir. 2020); *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1992). As the City previously claimed that the provisions of the IZ Ordinance had not yet been imposed on any BAMP Member, Plaintiffs respectfully requests that this Court maintain this status quo.

##### 1. Plaintiffs are more likely to succeed on the merits of their claims.

To find that Plaintiffs are likely to prevail on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; ***rather, the burden is on the party seeking relief to make a [p]rima facie case showing a reasonable probability that***

---

Inc.

***will prevail on the merits***." *Trefelner v. Burrell School Dist.*, 655 F. Supp. 2d 581, 588 (W.D. Pa. 2009) (Emphasis Added).

### a. The City's Actions Violate the Takings Clause of the Fifth Amendment to the United States' Constitution and are actionable now.

The Takings Clause is found in the Fifth Amendment to the U.S. Constitution and states that "private property [shall not] be taken for public use without just compensation." *Knick v. Township of Scott*, 588 U.S. 180, 184 (2019). The Fourteenth Amendment makes the Takings Clause applicable to the City.

The significance of the Takings Clause has recently been reaffirmed by the United States Supreme Court in *Knick v. Township of Scott*. As Chief Justice Roberts stated in *Knick*,

> A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities. ***But it does mean that the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under §1983 at that time.***

*Knick v. Township of Scott*, 588 U.S at 185. (Emphasis Added)

In *Knick*, the Township of Scott passed an ordinance requiring all cemeteries to be open to the public during daylight hours. *Knick* at 186. Rosemary Knick ("Knick") challenged such regulation in the Middle District of Pennsylvania as it impacted the use of her private property, where her family members had been buried. *Id.* at 186. The District Court, and subsequently the Third Circuit, both found that Knick had to exhaust her state remedies before her takings claim was ripe. *Id.* at 187. The U.S. Supreme Court rebuked this position stating, "[t]he state-litigation requirement relegates the Takings Clause 'to the status of a poor relation' among the provisions of

5

the Bill of Rights." *Id.* at 189. In fact, in support of the importance of the Takings Clause, the U.S. Supreme Court stated " . . . a property owner has a claim for the violation of the Takings Clause as soon as a government takes its property for public use without paying for it." *Id.*

In this matter, the breadth, scope and seriousness of the regulations that have been foisted upon BAMP Member Walnut McKee's use of its Property, without just compensation, in the name of providing "affordable housing" are beyond comprehension. They include, inter alia,: (i) a requirement that 10% of the residential units must be set aside as "affordable". *IZ Ordinance §907.04.A.6(e)* (the "Set Aside Requirement"); (ii) a requirement that all affordable units have equivalent interiors, finishes and square footage *IZ Ordinance §907.04.A.6(h)* (the "Equivalent Interiors Requirement"); (iii) a requirement that all of the set aside units be priced at a rental amount not to exceed thirty percent (30%) of the monthly income of a household earning fifty percent (50%) of the AMI [Average Median Income] with a household size one-and a half (1.5) times the bedroom count of the set aside unit. *IZ Ordinance §907.04.A.4.* (the "Pricing Cap"); (iv) requiring the owners to record deed restrictions against the title to the property, which impairs the property's marketability and ability to be financed. *IZ Ordinance §907.04.A.6.* (the "Deed Restrictions"); and (v) foisting the restrictions on the property for 35 years, and an additional 35 years if the property is sold. *IZ Ordinance §907.06(c) and (f).*

All of the foregoing restrictions, and more, have been placed upon BAMP Member Walnut Mckee to force Walnut McKee to perform the government's housing function without providing any compensation to Walnut McKee. These restrictions are, in fact, a regulatory taking of BAMP Member Walnut McKee's property.

Additionally, these restrictions have now been placed on an active construction project and

are impacting, in real time, the construction, financing, and operation of the project. By way of example, under the applicable provisions of the IZ Ordinance, BAMP Member Walnut McKee must provide the City with the location of each of the 16 affordable units, details of the amenities therein, and information on how they are to be operated in this case, as a precondition to the issuance of the ROZA, and as a precondition to the issuance of a Certificate of Occupancy for the project.

