## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH and S. RAND WERRIN,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF PITTSBURGH<br><br>        Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 2:22-CV-00706-RJC<br>)<br>)<br>)<br>)<br>)<br>) |

### BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Defendant City of Pittsburgh ("the City"), by its undersigned counsel, submits this Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Motion"):

## I. INTRODUCTION

Walnut Capital McKee, L.P. ("Walnut McKee") is not a party to this case and has no standing to seek special emergency relief for the benefit of its private development project. Plaintiff Builders Association of Metropolitan Pittsburgh ("BAMP") knew about this project when it agreed to bifurcate discovery and litigate important threshold issues of standing and ripeness. Now, a proxy seeks to hijack this three-and-a-half-year-old case by demanding the extraordinary, emergency remedy of a universal preliminary injunction to enjoin any enforcement of the "IZ-O, Inclusionary Housing Overlay District" section ("IZ-O") of the City's Zoning Code. This bold request—made while the City's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("SMJ MTD") is pending—must be denied because it does not satisfy any of the requirements to obtain a preliminary injunction.

**First**, there is no immediate, irreparable harm to Walnut McKee. The requirement to include affordable units may change the economics of the project, but that can be remedied with

money damages. And those monetary damages are by no means immediate; they will not accrue until the project is complete and the affordable units are rented.

**Second**, the City's enforcement of the IZ-O is not causing any immediate impact on the construction of this project. Walnut McKee agreed that the project would comply with the IZ-O and received final zoning approval on May 27, 2025. Ex. 1, Layman Aff., ¶¶ 9–12. The IZ-O is not causing any delays to this project.

**Third**, Walnut McKee gives short shrift to the merits, offering nothing more than a conclusory recitation of the arguments in BAMP's Amended Complaint. Importantly, Walnut McKee did not seek a variance from the requirements of the IZ-O, so its Motion suffers from the same standing and ripeness defects that are the basis for the City's pending SMJ MTD. *See* ECF Nos. 105–07, 113. The Court need not advance beyond this threshold issue. This Court granted the parties' *joint* request to conduct discovery limited to standing and ripeness and to decide the City's pending SMJ MTD *before* any discovery, dispositive motions, or trial on the merits. ECF No. 85, ¶ 7; ECF No. 91. Walnut McKee's Motion seeks to bypass this agreed procedure without offering any new evidence that would change the outcome of the pending SMJ MTD.

**Fourth**, the entry of the requested universal preliminary injunction would harm not only the City's right to self-governance, but also the public interest by obstructing the promotion of integrated, affordable housing. Walnut McKee's speculative monetary interest in its private development do not outweigh the general welfare of the residents of the City, as reflected in the public policy enacted by the democratically elected members of the City Council.

**Finally,** Walnut McKee is not asking this Court to preserve the status quo—the primary purpose of a preliminary injunction. Walnut McKee is asking to fundamentally disrupt the status quo, without discovery, on a truncated, emergency basis by building a brand new, 160-unit, $80 million apartment complex, which it presumes to be an irreconcilable conflict with the IZ-O

despite not requesting a variance. The Motion falls woefully short of its burden to prove the necessity of its extraordinary remedy and, therefore, it should be denied.[1]

## II.  RELEVANT PROCEDURAL HISTORY

On May 12, 2022, BAMP filed its Complaint, challenging the IZ-O. ECF No. 1. On April 3, 2023, this Court granted the City's Motion to Dismiss in part and denying it in part. ECF No. 54. This Court permitted BAMP to pursue its claims under the Takings Clause of the Fifth Amendment and the Home Rule Law. *Id.* However, the Court specifically cautioned that it was allowing the claims to proceed "with the important understanding that although BAMP's allegations are sufficient to survive a facial motion to dismiss, BAMP will face a far more substantial hurdle of establishing standing at the next stages of the proceedings." *Id.* at 13.

After BAMP filed an Amended Complaint, the Court granted the parties *joint* request to conduct discovery and dispositive motions in two phases, with an initial phase limited to standing and ripeness issues. ECF No. 85, ¶ 7; ECF No. 91. This first phase of discovery concluded last year (while Walnut McKee was pursuing approval for this project), and the City's SMJ MTD is pending, having been fully briefed since November 15, 2024. ECF Nos. 105–116.