The City's actions further violate the well established doctrine of Unconstitutional Conditions which provides that government cannot condition a benefit generally available to others on the surrender of a constitutional right. As the United States Supreme Court stated in the *Frost v. R.R. Comm'n of Cal.*:

> It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizens of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold.

*Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593 (1926).

### b. The City does NOT have the statutory authority under its Home Rule Law and Article IX, Section 2 of the Pennsylvania Constitution To Enact and Implement the Regulations of the IZ Ordinance.

The City is a Home Rule Municipality and is therefore governed by the Home Rule Law. Section 2962(f) of the Home Rule Law (the "Business Exclusion Provision") expressly limits the City's Home Rule powers, stating as follows:

> (f) Regulation of Business and Employment. – *A municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon business, occupations and employers*, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to

a class or classes of municipalities. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.
*53 Pa.C.S.A. §2962(f)(West 2025)(Emphasis Added).*

This limitation is also consistent with Section 2962(c) of the Home Rule Law which provides:

(c) Prohibited Powers. – A municipality shall not:
(2) Exercise powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth.
*53 Pa.C.S.A. §2962(c)(2)(West 2025).*

These statutes are further consistent with Article IX, Section 2 of the Pennsylvania Constitution which permits municipalities to enact home rule charters, but specifically limits the authorities conferred upon such municipalities to those "not denied by this Constitution, by the municipalities home rule charter or by the General Assembly." *Pennsylvania Const. Article IX, Section 2.*

The City has previously undertaken similar attempts to impermissibly regulate businesses which have been struck down by the appellate courts as being violative of the Home Rule Law and Pennsylvania Constitution. For example, the Pennsylvania Supreme Court struck down the City's: (1) Protection of Displaced Contact Workers' Ordinance, which was an attempt to require new employers to keep employees of a prior employer. *See Building Owners and Managers Association of Pittsburgh v. City of Pittsburgh*, 985 A.2d 711, 716 (Pa. 2009); (2) Safe and Secure Buildings Act, which was an attempt to require training of security personnel in certain buildings. *See Pennsylvania Restaurant and Lodging Association v. City of Pittsburgh,* 211 A.3d 810, 838 (Pa. 2019); (3) the Source of Income Act, which required landlords to consider housing choice vouchers and to accept the same as part of analyzing a potential tenant's income qualifications. *See Apartment Association v. City of Pittsburgh*, 261 A.3d 1036, 1054 (Pa. 2021).

In *Apartment Association*, the Pennsylvania Supreme Court formalized a two part test to determine whether the Home Rule Law's "Business Exclusion Provision" has been violated. The first part of the test requires the Court to review whether the challenged ordinance in question imposes an affirmative burden on businesses that would require the businesses to act in ways that the business would not be obligated to act in the absence of a challenged ordinance. *See Apartment Association*, 261 A.3d at 1046. In this matter, there can be no question that the IZ Ordinance requires businesses to act in a way that they would not otherwise act but for the existence of the IZ Ordinance. The Set Aside Requirement, the Equivalent Interiors Requirement, the Pricing Cap, and the Deed Restrictions are all requirements that a property owner, and in this case BAMP Member Walnut McKee, would not otherwise have to comply with. As the Pennsylvania Supreme Court stated in the *Apartment Association* case, ". . . in this case, the complex web of administrative obligations unwilling landlords must accept to satisfy the Ordinance finds no equally clear source of statutory authority." *Apartment Association*, at 1048.

The second part of the test, assuming that the first part is satisfied, requires a court to review whether the ordinance is expressly authorized by statute. *Apartment Association*, at 1045-46. In this case, there is no express statutory authority for the City to regulate all housing construction of more than 20 units in such a manner. Simply put, if the City did not have the authority in *Apartment Association* to force the landlords to view a tenant's source of income as including the funds associated with housing vouchers, there is no way that the City can require landlords to impose the Set Aside Requirements, the Equivalent Interiors Requirement, the Pricing Cap, and the Deed Restrictions.