Walnut McKee filed its Motion for Preliminary Injunction and its mislabeled[2] supporting brief on July 31, 2025 and August 1, 2025. ECF Nos. 120, 122.

## III.  RELEVANT FACTUAL BACKGROUND

### A.      The IZ-O and the Zoning Code

The IZ-O was "enacted by the City in various stages, between June 2019 and March 2023,"

---

[1] The City submits that the Motion should be denied based on the record before the Court and has filed Proposed Findings of Fact and Conclusions of Law for this Court's consideration.

[2] The title of BAMP's brief identifies itself as supporting not only a request for a preliminary injunction, but also a temporary restraining order. ECF No. 122. However, BAMP's Motion and proposed order do not request a TRO, *see* ECF No. 120, the brief does not develop any argument related to a TRO, *see* ECF No. 122, and the notice, timing, and procedures being followed by BAMP are, definitionally, not a request for a TRO. *See* Fed. R. Civ. P. 65(b).

ECF No. 80, ¶ 1, and applies to portions of the Lawrenceville, Bloomfield, Polish Hill, and Oakland neighborhoods. Zoning Code § 907.04.A.1. The IZ-O requires that projects involving new construction or "Substantial Improvement" of buildings with twenty (20) or more units not charge over a specified rental rate for a minimum of ten percent of the units. *Id.* §§ 907.04.A.3–.6.

The IZ-O operates as an integral component of the full Zoning Code. The Zoning Code requires a property-specific analysis of a proposed land use involving, *inter alia*, the submission site or project development plans reviewed and acted upon by the City's Planning Commission. *Id.* § 922.04. Applicants may seek relief from provisions of the Zoning Code through administrator exceptions, special exceptions, and/or variances from the Zoning Board of Adjustment. *Id.* §§ 922.07-922.09. Variances permit a particular use of land to proceed where strict compliance with the Zoning Code, including the IZ-O, may not be possible. *Id.* § 922.09. The IZ-O also recognizes special exceptions that may allow Inclusionary Units to be constructed off site. *Id.* § 907.04.A.7.

### B.    BAMP and S. Rand Werrin

The City incorporates by reference the SMJ MTD's discussion of the relevant facts pertaining to BAMP and Werrin (who goes unmentioned in the preliminary injunction filings). *See* ECF Nos. 105-107, 113. Notably, it is undisputed that BAMP's members (including purported new "member" Walnut McKee) and Werrin have not applied for a variance, special exception, or other relief from the City's IZ-O. ECF No. 113, 9.

### C.    Walnut McKee

This is not the first time that BAMP has tried to improperly insert Walnut McKee into this case. *See* ECF No. 113, at 2-7, 9-11 (responding to a similar attempt). As previously explained, and as now admitted by BAMP, non-party Walnut McKee was not a member of BAMP when either the Complaint or First Amended Complaint were filed or during discovery on BAMP's membership. ECF No. 122, 2 n.1; ECF No. 112, 6; ECF No. 112-2, 1; ECF Nos. 113-1, 113-2.

It is undisputed that Walnut McKee did not apply for a variance, special exception, or other relief from the IZ-O. *See* Ex. 1, Layman Aff., ¶ 8; ECF No. 107-12, Responses to RFAs Nos. 1-2; ECF No. 107-1, BAMP Dep. 30:4–32:25, 37:25–38:14. Instead, on May 20, 2025, Walnut McKee "provided the City with an IZ Commitment Letter and Restrictive Covenant Agreement so that the City could process the [Record of Zoning Approval ("ROZA")]." ECF No. 122, 3. BAMP failed to attach the related correspondence and documents to its Motion, but those documents are, as their titles suggest, (1) a letter from Walnut McKee's counsel in which Walnut McKee explicitly agrees to comply with the IZ-O unless it is repealed or invalidated and (2) a restrictive covenant agreement agreeing to comply with the IZ-O. Ex. A, Layman Aff., ¶¶ 9–10 (Exs. B, C). A mere seven days later, on May 27, 2025, the City issued its ROZA, which is the final zoning approval of Walnut McKee's project. *Id.* ¶ 11. As far as zoning approval is concerned, Walnut McKee is authorized to proceed with construction. *Id.* ¶¶ 11–12.

On June 6, 2025, BAMP's litigation counsel sent the City's litigation counsel an e-mail threatening to seek a preliminary injunction and asking the City "to agree that it will not enforce the [IZ-O] on this project or against any other member of BAMP." ECF No. 120-1. The City declined and, after letting another two months pass, Walnut McKee filed its Motion for Preliminary Injunction.

## IV.  LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024) (same). Requests for preliminary injunctive relief are evaluated under a well-established test under which the Court must first consider whether the party seeking preliminary injunctive relief has demonstrated (1) a likelihood of success on the merits and (2) that it will suffer

irreparable harm absent such injunctive relief. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021). Only if the moving party establishes both of these threshold factors does the Court go on to consider (3) whether granting preliminary injunctive relief will harm the nonmoving party or other interested persons; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3d Cir. 2017). The third and fourth factors merge when the government is the nonmoving party. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024). The Court must then determine, in its sound discretion, whether the balance of these factors weighs in favor of granting preliminary injunctive relief. *Reilly*, 858 F.3d at 178.

"The primary purpose of a preliminary injunction is not to take whatever steps are necessary to prevent irreparable harm, but to maintain the status quo until the Court is able to determine the parties' rights." *Frazier v. Kuhn*, No. 24-1620, 2025 U.S. App. LEXIS 16851, at *3-4 (3d Cir. July 9, 2025) (citing *Del. State*, 108 F.4th at 200).

## V. ARGUMENT

### A. Walnut McKee Will Not Suffer Irreparable Harm

The only hypothetical harm Walnut McKee can allege is monetary in nature: an alleged decrease in rents and/or property value. This type of purely economic harm can be remedied through monetary damages, even when it results from a taking of real property.[3] The Motion for Preliminary Injunction must be denied on this basis alone.

---

[3] *See Knick v. Twp. of Scott*, 588 U.S. 180, 202 (2019) ("Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate."); *Hynoski v. Columbia Cnty. Redev. Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) ("[T]he taking of real property can be adequately remedied by monetary compensation and that the intangible personal connection to property does not render condemnation an irreparable injury"); *Goadby v. Phila. Elec. Co.*, 639 F.2d 117, 121-23 (3d Cir. 1981) (same); *Willow St. Props., LLC v. Borough of Wood-Ridge*, No. 2:22-CV-02009, 2022 U.S. Dist. LEXIS 117947, at *9 (D.N.J. July 5, 2022) ("[I]t is clear that any decrease in the value of Plaintiff's property as a result of the Borough's conduct may be adequately remedied by monetary damages and thus does not constitute irreparable harm warranting preliminary injunctive relief."). In one illustrative case, the Third Circuit reversed the entry of a preliminary injunction directing the county government to issue a building permit because monetary damages were sufficient. *See Acierno v. New Castle County*, 40 F.3d 645, 654–55 (3d Cir. 1994) (holding that, even if the risk of losing a potential anchor tenant were not too remote and speculative to justify an injunction, the harm was reparable through monetary damages).

Second, the IZ-O has no impact on Walnut McKee's "extremely time sensitive" construction schedule. ECF No. 122, 2. The City issued its ROZA on May 27, 2025. Ex. 1, Layman Aff., ¶ 11. Walnut McKee's self-serving affidavit even admits that the ROZA "allowed Walnut McKee to continue its active construction on the Property." ECF No. 122, ¶ 8. The IZ-O is not causing *any* delays on Walnut McKee's project, let alone the non-speculative, imminent, and irreparable delays that are necessary to justify preliminary injunctive relief.

Third, the only "evidence" of harm is a self-serving, conclusory, two-page affidavit by the president of Walnut McKee, who was not disclosed or deposed during discovery. *See* ECF No. 122-2, ¶¶ 9–10 (declaring that the IZ-O "constitutes a Taking under the law, and significantly impacts the construction, financing, leasing and viability of the active construction project" and that "Walnut McKee will be immediately and irreparably harmed"). The affidavit does not identify any delay caused by the IZ-O, mention any deadlines, provide a construction schedule, or describe, let alone quantify, the alleged impact of the IZ-O on the construction, financing, leasing, or viability of the project. This is far from sufficient for Walnut McKee to meet its burden. *See Lanin v. Borough of Tenafly*, 515 Fed. App'x 114, 117 (3d Cir. 2013) (holding that the movant must make a "clear showing of immediate irreparable injury.").

Fourth, Walnut McKee's claim that this Court must take extraordinary, emergency action without the benefit of discovery is belied by BAMP and Walnut McKee's dilatory conduct. Preliminary injunctions follow the "classic maxim of equity [] that [equity] assists the diligent, not the tardy." *Del. State*, 108 F.4th at 206 (citation omitted). There must be "an urgent need for speedy action to protect the plaintiffs' rights" and a "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Id.*

Walnut McKee submitted an application for the project on March 19, 2024, more than a year after the IZ-O was extended to Oakland. Ex. 1, Layman Aff., ¶ 4. Yet, rather than seeking a

variance, joining BAMP, or filing its own action in the intervening years, Walnut McKee proceeded with its project and, on May 20, 2025, expressly affirmed its intent to comply with the IZ-O. *Id.* ¶¶ 8–10. It claims that a May 9, 2025 e-mail was the catalyst for its "emergency," ECF No. 122, 2, but it waited another month to demand the City agree not to enforce the IZ-O, and then waited two more months after its demand was denied to file its Motion.

Similarly, BAMP's leisurely litigation tactics demonstrate that drastic, speedy action is unwarranted. Since filing its Complaint on May 12, 2022, BAMP has requested and obtained no less than five extensions, ECF Nos. 37, 79, 93, 108, 110, consented to five other extensions, ECF Nos. 19, 46, 81, 99, 101, and jointly requested the two-phase approach to discovery and dispositive motions reflected in this Court's December 20, 2023 Order, ECF No. 85, ¶ 7; ECF No. 91. BAMP and Walnut McKee cannot expect this Court to enter extraordinary, emergency relief when they have sat idly on these supposedly dire, time sensitive issues for months, if not years.[4]

### B.    BAMP is Unlikely to Succeed on the Merits

#### 1.    *Standing and Ripeness*

Rather than repeating its pending SMJ MTD, the City incorporates those filings by reference here. ECF Nos. 105–07, 113. In short, even assuming that BAMP can retroactively induct Walnut McKee as a member and that it is actually harmed, BAMP and Walnut McKee's claim is premature because no BAMP member, *including Walnut McKee*, has ever requested (let alone been denied) a variance or any other relief from the IZ-O. *See infra* Part III.B–C. It is notable that Walnut McKee pursued and obtained another variance on this project, but opted not to seek

---

[4] *See Del. State*, 108 F.4th at 206 (four-month delay supports denial of preliminary injunction); *Patel v. St Vincent Health Ctr.*, Civ. A. No. 1:12-298, 2013 U.S. Dist. LEXIS 122181, at *15 (W.D. Pa. Aug. 28, 2013) (16-month delay "undermines [plaintiff's] assertion that irreparable harm is imminent"); *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 657 (E.D. Pa. 2010) (14-month delay "undercuts the urgency that forms the cornerstone of injunctive relief; indeed, this delay indicates a lack of urgency"); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984) ("The district court may legitimately think it suspicious that the party who asks to preserve the *status quo* through interim relief has allowed the *status quo* to change through unexplained delay.").

relief from the requirements of the IZ-O. Ex. 1, Layman Aff., ¶¶ 5–8. Their failure to avail themselves of these avenues of relief render their claims unripe and deprive them of standing. ECF No. 106, 7–20; ECF No. 113, 2–14; *see also* ECF No. 106, 18–20 (responding to BAMP's argument that a variance request would be *per se* futile); ECF No. 113, 11–14 (same).[5]

The City has already responded to BAMP's attempt to remedy its threshold deficiencies by relying on Walnut McKee's project and will not repeat those arguments here. *See* ECF No. 106; ECF No. 113, 9–14. However, Walnut McKee's express written commitment to comply with the IZ-O unless it is repealed or invalidated, Ex. A, Layman Aff., ¶¶ 9–10 (Exs. B, C), only further highlights the flaws of this argument. The IZ-O has not been repealed or invalidated, so the "conditions" on Walnut McKee's commitment have not been triggered. Walnut McKee received full zoning approval, and the IZ-O poses no obstacle to construction on its project. *Id.* ¶¶ 11–12. Like BAMP and Werrin, Walnut McKee has not suffered any injury-in-fact and lacks both standing and any ripe claim.

### 2.    *The IZ-O Does Not Effectuate an Unconstitutional Taking*

Consideration of the merits of BAMP's claims is improper until the pending SMJ MTD is decided and discovery on the merits has been taken. BAMP—the actual party to this case, unlike Walnut McKee[6]—hopes to circumvent the jointly-requested, court-mandated process by which standing and ripeness are to be decided prior to proceeding to the merits. ECF No. 85, ¶ 7; ECF No. 91. The non-emergency of a non-party underlying the Motion for Preliminary Injunction is no

---

[5] *Adams v. City of Seattle*, No. C22-1767, 2024 U.S. Dist. LEXIS 115851 (W.D. Wash. June 28, 2024) is a particularly thoughtful analysis of an inclusionary zoning ordinance that dismisses a challenge similar to BAMP's.

[6] Walnut McKee is not a party to this case, and BAMP's attempt to retroactively recognize it as a member is ineffectual. The fact that Walnut McKee was not a member of BAMP when the Amended Complaint was filed is fatal to BAMP's reliance on it to establish subject matter jurisdiction. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 575 (2004) ("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.") (citation omitted); *Steele v. First Nat'l Bank of Mifflintown*, No. 1:11-cv-1124, 2012 U.S. Dist. LEXIS 187604, at *20 (M.D. Pa. July 3, 2012) ("a court assessing whether it has subject matter jurisdiction must look at the state of things at the time the action was first brought").

basis to deviate from the jointly-requested process ordered by this Court.

The wisdom of deferring any decision on the merits is illustrated by the undeveloped argument presented by BAMP, totaling only two-and-a-half pages without any reference to the applicable constitutional test, ECF No. 122, 5–7,[7] and its meager "evidence" of a short, self-serving affidavit, devoid of any supporting facts, ECF No. 122-2.

The City will not delve too deeply into preemptive responses to BAMP's largely undeveloped arguments. However, if the Court determines that it is necessary to consider the substance of BAMP's claims, those claims fail on their merits. The U.S. Supreme Court has recognized three forms of regulatory takings, two of which are considered *per se* or "categorical" takings and involve the "relatively narrow" circumstances in which a regulation either results in a "permanent physical occupation" under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) or denies a landowner "*all* economically beneficial use" of their property under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). The IZ-O's limited regulation of how a developer uses its land does not constitute a physical or permanent occupation, *2910 Georgia Ave. L.L.C. v. D.C.*, 234 F. Supp. 3d 281, 304 (D.D.C. 2017), or deny developers "*all* economically beneficial" land uses. *Lucas*, 505 U.S at 1019. Thus, the IZ-O is not a *per se* taking.

The third form of a regulatory taking is analyzed under the *Penn Central* test. *Palazzolo*, 533 U.S. at 617 (citing *Penn Central v. City of New York*, 438 U.S. 104, 124-25 (1978)). Under *Penn Central*, the "magnitude" of the regulation's economic impact on the owner's property

---

[7] The only authority cited by BAMP is irrelevant. *See* ECF No. 122, 5-6 (citing *Knick*, 588 U.S. 180). *Knick* reversed the holding in *Williamson Cty. v. Hamilton Bank*, 473 U.S. 172 (1985) that a takings claim cannot be filed in federal court until a state court has denied a claim under state law first. *Knick*, 588 U.S. at 184. The City has never argued that BAMP's claims are premature for failure to sue in state court first. The City's position is that BAMP has not suffered an injury-in-fact to establish standing or satisfied the finality requirement of ripeness under *Palazzolo v. Rhode Island*, 533 U.S. 606, 619–20 (2001) and *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736–37 (1997).

interests must drastically interfere with the use of the land or significantly diminish the value of the property. *Lingle*, 544 U.S. at 540; *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1031 (3d Cir. 1987*)*. Then, the plaintiff must prove that the degree of interference the regulation has on the plaintiff's "reasonable, distinct, investment-backed expectations" is severe. *Keystone Bituminous Coal Ass'n v. Duncan*, 771 F.2d 707, 713 (3d Cir. 1985), *aff'd*, 480 U.S. 470 (1987)*.

The IZ-O readily satisfies the *Penn Central* test. The IZ-O permits developers to engage in the same commercial use as before, *i.e.*, developing multifamily properties for rental or sale. It impacts only a small portion of the entire property (10% of the total units) and requires only that rent be reduced, not eliminated. The impact on the use of the *entire property*[8] is not drastic, and Third Circuit cases have held that far more onerous zoning ordinances satisfied the *Penn Central* test.[9] BAMP and Walnut McKee have failed to present any evidence that the present value of their property has diminished, let alone that any such diminution "destroy[ed] or severely" reduced the value of the existing property. *Rogin v. Bensalem*, 616 F.2d 680, 690 (3d Cir. 1980). Because they have not proven (or even alleged) the "magnitude" of the IZ-O's alleged impact, BAMP's claim must fail. *See Home Builders Ass'n v. City of Chicago*, 213 F. Supp. 3d 1019, 1029 (N.D. Ill. 2016) (dismissing regulatory takings challenge to inclusionary zoning ordinance because plaintiff failed to prove substantial loss in value).

BAMP and Walnut McKee have also not proven that the IZ-O interferes with its "reasonable distinct investment-backed expectations." *Keystone*, 771 F.2d at 713.[10] BAMP has not

---

[8] A regulation's impact must be assessed in relation to the entire property. *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017). The restriction on 10% of units, or "one strand" in the owner's bundle of rights, does not destroy the "full" bundle of rights and is not a taking. *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979); *2910 Georgia*, 234 F. Supp. 3d at 294–98 (inclusionary zoning was not a taking based on its effect on an entire building, rather than on individual units).

[9] *See Pace Res. Inc.*, 808 F.2d at 1031 (holding that a new ordinance prohibiting industrial use was not a taking because the land retained other exploitable uses); *Rogin*, 616 F.2d at 692 (holding that downzoning of developer's property was not a taking because the reduction in housing density added other value).

[10] These "expectations" are subject to two limitations: (1) the regulations must have "nearly the same effect as the complete destruction of the [property] rights of the owner" and (2) plaintiffs must account for the state's authority to regulate property to further the public interest. *Pace Res. Inc.*, 808 F.2d at 1033. The interference alleged here fails on

proven that the IZ-O "ha[s] nearly the same effect as the complete destruction" of its property rights. *Penn Central*, 438 U.S. at 127. The alleged losses rest on an unreasonable expectation to exploit property through its most profitable use, but government action that prohibits the "most profitable use" of property does not constitute a taking. *Andrus*, 444 U.S. at 66; *Penn Central*, 438 U.S. at 130. Thus, BAMPs cannot sustain a claim under the *Penn Central* test.

BAMP has previously asserted that the IZ-O is an unconstitutional exaction. ECF No. 80, ¶¶ 64–67.[11] This argument fails because the IZ-O does not require the developer to convey property or demand the developer pay a fee to receive a permit. *Cal. Bldg. Indus. Ass'n v. City of San Jose*, 61 Cal. 4th 435, 444 (Cal. 2015) (holding that an inclusionary zoning ordinance is not an exaction because it simply "place[d] a limit on the way a developer may use its property."). Furthermore, the *Nollan/Dolan* exaction framework should not be applied here because, as BAMP argued in its opposition to the City's Motion to Dismiss, ECF No. 45, 9, and the Court expressly held, ECF No. 54, at 9, Plaintiffs have raised only a facial challenge to the IZ-O. The *Nollan/Dolan* standard does not apply to a facial takings challenge because the factors considered under *Nollan/Dolan* become relevant only once a specific exaction has actually been imposed. *See Garneau v. City of Seattle*, 147 F.3d 802, 811 (9th Cir. 1998). BAMP cannot simultaneously argue that it has raised a facial takings challenge while still relying on the *Nollan/Dolan* analysis. *See Khodara Env. Inc. v. Burch*, 245 F. Supp. 2d 695, 728 (W.D. Pa. 2002).[12]

---

both counts. First, reduced rent for 10% of units is not a "complete destruction" of the property. Second, it cannot be a surprise to BAMP that its members' expected return on investments may be tempered by the government's right to regulate, particularly in a field as extensively regulated housing. *See Home Builders Ass'n*, 213 F. Supp. 3d at 1030; *Concrete Pipe v. Constr. Laborers*, 508 U.S. 602, 645 (1993). "Zoning laws often affect some property owners more severely than others" without being a taking. *Penn Central*, 438 U.S. at 133–34.
[11] Regardless of whether this Court applies BAMP's proffered "nexus" and "rough proportionality" test for an exaction, ECF No. 45, 2, or the *Penn Central* test, the variance process is essential because it can incorporate the applicable constitutional test into the Zoning Board of Adjustment's (an independent, quasi-judicial body) decision-making in light of the circumstances of a particular property. *See Adams*, 2024 U.S. Dist. LEXIS 115851, at *11.
[12] BAMP's unconstitutional conditions theory, ECF No. 122, 7, fails for lack of a predicate constitutional violation. *Koontz v. St. Johns River Water Mgmt. District*, 570 U.S. 595, 612 (2013).

### 3.     The City Has the Express Authority to Enact the IZ-O

BAMP's argument that the City lacks the authority to enact the IZ-O, *see* ECF No. 122, 7–9, misconstrues the Business Exclusion of the Home Rule Law and ignores the City's express statutory authority to enact the IZ-O. In addition to its extensive home rule powers, *see* ECF No. 30, 14–16, the City possesses broad, statutory zoning authority derived from the Second-Class Cities Code ("SCCC"), 53 P.S. §§ 25052–25058, to enact land use regulations, such as the IZ-O, relating to the use and occupancy of residential buildings, *id.* § 25051, including "to promote health and the general welfare" and "encourag[e] the most appropriate use of land." *Id.* § 25053. The Municipalities Planning Code ("MPC")[13] empowers municipalities to "permit, prohibit, regulate, restrict and determine" the "use of structures" and to "enact, amend and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of [the MPC]," including to "provide for the general welfare." 53 P.S. §§ 10105, 10601, 10603(b)(2).

The authority to regulate land use to encourage inclusionary housing for all income levels falls well within the SCCC and MPC's delegation of zoning power to provide for the general welfare,[14] but the MPC is even more direct in Section 10301(a)(2.1), which expressly recognizes the use of zoning power to provide housing for people of all income levels. 53 P.S. § 10301(a)(2.1) (stating that the zoning plan shall include a "plan to meet the housing needs of present residents

---

[13] The MPC applies here because the Business Exclusion of the Home Rule Law states that home rule municipalities are permitted to "determine the duties, responsibilities or requirements placed upon businesses" when "expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities." 53 Pa. C.S. § 2962(f).

[14] *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 9 (1974) ("The concept of the public welfare is broad and inclusive."); *S. Burlington County NAACP v. Mt. Laurel*, 336 A.2d 713, 727 (N.J. 1975) ("It is plain beyond dispute that proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local land use regulation"); *Britton v. Town of Chester*, 134 N.H. 434, 441 (N.H. 1991) (holding that ordinance which excluded development of affordable housing was invalid as it "flies in the face of the general welfare provision" of the authorizing statute); *Bd. of Cnty. v. Crow*, 65 P.3d 720, 734-35 (Wyo. 2003) (holding that promoting "social and economic diversity by lessening the demand on affordable housing" is encompassed within the legislative grant of authority to ensure the general welfare); *Ca. Building*, 351 P.3d at 991 (holding that increasing and dispersing affordable housing are relate to the general welfare).

and of those individuals and families anticipated to reside in the municipality, which may include…***the accommodation of expected new housing in different dwelling types and at appropriate densities for households of all income levels.***") (emphasis added). The MPC further authorizes municipalities to legislate for the provision of housing for people of all income levels in a socially inclusive manner, *i.e.*, "to promote, protect and facilitate…coordinated and practical community development" and to "accommodate reasonable overall community growth, including population and employment growth." 53 P.S. § 10604.

By granting broad authority to enact zoning ordinances that regulate the use of structures for the general welfare and specific authority to accommodate new housing for households of "all income levels," the MPC clearly authorizes the enactment of the IZ-O to ensure that people of all incomes have adequate housing, are not segregated, and can live in areas with employment opportunities, good schools, and other amenities. Thus, BAMP will not prevail on the merits.[15]

### C.     The Requested Preliminary Injunction is Against the Public Interest

The merged third/fourth preliminary injunction factor weighs heavily in favor of the denial of BAMP's Motion because the requested injunction would harm the public. The expedited, wholesale nullification of a local ordinance enacted by the elected representatives of the citizens of Pittsburgh, and passed after extensive consideration and input from the public, is a serious harm. *See Del. State*, 108 F.4th at 206 ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). "There is always a public interest in prompt execution of the laws," which is "doubly true when federal courts are asked to block states from enforcing their laws." *Id.* at 205–06 (citations omitted). Courts should

---

[15] BAMP's reliance on *Apartment Ass'n of Metro. Pittsburgh v. City of Pittsburgh*, 261 A.3d 1036 (Pa. 2021) is misplaced because, as argued above, the SCCC and MPC not only broadly authorized the IZ-O, but the MPC specifically authorizes it. *See* 53 P.S. § 10301(a)(2.1).

"rightly hesitate to interfere with exercises of executive or legislative authority" because an injunction by a federal court regarding local laws "threatens federalism and the separation of powers—two clear restraints on the use of the equity power." *Id.* at 205 (citation modified).

The democratically elected members of City Council passed, and the Mayor signed, the IZ-O into law "to promote the public health and welfare by increasing the supply of affordable housing for a range of family sizes and promoting economic integration." Zoning Code § 907.04.A.3. It is not the role of the federal courts to question local elected representatives' conclusions regarding what policies are in the public interest, especially "[w]ithout the clarity of a full trial on the merits." *Del. State*, 108 F.4th at 206. Walnut McKee's speculative, purely monetary interests do not outweigh the public interest of the residents of Pittsburgh as reflected in the policy choices of local elected officials.

## VI. CONCLUSION

The Third Circuit has been clear: "A preliminary injunction is not a first bite at the merits. Rather, it is an extraordinary, equitable remedy designed to protect the court's ability to see the case through." *Id.* BAMP and Walnut McKee are not asking this Court to preserve the status quo; they are asking to summarily discard a law that predated Walnut McKee's project despite the sufficiency of monetary relief. The City asks this Court to "reserve this drastic remedy for drastic circumstances," *id.*, deny the Motion for Preliminary Injunction, and enter the attached, proposed findings of fact and conclusions of law.[16]

---

[16] BAMP's Motion is clearly deficient on its face, and this Court "is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Catholic High Sch. of the Diocese of Pittsburgh, Inc. v. Fed'n of Pittsburgh Diocesan Teachers*, No. 2:21-cv-1808-RJC, 2022 U.S. Dist. LEXIS 155711, at *9 (W.D. Pa. Aug. 30, 2022) (Colville, J.) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990)). However, if this Court concludes that BAMP has established a threshold showing, the City requests a hearing to, among other things, challenge the factual representations in BAMP's filings and question the affiant, Todd E. Reidbord, who was not disclosed or deposed in discovery.

Respectfully Submitted,

By: */s/ Hillary M. Weaver*
      Hillary M. Weaver
      Pa. I.D. No. 322545
      Hillary.Weaver@pittsburghpa.gov

      */s/ Krysia Kubiak*
      Krysia Kubiak
      Pa. I.D. No. 90619
      Krysia.Kubiak@pittsburghpa.gov

      CITY OF PITTSBURGH
      DEPARTMENT OF LAW
      313 City-County Building
      414 Grant Street
      Pittsburgh, PA 15219
      412-255-2613 (phone)
      412-255-2285 (fax)

      */s/ Chad I. Michaelson*
      Chad I. Michaelson
      Pa. I.D. No. 88725
      cim@muslaw.com

      */s/ Joseph A. Carroll*
      Joseph A. Carroll
      Pa. I.D. No. 324373
      jac@muslaw.com

      MEYER, UNKOVIC & SCOTT LLP
      Henry W. Oliver Building
      535 Smithfield Street, Suite 1300
      Pittsburgh, PA  15222-2315
      (412) 456-2800 (phone)
      (412) 456-2864 (fax)

      *Attorneys for Defendant City of Pittsburgh*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within **BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** was filed electronically August 15, 2025. Notice of this filing will be sent to all counsel of record via the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

By:*/s/ Chad I. Michaelson*
Chad I. Michaelson
*Attorney for Defendant City of Pittsburgh*