2. **Plaintiffs will suffer irreparable harm if the injunction is denied.**

9

Irreparable harm means that the moving party will be injured in such a way that adequate compensatory or other corrective relief will not be available at a later date the ordinary course of litigation. *Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d. 581, 596 (W.D. Pa. 2009). In addition, as a general rule, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane,* §2948.1 at 161 (2d. ed. 1995); *See McCormick v. Hirsch*, 460 F. Supp. 1337 (M.D. Pa. 1978).

BAMP Member Walnut McKee has alleged and provided significant evidence that its rights under the Takings Clause have been violated which, alone, is sufficient to show irreparable harm. In addition, the City's imposition of the Set Aside Requirement, the Equivalent Interiors Requirement, the Pricing Cap, the Deed Restrictions, and the other components of the IZ Ordinance are all significant restrictions on the marketability, property rights and viability of the BAMP Members' projects and specifically BAMP Member Walnut McKee's project. This is particularly true in that the issuance of the ROZA to BAMP Member Walnut McKee has been conditioned upon Walnut McKee abiding by these requirements. Furthermore, these restrictions have been imposed by the City when the City does not have the express right or authority to impose the same.

3. **Injunctive Relief Will Not Result in Greater Harm to the Nonmoving Party.**

The third factor used by the courts to determine whether to grant injunctive relief is whether granting preliminary relief will result in even greater harm to the non-moving party than to the movant. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

There will be no harm to the City as the Plaintiffs are simply requesting that the City abide

by its legal obligations and not infringe upon the BAMP Members' rights. Additionally, the City will not be prejudiced in any way by allowing BAMP Member Walnut McKee to continue its construction of The Caroline while restraining the enforcement of the suspect IZ Ordinance. *See Lozano v. City of Hazelton,* 459 F. Supp. 2d 332, 336 (M.D. Pa 2006).

4. **Public Interest Favors Granting the TRO / Preliminary Injunction.**

The focus of this prong is "whether there are policy considerations that bear on whether the order should issue." *11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane,* §2948.4 at 200-01 (2d. ed. 1995). There is a strong public interest in protecting Fourteenth Amendment rights, and limiting the government from imposing Unconstitutional Conditions upon the grant of a permit. The public interest would be best served if Plaintiffs were given the opportunity to be free of the imposition of the illegal and unauthorized requirements that have been imposed on them and its members. In addition, the imposition of these requirements have significant impacts on the construction, financing, leasing and viability of the project, all of which are extremely harmful to BAMP's Members, and specifically to BAMP Member Walnut McKee, but which will have minimal, if any, impact on the public.

5. **Security Requirement.**

Federal Rule of Civil Procedure 65(c) states:
(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.
*Fed R. Civ. P. 65(c)*

In the event this Honorable Court elects to enter a Temporary Restraining Order and Preliminary Injunction against the City, Plaintiffs respectfully request that this Court only require

that Plaintiffs post a minimal bond because it is unlikely that the City will be harmed by the granted injunction. In *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043 (S.D. Cal. 2006), the court imposed a minimal bond of $100.00 because the city conceded that no actual harm would come if court issued temporary restraining order prohibiting its enforcement of city ordinance penalizing harboring of illegal aliens.

In this case, as will be further developed at the hearing, the City cannot dispute that no actual harm would come to the City if the City was enjoined from the enforcement of the IZ Ordinance.

### B. Conclusion.

For the reasons set forth herein, Plaintiffs are entitled to an entry of a Temporary Restraining Order and Preliminary Injunction enjoining the enforcement of the IZ Ordinance by the City, the City's officers, agents, servants, employees, and attorneys and any other persons who are in active concert with the City until further Order of Court.

Dated: July 31, 2025

Respectfully submitted,
GOLDBERG, KAMIN & GARVIN, LLP

s/ Jonathan M. Kamin

JONATHAN M. KAMIN, ESQUIRE
PA I.D. No. 81958
jonathank@gkgattorneys.com

JONATHAN G. PRESTON, ESQUIRE
PA I.D. No. 209493
jpreston@gkgattorneys.com

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
(412)281-1119
Counsel For Plaintiffs: